

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

# FILED

**SEP 0 8 2008**

Sep 3 2008

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. CHARLES L. SPICER, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 08 C 3577 |
| J.R. WALLS, Warden, Western Illinois Correctional Center, | ) ) ) ) | The Honorable David H. Coar, |
| Respondent. | ) | Judge Presiding. |

## TO THE CLERK OF THE UNITED STATES DISTRICT COURT

In compliance with Rule 5 of the Rules Governing Section 2254 Cases in the

United States District Courts, the attached Exhibits to respondent's Answer to

petitioner's Petition for Writ of Habeas Corpus are hereby filed with this Court:

Exhibit A:    Docket Sheet, *People v. Spicer*, No. 01 CR 23568 (Circuit Court
of Cook County);

Exhibit B:    Petitioner's Brief, *People v. Spicer*, No. 1-05-3358 (Ill. App.);

Exhibit C:    State's Brief, *People v. Spicer*, No. 1-05-3358 (Ill. App.);

Exhibit D:    Petitioner's Reply Brief, *People v. Spicer*, No. 1-05-3358 (Ill.
App.);

Exhibit E:    State's Petition for Rehearing, *People v. Spicer*, No. 1-05-3358
(Ill. App.);

Exhibit F:    Petitioner's Petition for Rehearing, *People v. Spicer*, No. 1-05-
3358 (Ill. App.);

Exhibit G:    Decision, *People v. Spicer*, 884 N.E.2d 675 (Ill. App.), *modified upon rehearing* (2008).

September 2, 2008                          Respectfully submitted,

                                          LISA MADIGAN
                                          Attorney General of Illinois


By:      _____

                                          CHARLES REDFERN, Bar No. 6283811
                                          Assistant Attorney General
                                          100 W. Randolph Street, 12th Floor
                                          Chicago, IL 60601-3218
                                          PHONE: (312) 814-3565
                                          FAX: (312) 814-2253
                                          EMAIL: credfern@atg.state.il.us

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 001

PEOPLE OF THE STATE OF ILLINOIS

                    VS              NUMBER 01CR2356801

CHARLES    SPICER

            CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

   I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
with the Clerk of the Circuit Court.

Charging the above named defendant with:

| | | |
|---|---|---|
| 720-5/18-2(A)(1) | F | ARMED ROBBERY/NO FIREARM |
| 720-5/12-14(A)(4) | F | AGG CRIM SEX ASSAULT/FELONY |
| 720-5/12-14(A)(4) | F | AGG CRIM SEX ASSAULT/FELONY |
| 720-5/12-14(A)(4) | F | AGG CRIM SEX ASSAULT/FELONY |
| 720-5/12-14(A)(4) | F | AGG CRIM SEX ASSAULT/FELONY |
| 720-5/12-14(A)(4) | F | AGG CRIM SEX ASSAULT/FELONY |
| 720-5/12-14(A)(4) | F | AGG CRIM SEX ASSAULT/FELONY |
| 720-5/12-14(A)(5) | F | AGG CRIM SEX ASLT/VICTIM >60 |
| 720-5/12-14(A)(5) | F | AGG CRIM SEX ASLT/VICTIM >60 |
| 720-5/12-14(A)(1) | F | AGG CRIM SEX ASSAULT/WEAPON |
| 720-5/12-14(A)(1) | F | AGG CRIM SEX ASSAULT/WEAPON |
| 720-5/12-11(A)(1) | F | HOME INVASION/ARMED/FORCE |
| 720-5/12-11(A)(1) | F | HOME INVASION/ARMED/FORCE |
| 720-5/19-3 | F | RESIDENTIAL BURGLARY |
| 720-5/17-3(A)(1) | F | FORGERY/MAKE/ALTER DOCUMENT |
| 720-5/17-3(A)(2) | F | FORGERY/ISSUE/DELIVER DOCUMENT |
| 720-5/10-3.1(A) | F | AGGRAVATED UNLAWFUL RESTRAINT |

The following disposition(s) was/were rendered before the Honorable Judge(s):

| | |
|---|---|
| 10/03/01 IND/INFO-CLK OFFICE-PRES JUDGE | 10/16/01 1701 |
| 01CR2356801 ID# CR100691644 | |
| 10/16/01 CASE ASSIGNED | 10/16/01 1709 |
| BIEBEL, PAUL JR. | |
| 10/16/01 DEFENDANT IN CUSTODY | 00/00/00 |
| WOOD, WILLIAM S. | |
| 10/16/01 DEFENDANT IN CUSTODY | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 10/16/01 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 10/16/01 PUBLIC DEFENDER APPOINTED | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 10/16/01 DEFENDANT ARRAIGNED | 00/00/00 |
| DERNBACH, DENNIS A. | |

EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS    Page 002

PEOPLE OF THE STATE OF ILLINOIS

VS                    NUMBER 01CR2356801

CHARLES        SPICER

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| Date | Event | Date 2 | |
|---|---|---|---|
| 10/16/01 | PLEA OF NOT GUILTY | 00/00/00 | |
| | DERNBACH, DENNIS A. | | |
| 10/16/01 | DISCOVERY ANSWER FILED | 00/00/00 | 1 |
| | DERNBACH, DENNIS A. | | |
| 10/16/01 | MOTION FOR DISCOVERY | 00/00/00 F | 1 |
| | DERNBACH, DENNIS A. | | |
| 10/16/01 | CONTINUANCE BY AGREEMENT | 11/29/01 | |
| | DERNBACH, DENNIS A. | | |
| 11/29/01 | DEFENDANT IN CUSTODY | 00/00/00 | |
| | DERNBACH, DENNIS A. | | |
| 11/29/01 | PRISONER DATA SHEET TO ISSUE | 00/00/00 | |
| | DERNBACH, DENNIS A. | | |
| 11/29/01 | CONTINUANCE BY AGREEMENT | 12/10/01 | |
| | DERNBACH, DENNIS A. | | |
| 12/10/01 | DEFENDANT IN CUSTODY | 00/00/00 | |
| | DERNBACH, DENNIS A. | | |
| 12/10/01 | PRISONER DATA SHEET TO ISSUE | 00/00/00 | |
| | DERNBACH, DENNIS A. | | |
| 12/10/01 | CONTINUANCE BY AGREEMENT | 01/22/02 | |
| | DERNBACH, DENNIS A. | | |
| 01/22/02 | DEFENDANT IN CUSTODY | 00/00/00 | |
| | DERNBACH, DENNIS A. | | |
| 01/22/02 | PRISONER DATA SHEET TO ISSUE | 00/00/00 | |
| | DERNBACH, DENNIS A. | | |
| 01/22/02 | CONTINUANCE BY AGREEMENT | 02/22/02 | |
| | DERNBACH, DENNIS A. | | |
| 02/22/02 | DEFENDANT IN CUSTODY | 00/00/00 | |
| | DERNBACH, DENNIS A. | | |
| 02/22/02 | PRISONER DATA SHEET TO ISSUE | 00/00/00 | |
| | DERNBACH, DENNIS A. | | |
| 02/22/02 | CONTINUANCE BY AGREEMENT | 03/18/02 | |
| | DERNBACH, DENNIS A. | | |
| 03/18/02 | DEFENDANT IN CUSTODY | 00/00/00 | |
| | DERNBACH, DENNIS A. | | |
| 03/18/02 | PRISONER DATA SHEET TO ISSUE | 00/00/00 | |
| | DERNBACH, DENNIS A. | | |
| 03/18/02 | CONTINUANCE BY AGREEMENT | 04/29/02 | |
| | DERNBACH, DENNIS A. | | |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 003

PEOPLE OF THE STATE OF ILLINOIS

VS                    NUMBER 01CR2356801

CHARLES        SPICER

### CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| | |
|---|---|
| 04/29/02 DEFENDANT IN CUSTODY | 00/00/00 |
| WADAS, KENNETH J. | |
| 04/29/02 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| WADAS, KENNETH J. | |
| 04/29/02 CONTINUANCE BY AGREEMENT | 05/29/02 |
| WADAS, KENNETH J. | |
| 05/29/02 DEFENDANT IN CUSTODY | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 05/29/02 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 05/29/02 CONTINUANCE BY AGREEMENT | 06/26/02 |
| DERNBACH, DENNIS A. | |
| 06/26/02 DEFENDANT IN CUSTODY | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 06/26/02 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 06/26/02 CONTINUANCE BY AGREEMENT | 07/30/02 |
| DERNBACH, DENNIS A. | |
| 07/30/02 ADMIN MAND FURLOUGH (CCDOC) | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 07/30/02 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 07/30/02 CONTINUANCE BY AGREEMENT | 09/11/02 |
| DERNBACH, DENNIS A. | |
| 09/11/02 DEFENDANT IN CUSTODY | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 09/11/02 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 09/11/02 CONTINUANCE BY AGREEMENT | 09/20/02 |
| DERNBACH, DENNIS A. | |
| 09/20/02 DEFENDANT IN CUSTODY | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 09/20/02 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 09/20/02 CONTINUANCE BY AGREEMENT | 10/23/02 |
| DERNBACH, DENNIS A. | |
| 10/23/02 DEFENDANT IN CUSTODY | 00/00/00 |
| DERNBACH, DENNIS A. | |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 004

PEOPLE OF THE STATE OF ILLINOIS

                          VS                    NUMBER 01CR2356801

       CHARLES      SPICER

            CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
10/23/02 PRISONER DATA SHEET TO ISSUE          00/00/00
      DERNBACH, DENNIS A.
10/23/02 CONTINUANCE BY AGREEMENT              12/04/02
      DERNBACH, DENNIS A.
12/04/02 DEFENDANT IN CUSTODY                  00/00/00
      DERNBACH, DENNIS A.
12/04/02 PRISONER DATA SHEET TO ISSUE          00/00/00
      DERNBACH, DENNIS A.
12/04/02 CONTINUANCE BY AGREEMENT              01/17/03
      DERNBACH, DENNIS A.
01/13/03 PRISONER DATA SHEET TO ISSUE          00/00/00
      DERNBACH, DENNIS A.
01/13/03 CONTINUANCE BY AGREEMENT              02/25/03
      DERNBACH, DENNIS A.
02/25/03 DEFENDANT IN CUSTODY                  00/00/00
      DERNBACH, DENNIS A.
02/25/03 PRISONER DATA SHEET TO ISSUE          00/00/00
      DERNBACH, DENNIS A.
02/25/03 CONTINUANCE BY AGREEMENT              03/26/03
      DERNBACH, DENNIS A.
03/26/03 DEFENDANT IN CUSTODY                  00/00/00
      KIRBY, JOHN P.
03/26/03 PRISONER DATA SHEET TO ISSUE          00/00/00
      KIRBY, JOHN P.
03/26/03 CONTINUANCE BY AGREEMENT              04/30/03
      KIRBY, JOHN P.
04/30/03 DEFENDANT IN CUSTODY                  00/00/00
      DERNBACH, DENNIS A.
04/30/03 PRISONER DATA SHEET TO ISSUE          00/00/00
      DERNBACH, DENNIS A.
04/30/03 CONTINUANCE BY AGREEMENT              06/04/03
      DERNBACH, DENNIS A.
06/04/03 DEFENDANT IN CUSTODY                  00/00/00
      DERNBACH, DENNIS A.
06/04/03 PRISONER DATA SHEET TO ISSUE          00/00/00
      DERNBACH, DENNIS A.
06/04/03 CONTINUANCE BY AGREEMENT              07/02/03
      DERNBACH, DENNIS A.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS    Page 005

PEOPLE OF THE STATE OF ILLINOIS

VS                    NUMBER 01CR2356801

CHARLES    SPICER

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| | |
|---|---|
| 07/02/03 DEFENDANT IN CUSTODY | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 07/02/03 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 07/02/03 CONTINUANCE BY AGREEMENT | 07/30/03 |
| DERNBACH, DENNIS A. | |
| 07/30/03 DEFENDANT IN CUSTODY | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 07/30/03 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 07/30/03 CONTINUANCE BY AGREEMENT | 09/04/03 |
| DERNBACH, DENNIS A. | |
| 09/04/03 DEFENDANT IN CUSTODY | 00/00/00 |
| OBBISH JAMES M. | |
| 09/04/03 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| OBBISH JAMES M. | |
| 09/04/03 CONTINUANCE BY AGREEMENT | 10/07/03 |
| OBBISH JAMES M. | |
| 10/07/03 DEFENDANT IN CUSTODY | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 10/07/03 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 10/07/03 CONTINUANCE BY AGREEMENT | 11/06/03 |
| DERNBACH, DENNIS A. | |
| 11/06/03 DEFENDANT IN CUSTODY | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 11/06/03 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 11/06/03 CONTINUANCE BY AGREEMENT | 12/08/03 |
| DERNBACH, DENNIS A. | |
| 12/08/03 DEFENDANT IN CUSTODY | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 12/08/03 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| DERNBACH, DENNIS A. | |
| 12/08/03 CONTINUANCE BY AGREEMENT | 01/20/04 |
| DERNBACH, DENNIS A. | |
| 01/20/04 PRISONER DATA SHEET TO ISSUE | 00/00/00 |
| DERNBACH, DENNIS A. | |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS     Page 006

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 01CR2356801

CHARLES     SPICER

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
01/20/04 CONTINUANCE BY AGREEMENT                01/29/04
         DERNBACH, DENNIS A.
01/29/04 DEFENDANT IN CUSTODY                    00/00/00
         DERNBACH, DENNIS A.
01/29/04 PRISONER DATA SHEET TO ISSUE            00/00/00
         DERNBACH, DENNIS A.
01/29/04 CONTINUANCE BY AGREEMENT                02/19/04
         DERNBACH, DENNIS A.
02/19/04 DEFENDANT IN CUSTODY                    00/00/00
         DERNBACH, DENNIS A.
02/19/04 PRISONER DATA SHEET TO ISSUE            00/00/00
         DERNBACH, DENNIS A.
02/19/04 CONTINUANCE BY AGREEMENT                03/16/04
         DERNBACH, DENNIS A.
03/16/04 DEFENDANT IN CUSTODY                    00/00/00
         DERNBACH, DENNIS A.
03/16/04 PRISONER DATA SHEET TO ISSUE            00/00/00
         DERNBACH, DENNIS A.
03/16/04 CONTINUANCE BY AGREEMENT                03/30/04
         DERNBACH, DENNIS A.
03/30/04 CONTINUANCE BY AGREEMENT                04/28/04
         DERNBACH, DENNIS A.
04/28/04 DEFENDANT IN CUSTODY                    00/00/00
         DERNBACH, DENNIS A.
04/28/04 PRISONER DATA SHEET TO ISSUE            00/00/00
         DERNBACH, DENNIS A.
04/28/04 MOTION TO SUPPRESS                      00/00/00 S        2
         MOTION TO SUPPRESS LINE UP SUST.   MOTION TO SUPRESS STSATEMENTS DENIED
         DERNBACH, DENNIS A.
04/28/04 CONTINUANCE BY AGREEMENT                06/02/04
         DERNBACH, DENNIS A.
06/02/04 DEFENDANT IN CUSTODY                    00/00/00
         DERNBACH, DENNIS A.
06/02/04 PRISONER DATA SHEET TO ISSUE            00/00/00
         DERNBACH, DENNIS A.
06/02/04 CONTINUANCE BY AGREEMENT                06/21/04
         DERNBACH, DENNIS A.



IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 007

PEOPLE OF THE STATE OF ILLINOIS

VS                    NUMBER 01CR2356801

CHARLES        SPICER

## CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
```
06/21/04 DEFENDANT IN CUSTODY                    00/00/00
         DERNBACH, DENNIS A.
06/21/04 PRISONER DATA SHEET TO ISSUE            00/00/00
         DERNBACH, DENNIS A.
06/21/04 CONTINUANCE BY AGREEMENT                07/28/04
         DERNBACH, DENNIS A.
07/28/04 DEFENDANT IN CUSTODY                    00/00/00
         DERNBACH, DENNIS A.
07/28/04 PRISONER DATA SHEET TO ISSUE            00/00/00
         DERNBACH, DENNIS A.
07/28/04 CONTINUANCE BY AGREEMENT                08/23/04
         DERNBACH, DENNIS A.
08/23/04 DEFENDANT IN CUSTODY                    00/00/00
         DERNBACH, DENNIS A.
08/23/04 PRISONER DATA SHEET TO ISSUE            00/00/00
         DERNBACH, DENNIS A.
08/23/04 CONTINUANCE BY AGREEMENT                09/22/04
         DERNBACH, DENNIS A.
09/22/04 DEFENDANT IN CUSTODY                    00/00/00
         DERNBACH, DENNIS A.
09/22/04 PRISONER DATA SHEET TO ISSUE            00/00/00
         DERNBACH, DENNIS A.
09/22/04 CONTINUANCE BY AGREEMENT                10/20/04
         DERNBACH, DENNIS A.
10/20/04 DEFENDANT IN CUSTODY                    00/00/00
         DERNBACH, DENNIS A.
10/20/04 PRISONER DATA SHEET TO ISSUE            00/00/00
         DERNBACH, DENNIS A.
10/20/04 CONTINUANCE BY AGREEMENT                10/29/04
         DERNBACH, DENNIS A.
10/29/04 DEFENDANT IN CUSTODY                    00/00/00
         DERNBACH, DENNIS A.
10/29/04 PRISONER DATA SHEET TO ISSUE            00/00/00
         DERNBACH, DENNIS A.
10/29/04 CONTINUANCE BY AGREEMENT                12/06/04
         DERNBACH, DENNIS A.
12/06/04 DEFENDANT IN CUSTODY                    00/00/00
         DERNBACH, DENNIS A.
```

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS    Page 008

PEOPLE OF THE STATE OF ILLINOIS

VS                    NUMBER 01CR2356801

CHARLES    SPICER

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| | | |
|---|---|---|
| 12/06/04 PRISONER DATA SHEET TO ISSUE | 00/00/00 | |
| DERNBACH, DENNIS A. | | |
| 12/06/04 CONTINUANCE BY AGREEMENT | 12/20/04 | |
| DERNBACH, DENNIS A. | | |
| 12/20/04 DEFENDANT IN CUSTODY | 00/00/00 | |
| DERNBACH, DENNIS A. | | |
| 12/20/04 PRISONER DATA SHEET TO ISSUE | 00/00/00 | |
| DERNBACH, DENNIS A. | | |
| 12/20/04 CONTINUANCE BY AGREEMENT | 01/20/05 | |
| DERNBACH, DENNIS A. | | |
| 01/14/05 SPECIAL ORDER | 00/00/00 | |
| MOTION TO DISMISS CHARGE | | |
| 01/14/05 HEARING DATE ASSIGNED | 01/20/05 1709 | |
| 01/20/05 DEFENDANT IN CUSTODY | 00/00/00 | |
| DERNBACH, DENNIS A. | | |
| 01/20/05 PRISONER DATA SHEET TO ISSUE | 00/00/00 | |
| DERNBACH, DENNIS A. | | |
| 01/20/05 CONTINUANCE BY AGREEMENT | 02/24/05 | |
| DERNBACH, DENNIS A. | | |
| 02/24/05 DEFENDANT IN CUSTODY | 00/00/00 | |
| DERNBACH, DENNIS A. | | |
| 02/24/05 PRISONER DATA SHEET TO ISSUE | 00/00/00 | |
| DERNBACH, DENNIS A. | | |
| 02/24/05 CONTINUANCE BY AGREEMENT | 03/11/05 | |
| DERNBACH, DENNIS A. | | |
| 03/11/05 DEFENDANT IN CUSTODY | 00/00/00 | |
| DERNBACH, DENNIS A. | | |
| 03/11/05 PRISONER DATA SHEET TO ISSUE | 00/00/00 | |
| DERNBACH, DENNIS A. | | |
| 03/11/05 CONTINUANCE BY AGREEMENT | 03/29/05 | |
| DERNBACH, DENNIS A. | | |
| 03/29/05 DEFENDANT IN CUSTODY | 00/00/00 | |
| DERNBACH, DENNIS A. | | |
| 03/29/05 PRISONER DATA SHEET TO ISSUE | 00/00/00 | |
| DERNBACH, DENNIS A. | | |
| 03/29/05 CONTINUANCE BY AGREEMENT | 04/14/05 | |
| DERNBACH, DENNIS A. | | |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS    Page 009

PEOPLE OF THE STATE OF ILLINOIS

VS    NUMBER 01CR2356801

CHARLES    SPICER

## CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| | | |
|---|---|---|
| 04/14/05 DEFENDANT IN CUSTODY | | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 04/14/05 PRISONER DATA SHEET TO ISSUE | | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 04/14/05 CONTINUANCE BY AGREEMENT | | 06/15/05 |
| DERNBACH, DENNIS A. | | |
| 06/15/05 DEFENDANT IN CUSTODY | | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 06/15/05 PRISONER DATA SHEET TO ISSUE | | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 06/15/05 CONTINUANCE BY AGREEMENT | | 07/11/05 |
| DERNBACH, DENNIS A. | | |
| 07/11/05 DEFENDANT IN CUSTODY | | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 07/11/05 PRISONER DATA SHEET TO ISSUE | | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 07/11/05 CONTINUANCE BY AGREEMENT | | 07/25/05 |
| DERNBACH, DENNIS A. | | |
| 07/25/05 DEFENDANT IN CUSTODY | | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 07/25/05 PRISONER DATA SHEET TO ISSUE | | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 07/25/05 NOLLE PROSEQUI | C001 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 07/25/05 NOLLE PROSEQUI | C002 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 07/25/05 NOLLE PROSEQUI | C003 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 07/25/05 PLEA OF NOT GUILTY | C004 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 07/25/05 NOLLE PROSEQUI | C005 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 07/25/05 NOLLE PROSEQUI | C006 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 07/25/05 PLEA OF NOT GUILTY | C007 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 07/25/05 PLEA OF NOT GUILTY | C008 | 00/00/00 |
| DERNBACH, DENNIS A. | | |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS     Page 010

PEOPLE OF THE STATE OF ILLINOIS

VS                           NUMBER 01CR2356801

CHARLES     SPICER

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| Date | Action | | |
|------|--------|------|----------|
| 07/25/05 | PLEA OF NOT GUILTY | C009 | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/25/05 | NOLLE PROSEQUI | C010 | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/25/05 | NOLLE PROSEQUI | C011 | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/25/05 | NOLLE PROSEQUI | C012 | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/25/05 | NOLLE PROSEQUI | C013 | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/25/05 | PLEA OF NOT GUILTY | C014 | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/25/05 | NOLLE PROSEQUI | C015 | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/25/05 | PLEA OF NOT GUILTY | C016 | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/25/05 | NOLLE PROSEQUI | C007 | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/25/05 | TRIAL COMENCED AND CONTINUED | | 07/26/05 |
| | DERNBACH, DENNIS A. | | |
| 07/25/05 | NOLLE PROSEQUI | C017 | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/26/05 | DEFENDANT IN CUSTODY | | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/26/05 | PRISONER DATA SHEET TO ISSUE | | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/26/05 | WITNESSES ORDERED TO APPEAR | | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/26/05 | CONTINUANCE BY ORDER OF COURT | | 07/27/05 |
| | DERNBACH, DENNIS A. | | |
| 07/27/05 | DEFENDANT IN CUSTODY | | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/27/05 | PRISONER DATA SHEET TO ISSUE | | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/27/05 | WITNESSES ORDERED TO APPEAR | | 00/00/00 |
| | DERNBACH, DENNIS A. | | |
| 07/27/05 | CONTINUANCE BY ORDER OF COURT | | 07/28/05 |
| | DERNBACH, DENNIS A. | | |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS     Page 011

PEOPLE OF THE STATE OF ILLINOIS

VS        NUMBER 01CR2356801

CHARLES     SPICER

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| Date | Event | Code | Date |
|---|---|---|---|
| 07/28/05 | DEFENDANT IN CUSTODY<br>DERNBACH, DENNIS A. | | 00/00/00 |
| 07/28/05 | PRISONER DATA SHEET TO ISSUE<br>DERNBACH, DENNIS A. | | 00/00/00 |
| 07/28/05 | TRIAL COMENCED AND CONTINUED<br>DERNBACH, DENNIS A. | | 07/29/05 |
| 07/29/05 | DEFENDANT IN CUSTODY<br>SURIA JR., FRED G. | | 00/00/00 |
| 07/29/05 | PRISONER DATA SHEET TO ISSUE<br>SURIA JR., FRED G. | | 00/00/00 |
| 07/29/05 | VERDICT OF GUILTY<br>SURIA JR., FRED G. | C004 | 00/00/00 |
| 07/29/05 | VERDICT OF GUILTY<br>SURIA JR., FRED G. | C007 | 00/00/00 |
| 07/29/05 | VERDICT OF GUILTY<br>SURIA JR., FRED G. | C008 | 00/00/00 |
| 07/29/05 | VERDICT OF GUILTY<br>SURIA JR., FRED G. | C009 | 00/00/00 |
| 07/29/05 | VERDICT OF NOT GUILTY<br>SURIA JR., FRED G. | C014 | 00/00/00 |
| 07/29/05 | VERDICT OF GUILTY<br>SURIA JR., FRED G. | C016 | 00/00/00 |
| 07/29/05 | BAIL REVOKED<br>SURIA JR., FRED G. | | 00/00/00 |
| 07/29/05 | CONTINUANCE BY AGREEMENT<br>SURIA JR., FRED G. | | 08/25/05 |
| 08/25/05 | DEFENDANT IN CUSTODY<br>DERNBACH, DENNIS A. | | 00/00/00 |
| 08/25/05 | PRISONER DATA SHEET TO ISSUE<br>DERNBACH, DENNIS A. | | 00/00/00 |
| 08/25/05 | CONTINUANCE BY AGREEMENT<br>DERNBACH, DENNIS A. | | 09/06/05 |
| 09/06/05 | MOTION DEFENDANT - NEW TRIAL<br>DERNBACH, DENNIS A. | | 00/00/00 D    2 |
| 09/06/05 | NOLLE PROSEQUI<br>DERNBACH, DENNIS A. | C001 | 00/00/00 |
| 09/06/05 | NOLLE PROSEQUI<br>DERNBACH, DENNIS A. | C002 | 00/00/00 |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS    Page 012

PEOPLE OF THE STATE OF ILLINOIS

VS                    NUMBER 01CR2356801

CHARLES    SPICER

## CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| | | |
|---|---|---|
| 09/06/05 NOLLE PROSEQUI | C003 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 FINDING OF NOT GUILTY | C004 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 NOLLE PROSEQUI | C005 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 NOLLE PROSEQUI | C006 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 FINDING OF GUILTY | C007 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 FINDING OF NOT GUILTY | C008 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 FINDING OF GUILTY | C009 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 NOLLE PROSEQUI | C010 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 NOLLE PROSEQUI | C011 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 NOLLE PROSEQUI | C012 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 NOLLE PROSEQUI | C012 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 NOLLE PROSEQUI | C013 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 FINDING OF NOT GUILTY | C014 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 NOLLE PROSEQUI | C015 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 FINDING OF GUILTY | C016 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 NOLLE PROSEQUI | C017 | 00/00/00 |
| DERNBACH, DENNIS A. | | |
| 09/06/05 DEF SENTENCED ILLINOIS DOC | C007 | 00/00/00 |
|     30 YRS | | |
| DERNBACH, DENNIS A. | | |
| 09/06/05 SPECIAL ORDER | | 00/00/00 |
|     COUNT 9 MERGE INTO COUNT 7 | | |
| DERNBACH, DENNIS A. | | |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 013

PEOPLE OF THE STATE OF ILLINOIS

                         VS                    NUMBER 01CR2356801

CHARLES        SPICER

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

   I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
09/06/05 DEF SENTENCED ILLINOIS DOC          C016 00/00/00
                5 YRS
          DERNBACH, DENNIS A.
09/06/05 SENTENCE TO RUN CONSECUTIVE              00/00/00
          COUNTS56801 988
          DERNBACH, DENNIS A.
09/06/05 CREDIT DEFENDANT FOR TIME SERV           00/00/00
                1 MTH 459 DYS
          DERNBACH, DENNIS A.
09/06/05 FINES COSTS FEES PER DRFT ORD            00/00/00          $    499
          DERNBACH, DENNIS A.
09/06/05 CREDIT FOR TIME SERVED                   00/00/00          $    499
          DERNBACH, DENNIS A.
09/06/05 DEF ADVISED OF RIGHT TO APPEAL           00/00/00
          DERNBACH, DENNIS A.
09/06/05 WARRANT QUASHED                          00/00/00
          DERNBACH, DENNIS A.
09/06/05 CHANGE PRIORITY STATUS          M        00/00/00
          DERNBACH, DENNIS A.
09/06/05 RECALL/EXEC SENT TO POLICE AGY           00/00/00
09/15/05 MOTION TO REDUCE SENTENCE                00/00/00 F     2
09/15/05 HEARING DATE ASSIGNED                    09/27/05 1709
09/27/05 DEFENDANT NOT IN COURT                   00/00/00
          DERNBACH, DENNIS A.
09/27/05 MOTION DEFENDANT - NEW TRIAL             00/00/00 D
          DERNBACH, DENNIS A.
09/27/05 NOTICE OF APPEAL FILED, TRNSFR           00/00/00
          DERNBACH, DENNIS A.
09/27/05 NOTICE OF APPEAL FILED, TRNSFR           00/00/00
10/04/05 NOTICE OF NOTICE OF APP MAILED           00/00/00
10/04/05 HEARING DATE ASSIGNED                    10/07/05 1713
10/07/05 ILL STATE APPELLATE DEF APPTD            00/00/00
          BIEBEL, PAUL JR.
10/07/05 O/C FREE REPT OF PROCD ORD N/C           00/00/00
          BIEBEL, PAUL JR.
10/07/05 MEMO OF ORDS & NOA PICKED-UP             00/00/00
          BIEBEL, PAUL JR.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 014

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 01CR2356801

CHARLES    SPICER

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

   I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
10/21/05 APPELLATE COURT NUMBER ASGND              00/00/00 05-3358
11/17/05 COMMON LAW RECORD PREPARED
         ONE VOL
11/22/05 CLR RECD BY APP COUNSEL                   00/00/00
         STATE APPELLATE DEFENDER - ONE VOLUME
04/19/06 REPT OF PRCDS ORD FR CRT RPT              00/00/00
09/21/06 SUPP TRAN PRO REC/FILE CLK OFF            00/00/00
         TWO VOLUMES
09/26/06 REPORT OF PROCEEDINGS PREPARED            00/00/00
         TWO VOLUMES
09/29/06 REPRT/PROCDS RECD BY APP ATTRY            00/00/00
         STATE APPELLATE DEFENDER - TWO VOLUMES
10/12/06 SUPPL REPORT OF PRCD PREPARED             00/00/00
         (1)VOL
10/13/06 TRANS PROC REC/FILED CLKS OFF
         TWO VOLUMES
10/10/06 SUPP TRAN PRO REC/FILE CLK OFF            00/00/00
         ONE VOLUME
10/17/06 SUPPL REC RECD BY APPL COUNSEL            00/00/00
         STATE APPELLATE DEFENDER - ONE VOLUME
10/17/06 SUPP TRAN PRO REC/FILE CLK OFF            00/00/00
         ONE VOLUME
11/01/06 SUPPL REPORT OF PRCD PREPARED             00/00/00
         ONE VOLUME
11/01/06 SUPPL REPORT OF PRCD PREPARED             00/00/00
         ONE VOLUME
11/01/06 SUPPL REPORT OF PRCD PREPARED             00/00/00
         ONE VOLUME
11/01/06 SUPPL REPORT OF PRCD PREPARED             00/00/00
         (1)VOL
11/08/06 SUPPL REC RECD BY APPL COUNSEL            00/00/00
         STATE APPELLATE DEFENDER - ONE VOLUME
01/05/07 SUPPLEMENTAL CLR PREPARED                 00/00/00 05-3358
         EXHIBITS - ONE VOLUME
01/09/07 SUPPL REC RECD BY APPL COUNSEL            00/00/00
         STATE APPELLATE DEFENDER - ONE VOLUME
04/06/07 SUPPLEMENTAL CLR PREPARED                 00/00/00 05-3358
         ONE VOLUME CERTAIN DOCS.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 015

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 01CR2356801

    CHARLES      SPICER

            CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
04/12/07 SUPPL REC RECD BY APPL COUNSEL        00/00/00 05-3358
    STATE APPELLATE DEFENDER - ONE VOLUME
04/14/08 MANDATE FILED                         04/23/08 1701
    05-3358
04/23/08 REVIEW COURT AFFIRMANCE               00/00/00
    BIEBEL, PAUL JR.



I hereby certify that the foregoing has
been entered of record on the above
captioned case.
Date 07/31/08

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT OF COOK COUNTY

No. 1-05-3358

## IN THE

## APPELLATE COURT OF ILLINOIS

## FIRST DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 01 CR 23568. |
| | ) | |
| **CHARLES SPICER,** | ) | Honorable |
| | ) | Dennis A. Dernbach, |
| Defendant-Appellant. | ) | Judge Presiding. |

---

### BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT

---

MICHAEL J. PELLETIER
Deputy Defender

LISA SOUTHERLAND
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

**ORAL ARGUMENT REQUESTED**



RECEIVED
CRIMINAL APPEALS

JAN 3 1 2007

309 RICHARD J. DALEY CENTER
RICHARD A. DEVINE

EXHIBIT B

POINTS AND AUTHORITIES                     · Page

I.    The State failed to prove forgery by delivery beyond a reasonable doubt
      where the indictment alleged that Charles Spicer attempted to defraud
      another by presenting a check that was purportedly made by Juanita
      Cartman, but the State's evidence established that the check was made by
      Juanita Cartman, not that it was made or altered by another person
      purporting to be made by Cartman ................................. 18

      *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068 (1970) .................... 18

      U.S. Const. amends. V, XIV ........................................ 18

      Ill. Const. art. I, § 2 ............................................. 18

      *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979) ................. 18

      *People v. Hockaday*, 93 Ill. 2d 279, 443 N.E.2d 566 (1982) ............... 19

      720 ILCS 5/17-3(a)(2)(West 2000) .................................. 19

      *People v. Smith*, 259 Ill. App. 3d 492, 631 N.E.2d 738 (4th Dist. 1994) ..... 19

      *People v. Lindquist*, 97 Ill. App. 3d 894, 424 N.E.2d 66 (3rd Dist. 1981)  . 20, 22

II.   Charles Spicer was denied a fair trial because the jury was subjected to
      improper closing arguments concerning the law of forgery ............ 20

      720 ILCS 5/17-3(a)(2)(West 2000) .................................. 21

      *People v. Hockaday*, 93 Ill. 2d 279, 443 N.E.2d 566 (1982) ........... 21, 22

      *People v. Krueger*, 175 Ill. 2d 60, 675 N.E.2d 473 (1996) ............... 21

      *People v. Lyles*, 106 Ill. 2d 373, 478 N.E.2d 291 (1985) ................. 21

      *People v. Black*, 317 Ill. 603, 148 N.E. 281 (1925) ..................... 21

      *People v. Sutton*, 316 Ill. App. 3d 874 (1st Dist. 2000) .................. 21

      720 ILCS 5/17-3 (West 2000) ...................................... 22

      *People v. Lawler*, 194 Ill. App. 3d 547, 551 N.E.2d 799 (5th Dist. 1990) .... 22

**III.** The trial court violated Charles Spicer's right of confrontation when it admitted a doctor's testimony that the complaining witness told him she was "tied and raped," where the complaining witness did not testify, the circumstances surrounding the hearsay statement show that it was made for prosecutorial rather than treatment purposes and was therefore testimonial, and Mr. Spicer never had an opportunity to cross-examine the complainant ...................................................... 23

*Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004) .... 23, 26, 28

U.S. Const., Amend VI .............................................. 23

*People v. Leeper*, 317 Ill. App. 3d 475, 740 N.E.2d 32 (5th Dist. 2000) ..... 23

*People v. Gant*, 58 Ill. 2d 178, 317 N.E.2d 564 (1974) ................ 24, 25

*People v. Oehrke*, 2006 Ill. App. LEXIS 1108 (1st Dist., December 5, 2006) . 24

*People v. Davis*, 337 Ill. App. 3d 977, 787 N.E.2d 212 (1st Dist. 2003) .. 25, 26

*In re E.H.*, 2006 Ill. LEXIS 1666 (December 21, 2006) .................. 26

*Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597 (1980) ................... 27

*People v. West*, 355 Ill. App. 3d  28, 823 N.E.2d 82 (1st Dist. 2005) ..... 27, 28

*People v. Purcell*, 364 Ill. App. 3d 283, 846 N.E.2d 203 (2d Dist. 2006) ..... 28

*Horton v. Allen*, 370 F.3d 75 (1st Cir. 2004) ........................... 28

*People v. Thompson*, 349 Ill.App.3d 587, 812 N.E.2d 516 (1st Dist. 2004)  29, 30

*People v. Morey*, 308 Ill. App. 3d 722, 721 N.E.2d 200 (2d Dist. 1999) ..... 31

*People v. Lee*, 303 Ill. App. 3d 356, 708 N.E.2d 457 (1st Dist. 1999) ....... 31

**IV.** Charles Spicer was denied a fair sentencing hearing on the aggravated criminal sexual assault conviction where the trial court relied on unreliable hearsay evidence of the facts of a previous conviction, as well as the complainant's age, a factor inherent in the offense, as aggravation, and failed to consider the factors presented in mitigation, when sentencing Mr. Spicer to the maximum sentence, 30 years .......................... 32

*People v. Krueger*, 175 Ill. 2d 60, 675 N.E.2d 604 (1996) ............... 32

*People v. Burnette*, 325 Ill. App. 3d 792, 758 N.E.2d 391 (1st Dist. 2001) ... 32

*People v. Morgan*, 306 Ill. App. 3d 616, 713 N.E.2d 1203 (1st Dist. 1999) . . 32

*People v. Herron*, 215 Ill. 2d 167, 830 N.E.2d 467 (2005) . . . . . . . . . . . . . . . . 33

*People v. Pierce*, 223 Ill. App. 3d 423, 585 N.E.2d 255 (2nd Dist. 1992) . . . . 33

*People v. La Pointe*, 88 Ill. 2d 482, 431 N.E.2d 344 (1981) . . . . . . . . . . . . . . . 34

*People v. Crews*, 38 Ill. 2d 331, 231 N.E.2d 451 (1967) . . . . . . . . . . . . . . . . . . 34

*People v. Hall*, 194 Ill. 2d 305, 743 N.E.2d 521 (2000) . . . . . . . . . . . . . . . . . . 34

*People v. Brisbon*, 106 Ill. 2d 342, 478 N.E.2d 402 (1985) . . . . . . . . . . . . . . . 34

*People v. Garrett*, 216 Ill. App. 3d 348, 576 N.E.2d 331 (1st Dist. 1991) . . . . 34

*Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004) . . . . . . . . . . . . 34

*People v. Stoutenborough*, 64 Ill. App. 3d 489, 381 N.E.2d 415 (4th Dist. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*People v. Wallace*, 145 Ill. App. 3d 247, 495 N.E. 2d 665 (2d Dist. 1986) . . . 35

*People v. Conover*, 84 Ill. 2d 400, 419 N.E.2d 906 (1981) . . . . . . . . . . . . . . . . 36

*People v. White*, 14 Ill. 2d 61, 499 N.E.2d 467 (1986) . . . . . . . . . . . . . . . . 36, 38

720 ILCS 5/12-14(a)(5) (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

720 ILCS 5/12-13(b)(1)(West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

720 ILCS 5/12-14(d)(1)(West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*People v. Ferguson*, 132 Ill. 2d 86, 547 N.E.2d 429 (1989) . . . . . . . . . . . . . . . 36

*People v. Gilliam*, 172 Ill. 2d 484, 670 N.E.2d 606 (1996) . . . . . . . . . . . . . . . . 37

*People v. Holloman*, 304 Ill. App. 3d 177, 709 N.E.2d 969 (1st Dist. 1999) . . 38

Ill. Const. 1970, art. I, sec. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*People v. Steffens*, 131 Ill. App. 3d 141, 475 N.E.2d 606 (1st Dist.1985) . . . . 38

*People v. Markiewicz*, 246 Ill. App. 3d 31, 615 N.E.2d 869 (2nd Dist. 1993) . 39

V.      The mittimus should be corrected to reflect that Charles Spicer was
        convicted of only one count of aggravated criminal sexual assault, and that
        the conviction is for aggravated criminal sexual assault based on the victim's
        age, not based on residential burglary, where the jury found Mr. Spicer not
        guilty of residential burglary ................................... 39


        *People v. Matthews*, 205 Ill. App. 3d 371, 562 N.E.2d 1113 (1st Dist.
        1990) .................................................... 40

        *People v. DeWeese*, 298 Ill. App. 3d 4, 698 N.E.2d 554 (1st Dist. 1998) ..... 40

        *People v. Saunders*, 288 Ill. App. 3d 523, 680 N.E.2d 790 (4th Dist. 1997) .. 40

## NATURE OF THE CASE

Charles Spicer was convicted of aggravated criminal sexual assault and forgery after a jury trial and was sentenced to consecutive terms of 30 years and 5 years in prison.

This is a direct appeal from the judgment of the court below. No issue is raised challenging the charging instrument.

## ISSUES PRESENTED FOR REVIEW

1.    Whether the State failed to prove forgery by delivery beyond a reasonable doubt where the indictment alleged that Charles Spicer attempted to defraud another by presenting a check that was purportedly made by Juanita Cartman, but the State's evidence established that the check was made by Juanita Cartman, not that it was made or altered by another person purporting to be made by Cartman.

2.    Whether Charles Spicer was denied a fair trial because the jury was subjected to improper closing arguments concerning the law of forgery.

3.    Whether the trial court violated Charles Spicer's right of confrontation when it admitted a doctor's testimony that the complaining witness told him she was "tied and raped," where the complaining witness did not testify, the circumstances surrounding the hearsay statement show that it was given for prosecutorial rather than treatment purposes and was therefore testimonial, and Mr. Spicer had no opportunity to cross-examine the complainant.

4.    Whether Charles Spicer was denied a fair sentencing hearing on the aggravated criminal sexual assault conviction where the trial court relied on unreliable hearsay evidence of the facts of a previous conviction, as well as the complainant's age, a factor inherent in the offense, as aggravation, and failed to consider the factors presented in mitigation, when sentencing Mr. Spicer to the maximum sentence, 30 years.

5.    Whether the mittimus should be corrected to reflect that Charles Spicer was convicted of only one count of aggravated criminal sexual assault, and that the conviction is for aggravated criminal sexual assault based on the victim's age, not based on residential burglary, where the jury acquitted Mr. Spicer of residential burglary.

## JURISDICTION

Charles Spicer appeals from a final judgment of conviction in a criminal case.
He was sentenced on September 6, 2005. (C. 119) Notice of appeal was timely filed on
September 27, 2005. (C. 159) Jurisdiction therefore lies in this Court pursuant to
Article VI, Section 6, of the Illinois Constitution, and Supreme Court Rules 603 and 606.

## STATUTES AND RULES INVOLVED

**720 ILCS 5/17-3(a)(2) (West 2000)  Forgery**

(a) A person commits forgery when, with intent to defraud, he knowingly:

> (1) makes or alters any document apparently capable of defrauding another in
> such manner that it purports to have been made by another or at another time, or
> with different provisions, or by authority of one who did not give such authority;
>
> (2) issues or delivers such document knowing it to have been thus made or
> altered

**U.S. Const., Amend. VI**

In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with
the witnesses against him.

**720 ILCS 5/12-14(a)(5) (West 2000)  Aggravated Criminal Sexual Assault**

a) The accused commits aggravated criminal sexual assault if he or she commits criminal
sexual assault and any of the following aggravating circumstances existed

> (5) the victim was 60 years of age or over when the offense was committed

## STATEMENT OF FACTS

Charles Spicer was indicted on charges of armed robbery, aggravated criminal sexual assault, home invasion, residential burglary, and forgery resulting from an incident on August 8, 2001. (C. 44-61) After a jury trial before the Honorable Dennis Dernbach, Mr. Spicer was found guilty of aggravated criminal sexual assault and forgery, and not guilty of residential burglary. (R. BBB10-11)

### Motion to Suppress Statement

The court heard a defense motion to suppress Mr. Spicer's statement given to the police the day after his arrest. (R. FF20) Mr. Spicer argued that his will was overcome because he was in pain from cuts on his hand and arm sustained before his arrest, and that he was experiencing withdrawal from the heroin and whiskey he had used that morning. (C. 84-86; R. FF20) He was kept in an interview room at Area 2 during the approximately 30 hours he was at the station. (R. FF27, FF98) He was never given medical attention, was only given food just prior to signing the statement, and was only allowed to use the bathroom after at least 11 hours had passed. (R. FF49, FF52) Detective Raymond Doherty and Assistant State's Attorney James Lynch testified that Mr. Spicer was treated well, and signed the portions of his statement stating that he was treated well and was giving his statement voluntarily. (R. FF73, FF105, FF108) The motion was denied. (R. FF126)

### Motion in Limine

Defense counsel filed a motion in limine to exclude any testimony which sought to explain the absence of the complaining witness, and any testimony regarding the out-of-court statements of the complaining witness to either the responding police officer or the emergency room doctor. (C. 90-93) The parties eventually stipulated that a doctor currently treating the complainant in Georgia would testify that the complainant was not

available to testify because of a serious medical condition having nothing to do with the charges against Mr. Spicer. (R. XX27)

As to the complainant's out-of-court statements, defense counsel argued that it was a violation of Mr. Spicer's right to confrontation under *Crawford v. Washington* to allow the responding officer to testify to what the complainant told her upon her arrival at the scene, and the same applied to what the complainant told the emergency room doctor the police took her to the night of August 8. (R. XX3-25) After argument on the issue, the court ruled,

> Well, it seems to be a close case given the *Crawford* decision, but I'm going to allow the State to put in what she told as to the incident under the excited utterance. It does not necessarily have to be a one second or two second outburst. It could be something that's more lengthy; so I will allow that in and the doctor's statement, treating physicians.

(R. XX24)

After prompting from the State, the court ruled that Dr. Lahti's testimony about what time the complainant came to the hospital, her statement to him that she was raped, and the nature of his examination, could come in under the common law exception for statements made to treating physicians. (R. XX24-25)

**Trial**

Chicago Police Officer Sheila Jackson testified that on August 8, 2001, she responded to a call of an elderly robbery victim in the 7300 block of S. Calumet Avenue. (R. YY32) When she arrived, the complaining witness, Juanita Cartman, let her in. (R. YY33) Officer Jackson saw a chair in the dining room that had duct tape on the arm rest and the front legs. (R. YY34) Jackson also observed redness around Ms. Cartman's wrists. (R. YY34) Ms. Cartman gave the officer a description of the

-6-

offender, which Jackson sent out over her radio. (R. YY34)

Dr. Miguel Stubbs testified that he had been treating the complainant at a nursing home in Georgia since 2002. (R. YY40)  When she was admitted, she was either 75 or 76 years old. (R. YY41)  The complainant was suffering from deteriorating, moderate to severe dementia, a prior stroke, and high blood pressure. (R. YY42)  She had no ability to recall past events, had some delusions, and was not oriented to place, time, or date. (R. YY42)  These conditions had nothing to do with the allegations in this case. (R. YY42)  Dr. Stubbs further testified that when he first saw the complainant in 2002, she was in mild to moderate dementia, and that the onset of such a condition takes "a number of years." (R. YY43-44)



Dr. Jennifer McCritchie testified as a forensic expert with the Illinois State Police. (R. YY106)  She tested evidence in this case which produced the following results. The vaginal, oral, and rectal swabs from the complainant did not contain any semen. (R. YY122)  A semen stain was found on the complainant's nightgown. (R. YY127)  The stain was divided into three fractions: sperm fraction, non-sperm fraction, and mixed fraction, genetic profiles were established for each fraction, and the profiles were compared to the standards of the complainant and Mr. Spicer established by testing at another lab, Cellmark. (R.YY133)  There was not enough DNA on the sperm fraction for an analysis. (R. YY139)  On the non-sperm fraction, there was a match to Mr. Spicer's DNA on seven of the thirteen genetic markers, but only three of the seven were complete enough for statistical analysis. (R. YY136)  At those three areas, the profile would occur in one in 190,000 blacks, one in 410,000 whites, or one in 1,000,000 Hispanics. (R. YY136)  On the mixed fraction, there was a match to Mr. Spicer's DNA on two of the thirteen markers, but only one was complete enough for statistical analysis. (R. YY140)  On this marker, this profile would occur in one in eight

black people, one in ten whites, or one in twelve Hispanics. (R. YY140) Besides the complainant's DNA, no other DNA was found on any of the materials from the scene, or in the complainant's vaginal, rectal, or oral swabs. (R. YY140-141)

Dr. Jeffrey Lahti testified that he was working in the emergency room at Christ Hospital on August 8, 2001. (R. 6ZZ) On that night, the complainant was brought in by the police about 10:00 p.m. (R. 7ZZ) She was brought in "for an evaluation for sexual assault." (R. 7ZZ) He examined her around 3:00 - 3:30 a.m.. (R. 14ZZ) Over a defense objection, Dr. Lahti testified to the following:

Q: When you interviewed [the complainant], what did she say had been done to her?

A: She said she was tied and raped. (R. 8ZZ)

The complainant did not state any more specifics about what happened to her. (R. 8ZZ) He performed a sexual assault pelvic examination, taking swabs of the vaginal and rectal areas "to check for evidence." (R. 10ZZ) Samples of head hair, pubic hair, and oral swabs were also taken, and he explained to the complainant that all five samples were taken "to look for evidence of another person's body material." (R.11ZZ) He did not find any evidence of trauma during the pelvic examination. (R. 17ZZ) His exam was inconclusive as to whether the complainant was raped, since the only evidence he had was her complaint. (R.29ZZ) Dr. Lahti noted redness on her wrists and redness and swelling of her left ankle, and identified photographs of the conditions of the wrists and left ankle. (R. 18-22ZZ) These photographs of the complainant were taken by a Chicago Police Department evidence technician at Area 2. (R. 73ZZ)

Detective Raymond Doherty testified that he first went to the complainant's apartment in response to a robbery assignment on August 8, 2001, around noon. (R. 85ZZ) He met with the complainant and responding Officer Jackson. (R. 85ZZ) He

-8-

then heard a call over the radio and went to a Bank One at 67th and Stony Island. (R. 87ZZ) When he arrived, he saw Mr. Spicer in the back seat of a squad car. (R.87ZZ) He recovered a check from the bank teller and put it in an evidence bag. (R.89ZZ) He then went back to the complainant's house and brought her to Area 2. (R. 91ZZ) Mr. Spicer was also transported to Area 2. (R. 91ZZ)

About 1:00 p.m., Det. Doherty interviewed the complainant at Area 2. (R.92ZZ) Then he interviewed Mr. Spicer around 1:30-2:00 p.m. (R.92ZZ) He read Mr. Spicer his Miranda rights from a preprinted form. (R. 93ZZ) Mr. Spicer first told Det. Doherty that he had received a call from a friend named John Thomas, who asked to meet him at 71st and Cottage Grove or Stony Island, around 9:00 or 10:00 that morning. (R. 94ZZ) Mr. Spicer said he went to that location and received a check from Mr. Thomas, who asked him to go cash the check. (R. 94ZZ) When he got to the bank, a security guard tried to detain him, but he ran, and the police eventually caught him. (R. 94ZZ) Det. Doherty got a "vague description" of John Thomas, and an address in the 71st or 73rd block of St. Lawrence. (R. 94ZZ) He attempted to locate and identify John Thomas, but was unsuccessful. (R. 95ZZ) His search consisted of looking for John Thomas in the police computers on one occasion. (R. 114ZZ, 122-123ZZ) He then interviewed the complainant again. (R. 95ZZ)

Det. Doherty interviewed Mr. Spicer again, and it was now about 5:30 p.m. (R. 95ZZ) Mr. Spicer gave him a slightly different story in response to Doherty's claim that he did not believe the previous story, including that he had gone to the complainant's apartment that morning with John Thomas. (R.96ZZ) Mr. Spicer told Doherty that the complainant owed him some money, and he had a short conversation with her. (R. 97ZZ) He then had her sign a check and duct-taped her to a chair, and he and John Thomas left. (R. 97ZZ)

-9-

It was now around 6:00 p.m. on August 8, and Det. Doherty interviewed the complainant again. (R. 97ZZ)  He learned that he needed to get her to a hospital for a physical evaluation. (R. 97ZZ)  Until this moment, the complainant had refused medical attention. (R.97-98ZZ)  Det. Doherty first called an evidence technician to take a buccal swab from Mr. Spicer, then took the complainant to Christ Hospital. (R.98ZZ)  He stayed the entire time that the complainant was at the hospital, until she was released sometime after 3:00 a.m. (R.98-99ZZ)  He then drove the complainant home.  (R. 99ZZ)  He called for an evidence technician to meet them at the complainant's apartment to collect the bedding, and the technician did meet them there. (R.99ZZ)  Doherty then went home. (R. 99ZZ)

Detective Doherty arrived at Area 2 the next day around 9:00 a.m. and first spoke to Mr. Spicer about 1:00 that day. (R. 100ZZ)  He told Mr. Spicer that he had more information about the case, and no longer believed what Mr. Spicer had told him up to now. (R. 101ZZ)  Mr. Spicer then told him that he was in the apartment with the complainant and had a pen in his hand when he was telling her to write the check. (R. 101ZZ)  Mr. Spicer said that he then told the complainant that if she did not sign the check, he would "shove the pen in her ass." (R. 101ZZ)  Later that day, Mr. Spicer gave Det. Doherty the statement that was eventually written by Assistant State's Attorney Jim Lynch. (R. 103-105ZZ)

Det. Doherty did not know when or if Mr. Spicer had been given anything to eat or drink, or allowed to use the bathroom, during his 29 hours in the police station. (R.117ZZ, 118ZZ, 120ZZ)  Det. Doherty said that Mr. Spicer had blood on his shirt, but he did not offer him any medical attention. (R. 111ZZ)

Assistant State's Attorney (ASA) James Lynch testified that he went to Area 2 on August 9, 2001, around 1:15 p.m. (R. 129-130ZZ)  He interrogated Mr. Spicer twice

-10-

that afternoon. (R. 157ZZ) He stated that in the first interview, Mr. Spicer "denied the essentials of any sexual crimes," but the other aspects of the first confession were consistent with the statement that was written later that day. (R. 164ZZ) He took an oral statement from Mr. Spicer around 4:30 p.m. that day. (R.136ZZ) He then handwrote the statement while sitting beside Mr. Spicer in the interview room. (R. 140ZZ) The statement was signed by himself, Detective Doherty, and Mr. Spicer. (R.141ZZ) Mr. Lynch read the statement to the jury.

In the statement, Mr. Spicer stated that he had done work, such as cleaning a basement, for a woman named Juanita at 7300 S. Calumet on several occasions in the summer of 2001. (R. 150ZZ) On August 8, 2001, he went to her house because she owed him some money. (R. 150ZZ) After entering her apartment, he put his hand on her shoulder and moved her towards her kitchen. (R. 151ZZ) When she walked into the bedroom, he followed her, demanding his money. (R. 151ZZ) She refused to give him any money. (R. 151ZZ) Mr. Spicer then went into the kitchen where his friend John Thomas was. (R. 151ZZ) He got a roll of duct tape from Thomas and went back into the bedroom, where he taped Juanita's ankles together as she sat on the bed. (R. 151ZZ) Juanita then told him the money was in the beer stein in the cabinet. (R. 152ZZ) He and John Thomas got $90 from the beer stein, and $35 more from her purse. (R. 152ZZ) Mr. Spicer took $60 of the money. (R. 152ZZ) John Thomas took the rest and left. (R. 152ZZ)

Mr. Spicer stated that he then went back to the bedroom and told Juanita he wanted more money. (R. 152ZZ) When she denied having more money, he told her he had seen a bank statement, he knew she had $10,000 in the bank, and she should write him a check. (R. 152ZZ) She refused, and in frustration he picked up her taped feet and placed them on the bed with her knees up. (R. 153ZZ) He took a pen and "faked it

-11-

towards the butt saying he was going to shove it up her ass." (R. 153ZZ) He then took

out his penis and put it on her thigh. (R. 153ZZ ) He put the index finger of his left

hand in her vagina. (R. 153ZZ) Juanita then said she would write the check. (R.

153ZZ) He cut the tape from her ankles and she wrote the check. (R. 154ZZ) He told

her to make it out for $7,000, leave the payee line blank, and write "remodeling" on the

memo line. (R. 154ZZ)

Mr. Spicer stated that he then took Juanita into the dining room and taped her

hands and ankles to the arms and legs of a chair. (R. 154ZZ) He gave her some water,

put a fan on her, and left with the check. (R. 154ZZ) He walked around trying to find

someone to cash the check for him but was unsuccessful. (R. 154ZZ) He went to a

Bank One on Stony Island. (R. 154ZZ) He put his name on the check as payee and

handed the check to a teller. (R. 154ZZ) The teller did not cash it and another bank

employee told a security guard to hold Mr. Spicer. (R.154-155ZZ) He broke loose

from security and ran and cut his arm and hand on a fence, which caused a blood stain

on his shirt. (R. 155ZZ) Mr. Spicer's statement ended with provisions that he was

giving the statement freely and voluntarily and had been treated well by the police.

(R.155ZZ)

Ms. Pier Thomaston, a teller at Bank One on 67th and Stony Island on August 8,

2001, testified that shortly before noon that day, a customer she identified as Mr. Spicer

presented a check drawn on the account of Juanita Cartman, an account holder at the

bank. (R. YY68-71) She first verified that the account had sufficient funds to pay the

check, and it did. (R. YY71) The payee's name on the check was filled in, but it was

printed where everything else on the check was in cursive, including the signature. (R.

YY86) The account signature on her signature verification computer screen was also in

cursive. (R. YY86) She asked the customer to endorse the check, which he did,

-12-

providing a state identification card which matched his name. (R. YY74, YY87) Because she saw an alert on the signature verification screen on her computer, she contacted her supervisor. (R. YY72, 75) As she and her supervisor went back to the window where the customer was, the security guard approached the window. (R. YY77) The customer then pushed the security guard out of the way and ran out the front door, with the security guard giving chase. (R. YY78) The teller saw the customer go over a fence at a construction site across the street, then lost sight of them. (R. YY78) About ten minutes later, she identified a person in the back of a police squad car as the customer who gave her the check. (R. YY80) She identified the check in court. (R. YY81) Terrence McCullough, the security guard at the bank that day, testified consistently with the teller's testimony. (R. YY92-101) He identified Mr. Spicer as the man at the teller's window that day, whom he chased before the police arrived. (R. YY98-99) He also identified Mr. Spicer in the back of the police car. (R. YY101)

Chicago Police Officer Harlan Hansbrough testified that he responded to a radio call on August 8, 2001, shortly after noon. (R. 32ZZ) He went to 1523 E. 68th Street, a multi-unit apartment building, looking for a suspect who had fled a bank. (R. 33-34ZZ) He knocked on a first floor apartment, and a female let him in. (R. 35ZZ) He went through the apartment and outside to the back porch, where he found someone underneath the porch. (R. 36ZZ) He identified Mr. Spicer as that person. (R. 37ZZ)

John Onstwedder testified as an expert in fingerprint analysis, employed by the Illinois State Police Forensic Science Center. (R. YY164-168) He received a check, identified as the one that had been presented at Bank One on August 8, 2001. (R. YY179) Along with the check, he received instructions from the State's Attorney's Office to compare any prints on the check with a fingerprint standard for Mr. Spicer.

-13-

(R. YY180, YY194) He found two prints on the check: one of them matched Mr. Spicer's right thumb, the other was not good enough for an analysis. (R. YY184) He did not compare the fingerprint to any standards other than Mr. Spicer's. (R. YY194) He also received some duct tape that had been wadded up, but he was unable to get any fingerprints from it. (R. YY189)

The State then rested. (R. 167ZZ) The defense moved for a directed verdict, arguing that since neither the DNA nor the medical examination were conclusive, and the complainant had not testified, the State had not met its burden. (R. 167-168ZZ) The court granted the motion as to Counts 4 and 8, the aggravated criminal sexual assault counts alleging penis penetration. (R. 170-171ZZ) The motion was denied as to all other counts. (R. 169ZZ) The defense did not put on any evidence (R.172ZZ).

In closing argument, the State read the issues instruction for the forgery count, quoting the first proposition as "That the defendant knowingly issued or delivered a check which he knew to be made or altered so it appeared to have been made by another." (R.AAA14) The State then argued,

> "Juanita Cartman did write out everything on the check except the name on the payee. The payee line was written out by him. But even with respect to the other information she did fill out in her own hand, I don't know how under these circumstances . . . you can view what she did to have been done willingly. What she did to have been done other than at his direction under his coercion. * * * Did she want to [write these things on the check]? Did she mean to or did she feel like she had to? * * * It's her writing, but make no mistake about it, he's the one that made that check. He just used her hands to do it." (R. AAA14-15)

Again in its rebuttal argument, the State said, "[Defense wants you to believe] [s]he wasn't forced to write out that check. * * * C'mon, ladies and gentlemen, you don't

-14-

believe that for one minute." (R. AAA55)

The jury was instructed on four counts: aggravated criminal sexual assault based on either that it was committed during residential burglary, or that the victim was at least 60 years old (R. AAA69); residential burglary (R.AAA71); and forgery (R.AAA72). The jury was given only a general verdict form for aggravated criminal sexual assault. (R. AAA74; C.151)

The jury began deliberating sometime on July 28 and deliberated for eight hours. (R. BBB3) At some point during those eight hours, they sent out a note indicating they had reached a verdict on two of the three charges but not on the remaining one.[1] (R. BBB3) At approximately 12:30 p.m. on the second day, after three hours of deliberations, Judge Dernbach proposed bringing the jury into the courtroom to find out if there had been any movement on the remaining third count, and the parties agreed. (R. BBB3) The judge stated he would hang the jury if they indicated they were still deadlocked on the third count and no movement towards verdict had been made. (R.BBB3) The jury foreperson indicated that they had still not reached a verdict on the third count, but that the count was 11-1. (R. BBB4-5) The foreperson indicated that "some movement" was being made, and the jury continued to deliberate without further instruction. (R. BBB5)

At 1:40 p.m. that day, a little more than an hour after the jury indicated there was some movement on the third count, they sent another note. (R.BBB6) This note stated, "We believe that we will not be able to resolve this issue to get a unanimous verdict. We have stopped deliberations." (C. 149, R. BBB6) At 2:00, the parties were present and the judge proposed giving the jury the Prim instruction and letting them

---

[1]This note is not in the record.

-15-

continue to deliberate. (R. BBB6)  Defense counsel objected, arguing that allowing

deliberations to continue would put unwarranted pressure on the holdout juror since

they had been deliberating for over 11 hours, the jury said they were deadlocked on the

third count since 6:00 p.m. the night before, and their latest note indicated that progress

was no longer possible. (R. BBB6-7)  The State responded that the Prim instruction

was warranted because "last night's note had them deadlocked at six to six," they had

indicated "at noon" that they were making progress because the count had moved to 11-

1 and they were still talking. (R. BBB7)  The judge agreed with the State, read the jury

the Prim instruction, and the jury continued deliberating. (R.BBB7-8)  At an

unspecified time later that day, the jury returned verdicts of guilty of aggravated

criminal sexual assault, guilty of forgery, and not guilty of residential burglary.

(R.BBB11; C.150-52)  On September 6, 2005, the court heard a motion for a new trial,

and denied it. (R.DDD4)

**Sentencing**

At sentencing, the trial court merged Count 9, aggravated criminal sexual

assault based on the victim's age, with Count 7, aggravated criminal sexual assault

based on residential burglary. (R. DDD5)  In aggravation, the State pointed to Mr.

Spicer's 1993 guilty plea to aggravated battery and armed robbery. (R. DDD7)  The

Assistant State's Attorney then read from a "detective's supplementary report"

regarding that conviction. (R. DDD7)  The report stated that the complainant in the

1993 conviction was an 88-year-old woman, and alleged Mr. Spicer's "talking his way

into her apartment, asking for money, taking her into her bedroom.  When she refused

to give him money, slapping and hitting this victim who sustained injuries in that case,

a small cut to the right side of the face, a bruise to the left chest area and a minor bruise

to the neck area." (R. DDD7-8)  Defense counsel objected to this evidence, stating that

-16-

there was no trial transcript since it was a plea, and no transcript of the 402 conference, so the evidence was not reliable. (R. DDD9) The court never ruled on the objection.

The State further argued that "[t]he main aggravation in this case is the facts of the case," and repeated that the complainant was 75 years old. (R. DDD7-8) The State then concluded with "[Mr. Spicer] has a propensity to brutalize, beat and rob elderly victims." (R. DDD9) In mitigation, defense pointed out that Mr. Spicer had a professional work history as recent as three months before this offense, and was honorably discharged from the United States Army. (R. DDD10) The court then ruled as follows:

> [The defendant] had a prior conviction back in '93 with another elderly woman.
>
> * * *
>
> Society requires, old saying society is based on how one takes care of their children and the elderly. In this case, conduct was appalling. Appalling in the other case. Another elderly woman. Agg. battery.
>
> * * *
>
> This is two offenses for violence against women who are senior citizens. And real senior citizens. We are not talking about somebody coming home from working out at the health club who happens to be 61 or 65. That would make him a senior citizen. Those women were well beyond that age. I think that society requires based on facts of the case and background . . . I sentence you to 30 years Illinois Department of Corrections. (R. DDD12-13)

The court also sentenced Mr. Spicer to five years on the forgery charge. (R.DDD13) A motion to reconsider sentence[2] was heard and denied. (R. EEE3) This appeal followed.

---

[2]The motion itself is not in the record.

-17-

## ARGUMENT

I.    **The State failed to prove forgery by delivery beyond a reasonable doubt where the indictment alleged that Charles Spicer attempted to defraud another by presenting a check that was purportedly made by Juanita Cartman, but the State's evidence established that the check was made by Juanita Cartman, not that it was made or altered by another person purporting to be made by Cartman.**

The State charged Charles Spicer with forgery by delivery, alleging in the indictment that the check was "apparently capable of defrauding another in such a manner that it purported to have been made by Juanita Cartman, knowing that it was not made by Juanita Cartman." (C. 60)  However, the State's evidence proved the opposite, that the check was in fact made by Juanita Cartman.  Therefore, the State did not prove forgery by delivery beyond a reasonable doubt, and Mr. Spicer's conviction must be reversed. *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068 (1970).

Due process requires that the State prove every element of a charged offense beyond a reasonable doubt in order to sustain a conviction. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970); U.S. CONST. AMENDS. V, XIV; ILL. CONST. ART. I, § 2. In evaluating a defendant's challenge to the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found all of the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979).  In this case, the evidence, viewed in the light most favorable to the State, shows that the State failed to prove forgery because it did not prove that the check was not made by Juanita Cartman.

To prove forgery by delivery, the State must prove five elements:  1) a document apparently capable of defrauding another; 2) a making or altering of such document by one person in such manner *that it purports to have been made by another,*

-18-

3) knowledge by defendant that it has been thus made or altered, 4) knowing delivery of the document, and 5) intent to defraud. *People v. Hockaday*, 93 Ill. 2d 279, 282, 443 N.E. 2d 566 (1982) (emphasis added); 720 ILCS 5/17-3(a)(2) (West 2000). When the document's apparent ability to defraud is not clear from its face, the charging instrument must set forth the State's explanation as to why the document is apparently capable of defrauding. *People v. Smith*, 259 Ill. App. 3d 492, 496, 631 N.E.2d 738 (4th Dist. 1994). Here, the indictment stated the check was, "apparently capable of defrauding another in such a manner that it purported to have been made by Juanita Cartman, knowing that it was not made by Juanita Cartman." (C. 60) However, because the evidence established that the check was made by Juanita Cartman, the State did not prove an element of the offense, and thus did not prove forgery beyond a reasonable doubt.

The only evidence about the writing of the check was contained in Mr. Spicer's inculpatory statement. He said that he told Juanita Cartman to write the check, told her to make it out for $7000, to put "remodeling" in the memo line, and to leave the payee line blank, all of which she did. (R. 153ZZ-154ZZ) There was no evidence in Mr. Spicer's statement that Juanita Cartman did not write the check, as alleged in the indictment. The bank teller testified that the check was drawn on the account of Juanita Cartman, an account holder at the bank. (R. YY70, 72) The check was properly filled out, including a signature in cursive, like the signature on the computer signature screen, a date, an amount in both numbers and words, and a payee. (R. YY73-74) She did not testify that she suspected the check was not made by the account holder, as alleged in the indictment, at any time before she saw the alert on her computer. Thus, the evidence proves the opposite of what the State alleges, that the check was in fact made by Juanita Cartman, and this Court must reverse the conviction because the State

-19-

did not meet its burden.

This case is similar to *People v. Lindquist*, 97 Ill. App. 3d 894, 424 N.E. 2d 66 (3rd Dist. 1981). In that case, the defendant was the executor of an estate who was convicted of forgery for improperly drawing a check on the estate funds for his own purposes. *Id.* at 895. In reversing his conviction, the Appellate Court stated,

> Suffice it to say that the defendant was executor of the estate. He had
> authority to draw checks on the estate account. The People argue that the
> defendant committed forgery because he did not have authority to
> withdraw funds for his own purposes. Of course he lacked authority to
> withdraw funds for his own purposes. It was wrong for him to do so.
> However, it was not assault and battery, rape, or indecent liberties.
> Neither was it forgery. *Id.* at 895.

The same can be said for Mr. Spicer's case. Assuming arguendo that Juanita Cartman did not write the check voluntarily, what occurred here might have been robbery, theft, or some other offense, but it was not forgery under the statute as alleged in the indictment. Accordingly, this Court should reverse Mr. Spicer's conviction and sentence for forgery by delivery.

## II.    Charles Spicer was denied a fair trial because the jury was subjected to improper closing arguments concerning the law of forgery.

During closing argument, the prosecutor presented the issues instruction on the forgery charge, and read the first proposition, that Mr. Spicer knowingly delivered a check which he knew to be made or altered so it appeared to have been made by another. (R. AAA14) The prosecutor argued that they had proved this proposition because the evidence showed that while the complainant did write out the check, she had only done it under coercion, and that while "it's her writing, he's the one that made

-20-

that check. He just used her hands to do it." (R. AAA14-15)  Also, in rebuttal, the State argued that the defense wanted the jury to believe that the complainant had not been forced to write the check, and that such a belief was unreasonable. (R. AAA55) These remarks misstated the law because neither coercion nor duress are elements of forgery. 720 ILCS 5/17-3(a)(2) (West 2000); *People v. Hockaday*, 93 Ill. 2d 279, 282, 443 N.E. 2d 566 (1982). Because, as shown in Argument I above, the jury convicted on forgery where the evidence did not support the conviction, the State's misstatement of the law contributed to the jury's verdict, and denied Mr. Spicer a fair trial. Accordingly, his conviction for forgery must be reversed.

On appeal, *de novo* review is appropriate since the content of the State's remarks in closing argument are not in dispute but the propriety of those remarks and their prejudicial effect on Mr. Spicer involves the application of law to the established facts. *See People v. Krueger*, 175 Ill. 2d 60, 64, 675 N.E.2d 473 (1996) (*de novo* review applies where the issue involves the application of law to facts). Defense counsel preserved this issue when he included improper statements in closing argument in his motion for a new trial. (C. 118)

A prosecutor cannot secure a conviction through unfair or improper methods. *People v. Lyles*, 106 Ill.2d 373, 411-412, 478 N.E.2d 291 (1985); *People v. Black*, 317 Ill. 603, 616, 148 N.E. 281 (1925). While prosecutors are afforded wide latitude in making closing arguments, they are prohibited from misstatements of the governing law. *See People v. Sutton*, 316 Ill. App. 3d 874, 895 (1st Dist. 2000). Here, the State's closing remarks did misstate the law on forgery and thereby constituted reversible error.

The prosecutor misstated the law when he argued that the State had proved the first element of forgery by showing that the complainant had written the check, but only under coercion from Mr. Spicer. The prosecutor told the jury,

-21-

"Juanita Cartman did write out everything on the check except the name on the payee. The payee line was written out by him. But even with respect to the other information she did fill out in her own hand, I don't know how under these circumstances . . . you can view what she did to have been done willingly. What she did to have been done other than at his direction under his coercion. * * * Did she want to [write these things on the check]? Did she mean to or did she feel like she had to? * * * It's her writing, but make no mistake about it, he's the one that made that check. He just used her hands to do it." (R. AAA14-15)

Additionally, in rebuttal, the prosecutor said, "[Defense wants you to believe] [s]he wasn't forced to write out that check. * * * C'mon, ladies and gentlemen, you don't believe that for one minute." (R. AAA55)

The prosecutors' remarks essentially stated that the law in Illinois is that if one person causes another person to write a check under coercion or duress, the first person is guilty of forgery. The forgery statute does not include an element of coercion or duress. 720 ILCS 5/17-3; *see also Hockaday*, 93 Ill. 2d 279, 282. Forcing someone to write a check against his will may be another crime, such as theft or robbery, but it is not forgery. See *People v. Lindquist*, 97 Ill. App. 3d 894, 424 N.E. 2d 66 (3rd Dist. 1981) (holding that it was wrong, but it was not forgery, for an executor of an estate to write checks on the estate's account for his own purposes). Hence, the prosecutor's statement was a misstatement of law, and is grounds for reversal. *People v. Lawler*, 194 Ill. App.3d 547, 559, 551 N.E.2d 799, 808 (5th Dist. 1990).

The prosecutor's misstatement of the law contributed to the jury's verdict on forgery, and thus cannot be considered harmless error. While the jury must have concluded that the State's evidence proved that the complainant wrote the check under duress, again, duress is not an element of forgery. Since the only charge the jury had

-22-

regarding the check was the charge of forgery, they returned a conviction despite the

lack of evidence to support such a conviction. *See* Argument I. If the jury had been

correctly instructed on the law, that the State had to prove that the check was "not made

by [the complainant]" as alleged in the indictment, they would not have been able to

return a verdict of guilty. Hence, Mr. Spicer was denied a fair trial, his conviction for

forgery must be reversed.

**III.    The trial court violated Charles Spicer's right of confrontation when it admitted a doctor's testimony that the complaining witness told him she was "tied and raped," where the complaining witness did not testify, the circumstances surrounding the hearsay statement show that it was made for prosecutorial rather than treatment purposes and was therefore testimonial, and Mr. Spicer never had an opportunity to cross-examine the complainant.**

Charles Spicer was convicted of aggravated criminal sexual assault where the

complainant did not testify, and, over a defense objection, a doctor testified that the

complainant told him she was "tied and raped." (R. 8ZZ) The admission of what the

complainant allegedly said to the doctor violated Mr. Spicer's Sixth Amendment right

to confront the witnesses against him, because the circumstances showed that the

hearsay statement was testimonial under *Crawford v. Washington*, because it was made

for prosecutorial rather than treatment purposes, and Mr. Spicer never had an

opportunity to cross-examine the complainant. 541 U.S. 36, 158 L. Ed. 2d 177 (2004);

U.S. CONST., AMEND VI. The cause must be reversed and remanded for a new trial

because the erroneous admission of this testimony was not harmless beyond a

reasonable doubt.

The determination of whether a defendant's constitutional right has been

violated is subject to *de novo* review. *People v. Leeper*, 317 Ill. App. 3d 475, 740

N.E.2d 32 (5th Dist. 2000). This issue does not involve disputed facts or a credibility

determination. Therefore, *de novo* review of this issue, whether Mr. Spicer's constitutional right of confrontation was violated, is appropriate.

In this case, the doctor's testimony as to what the complainant told him was the subject of a motion *in limine*, along with what she told the initial responding police officer. (C. 90, R. XX3-25) Defense counsel argued that allowing hearsay statements from a complaining witness when the witness would not be testifying violated Mr. Spicer's confrontation rights under *Crawford*. After argument on the issue, the trial court ruled, stating:

> Well, it seems to be a close case given the *Crawford* decision, but I'm going to allow the State to put in what she told as to the incident under the excited utterance. It does not necessarily have to be a one second or two second outburst. It could be something that's more lengthy; so I will allow that in and the doctor's statement, treating physicians. (R. XX24)

After prompting from the State, the court ruled that Dr. Lahti's testimony about what time the complainant came to the hospital, her statement to him that she was raped, and the nature of his examination, could come in under the exception for statements made to treating physicians. (R. XX24-25) There were no limiting instructions given to the jury about the complainant's hearsay statement, so it can only be assumed it was admitted for its truth.

Illinois recognizes the common law exception to hearsay for statements made by a patient to medical personnel for the purpose of medical diagnosis and treatment. *People v. Gant*, 58 Ill. 2d 178, 186, 317 N.E.2d 564 (1974); *People v. Oehrke*, 2006 Ill. App. LEXIS 1108, *10 (1st Dist., December 5, 2006). The rationale behind the exception is that the statements are reliable because the patient believes the effectiveness of his treatment depends on the accuracy of what he tells the doctor.

-24-

*Gant*, 58 Ill. 2d at 186. A trial court is vested with discretion in determining whether the statements made by the victim were "'reasonably pertinent to the victim's diagnosis or treatment.'" *People v. Davis*, 337 Ill. App. 3d 977, 989-90, 787 N.E.2d 212 (1st Dist. 2003).

Here, the trial court erred in admitting the complaining witness' statement to Dr. Lahti under the common law hearsay exception because she did not go to him for treatment, but was taken to the doctor by the police for evidence collection purposes. The complainant only reported the alleged sexual assault at least seven hours after the incident, to a detective after repeated questioning at the police station, and shortly after she identified Mr. Spicer in a lineup. (R. FF73, FF76) Over the seven-hour period, the detective was going back and forth between questioning the complainant about the incident, and interrogating Mr. Spicer. (R. 92-98ZZ) The hearsay statement admitted at trial was then made to an emergency room doctor after the detective took the complainant to the emergency room and presented her "for an evaluation for sexual assault." (R.8ZZ) The police detective stayed with her while she waited at least five hours to be seen by the doctor. (R.98ZZ) Her clothes were taken from her at the hospital and given to an evidence technician. (R. 59ZZ) The detective was still at the hospital when the doctor finished, and the detective took the complainant home. (R. 99ZZ) When they arrived at her apartment, an evidence technician was there to remove more potential evidence. (R. 99ZZ)

There was no evidence that the complainant was experiencing any pain or other symptoms that required treatment. In fact, since she had refused medical attention several times earlier in the day (R. 97-98ZZ), it is reasonable to assume that she only went to the hospital at the urging of the police. Dr. Lahti testified that his "treatment" consisted of taking evidence for a rape kit, and that he explained each step in that

-25-

process to the complainant, telling her that the purpose was "to look for evidence of another person's body material in your hair or where the swabs are done." (R.11ZZ) While the doctor testified that the complainant had redness on her wrists and one ankle, he did not testify to any treatment for that condition. (R.18-19ZZ) In fact, the photographs of the wrists and ankle that the doctor identified at trial were actually taken by a police evidence technician. (R.73ZZ) The evidence shows that Dr. Lahti was serving a prosecutorial purpose of collecting evidence, not treating the complainant for any medical condition.

The trial court here should not have extended the scope of the hearsay exception to include the complaining witness' statement simply because it was made to a physician. The court was obligated to determine whether the statement was admissible under an exception to the hearsay rule (*In re E.H.*, 2006 Ill. LEXIS 1666, *9 (December 21, 2006)); here, whether the statement was "reasonably pertinent to the victim's diagnosis or treatment." *Davis*, 337 Ill. App. 3d at 989-90. The trial court did not inquire into the circumstances surrounding the statement during the hearing on the motion *in limine*, but the examination of the evidence above shows that the complaining witness' entire encounter with Dr. Lahti was not treatment-related at all, but rather the purpose was to collect evidence to be used against Mr. Spicer. Because the complainant was not seeking treatment, her statement is not inherently reliable and the common law hearsay exception was not intended to allow such evidence to be heard by the jury.

Because the trial court erred in allowing this evidence under the common law hearsay exception, and the complaining witness did not testify, the admission of the evidence violated Mr. Spicer's right to confrontation under *Crawford v. Washington*, 541 U.S. 36. Prior to *Crawford*, the U.S. Supreme Court applied the indicia-of-

-26-

reliability test for admitting out-of-court statements by unavailable witnesses, as
outlined in *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597 (1980). However, in
*Crawford,* the Supreme Court overruled *Roberts* and eliminated the indicia-of-
reliability standard for Confrontation Clause claims, holding that statements consisting
of *ex parte* testimony cannot be admitted upon a mere judge-made reliability finding.
*Crawford*, 541 U.S. at 62-63, 67-68. The *Crawford* Court reasoned that a judicial
finding that an out-of-court testimonial statement is reliable is insufficient to satisfy a
defendant's Sixth Amendment right to confrontation. *Id.* at 63-64. Rather, the critical
safeguard of the confrontation right is the opportunity to cross-examine the accuser. *Id.*
The Court concluded that hearsay statements that are testimonial may be admitted into
evidence against an accused only when (1) the declarant is unavailable to testify, and
(2) the defendant has had a prior opportunity to cross-examine the declarant. *Id.* at 68-
69. Here, the declarant did not testify at trial, and Mr. Spicer never had an opportunity
to cross-examine her. Therefore, the only question is whether her statement to the
doctor was testimonial. As explained above, the evidence shows that the statement was
testimonial, because it was made under circumstances where the declarant would expect
it to be used for prosecutorial purposes. *Id.* at 51-52.

Although the *Crawford* Court declined to exhaustively define what types of out-
of-court-statements are testimonial in nature, the court did give examples of common
types of statements which are ordinarily thought to be testimonial in nature: formal
statements by an accuser to government officers, custodial examinations, extrajudicial
statements, statements taken during police interrogations, and most notably here,
"statements that declarants would reasonably expect to be used prosecutorially.". *Id.* at
51-52. Illinois courts, as well as other courts, have recognized the several formulations
of "testimonial statements" identified by *Crawford*. *People v. West*, 355 Ill. App. 3d

-27-

28, 34-35, 823 N.E.2d 82 (1st Dist. 2005) (listing the same types of evidence); *see also People v. Purcell*, 364 Ill. App. 3d 283, 295, 846 N.E.2d 203 (2d Dist. 2006) (citing *Horton v. Allen*, 370 F.3d 75, 84 (1st Cir. 2004)) (listing the same types). Therefore, Illinois courts recognize that a statement made by a person who reasonably believes the statement will be used at trial is testimonial under *Crawford*. *West*, 355 Ill. App. 3d at 34-35; *Purcell*, 364 Ill. App. 3d at 295. Illinois courts have further held that the determination of whether a statement to a treating physician is testimonial and therefore implicates the confrontation clause must be made on a fact-specific, case-by-case basis. *West*, 355 Ill. App. 3d at 39-40; *Purcell*, 364 Ill. App. 3d at 296-7.

Here, as shown above, the complainant could reasonably expect her statement to the doctor that she was "tied and raped" would be used to prosecute Mr. Spicer, the man she had identified in a lineup shortly before she was taken to the hospital and presented to a doctor who only collected potential evidence from her. As such, the statement was testimonial because it was made in the process of building a case for prosecution.

The U.S. Supreme Court held in *Crawford* that prohibiting admission of statements that the declarant can reasonably expect to be used for prosecutorial purposes is at the heart of the confrontation clause, since involvement of police and other government officers in the production of testimony with an eye toward prosecution presents a unique potential for abuse. *Crawford*, 541 U.S. at 56, n7. This great potential for abuse can be cured only by demonstrating the declarant's unavailability, and that the defendant had a prior opportunity to cross-examine the declarant. *Id.* at 59. In this case, because the complainant was not cross-examined regarding her statement to the doctor that she was "tied and raped," made after the police presented her to the doctor and the doctor told her he was collecting evidence,

-28-

those criteria were not met and admission of the hearsay statement offended the Confrontation Clause.

Reversible error occurred here because the erroneous admission of the complainant's statement in violation of Mr. Spicer's right of confrontation unquestionably contributed to his conviction. *People v. Thompson*, 349 Ill. App. 3d 587, 594, 812 N.E.2d 516 (1st Dist. 2004). Whether a Confrontation Clause violation constitutes reversible error depends on: 1) whether the error contributed to the conviction; 2) whether the other evidence of guilt was overwhelming; and 3) whether the evidence is cumulative. *Id.* Here, the record shows that the erroneous admission of the hearsay statement was not harmless beyond a reasonable doubt on the aggravated criminal sexual assault count.

The admission of the hearsay statement contributed to the jury's verdict on aggravated criminal sexual assault because the State relied on the hearsay statement in its closing argument. First, the State argued that the hearsay statement was consistent with, and thereby corroborated, Mr. Spicer's statement about the sexual assault. (R. AAA11) The State further emphasized the hearsay nature of the statement when it told the jury that they were not going to get an instruction that said, "you get a pass if your victim becomes mentally infirmed between the time you commit your crime and go to trial for it." (R. AAA24) The State remarked on the statement again in rebuttal to the defense suggestion that perhaps the complainant lost a sum of money and then blamed Mr. Spicer: "'I'm pretty ticked off; so [I'm going to say] he stuck his finger in me. He raped me.'" Here, the State was conflating what was in Mr. Spicer's statement - finger penetration - with what was in the hearsay statement - "rape." Given the State's use of the hearsay statement, it cannot be concluded beyond a reasonable doubt that Dr. Lahti's hearsay testimony did not contribute to the jury's verdict on the sexual assault

charge. *Thompson*, 349 Ill. App. 3d at 594.

      In *Thompson*, the court held that the admission of hearsay statements in violation of *Crawford* was not harmless beyond a reasonable doubt, relying heavily on the fact that the hearsay statements were the only evidence, other then defendant's own inculpatory statements, presented by the State to identify the defendant as the offender. *Thompson*, 349 Ill. App. 3d at 594-595. Here, as in *Thompson*, the complainant's hearsay statement to the doctor was the only evidence, other than Mr. Spicer's own inculpatory statement to the police, that criminal sexual assault, or any kind of sexual conduct, occurred. Without the hearsay, the State's case for aggravated criminal sexual assault was extremely weak. The court granted a defense motion for directed verdict on two counts of aggravated criminal sexual assault by penis penetration because of a lack of evidence. The doctor testified that his examination of the complaining witness did not provide any evidence of sexual assault. (R. 17ZZ, 25ZZ) The DNA evidence was inconclusive at best, where there was no definitive match to Mr. Spicer's DNA, and no evidence about how old the tested semen stain may have been. There was no other physical evidence at the scene, and no witnesses other than the complainant, who did not testify. There was no identification testimony on the sexual assault charge. Defense counsel attacked the voluntariness of Mr. Spicer's inculpatory statement in her cross-examination of Detective Doherty and Assistant State's Attorney Lynch. In contrast, on the forgery charge, there was a fingerprint on the check and two witnesses from the bank who identified Mr. Spicer as the one who presented it. The evidence of criminal sexual assault can hardly be called overwhelming. Likewise, the complainant's statement to the doctor is not cumulative of other evidence since the only other evidence of any sexual conduct was Mr. Spicer's inculpatory statement.

      The jury deliberations indicate that the evidence was closely balanced, as the

jury informed the court three times that it was having difficulty reaching a decision. *See People v. Morey*, 308 Ill. App. 3d 722, 726, 721 N.E.2d 200 (2d Dist. 1999) (finding the evidence to be closely balanced where the jury reported that it was deadlocked during deliberations); *People v. Lee*, 303 Ill. App. 3d 356, 362, 708 N.E.2d 457 (1st Dist. 1999) (finding the evidence closely balanced based upon the jury's being deadlocked for several hours and on three occasions indicating that it could not reach a unanimous verdict). Here, the jury informed the court once on the first day and twice on the second day that it was deadlocked on one of the three counts. (R. BBB6-7) Thus, the evidence on one of the counts was not overwhelming to the jury.

The trial court's erroneous admission of the complainant's hearsay statement was reversible error because it cannot be concluded beyond a reasonable doubt that the hearsay statement did not contribute to the guilty verdict on the sexual assault count, the evidence beyond the hearsay statement was not overwhelming, and the hearsay statement was not cumulative of other evidence.

In sum, Mr. Spicer was convicted of aggravated criminal sexual assault where the complaining witness did not testify, but her out-of-court statement that she was raped was admitted for its truth. The court erred in admitting the testimony as a hearsay exception for a statement to a treating physician because her encounter with Dr. Lahti was solely for evidence collection purposes, not treatment, making it a testimonial statement. In the absence of cross-examination of the complainant, the admission of the hearsay statement violated Mr. Spicer's right of confrontation. The admission of the statement was reversible error because the State relied on the hearsay statement in its closing argument, the jury heard no other evidence of any sexual assault beyond Mr. Spicer's inculpatory statement to the police, and the jury did not find the evidence overwhelming. Accordingly, Mr. Spicer's conviction for aggravated criminal sexual

assault should be reversed and the cause remanded for a new trial.

**IV.    Charles Spicer was denied a fair sentencing hearing on the aggravated criminal sexual assault conviction where the trial court relied on unreliable hearsay evidence of the facts of a previous conviction, as well as the complainant's age, a factor inherent in the offense, as aggravation, and failed to consider the factors presented in mitigation, when sentencing Mr. Spicer to the maximum sentence, 30 years.**

Charles Spicer was denied a fair sentencing hearing on the aggravated criminal sexual assault conviction where the State read the alleged facts of a previous conviction from a police report, the State argued the complainant's age, a factor inherent in the offense, as aggravation, and the court failed to consider the factors presented in mitigation, including Mr. Spicer's lack of a lengthy criminal record. The trial court clearly relied on the unreliable hearsay evidence and the complainant's age when it stated, *inter alia,* that the conduct in that prior conviction was "[a]ppalling," and made reference to the complainant's age, and then handed down a maximum sentence for a Class X felony, 30 years. (R. DDD12-13)  In contrast, there is no indication in the record that the court considered the factors presented in mitigation. Because the court considered improper information in aggravation and did not consider mitigation evidence, the cause must remanded for re-sentencing.

Because this argument challenges the trial court's application of law, rather than any fact-finding or credibility determinations made by the court, this Court should adopt a *de novo* standard of review. *People v. Krueger*, 175 Ill. 2d 60, 64, 675 N.E.2d 604 (1996). *Cf. People v. Burnette*, 325 Ill. App.3d 792, 809, 758 N.E.2d 391 (1st Dist. 2001) (where this Court specifically eschewed the abuse of discretion standard as "flawed" and reviewed *de novo* the claim that the trial court considered improper matters at sentencing), *relying on People v. Morgan*, 306 Ill. App. 3d 616, 633, 713

N.E.2d 1203 (1st Dist. 1999).

Even though defense counsel did not object when the trial court considered factors inherent in the offense as aggravation, nor when the court failed to consider the mitigation factors, and the record does not reflect whether either issue was included in the motion to reconsider sentence, this Court can consider the issues under the plain error doctrine. The doctrine allows issues forfeited by procedural default to be addressed when (1) the evidence is closely balanced; or (2) the defendant was denied a substantial right and thus, his right to a fair trial. *People v. Herron*, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467 (2005). Errors in sentencing have been considered to affect a defendant's substantial right to liberty. *People v. Pierce*, 223 Ill. App. 3d 423, 433, 585 N.E.2d 255 (2nd Dist. 1992) (reviewing court may address a trial court's reliance on an improper factor in aggravation in sentencing because it affects the defendant's fundamental right to liberty and, thus, amounts to plain error).

Here, in aggravation, the prosecution asked the court to consider the facts of Mr. Spicer's 1993 guilty plea to attempt robbery and aggravated battery. (R. DDD-7) The alleged facts were read by the Assistant State's Attorney from a "detective's supplementary report of that case." (R. DDD7) The alleged facts were that the complainant in the 1993 conviction was an 88-year-old woman, and Mr. Spicer's allegedly "talking his way into her apartment, asking for money, taking her into her bedroom. When she refused to give him money, slapping and hitting this victim who sustained injuries in that case, a small cut to the right side of the face, a bruise to the left chest area and a minor bruise to the neck area." (R. DDD7-8) Defense counsel objected to this evidence, pointing out that there was no transcript of a trial or 402 conference, only the police report, so the evidence was not reliable. (R.DDD9-10) The trial court never ruled on the objection, implying that it would consider the unreliable

hearsay evidence, and, as will be shown below, the court did consider it in handing down the sentence.

A sentencing court has wide latitude to consider evidence relevant to the defendant's character, history and rehabilitative potential. *People v. La Pointe*, 88 Ill. 2d 482, 494-95, 431 N.E.2d 344 (1981). Nonetheless, the court must ensure that the evidence it considers is accurate. *Id.* at 494-95. The Supreme Court has frequently noted that matters in aggravation must be both relevant *and reliable*, and that the trial court "must exercise care to insure the accuracy of information considered and to shield itself from what might be the prejudicial effect of improper materials." *La Pointe*, 88 Ill. 2d at 494-495, *citing People v. Crews*, 38 Ill. 2d 331, 231 N.E.2d 451 (1967). While hearsay evidence may be admitted at sentencing, it must meet the same relevant-and-reliable test of all other evidence; reliability of hearsay evidence can assured by corroboration (*People v. Hall*, 194 Ill. 2d 305, 352, 743 N.E. 2d 521 (2000)), or when it is given under presumably trustworthy circumstances, such as a dying declaration. *People v. Brisbon*, 106 Ill. 2d 342, 365, 478 N.E. 2d 402 (1985).

Here, there was no corroboration, since the police report was the only source of the alleged details of the prior conviction. There was also no presumption of trustworthiness because police reports are "the product of secondhand knowledge as to the reporting officer," and are therefore rank hearsay. *People v. Garrett*, 216 Ill. App. 3d 348, 357, 576 N.E. 2d 331 (1st Dist. 1991). Moreover, because this evidence was not provided through live testimony, Mr. Spicer was denied the opportunity to test its trustworthiness under "the crucible of cross-examination." *Crawford v. Washington*, 541 U. S. 36, 61, 124 S. Ct. 1354 (2004). *See also People v. Stoutenborough*, 64 Ill. App. 3d 489, 493-494, 381 N.E.2d 415 (4th Dist. 1978) (holding that if information regarding the specifics of other crimes is to be received it "should be presented by the

firsthand testimony of the witnesses involved and that mere allegations of the offense, *hearsay accounts thereof* or *records of the arrest* of the defendant for the offenses are insufficient") (emphasis added). In sum, the evidence the court heard regarding the alleged details of Mr. Spicer's prior conviction was not reliable because it came solely from a dubious hearsay source.

This case is similar to *People v. Wallace*, where the sentencing court considered unreliable evidence that the defendant had committed a prior rape in another state. 145 Ill. App. 3d 247, 256, 495 N.E. 2d 665 (2d Dist. 1986). In that case, defendant was convicted of aggravated criminal sexual assault. *Id.* at 249. At sentencing, a police officer testified that he talked with authorities in the other state about an alleged prior rape, and told the court the specifics of what those authorities told him. *Id.* at 255. As here, no one with personal knowledge of the prior case testified. *Id.* The reviewing court vacated the sentence and remanded for a new sentencing hearing because of the unreliable hearsay information concerning the other alleged rape. *Id.* at 256. This Court should do the same here, as the evidence the court heard regarding the alleged details of Mr. Spicer's prior conviction was not reliable.

Not only did the court allow unreliable hearsay evidence in aggravation, it also considered a factor inherent in the offense, the complainant's age, as aggravation. The State began the aggravation portion of the sentencing hearing by stating, "[t]he main aggravation in this case is the facts of the case." (R. DDD7) The State specifically pointed to the complainant's age, 75 years old, and further stated that she was "a dignified lady, *at that time in her life*, coming across the likes of this defendant, coming into her home, her castle, her place where she should be safe *at that time and age in life* . . ." (R. DDD8; emphasis added) The fact of complainant's age was a factor inherent in the offense, since Mr. Spicer was convicted of aggravated criminal sexual assault

-35-

where the aggravating factor was that the complainant was over 60 years old. (C. 53)

A necessary element for a conviction cannot be considered as an aggravating factor at sentencing. *People v. Conover, 84 Ill. 2d 400; 419 N.E.2d 906 (1981)*. The rationale for this rule is that the legislature, in establishing the aggravated version of an offense and setting a more severe sentence for it, has already considered the factors that define the offense as the aggravated version. *Conover* at 404-405; *People v. White*, 114 Ill. 2d 61, 66, 499 N.E. 2d 467 (1986). Here, the legislature distinguished criminal sexual assault and its aggravated version by listing several factors, including that the victim was at least 60 years old (720 ILCS 5/12-14(a)(5) (West 2000). Plain criminal sexual assault is a Class 1 felony carrying a sentence of four to fifteen years (720 ILCS 5/12-13(b)(1)(West 2000)), while the aggravated version at issue here is a Class X felony with a sentence of six to thirty years. (720 ILCS 5/12-14(d)(1)(West 2000)). Thus, because the legislature established the victim's age as a necessary element of aggravated criminal sexual assault and increased the penalty, the trial court committed reversible error in considering this factor as aggravation in sentencing Mr. Spicer. *See People v. Ferguson*, 132 Ill. 2d 86, 547 N.E.2d 429 (1989) (holding that the age of the victim cannot be considered for the imposition of an additional penalty where the penalty for the underlying offense has already been enhanced based on the age of the victim).

What occurred here was reversible error because the record demonstrates that the court considered both the unreliable hearsay evidence about the alleged facts of the prior conviction, and the complainant's age, as aggravation. First, the fact that the court never ruled on the defense objection to the unreliable hearsay evidence about the prior conviction implies that it was considering the evidence. More plainly, the trial court's comments demonstrate that it was relying on both the hearsay details of the prior

conviction, and the complainant's age, in imposing sentence on Mr. Spicer:

> In this case, elderly woman approximately 75 years old. . . . [a]lso had a
> prior conviction back in '93 with another elderly woman.

* * *

> Society requires, old saying society is based on how one takes care of their
> children and the elderly. In this case, conduct was appalling. Appalling in
> the other case. Another elderly woman. Agg. battery.

* * *

> This is two offenses for violence against women who are senior citizens.
> And real senior citizens. We are not talking about somebody coming
> home from working out at the health club who happens to be 61 or 65.
> That would make him a senior citizen. Those women were well beyond
> that age. I think that society requires based on facts of the case and
> background . . . I sentence you to 30 years Illinois Department of
> Corrections. (R. DDD12-13)

Clearly, the court was relying on the improper evidence when it made specific reference
to the alleged facts of the previous conviction such as the age of the complainant in that
case and the comment that the conduct in the previous case was "appalling." The court
also specifically referred to the age of the complainant in the instant case, a factor
inherent in the offense.

Where the reviewing court is unable to determine the weight given to
improperly considered factors, the cause must be remanded for re-sentencing. *People v.*
*Gilliam*, 172 Ill. 2d 484, 521, 670 N.E.2d 606 (1996). Only where it can be determined
from the record that the weight placed on the improperly considered aggravating factors
was so insignificant that it did not lead to a greater sentence is remandment not

required. *People v. White,* 14 Ill. 2d 61, 66-67, 499 N.E. 2d 467 (1986). In *White,* the trial court improperly considered as an aggravating factor the fact that the victim was a child, where the defendant was convicted of aggravated battery of a child. *Id.* However, remandment was not required because the sentence was only one year above the statutory minimum, and the record showed that the trial court had considered other factors. *Id.* at 67.

In contrast, here, the trial court sentenced Mr. Spicer to the maximum, 30 years, for his second felony. The Pre-Sentence Investigation Report showed that his only prior convictions were for deceptive practices 22 years earlier, for which he received supervision, and aggravated battery and attempt robbery 12 years earlier, for which he received one year over the minimum, or three years. (C. 97, R. DDD10)  As found in *Wallace,* and in contrast to *White,* the trial court's imposition of a maximum sentence for a defendant without a lengthy record of violence suggests that the improper matters challenged herein were factored in the sentence imposed. *Wallace,* 145 Ill. App. 3d at 256; *White,* 14 Ill. 2d at 67. A sentencing court's reliance on erroneous and improper information requires that the sentence be vacated and the cause be remanded for a new sentencing hearing. *People v. Holloman,* 304 Ill. App. 3d 177, 185, 709 N.E. 2d 969 (1st Dist. 1999).

Further, because the trial judge based the maximum sentence on improper evidence and a factor inherent in the offense as aggravation, he failed to take into account the factors presented in mitigation. It is the trial judge's duty at a sentencing hearing to fulfill the constitutional mandate of fashioning a penalty that considers "the seriousness of the offense with the objective of restoring the offender to useful citizenship." ILL. CONST. 1970, ART. I, SEC. 11, *People v. Steffens,* 131 Ill. App. 3d 141, 151-152, 475 N.E.2d 606 (1st Dist.1985)  This is accomplished by considering the

specifics of the case, including the nature and circumstances of the offense and the history and character of the defendant. *Id.* Here, mitigation factors included that Mr. Spicer, despite the fact that he was 44 years old at the time of sentencing, had only one prior felony and in fact committed no crimes between 1993 and 2001 (C. 97), had an associate's degree and work history as recent as three months before this offense (C. 102), and was honorably discharged from the United States Army. (C. 102) There is no indication in the record that the trial judge considered any of these factors. He did not even indicate that he had read the Pre-Sentence Investigation Report beyond the page that listed the prior convictions. The judge did explicitly state that he based the maximum sentence for aggravated criminal sexual assault on the unreliable hearsay evidence of the prior conviction and improper aggravating factors, as argued above. (R. DDD12-13) When a trial judge does not take into account all factors presented in mitigation, the cause must be remanded for a new sentencing hearing. *People v. Markiewicz*, 246 Ill. App. 3d 31, 49-50, 615 N.E.2d 869 (2nd Dist. 1993).

In sum, the court here based its sentencing decision on unreliable hearsay evidence about the alleged facts of a prior conviction, considered a factor inherent in the instant offense as aggravation, and did not consider mitigating factors, in handing down a maximum sentence. Accordingly, Mr. Spicer's sentence for aggravated criminal sexual assault should be vacated and the cause remanded for re-sentencing.

**V.      The mittimus should be corrected to reflect that Charles Spicer was convicted of only one count of aggravated criminal sexual assault, and that the conviction is for aggravated criminal sexual assault based on the victim's age, not based on residential burglary, where the jury found Mr. Spicer not guilty of residential burglary.**

The mittimus is incorrect because it reflects that Mr. Spicer was convicted of two counts of aggravated criminal sexual assault and one count of forgery. (C.119)

-39-

However, the trial court entered judgment and sentence on one count of forgery, and only one count of aggravated criminal sexual assault. (R. DDD5-6,13) Further, the trial court erred in merging Count 9, aggravated criminal sexual assault predicated on the victim's age, into Count 7, aggravated criminal sexual assault predicated on its commission during a residential burglary (R. DDD5), where the jury acquitted Mr. Spicer of residential burglary. (R. BBB11) Therefore, this Court should exercise its authority to correct the mittimus to reflect that Mr. Spicer was convicted of one count of forgery, and one count of aggravated criminal sexual assault predicated on the victim's age. *See People v. Matthews*, 205 Ill. App. 3d 371, 418, 562 N.E.2d 1113 (1st Dist. 1990) (holding that the appellate court has the authority to make any order that ought to have been made by the trial court, including correction of the mittimus); *see also People v. DeWeese*, 298 Ill. App. 3d 4, 13, 698 N.E.2d 554 (1st Dist. 1998) (correcting the mittimus to reflect the appropriate offense of which the defendant was convicted).

As a purely legal issue, the accuracy of the mittimus is subject to *de novo* review. *See People v. Saunders*, 288 Ill. App. 3d 523, 525, 680 N.E.2d 790 (4th Dist. 1997).

Mr. Spicer's jury was instructed on four counts: aggravated criminal sexual assault based on two aggravating factors, that the assault was committed during a residential burglary, and that the victim was over 60 at the time; on residential burglary, and on forgery. (R. AAA69-70) However, the jury was only given a general verdict form on aggravated criminal sexual assault. (R. AAA74, C.151) The jury found Mr. Spicer guilty of aggravated criminal sexual assault and forgery, and not guilty of residential burglary. (R. BBB11, C. 150-52) At sentencing, the trial court merged Count 9, aggravated criminal sexual assault predicated on the victim's age, into Count 7, aggravated criminal sexual assault predicated on residential burglary. (R. DDD5)

-40-

The trial court erred in merging the counts this way, since the jury found Mr. Spicer not guilty of residential burglary.

Accordingly, this Court should correct the mittimus to reflect conviction for one count of forgery, and one count of aggravated criminal sexual assault based on the victim's age.

## CONCLUSION

For the foregoing reasons, Charles Spicer, Defendant-Appellant, respectfully requests that this Court, pursuant to Argument I, reverse his conviction for forgery; pursuant to Argument II, reverse his conviction for forgery and remand for a new trial; pursuant to Argument III, reverse his conviction for aggravated criminal sexual assault and remand for a new trial; pursuant to Argument IV, remand for resentencing on the aggravated criminal sexual assault conviction; pursuant to Argument V, correct the mittimus.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

LISA SOUTHERLAND
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

## CERTIFICATE OF COMPLIANCE

I, Lisa Southerland, certify that this brief conforms to the requirements of Supreme

Court Rule 341(a) and (b). The length of this brief, excluding the appendix is <u>46</u>

pages.


LISA SOUTHERLAND

Assistant Appellate Defender

## **APPENDIX TO THE BRIEF**

Index to the Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

Judgment Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-10

Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-11

## INDEX TO THE RECORD

**Common Law Record ("C")**                                          **Page**

Certified Statement of Conviction/Disposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Memorandum of Orders ("Half Sheet") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Complaint for Preliminary Examination (August 10, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32, 39

Arrest Report (August 8, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

Order of Special Conditions of Bond or Release (August 10, 2001) . . . . . . . . . . . . . . . . . . . . . .  40

Motion to Reduce Bond (August 31, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

State's Motion for Discovery (October 16, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  62

Appearance (November 29, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  64

Defendant's Motion for Discovery (November 29, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  65

Defendant's Answer to Discovery (July 30, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  71

Motion to Suppress Statements (July 30, 2002, February 19, 2004) . . . . . . . . . . . . . . . . . . . .  72, 84

Defendant's Motion for Discovery of DNA Evidence (September 11, 2002, January 29,
2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  76, 78

Motion for Discovery of DNA Evidence (January 29, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . .  78

Motion to Suppress Identification Testimony (February 19, 2004) . . . . . . . . . . . . . . . . . . . . . .  82

Motion to Suppress Statements (February 19, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  84

Motion to Dismiss Charge (January 13, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  87

Motion in Limine (July 25, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  90

Presentence Investigative Report (August 25, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  95

Motion for a New Trial (August 25, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  117

Sentencing Order (September 6, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  119

Order Assessing Fines, Fees and Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  120

Order for Defendant to Submit Blood Specimens to the Illinois Department of State Police
for Genetic Analysis (September 6, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  122

A-1

Jury Instructions .......................................................... 123

Jury Note .................................................................. 149

Jury Verdict Form ..................................................... 150-152

Motion to Dismiss Charge .................................................. 154

Notice of Appeal (September 27, 2005) ..................................... 159

**Report of Proceedings ("R")**

|  | **Direct** | **Cross** | **Redir.** | **Recr.** |
|---|---|---|---|---|
| **Jury Trial** | | | | |
| **Volume I** | | | | |
| November 29, 2001 | | | | |
| Continuance | | | | C4 |
| December 10, 2001 | | | | |
| Continuance | | | | D3 |
| January 22, 2002 | | | | |
| Continuance | | | | E2 |
| February 22, 2002 | | | | |
| Continuance | | | | F2 |
| June 26, 2002 | | | | |
| Continuance | | | | J3 |
| July 30, 2002 | | | | |
| Continuance | | | | K3 |
| September 11, 2002 | | | | |
| Continuance | | | | L4 |
| September 20, 2002 | | | | |
| Continuance | | | | M3 |
| December 4, 2002 | | | | |

|  | Direct | Cross | Redir. | Recr. |  |
|---|---|---|---|---|---|
| Continuance |  |  |  |  | O3 |
| January 13, 2003 |  |  |  |  |  |
| Continuance |  |  |  |  | P3 |
| February 25, 2003 |  |  |  |  |  |
| Continuance |  |  |  |  | Q3 |
| March 26, 2003 |  |  |  |  |  |
| Continuance |  |  |  |  | R3 |
| April 30, 2003 |  |  |  |  |  |
| Continuance |  |  |  |  | S3 |
| July 30, 2003 |  |  |  |  |  |
| Continuance |  |  |  |  | V4 |
| September 4, 2003 |  |  |  |  |  |
| Continuance |  |  |  |  | W3 |
| October 7, 2003 |  |  |  |  |  |
| Continuance |  |  |  |  | X3 |
| November 6, 2003 |  |  |  |  |  |
| Continuance |  |  |  |  | Y3 |
| December 8, 2003 |  |  |  |  |  |
| Continuance |  |  |  |  | Z4 |
| January 29, 2004 |  |  |  |  |  |
| Continuance |  |  |  |  | BB3 |
| February 19, 2004 |  |  |  |  |  |
| Continuance |  |  |  |  | CC3 |
| March 16, 2004 |  |  |  |  |  |
| Continuance |  |  |  |  | DD3 |

| | Direct | Cross | Redir. | Recr. |
|---|---|---|---|---|
| March 30, 2004 | | | | |
| Continuance | | | | |
| | | | | EE3 |
| June 2, 2004 | | | | |
| Continuance | | | | |
| | | | | GG3 |
| June 21, 2004 | | | | |
| Continuance | | | | |
| | | | | HH3 |
| July 28, 2004 | | | | |
| Continuance | | | | |
| | | | | II3 |
| August 23, 2004 | | | | |
| Continuance | | | | |
| | | | | JJ3 |
| **Volume II** | | | | |
| September 2, 2004 | | | | |
| Continuance | | | | |
| | | | | KK3 |
| October 20, 2004 | | | | |
| Continuance | | | | |
| | | | | LL3 |
| October 29, 2004 | | | | |
| Continuance | | | | |
| | | | | MM4 |
| January 20, 2005 | | | | |
| Continuance | | | | |
| | | | | PP3 |
| February 24, 2005 | | | | |
| Continuance | | | | |
| | | | | RR3 |
| June 15, 2005 | | | | |
| Continuance | | | | |
| | | | | W2 |
| July 11, 2005 | | | | |

|  | | **Direct** | **Cross** | **Redir.** | **Recr.** | |
|---|---|---|---|---|---|---|
| Continuance | | | | | | WW3 |
| July 27, 2005 | | | | | | |
| States Witnesses | | | | | | |
| | Dr. Jeffrey Lahti | ZZ4 | ZZ25 | ZZ30 | ZZ31 | |
| | Harlan Hansbrough | ZZ32 | ZZ40 | | | |
| | Robert Benson | ZZ43 | ZZ53 | | | |
| | Milton Hubbard | ZZ57 | ZZ60, ZZ67 | | | |
| | Marvin Otten | ZZ70 | ZZ79 | ZZ81 | | |
| Hearing Outside the Presence of the Jury | | | | | | ZZ82 |
| | Raymond Doherty | ZZ83 | ZZ104, ZZ109 | ZZ126 | | |
| Hearing Outside the Presence of the Jury | | | | | | ZZ123 |
| | James Lynch | ZZ127 | ZZ156 | ZZ163, ZZ166 | ZZ165, ZZ166 | |
| State Rests | | | | | | ZZ167 |
| Motion for Directed Finding | | | | | | ZZ167 |
| Arguments | | | | | | |
| | Mr. Kiss (Defense) | | | | | ZZ167 |
| | Mr. Varga (State) | | | | | ZZ169 |
| | Mr. Kiss (Defense) | | | | | ZZ170 |
| **Ruling** | | | | | | ZZ171 |
| Defense Rests | | | | | | ZZ172 |
| State Rests | | | | | | ZZ173 |
| Informal Jury Instruction Conference Off Record | | | | | | ZZ174 |
| August 25, 2005 | | | | | | |

|  | Direct | Cross | Redir. | Recr. |
|---|---|---|---|---|
| Continuance | | | | CCC3 |
| September 6, 2005 | | | | |
| Motion for New Trial | | | | DDD3 |
| Argument | | | | |
| Mr. Kiss (Defense) | | | | DDD3 |
| **Ruling** | | | | DDD4 |
| **Sentencing** | | | | |
| Argument in Aggravation | | | | DDD6 |
| Argument in Mitigation | | | | DDD9 |
| Witness in Mitigation | | | | |
| B. Spicer | | | | DDD11 |
| Statement of Defendant, Charles Spicer | | | | DDD12 |
| **Imposition of Sentence** | | | | DDD13 |
| Mitt to Issue | | | | DDD14 |
| September 27, 2005 | | | | |
| Motion to Reconsider - Denied | | | | EEE3 |
| **Supplemental Report of Proceedings ("SR")** | | | | |
| May 29, 2002 | | | | |
| Continuance | | | | 4 |
| **Supplemental Report of Proceedings ("SR")** | | | | |
| October 23, 2002 | | | | |
| Continuance | | | | N4 |
| December 6, 2004 | | | | |
| Continuance | | | | NN3 |
| December 20, 2004 | | | | |

|  | | **Direct** | **Cross** | **Redir.** | **Recr.** |
|---|---|---|---|---|---|
| Continuance | | | | | OO3 |
| | | | | | |
| March 11, 2005 | | | | | |
| Continuance | | | | | SS3 |
| **Supplemental Report of Proceedings ("SR")** | | | | | |
| April 28, 2004 | | | | | |
| Motion to Suppress ID | | | | | FF3 |
| States Witness | | | | | |
| | Raymond Doherty | FF3 | FF14 | | |
| State Rests | | | | | FF17 |
| Petitioner Rests | | | | | FF17 |
| Arguments | | | | | |
| | Ms. Frisch (Petitioner) | | | | FF17 |
| | Mr. Shearer (State) | | | | FF17 |
| **Ruling** | | | | | FF19 |
| Motion to Suppress | | | | | FF20 |
| Petitioner Witness | | | | | |
| | Charles Spicer (Defendant) | FF21 | FF41 | FF61 | |
| Petitioner Rests | | | | | FF62 |
| States Witnesses | | | | | |
| | Raymond Doherty | FF63 | FF85 | FF97 | |
| | James Lynch | FF98 | FF112 | | |
| State Rests | | | | | FF120 |
| Petitioner Rests | | | | | FF120 |
| Arguments | | | | | |

|  | Direct | Cross | Redir. | Recr. | |
| --- | --- | --- | --- | --- | --- |
| Ms. Frisch (Petitioner) | | | | | FF121 |
| Mr. Shearer (State) | | | | | FF122 |
| **Ruling** | | | | | FF126 |

**Supplemental Report of Proceedings ("SR")**

| April 14, 2005 | | | | | |
| --- | --- | --- | --- | --- | --- |
| Continuance | | | | | UU3 |

| July 26, 2005 | | | | | |
| --- | --- | --- | --- | --- | --- |
| Pretrial Motions | | | | | YY4 |
| Opening Statements | | | | | |
| Mr. Shearer (State) | | | | | YY18 |
| Ms. Frisch (Defense) | | | | | YY23 |
| States Witnesses | | | | | |
| Sheila Jackson | YY30 | YY36 | | | |
| Dr. Miguel Stubbs | YY38 | YY43 | | | |
| Jennifer Reynolds | YY45 | YY58 | YY64 | | |
| Pier Thomston | YY68 | YY85 | YY90 | | |
| Terrence McCullough | YY91 | YY102 | | | |
| Off Record Discussion | | | | | YY105 |
| Jennifer Macritchie | YY106 | YY144 | | | |
| Stipulation | | | | | YY111 |
| John Onstwedder | YY164 | YY191 | | | |

| July 29, 2005 | | | | | |
| --- | --- | --- | --- | --- | --- |
| Sidebar | | | | | BBB5 |
| Further Instruction Read to the Jury | | | | | BBB8 |
| **Verdict** | | | | | BBB11 |

A-8

|  | Direct | Cross | Redir. | Recr. |
|---|---|---|---|---|
| Jury Polled |  |  |  | BBB11 |
| Bond Revoked |  |  |  | BBB15 |

**Supplemental Report of Proceedings ("SR")**

July 25, 2005

| | Direct | Cross | Redir. | Recr. |
|---|---|---|---|---|
| Pretrial Motions |  |  |  | XX3 |
| Stipulation |  |  |  | XX27 |
| Jury Selection |  |  |  | XX27 |

**Supplemental Report of Proceedings ("SR")**

July 28, 2005

Closing Arguments

| | Direct | Cross | Redir. | Recr. |
|---|---|---|---|---|
| Mr. Varga (State) |  |  |  | AAA4 |
| Mr. Kiss (Defense) |  |  |  | AAA25 |
| Sidebar |  |  |  | AAA29 |
| Mr. Shearer (State) |  |  |  | AAA49 |

IN THE CIRCUIT COURT OF COOK COUNTY

PEOPLE OF THE STATE OF ILLINOIS )   CASE NUMBER    01CR2356801
                           V.     )   DATE OF BIRTH  07/20/60
CHARLES    SPICER               )   DATE OF ARREST  08/08/01
Defendant                           IR NUMBER 0682240   SID NUMBER 024485207

## ORDER OF COMMITMENT AND SENTENCE TO
## ILLINOIS DEPARTMENT OF CORRECTIONS
=================================

The above named defendant having been adjudged guilty of the offense(s) enumerated below hereby sentenced to the Illinois Department of Corrections as follows:

| Statutory Citation | Offense | Sentence | | Class |
|---|---|---|---|---|
| 720-5/12-14(A)(4) | AGG CRIM SEX ASSAULT/FELONY | YRS. 030 | MOS. 00 | X |
| and said sentence shall run concurrent with count(s) ___ ___ ___ | | | | |
| 720-5/12-14(A)(5) | AGG CRIM SEX ASLT/VICTIM >60 | YRS. 000 | MOS. ___ | X |
| and said sentence shall run consecutive to count(s)  016 ___ * | | | | |
| 20-5/17-3(A)(2) | FORGERY/ISSUE/DELIVER DOCUMENT | YRS. 005 | MOS. ___ | 3 |
| and said sentence shall run concurrent with count(s) ___ ___ ___ | | | | |

_____ said sentence shall run (concurrent with) (consecutive to) the sentence imposed on: _____  YRS. ___ MOS. ___ ___

_____ said sentence shall run (concurrent with) (consecutive to) the sentence imposed on: _____  YRS. ___ MOS. ___ ___

Count ___ defendant having been convicted of a class ___ offense is sentenced as offender pursuant TO 730 ILCS 5/5-5-3(C)(8).

Count ___ defendant is sentenced to an extended term pursuant to 730 ILCS 5/5-8-2.

Court finds that the defendant is entitled to receive credit for time actually served for a total credit of 1459 days as of the date of this order

IT FURTHER ORDERED that the above sentence(s) be concurrent with _____ imposed in case number(s) _____
consecutive to the sentence imposed under case number(s) _____
_____

IT FURTHER ORDERED THAT _____
_____
_____
_____

IT FURTHER ORDERED that the Clerk provide the Sheriff of Cook County with a copy of this Order and that the Sheriff take into custody and deliver him/her to the Illinois Department of Corrections and that the Department take custody and confine him/her in a manner provided by law until the above sentence is fulfilled.

SEPTEMBER 06, 2005

ENTERED
JUDGE DENNIS DERNBACH 1526   09/06/05   C00119

BY  K SOMMERFIELD
    DEPUTY CLERK
    13:47:21

SEP 06 2005

DOROTHY BROWN  JUDGE: DERNBACH, DENNIS A.

TO THE APPELLATE COURT OF ILLINOIS
IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

OPLE OF THE STATE OF ILLINOIS )
)  No. 01-CR-23568
-vs- )  Trial Judge: DENNIS DERNBACH
)  Attorney: DANIEL KISS
RLES SPICER )
)

SEP 27 2005

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

### NOTICE OF APPEAL

peal is taken from the order of judgment described below:
LLANT'S NAME: CHARLES SPICER
82240           D.O.B. JULY 20, 1960
LLANT'S ADDRESS: IDOC
LLANT'S ATTORNEY: STATE APPELLATE DEFENDER
ESS: 203 N. LASALLE, 24TH FLOOR, CHICAGO, IL 60601
NSE: ACSA, FORGERY
MENT: GUILTY
NCING DATE: SEPTEMBER 6, 2004
NCE: 35 YRS. IDOC
     30

**FILED**
CR-526-9
SEP 27 2005
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

_____
DANIEL KISS
APPELLANT'S ATTORNEY

## VERIFIED PETITION FOR REPORT OF PROCEEDINGS
## COMMON LAW RECORD AND FOR APPOINTMENT OF COUNSEL ON APPEAL

preme Court Rules 605-608, appellant asks the Court to order the Official Court Reporter to
an original and copy of the proceedings, file the original with the Clerk and deliver a copy to the
order the Clerk to prepare the Record on Appeal and to Appoint Counsel on Appeal.
being duly sworn, says that at the time of his conviction he was and is unable to pay for the Record
l lawyer.

### ORDER

RED the State Appellate Defender be appointed as counsel on appeal and the Record and Report of
furnished appellant without cost.

nscribed:

OTION DATE:      APRIL 28, 2004; JULY 27, 2005
 DATE:           JULY 27, 2004
                 JULY 27-30, 2005
OTION DATES:     SEPTEMBER 6, 2005; SEPTEMBER 27, 2005
 DATE:           SEPTEMBER 6, 2005

27, 20              ENTER: _____          C00159
                            JUDGE

File Date: September 3, 2008

Case No: 08cv3577

ATTACHMENT # 1

EXHIBIT C-E

TAB (DESCRIPTION)

NO. 1-05-3358

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

---

PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

vs.

CHARLES SPICER,

Defendant-Appellant.

---

Appeal from the Circuit Court of Cook County, Criminal Division.
Honorable Dennis Dernbach, Judge Presiding.

BRIEF AND ARGUMENT FOR
PLAINTIFF-APPELLEE

---

RICHARD A. DEVINE,
State's Attorney,
County of Cook,
Room 309-Richard J. Daley Center,
Chicago, Illinois 60602

Attorney for Plaintiff-Appellee

JAMES E. FITZGERALD,
VERONICA CALDERON MALAVIA,
TASHA-MARIE KELLY,
SHANNAN MCFADDEN,
Assistant State's Attorneys,
    Of Counsel.

EXHIBIT C

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS

Plaintiff-Appellee

vs.

CHARLES SPICER,

Defendant-Appellant.

## POINTS AND AUTHORITIES

### I.

**THE PEOPLE PROVED BEYOND A REASONABLE DOUBT THAT DEFENDANT COMMITTED FORGERY** ................................................ **20**

People v. Smythe, 352 Ill. App. 3d 1056 (1st Dist. 2004) .............................. 20

People v. Evans, 209 Ill. 2d 194 (2004) ........................................................ 20

People v. Jones, 295 Ill. App. 3d 444 (1st Dist. 1998) ................................... 21

People v. Hodogbey, 306 Ill. App. 3d 555 **(1st Dist. 1999)** .......................... **21**

People v. Koch, 248 Ill. App. 3d 584 (1st Dist. 1993) ................................... 21

People v. Hunter, 331 Ill. App. 3d 1017 (2nd Dist. 2002) ............................. 21

People v. Hockaday, 93 Ill. 2d 279 (1982) .................................................... 21

People v. Panagiotis, 162 Ill. App. 3d 866 (1st Dist. 1987) .......................... 22

People v. Mattingly, 180 Ill. App. 3d 573 (4th Dist. 1989) ........................... 22

1

People v. Murrah, 255 Ill. App. 3d 742 (4th Dist. 1993)............................... 22,24

People v. Kubanek, 370 Ill. 646 (1939)........................................................ 22,23

People v. Primm, 319 Ill.App.3d 411 (1st Dist. 2000)................................... 23

People v. Bokuniewicz, 160 Ill. App. 3d 270 (2nd Dist. 1987)...................... 23

People v. Passantino, 67 Ill. App. 3d 469 (2nd Dist. 1979)........................... 23

People v. Kunce, 196 Ill. App. 3d 388 (3rd Dist. 1990),
    cert. denied, 132 Ill. 2d 550 (1990) ...................................................... 24

People v. Lindquist, 97 Ill. App. 3d 894 (3rd Dist. 1981) ............................. 24

720 ILCS 5/17-3(a) (West 2001)................................................................... 21

## II.

### THE PEOPLE'S CLOSING ARGUMENTS WERE PROPER AND THEREFORE, THE DEFENDANT WAS NOT DENIED HIS RIGHT TO A FAIR TRIAL........................................................................ 25

People v. Reed, 177 Ill. 2d 389 (1997)............................................................ 25

People v. Enoch, 122 Ill. 2d 176 (1988)........................................................ 25

People v. Surles, 126 Ill. App. 3d 216 (1st Dist. 1984).................................. 25

People v. Herron, 215 Ill. 2d 167 (2005)........................................................ 26,29

People v. Primm, 319 Ill.App.3d 411 (1st Dist. 2000)................................... 26

People v. Hayes, 319 Ill. App. 3d 810 (1st Dist. 2001) ................................. 26

People v. Speight, 153 Ill.2d 365 (1992)........................................................ 26

People v. Caffey, 205 Ill. 2d 52 (2003) .......................................................... 26

People v. Williams, 192 Ill. 2d 548 (2000) .................................................... 26

People v. Cloutier, 156 Ill. 2d 483 (1993) ..................................................... 26

People v. Kirchner, 194 Ill. 2d 502 (2000)................................................... 27

People v. Simms, 192 Ill. 2d 348 (2000)...................................................... 27

People v. Armstrong, 183 Ill. 2d 130 (1998)................................................ 27

People v. Dinwiddie, 299 Ill. App. 3d 636 (1st Dist. 1998)........................... 27

People v. Patrick, 298 Ill. App. 3d 16 (1st Dist. 1998)................................. 27

People v. Johnson, 218 Ill.2d 125 (2006)..................................................... 28

People v. Sutton, 316 Ill. App. 3d 874 (1st Dist. 2000) ............................... 28

### III.

**DEFENDANT HAS FAILED TO SHOW THAT THE ADMISSION OF THE VICTIM'S STATEMENT TO THE EMERGENCY ROOM DOCTOR CONSTITUTED PLAIN ERROR WHERE IT WAS PROPERLY ADMITTED UNDER THE MEDICAL TREATMENT/DIAGNOSIS EXCEPTION CODIFIED IN 725 ILCS 5/115-13; WHERE THE STATEMENT DID NOT VIOLATE DEFENDANT'S RIGHT TO CONFRONTATION UNDER CRAWFORD v. WASHINGTON; AND WHERE DEFENDANT HAS FAILED TO SHOW THAT ANY ERROR IN THE ADMISSION OF THE STATEMENT WAS NOT HARMLESS**..........................................................................

HARMLESS.......................................................................... 29

Crawford v. Washington, 541 U.S. 36 (2004)............................................... 30

People v. Normand, 215 Ill. 2d 539 (2005) ................................................... 31

People v. Campbell, 264 Ill. App. 3d 712 (1st Dist. 1992) ............................ 31

People v. Young, 128 Ill. 2d 1 (1998) ............................................................ 31,33

People v. Precup, 73 Ill. 2d 7 (1978)............................................................. 31

People v. Herron, 215 Ill. 2d 167 (2005)....................................................... 31,32

People v. Nitz, 219 Ill. 2d 400 (2006) ........................................................... 32

3

People v. Allen, 222 Ill. 2d 340 (2006) ............................................................ 32

People v. Piatkowski, 2007 Ill. LEXIS 13 (2007) ............................................. 32

People v. Johnson, 218 Ill. 2d 125 (2005) ...................................................... 32

People v. Keene, 169 Ill.2d 1 (1995) ............................................................... 32

People v. Allen, 2006 Ill. Lexis 1079 (2006) ................................................... 33

People v. Melchor, 2007 Ill. LEXIS 861 (June 7, 2007) ................................... 33

In re E.H., 224 Ill. 2d 172 (2006) .................................................................... 33,34

725 ILCS 5/115-13 (West 2000) ..................................................................... 30

725 ILCS 5/115-10.3 ....................................................................................... 30

## A.

**No Plain Error Occurred Where The Trial Court Properly Admitted The Statement By The Victim To The Emergency Room Physician Under 725 ILCS 5/115-13, The Medical Treatment/Diagnosis Exception To The Hearsay Rule, And Where Defendant Fails To Show That He Suffered Any Prejudice, Even If Error Was Committed** ................................ 34

People v. Williams, 181 Ill. 2d 392 (1998) ..................................................... 34

People v. Sutherland, 223 Ill. 2d 187 (2006) .................................................. 34

People v. Roy, 201 Ill. App. 3d 166 (4th Dist. 1990) ....................................... 36

People v. Davis, 337 Ill. App. 3d 977 (1st Dist. 2003) .................................... 36,41

People v. Williams, 223 Ill. App. 3d 692 (3rd Dist. 1992) ............................... 36

People v. Lewis, 158 Ill. 2d 386 (1994) ........................................................... 38

People v. Fierer, 124 Ill. 2d 176 (1988) ........................................................... 38

People v. Rushing, 192 Ill. App. 3d 444 (4th Dist. 1989) .............................. 38,39

People v. Falaster, 273 Ill. App. 3d 694 (5th Dist. 1995) ............................ 40

People v. Denny, 241 Ill. App. 3d 345 (4th Dist. 1993) ................................ 41

People v. Balle, 234 Ill. App. 3d 804 (1st Dist. 1992) .................................. 41

People v. Coleman, 222 Ill. App. 3d 614 (1st Dist. 1990) ............................ 41,44

People v. Bailey, 177 Ill. App. 3d 679 (4th Dist. 1988) ............................... 42

People v. Salas, 138 Ill. App. 3d 48 (2nd Dist. 1985) .................................. 42

People v. Billingsley, 184 Ill. App. 3d 142 (2nd Dist. 1989) ......................... 43

People v. Sims, 192 Ill. 2d 592 (2000) ........................................................ 43

725 ILCS 5/115-13 (West 2000) ................................................................. *passim*

720 ILCS 5/12-14   ................................................................................ 35

720 ILCS 5/12-14.1 ................................................................................ 35

720 ILCS 5/12-15 ................................................................................... 35

720 ILCS 5/12-16 ................................................................................... 35

**B.**

**No Plain Error Occurred Where The Admission Of The Victim's Statement To The Emergency Room Physician Did Not Violate Defendant's Sixth Amendment Right To Confrontation Under Crawford v. Washington And Where, Even If Error Occurred, Defendant Fails To Meet His Burden Of Showing Prejudice Because The Admission Of The Statement Was Harmless Beyond A Reasonable Doubt** ................ **44**

Crawford v. Washington, 541 U.S. 36 (2004) ............................................. *passim*

Ohio v. Roberts, 448 U.S. 56, 100 S. Ct. 2531 (1980) ................................. 45

Davis v. Washington, 126 S.Ct. 2266 (2006)................................................ *passim*

People v. Stechly, 2007 Ill. LEXIS 452 (April 19, 2007).............................. *passim*

People v. Vigil, 127 P.3d 916 (Colo. 2006) ................................................... 57-58

People v. Cage, 155 P.3d 205 (Cal. 2007).................................................... 59

People v. Patterson, 217 Ill. 2d 407 (2005) ................................................. 59

In re E.H., 224 Ill. 2d 172 (2006) ................................................................. 59

People v. Primm, 319 Ill. App. 3d 411 (1st Dist. 2005)................................ 60

People v. Hayes, 319 Ill. App. 3d 810 (1st Dist. 2001) ................................. 60

People v. Keene, 169 Ill.2d 1 (1995).............................................................. 61

U.S. Const., amend. VI.................................................................................. 45

725 ILCS 5/115-13 (West 2000) ................................................................... 61

## IV.

### THE TRIAL COURT PROPERLY SENTENCED DEFENDANT TO CONSECUTIVE TERMS OF 30 YEARS AND 5 YEARS IMPRISONMENT ..................... 62

People v. Normand, 215 Ill. 2d 539 (2005) ................................................... 62

People v. Ranstrom, 304 Ill. App. 3d 664 (1st Dist. 1999) ........................... 62

People v. Hinton, 249 Ill. App. 3d 713 (3rd Dist. 1993) ............................... 62

People v. Reed, 177 Ill. 2d 389 (1997)........................................................... 63

People v. Casillas, 195 Ill. 2d 461 (2000)...................................................... 63

People v. Herron, 215 Ill. 2d 167 (2005) ....................................................... 63

People v. Johnson, 218 Ill. 2d 125 (2005) ...................................................... 63

People v. Beals, 162 Ill. 2d 497 (1994) .......................................................... 63

People v. Jones, 168 Ill. 2d 367 (1995) ............................................. 64

People v. Smith, 258 Ill. App. 3d 1003 (1st Dist. 1994) ................................ 64

People v. Boclair, 225 Ill. App. 3d 331 (1st Dist. 1992) ................................ 64

730 ILCS 5/5-8-1(c) ....................................................................... 63

720 ILCS 5/12-14(d)(1)(West) ........................................................... 64

730 ILCS 5/5-8-1(a)(3)(West 2000) ...................................................... 64

720 ILCS 5/17-3(d) ........................................................................ 64

730 ILCS 5/5-8-1(a)(6) .................................................................... 64

1.

### The trial court properly considered defendant's prior conviction ................................... 64

People v. LaPointe, 88 Ill. 2d 482 (1981) .............................................. 65

People v. Aleman, 355 Ill. App. 3d 619 (2nd Dist. 2005) ............................. 65

People v. Hall, 194 Ill. 2d 305 (2000) ................................................. 66

People v. Jackson, 145 Ill. 2d 43 (1991) ............................................... 66

People v. Dennis, 47 Ill. 2d 120 (1970),
    cert. denied, 91 S. Ct. 2212 (1971) ................................................ 66

Crawford v. Washington, 541 U.S. 36 (2004) ........................................... 66

Williams v. New York, 337 U.S. 241 (1949) ............................................. 66

United States v. Roche, 415 F.3d 614 (7th Cir. 2005) .................................. 66

United States v. Miller, 450 F.3d 270 (7th Cir. 2006) ................................. 66

People v. Stoutenborough, 64 Ill. App. 3d 489 (4th Dist. 1978) .................. 67

People v. Wallace, 145 Ill. App. 3d 247 (2nd Dist. 1986) ........................... 67

**2.**

**Juanita's age**............................................................. 68

People v. Conover, 84 Ill. 2d 400 (1981) ....................................................... 68

People v. Saldivar, 113 Ill. 2d 256 (1986)....................................................... 68

People v. Thomas, 171 Ill. 2d 207 (1996) ....................................................... 69

People v. Ferguson, 132 Ill. 2d 86 (1989) ....................................................... 69

**3.**

**The trial court did consider factors
in mitigation** ................................................................. 69

People v. Jones, 168 Ill. 2d 367 (1995) ....................................................... 70

People v. Smith, 258 Ill. App. 3d 1003 (1st Dist. 1994) ................................ 701

People v. Partin, 156 Ill. App. 3d 365 (1st Dist. 1987) ................................... 70

People v. Canet, 218 Ill. App. 3d 855 (1st Dist. 1991).................................... 70

People v. Ernst, 219 Ill. App. 3d 51 (3rd Dist. 1991),
    cert. denied, 143 Ill. 2d 642 (1992) ................................................ 70

People v. Streit, 142 Ill. 2d 13 (1991)............................................................. 70

People v. Ernst, 219 Ill. App. 3d 51 (3rd Dist. 1991) ..................................... 70

People v. Markiewicz, 246 Ill. App. 3d 31 (2nd Dist 1993)........................... 71

People v. Willis, 210 Ill. App. 3d 379 (1st Dist. 1991) ................................... 71

People v. Waud, 69 Ill. 2d 588 (1977).............................................................. 71

People v. Quintana, 332 Ill. App. 3d 96 (1st Dist. 2002) ............................... 71

People v. Villa, 305 Ill. App. 3d 641 (1st Dist. 1999).................................... 72

People v. Muhammad, 257 Ill. App. 3d 359 (1st Dist. 1993)......................... 72

8

<u>People v. Bosley</u>, 233 Ill. App. 3d 132 (1st Dist. 1992) ................................. 72

## V.

**THE MITTIMUS MUST BE AMENDED TO
REFLECT THE CORRECT AMOUNT OF CREDIT
FOR THE TIME DEFENDANT SERVED IN CUSTODY
PRIOR TO SENTENCING** ................................................. **72**

<u>People v. Mitchell</u>, 324 Ill. App. 3d 912 (1st Dist. 1992) .............................. 72

## STATEMENT OF FACTS

On August 8, 2001, 75 year-old Juanita C. was sexually assaulted. On the same date, defendant attempted to cash a check from Juanita's account at Bank One. When a security guard at the bank approached defendant, defendant ran out of the bank, across the street to a construction site and jumped over a barbed wire fence. Defendant was later taken into custody by police.

Defendant was indicted on charges of armed robbery, aggravated criminal sexual assault, home invasion, residential burglary and forgery. A jury trial was held before the Honorable Dennis Dernbach, during which the trial court granted a directed verdict on the counts pertaining to penile penetration and the jury was instructed only on the counts pertaining to digital penetration. (R. ZZ169-71) Defendant was found guilty of aggravated criminal sexual assault and forgery. The jury found defendant not guilty of residential burglary. Judge Dernbach subsequently sentenced defendant to 30 years imprisonment on the sexual assault count and five years imprisonment on the forgery count, with the sentences to run consecutively. Defendant now appeals. (C. 44-61, 95, R. BBB10-11, DDD13)

## PRETRIAL MOTIONS

Prior to his trial, defendant filed a motion to suppress identification on the grounds that the lineup involving defendant was improperly suggestive. That motion was granted and Juanita's identification of defendant in a lineup was suppressed. (C. 82, FF3-19)

Defendant also filed a motion to suppress his statements, arguing that his will was overcome because he was in pain from cuts on his hand and arm sustained before his arrest and that he was suffering from withdrawal from heroin and alcohol at the time he gave his

10

statement to the police. He gave the statement a day after his arrest. Defendant testified that he had cut his arm going over the barbed wired fence, that a piece of the wire broke off in his arm and that he was bleeding. He also stated that he had used heroin and consumed alcohol for two days before being taken into custody. The police took defendant to Area Two where he was not given medical attention although he said he requested it. Detective Raymond Doherty and Assistant State's Attorney (ASA) James Lynch both testified that defendant was not complaining of pain, that he was coherent and that he did not complain about how he was treated. The trial court found that defendant was treated appropriately and denied the motion. (C. 84-86, R. FF20-25, 30, 33, 69-72, 82, 108-09, 126)

Defendant filed a motion *in limine* seeking to exclude any testimony explaining Juanita's absence at trial as well as any testimony regarding out of court statements Juanita made to either the responding police officer or the emergency room doctor. The parties stipulated that a doctor currently treating Juanita in a nursing home in Georgia would testify that she was not available to testify at trial due to a serious medical condition unrelated to the charges against defendant. The trial court also ruled that Officer Sheila Jackson, the responding officer, could testify regarding what Juanita told her when she arrived on the scene. The trial court found that, while it was a close decision when considering Crawford v. Washington, Juanita's statements to Officer Jackson were an excited utterance. The trial court also ruled that the physician who treated Juanita in the emergency room could testify regarding what Juanita said to him as a statement made to a treating physician. (C. 90-93, R. XX24-25, 27)

11

**TRIAL**

At trial, Officer Jackson of the Chicago Police Department testified that she went to the 7300 block of Calumet at approximately 11:00 in the morning on August 8, 2001, after hearing a call about a robbery with a senior citizen victim. She met with Juanita in her first floor apartment, inside which she observed a dining room chair with duct tape on the arm rest and legs. She also saw that the victim had redness around her wrists and on both arms. Officer Jackson said she had a conversation with the victim and then gave a description of the offender over the police radio. (R. YY32-34)

Pier Thomaston testified that she was working as a teller at the Bank One located at 6700 South Stony Island on August 8, 2001. She identified defendant in court as the individual who, shortly before noon that day, presented her with a check drawn on Juanita's account. She spoke with her supervisor after noting there was an alert on Juanita's account and that the name of the payee was not written in the same handwriting as the rest of the check, which was in the same handwriting as Juanita's signature on file with the bank. While speaking with her supervisor, the security guard at the bank approached defendant who shoved the security guard and ran out of the bank across the street into the construction field. Terrence McCullough, the security guard, also testified to those events at trial. (R. YY69-71, 73, 75, 77-79, 86, 97-98)

Officer Harlan Hasbrough testified that he monitored a call on his radio and went to 1523 East 68th Street looking for a suspect who ran from the bank. He found defendant under the porch of an apartment at that address. (R. ZZ33-34, 36)

Sergeant Raymond Doherty of the Chicago Police Department testified that he and

12

his partner, Detective Gillespie, were assigned to a robbery investigation on August 8, 2001, and went to 7300 S. Calumet Avenue where they met with Officer Jackson and Juanita. Sgt. Doherty testified that while they were in Juanita's apartment, he heard a call on his radio and went to the Bank One at 67th Street and Stony Island where defendant was in the back seat of a police car. Sgt. Doherty said that he recovered a check from the bank teller who said defendant had tried to cash the check. He said he and his partner then returned to Juanita's house and took her to Area Two Police Headquarters, where defendant also was. At approximately 1:30 p.m. he and Detective Gillespie spoke with defendant. Sgt. Doherty testified that they introduced themselves, read defendant his <u>Miranda</u> rights, which defendant said he understood. Defendant then told them that he had received a phone call from his friend, John Thomas, that morning and that, when he met Thomas, Thomas gave defendant a check to cash and that bank employees tried to detain him while trying to do so. Sgt. Doherty said that defendant then provided a vague description of John Thomas, whom Sgt. Doherty was unable to locate. (R. ZZ84-95)

Sgt. Doherty testified that he and Detective Gillespie interviewed defendant again at 5:30 p.m. and defendant then admitted that he did go to Juanita's house with Thomas, said that Juanita owed him money and that both he and Thomas left after a short conversation. Sgt. Doherty said that defendant then told him that Thomas gave defendant some money that he took from Juanita's home and the check. Sgt. Doherty testified that defendant admitted to duct taping Juanita to a chair after she signed the check. (R. ZZ96-97)

Sgt. Doherty testified that he then went to speak with Juanita again. He said that she became very upset and he determined that she needed to go to the hospital for medical

13

evaluation. Before they left for the hospital, Sgt. Doherty said he called for someone to take a buccal swab of defendant, then he took Juanita to the hospital and stayed while she was there. He testified that he took Juanita home when she was released around 3 a.m. and had an evidence technician meet him there to collect Juanita's bedding. He said he returned to work the next day and spoke with defendant at 12:55 p.m. at which time he told defendant he did not believe his stories. Sgt. Doherty testified that defendant then told him that he was in the apartment with Juanita, had a pen, told her to sign the check and threatened that if she did not do so he would "shove the pen in her ass." (R. ZZ97-101)

ASA James Lynch then came to Area Two. He introduced himself to defendant and read him his <u>Miranda</u> rights. Defendant agreed to speak with ASA Lynch and the detectives. ASA Lynch memorialized that conversation in a handwritten statement, which he published to the jury. According to the statement, defendant rang the doorbell and Juanita let him inside her apartment. John Thomas followed without being seen by Juanita. Defendant then demanded money Juanita owed him for work he did in July, duct taped her ankles and wrists but stopped because it was hurting her. Juanita then told defendant there was money in the beer stein in the cabinet. Defendant took $90 from there and $35 from her purse, at which point John Thomas took $60 of the money and left. Defendant brought Juanita her check book but she had to go to the bathroom so he took her to the bathroom and then sat her on the edge of her bed. In the statement, defendant said he got frustrated because she would not write him a check so he then lifted Juanita's feet up so her knees were in the air, told her he was going to shove the pen in her ass and motioned as if he was going to do so. Defendant took out his penis and placed it against Juanita's thigh, about one inch from her vagina and

14

put the index finger of his left hand in her vagina up to the knuckle while shaking the bed with his knees. Juanita then agreed to write him a check and he instructed her to make it out for $7,000, to write "remodeling" on the memo line and leave the payee line blank. After she did so, he took her to the dining room where he taped her hands and ankles to the chair and left. (R. ZZ102-07, 135, 148-54)

Dr. Jeffrey Lahti testified that he was working the night shift as a senior resident in the emergency room department of Christ Hospital in Oak Lawn on August 8, 2001. He saw Juanita was admitted as a patient at approximately 10:00 that evening when she brought in by the police for an evaluation for a sexual assault. Dr. Lahti examined Juanita around 3:00 am. He said that he interviewed Juanita in an examination room in the emergency room and she told him that she was tied and raped, although she did not state specifically what had been done to her. He testified that Juanita cried several times but did not appear disoriented or confused. Dr. Lahti noted that there was redness around Juanita's wrists and left ankle and identified photographs of both wrists and her ankle. Dr. Lahti also conducted a pelvic examination. Dr. Lahti testified that her pelvic exam was normal but that in an older woman there could be sexual assault without physical evidence like bruising or tearing. Dr. Lahti also took a rape kit from Juanita, which included combing Juanita's head and pubic hair, taking swabs of her mouth, vagina and anus, and taking a blood sample. Dr. Lahti testified that he was not an expert in gynecology or in sexual assault cases. (R. ZZ6-22)

John Onstwedder testified that he worked in the latent fingerprint section of the crime laboratory of the Illinois State Police and the trial court qualified him as an expert. He examined the check drawn on Juanita's account that was presented to Bank One on August 8,

15

2001. He said that he found two fingerprints on the check, one of which was not clear enough for analysis but the other of which matched defendant's right thumb. He was unable to find prints on the duct tape he received. (R. YY165, 179-80, 184-89)

Dr. Miguel Stubbs also testified. He stated that he was a doctor of internal medicine and geriatrics and that he had been treating Juanita at a nursing home in Georgia since July, 2002. When Juanita first arrived at the nursing home she was 76 years old and had suffered a stroke. The stroke left her weak on her right side. He said she also suffered from dementia and her conditions had deteriorated over the past three years to the level of moderate to severe dementia, meaning she was not oriented to place, time or date, suffered from delusions and was unable to recall past events. Dr. Stubbs testified that Juanita's condition was unrelated to the allegations against defendant. (R. YY39-42)

Jennifer Reynolds, an employee of Cellmark, was qualified as an expert in DNA. She stated that she conducted the DNA testing on the vaginal swab in this case. She testified that there was no DNA belonging to anyone other than Juanita in her swab. (R. YY45-47, 49, 58)

Jennifer MacCritchie, a forensic scientist with the Illinois State Police, also testified as a DNA expert. She testified that she examined a buccal swab from defendant and a rape kit taken from Juanita. The profiles from those were compared with the profiles for defendant and Juanita that were determined by Cellmark. There was no semen on the vaginal swabs or the fitted bedsheet. She found a semen stain in one location on Juanita's housecoat and a semen stain on her nightgown. Neither stain contained sperm cells, but she explained the reasons this could be, including a low sperm count, a medical condition, surgery or environment factors that would cause a breakdown of the sperm cells. On the non-sperm

16

fraction of the nightgown stain there was a match to defendant's DNA in seven of 13 genetic markers, but four of those areas contained only partial information. Statistical analysis was performed on the other three areas and the profile found would occur in one of 190,000 black individuals. (R. YY106-144)

The State rested after presenting the above witnesses and defendant then moved for a directed verdict. The trial court granted the motion for Counts 4 and 8 which alleged criminal sexual assault based on penetration of the vagina by defendant's penis and denied the motion for all other counts. The defense did not present evidence and the trial court found that defendant knowing and voluntarily waived his right to testify. (R. ZZ168-172)

Before closing arguments, the trial court instructed the jury that arguments were not evidence, and that the jury should disregard something an attorney said in a closing argument if it was not been proven up as evidence. In its closing argument the People read the jury instructions for fraud and then argued that Juanita did not write the check willingly but rather wrote the check at defendant's direction and under his coercion. The prosecutor said, "It's her writing, but make no mistake about it, he's the one that made that check. He just used her hands to do it." The People argued similarly in their rebuttal argument, asking the jury not to believe that Juanita was not forced to write the check. At the conclusion of closing arguments, the trial court gave the jury its instructions for the counts of aggravated criminal sexual assault alleging either that it was committed during residential burglary, or that the victim was at least 60 years old, as well as the instruction for residential burglary and forgery. (R. AAA4, 14-15, 55, 69-72)

Jury deliberations commenced on July 28 and lasted for eight hours. The jury sent a

note not contained in the record indicating they had reached a verdict on two of the three charges. On the second day, the trial judge brought the jury into the courtroom and the foreperson stated that they did not have a verdict on the third count and that the jury was split 11-1 with some movement being made. The jury continued to deliberate. An hour later the jury sent another note indicated that they had stopped deliberations believing they would not reach a unanimous verdict. Over defendant's objection, the trial judge read the jury the Prim instruction and the jury continued deliberating. Later that day, the jury reached unanimous verdicts. The jury found defendant guilty of aggravated criminal sexual assault and forgery and not guilty of residential burglary. Defendant's motion for new trial was denied. (R. BBB3-11, DDD4, C.150-52)

**SENTENCING**

The trial court found that Count 9, aggravated criminal sexual assault based on the victim's age, merged into Count 7, aggravated criminal sexual assault based on residential burglary. The People argued that the main aggravation in this case was the facts of the case, including that Juanita was 75 years old. The People also argued in aggravation that defendant had multiple prior convictions, including attempted robbery and aggravated battery of an 88 year old woman in a case from 1993 with facts similar to the case at hand. The People presented the facts of the prior case from the detective's supplementary report and the police report. Defendant argued that there was no transcript from the 1993 case because defendant pled guilty and that what was deduced in the 402 conference in that case is unknown. Defendant argued in mitigation that he had served in the military and had a history of employment. Defendant's brother also testified in mitigation. (R. DDD5-11)

18

The trial court ruled that defendant had two offenses for violence against women who were senior citizens and that his conduct in this case was "appalling." Based on the facts of this case and defendant's background, the trial court sentenced defendant to 30 years imprisonment on the count of aggravated criminal sexual assault and five years imprisonment for the count of forgery, with the sentences to be served consecutively. The trial court denied defendant's motion to reconsider sentence. (R. DDD12-13, EEE3)  This appeal follows.

## ARGUMENT

### I.

### THE PEOPLE PROVED BEYOND A REASONABLE DOUBT THAT DEFENDANT COMMITTED FORGERY.

Defendant claims that the People failed to prove him guilty beyond a reasonable doubt of forgery by delivery. (Deft. B. 12)  The first count of the indictment charged that defendant

> "with intent to defraud, knowingly delivered a document, to
>
> wit: a check number 1602, dated August 8, 2001, in the
>
> amount of $7,000.00, on the account of Juanita [C.], drawn on
>
> Bank One, made payable to Charles Spicer, apparently
>
> capable of defrauding another in such a manner that it
>
> purported to have been made by Juanita [C.], knowing that it
>
> was not made by Juanita [C.]."

(C. 60)  The People maintain that sufficient evidence existed for the trial court to find defendant guilty because all elements of forgery were proven beyond a reasonable doubt.

In resolving a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing all evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Smythe, 352 Ill. App. 3d 1056, 1058 (1st Dist. 2004), citing People v. Evans, 209 Ill. 2d 194, 209 (2004).  A challenge to the sufficiency of the evidence to support a conviction on appeal will be sustained if no rational trier of fact could have found that the

20

defendant committed each element of the charged offense. <u>People v. Jones</u>, 295 Ill. App. 3d 444, 451-52 (1st Dist. 1998). Only when the evidence used to convict is so improbable, unsatisfactory or inconclusive that it creates a reasonable doubt of defendant's guilt, will a conviction be set aside. <u>People v. Hodogbey</u>, 306 Ill. App. 3d 555, 559 **(1st Dist. 1999)**, <u>People v. Koch</u>, 248 Ill. App. 3d 584, 598 (1st Dist. 1993).

The statute provides:

> A person commits forgery when, with intent to defraud, he knowingly: (1) makes or alters any document apparently capable of defrauding another in such manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority; or (2) issues or delivers such document knowing it to have been thus made or altered; or (3) possesses, with intent to issue or deliver, any such document knowing it to have been thus made or altered.

720 ILCS 5/17-3(a) (West 2001).

Illinois courts have held that the essential elements necessary to prove forgery in this case are (1) a document apparently capable of defrauding another; (2) a making or altering of such document by one person in such manner that it purports to have been made by another; (3) knowledge by defendant that it has been thus made; (4) knowing delivery of the document; and (5) intent to defraud. <u>People v. Hunter</u>, 331 Ill. App. 3d 1017, 1026 (2nd Dist. 2002), citing <u>People v. Hockaday</u>, 93 Ill. 2d 279, 282 (1982).

21

The People maintain that all the elements of forgery were proven at trial beyond a reasonable doubt. First, the document was capable of defrauding another, the test for which is whether a reasonable and ordinary person might be deceived into accepting the document as being true and genuine. People v. Panagiotis, 162 Ill. App. 3d 866, 872 (1st Dist. 1987). Whether a document is capable of defrauding is determined by the fact finder. People v. Mattingly, 180 Ill. App. 3d 573, 576 (4th Dist. 1989). The jury here found that the document was capable for defrauding another and defendant does not dispute that fact.

Second, defendant clearly altered the document. He himself admitted that he added his name in the payee line of the check. Juanita did not write out the whole check, but rather, she partially made out the check as defendant directed her to do and left the payee line blank. His addition of his name as payee was an alteration to the check given that Juanita had left the payee line of the check blank and gave defendant no authority to fill it in. The Appellate Court has held that, "a filling of such blanks other than as authorized constitutes forgery, where the other elements of forgery are present." People v. Murrah, 255 Ill. App. 3d 742, 747 (4th Dist. 1993), citing People v. Kubanek, 370 Ill. 646, 649 (1939). Defendant cites no authority which indicates that an alteration must be anything more than partial to suffice to meet the statutory requirement.

In Murrah, the defendant added his name to a corporate credit card application for his employer under the section for additional cards for other employees and obtained his employer's signature. Murrah, 255 Ill. App. 3d at 744. The employer testified that he was never approached about obtaining an employee's credit card on the account, never would have authorized such a card and did not intend to sign a form giving the defendant

22

permission for such a card. Id. The defendant argued that there was not "alteration" but the Appellate Court upheld the defendant's conviction for forgery, finding that all the elements were present because even if the employer signed the application, he never meant to authorize the additional card and the defendant altered the document by adding his name and obtained his employer's signature with the intent to defraud. Id. at 747. The Murrah court relied on Kubanek, where the Illinois Supreme Court held that the forgery does not solely involve signatures but also the name of the payee. Id. at 747-48, citing Kubanek, 370 Ill. At 649-50. In the present case, defendant added his name to the payee line of the check Juanita wrote under duress, after defendant had inserted his finger in her vagina and placed his penis on her thigh. She did not voluntarily under those circumstances grant him any authority to alter the check.

Third, because defendant added his name in the payee line and coerced Juanita to write the check under duress, he had knowledge that the check had been thus made and altered. Defendant's knowledge of the alteration was also evidenced by his confession. Such a confession is some of the most probative evidence which can be admitted against a defendant. People v. Primm, 319 Ill.App.3d 411, 425 (1st Dist. 2000). Further, if a defendant passes a forged document, intent to defraud is presumed. See People v. Bokuniewicz, 160 Ill. App. 3d 270, 273 (2nd Dist. 1987).

Fourth, defendant's presentation of the check in an attempt to cash it at the Bank One constituted knowing delivery. See People v. Passantino, 67 Ill. App. 3d 469 (2nd Dist. 1979). Fifth, defendant intended to defraud, attempting to pass off the check that he altered as one made out voluntarily by Juanita. Intent to defraud can be inferred from the

23

circumstances surrounding the transaction. <u>People v. Kunce</u>, 196 Ill. App. 3d 388 (3rd Dist. 1990), cert. denied, 132 Ill. 2d 550 (1990).

Defendant argues that "the check <u>was</u> made by Juanita [C.]" (Deft. Br. 19, emphasis in original). But again, the check was not entirely made by Juanita, because she did not fill out the payee line. <u>See Murrah</u>, 255 Ill. App. 3d at 747, <u>Kubanek</u>, 370 Ill. at 649-50. Further, the People maintain that because Juanita was forced to write the check under great duress that she did not do so voluntarily and that she did not grant defendant any authority regarding the check.

Defendant claims this case is similar to <u>People v. Lindquist</u>, 97 Ill. App. 3d 894(3rd Dist. 1981). There, the defendant, an executor of an estate, improperly drew a check on estate funds for his own purposes and was convicted of forgery. <u>Id</u>. The Third District Appellate Court found that the defendant had the authority to draw checks on the estate account as the executor and that while it was wrong for the defendant to withdraw funds for his own purposes, it was not fraud to do so. <u>Id</u>.

The case at hand, however, is not remotely analogous to <u>Lindquist</u>. The executor in Lindquist voluntarily wrote checks to himself. Here, defendant threatened Juanita by saying he would "shove the pen in her ass," duct taped her legs, put his penis within an inch of her vagina and inserted his finger inside her vagina while the shaking the bed. (R. ZZ101-04, 151-53) Only then did Juanita sign the check as defendant demanded and then he told her exactly what to write. Further, the defendant in <u>Lindquist</u> filled out the entire check, whereas defendant here wrote his own name in the payee line. Defendant here did not have the authority to do so.

24

Therefore, after viewing the evidence in a light most favorable to the State, the People proved beyond a reasonable doubt that defendant knowingly delivered a document apparently capable of defrauding another with the intent to defraud. The People maintain that this Court should uphold defendant's conviction for forgery.

## II.

### THE PEOPLE'S CLOSING ARGUMENTS WERE PROPER AND THEREFORE, THE DEFENDANT WAS NOT DENIED HIS RIGHT TO A FAIR TRIAL.

Defendant contends that he was denied a fair trial by the prosecutor's closing arguments. (Deft. Br. 20-21) The People maintain that the comments were based on the evidence and the reasonable inferences drawn therefrom, and therefore were proper. Also, any error that may have occurred from the comments at closing was cured by the jury instructions and the comments were harmless given the evidence amassed against defendant.

The People maintain that defendant's argument is waived for appellate purposes. The Illinois Supreme Court has repeatedly held that to preserve an issue for appeal, an objection must be raised both at trial and in a post-trial motion. People v. Reed, 177 Ill. 2d 389, 404 (1997); People v. Enoch, 122 Ill. 2d 176, 186 (1988). Similarly, it is well settled that the propriety of statements made during closing argument is not properly preserved for appeal unless there is a timely objection made at trial and the comments are referred to with specificity in defendant's post-trial motion. People v. Surles, 126 Ill. App. 3d 216, 225 (1st Dist. 1984). Defendant failed to object at trial to the comments made at closing argument that he raises in his brief. Those arguments have been waived. Thus, defendant must show

25

both that there was plain error and that either (1) the evidence was closely balanced and that there was "prejudicial error," or (2) substantial rights are implicated and that the error affected the fairness of defendant's trial. People v. Herron, 215 Ill. 2d 167, 186-87 (2005). "In both instances, the burden of persuasion remains with the defendant." Id. Defendant has not met that burden. This argument was proper comment on the evidence and as such is allowable.

First, the evidence here was not closely balanced. Defendant admitted to Detective Doherty and in his handwritten statement that he assaulted Juanita and only after he assaulted her did she write out the check as he instructed. (R. 104, 153-56) Such confessions are among the most probative and damaging types of evidence that can be admitted against a defendant. Primm, 319 Ill. App. 3d at 425; People v. Hayes, 319 Ill. App. 3d 810, 818 (1st Dist. 2001). Additional evidence was also offered by the People, including DNA evidence and testimony of those working at Bank One when defendant attempted to cash the check. (R. YY137, 69-85) Therefore, the evidence was not closely balanced.

Second, defendant has failed to demonstrate any prejudice. It may be presumed on appeal that a properly instructed jury followed its instructions. People v. Speight, 153 Ill.2d 365, 373 (1992). The Illinois Supreme Court has held that "[e]rrors in opening statements or closing argument must result in substantial prejudice such that the result would have been different absent the complained-of remark before reversal is required." People v. Caffey, 205 Ill. 2d 52, 131 (2003); see also People v. Williams, 192 Ill. 2d 548 (2000), citing People v. Cloutier, 156 Ill. 2d 483 (1993). The Illinois Supreme Court did not find in any of those cases that remarks made by prosecutors in closing arguments impacted the fairness of the

26

proceedings in such as a way as to constitute plain error. The comments here did not alter the impact of the trial.

Further, defendant has failed to show that there was plain error because there was no error, given that the comments at closing were proper. It is well established that prosecutors are given wide latitude in closing arguments, and are allowed to comment on the evidence and draw all legitimate inferences therefrom, even if they are unfavorable to the defendant. People v. Kirchner, 194 Ill. 2d 502, 549 (2000); People v. Simms, 192 Ill. 2d 348, 396 (2000). A prosecutor's remarks will be grounds for reversal only when they result in substantial prejudice to the defendant. People v. Armstrong, 183 Ill. 2d 130, 145 (1998). To prove that substantial prejudice exists, the behavior must be particularly egregious and the defendant must establish that the challenged remarks constituted a material factor in the conviction such that the jury might have reached a different verdict absent the remarks. People v. Dinwiddie, 299 Ill. App. 3d 636, 645 (1st Dist. 1998); People v. Patrick, 298 Ill. App. 3d 16, 28 (1st Dist. 1998).

The People's statements during his closing argument were unquestionably proper. The People's argument that Juanita's actions while being sexually assaulted were not voluntary goes to the making of the document, an element of the offense. The People's statements concern only the circumstances surrounding the making of the check as those circumstances pertain to the elements of the offense. The People's statements did not lead the jury to believe that force was an element of the offense. At closing the People said, "it's her writing, he's the one that made that check. He just used her hands to do it" (R. AAA14-15) and that it was unreasonable to believe that Juanita had not been forced to write the check

27

(R. AAA55) Those statements go to the fact that Juanita did not freely give defendant authority to alter that check and take the money from her account. She did not voluntarily write the check because she was under force and the use of duress by the defendant speaks to his intent to defraud her. Both intent to defraud and alteration of the check are elements of the offense.

However, should this Court find the comments improper, the People maintain that they did not rise to the level of plain error. Improper remarks in the context of the closing argument can be considered plain error where the verdict would not have been the same had the improper remarks been omitted and real justice was denied. People v. Johnson, 218 Ill.2d 125, 143 (2006). Here, that was not the case. As stated, the earlier evidence offered against defendant was particularly strong and the comments did not alter the verdict.

Also, the jury was repeatedly instructed, before and after closing arguments, that closing arguments are not evidence and that they should disregard something an attorney says in his closing argument if it had not been proven up as evidence. (R. AAA3-4, 67) The jury instructions also specifically stated that closing arguments are not evidence. (C. 126) In addition, the trial court instructed the jury that "the law that applies to this case is stated in these instructions, and it is your duty to follow all of them" and that they were to determine the facts only from the evidence in the case. (R. AAA65) Further, the trial court recounted the elements of forgery for the jury after closing arguments but before the start of deliberations and it was clear that force was not an element of the offense. (R. AAA72)

Defendant cites to People v. Sutton, 316 Ill. App. 3d 874, 895 (1st Dist. 2000). (Deft. Br. 21) The Sutton case pertains to a prosecutor commenting that the defendant could just

28

"walk away" unless the jury returned a verdict of guilty of first degree murder. This Court found that it was error for the prosecutor to argue that the defendant could avoid imprisonment when the jury plays no role in imposing punishment and that the error as made more egregious because it inaccurately stated that punitive effect of the verdict. That case does not pertain to the issues in the present case.

In addition, the defendant failed to demonstrate that the supposed error made at the closing argument was so serious that it deprived him of a fair trial. At no point was the integrity of the judicial process in question. Herron, 215 Ill. 2d at 186. Even if this Court determines that the comments were improper, defendant has failed to show that plain error existed. The evidence proved defendant was proven guilty beyond a reasonable doubt, as discussed above. Because the evidence against defendant was not closely balanced, because he was not prejudiced and because he received a fair trial, there is no plain error.

## III.

**DEFENDANT HAS FAILED TO SHOW THAT THE ADMISSION OF THE VICTIM'S STATEMENT TO THE EMERGENCY ROOM DOCTOR CONSTITUTED PLAIN ERROR WHERE IT WAS PROPERLY ADMITTED UNDER THE MEDICAL TREATMENT/DIAGNOSIS EXCEPTION CODIFIED IN 725 ILCS 5/115-13; WHERE THE STATEMENT DID NOT VIOLATE DEFENDANT'S RIGHT TO CONFRONTATION UNDER CRAWFORD v. WASHINGTON; AND WHERE DEFENDANT HAS FAILED TO SHOW THAT ANY ERROR IN THE ADMISSION OF THE STATEMENT WAS NOT HARMLESS.**

Defendant contends that the trial court erred in allowing Dr. Lahti's testimony that Juanita told him in the emergency room that she had been "tied and raped" under the

29

common law medical treatment exception. (Deft. Br. 25) Defendant also argues that the admission of Juanita's statement violated his Sixth Amendment right to confrontation because Juanita did not testify at trial. (Deft. Br. 23) The People maintain that defendant, who neglected to preserve his claims for appellate review, has failed to show that the admission of Juanita's out-of-court statement constituted plain error where the statement was properly admitted under the medical treatment/diagnosis exception codified in 725 ILCS 5/115-13 (West 2000) and where Sixth Amendment jurisprudence establishes that the statement was nontestimonial, and therefore not barred under Crawford v. Washington. Finally, even if the statement was inadmissible under the statutory medical treatment/diagnosis exception and/or its admission violated defendant's right to confrontation, defendant has failed to meet his burden of showing prejudice where the record establishes its admission was harmless beyond a reasonable doubt. As a result, defendant's conviction for aggravated criminal sexual assault should be affirmed.

Defendant fails to inform this Court that he has procedurally forfeited the instant claims for appellate review. Prior to trial, defendant filed a motion *in limine* requesting that Juanita's out-of court statements be found inadmissible because they did not meet the requirements set forth in 725 ILCS 5/115-10.3, a hearsay exception for elder adults, and because the admission of Juanita's statements would be unconstitutional under Crawford v. Washington, 541 U.S. 36 (2004). (C.L. 92-93). At the hearing on the motion, the People argued that Juanita's statement to Dr. Lahti in the emergency room were admissible under the medical treatment hearsay exception. (R. XX 9) Defendant countered that the People's use of the medical treatment statute was an effort to sidestep the fact that Junaitia's statements

30

were inadmissible under the elder statute. The trial court concluded the medical treatment exception was applicable and permitted Dr. Lahti to testify that Juanita told him that she was "tied and raped." In addition to failing to inform this Court that his motion *in limine* did not raise the issue of the applicability of the medical treatment exception, defendant also neglects to notify this Court that he did not include in his post-trial motion the claims that Juanita's statement was inadmissible under the medical treatment hearsay exception or that its admission violated his right to confrontation pursuant to Crawford.

The law is clear that a defendant must object at trial and include an issue in a post-trial motion to preserve it. People v. Normand, 215 Ill. 2d 539, 544 (2005). Here, defendant did not include his evidentiary or constitutional claim in his post-trial motion. (C. 117-18) These claims are therefore forfeited and must be analyzed under the rubric of the plain error rule. Notably, by neglecting to inform this Court that his claims were procedurally forfeited and by not invoking the plain error doctrine, defendant consequently fails to demonstrate that the admission of Juanita's statement that she was "tied and raped" constituted plain error.

"Plain error encompasses those errors which are obvious from the record, which affect substantial rights of the accused, and which, if uncorrected, would be an affront to the integrity and reputation of the judicial system." People v. Campbell, 264 Ill. App. 3d 712, 725 (1st Dist. 1992), citing People v. Young, 128 Ill. 2d 1, 46 (1998). The plain error rule is not a "general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court." People v. Precup, 73 Ill. 2d 7, 16 (1978). Rather, it is "a narrow and limited exception to the general waiver rule. People v. Herron, 215 Ill. 2d 167, 177 (2005). As a result, the plain error rule bypasses

31

normal forfeiture principles and allows for a reviewing court to consider unpreserved error in two limited instances: (1) where the evidence is close, regardless of the seriousness of the error, or (2) where the error was so fundamental that the accused was denied a fair trial. Herron, 215 Ill. 2d at 186-187. Under both prongs, the burden of persuasion remains with the defendant. Herron, 215 Ill. 2d at 187. Hence, "the defendant must persuade the court that the error was prejudicial." People v. Nitz, 219 Ill. 2d 400, 410 (2006). Under plain error, even constitutional errors can be forfeited "if the error is not of such magnitude that it deprives the defendant of a fair trial." People v. Allen, 222 Ill. 2d 340, 352 (2006).

Under the closely balanced prong, defendant has the burden of showing that the evidence was so closely balanced, *and* that he suffered prejudicial error. See e.g. People v. Piatkowski, 2007 Ill. LEXIS 13, 18-19 (2007); People v. Johnson, 218 Ill. 2d 125, 141 (2005). Prejudicial error is found where the "error alone severely threatened to tip the scales of justice against him." People v. Herron, 215 Ill. 2d 167, 187 (2005); People v. Nitz, 219 Ill.2d 400, 410 (2006).

In the second instance, which is typically referred to as the fundamental unfairness prong, "the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." Id. at 187. "Plain error marked by 'fundamental unfairness' occurs only in situations which 'reveal breakdowns in the adversarial system,' as distinguished from 'typical trial mistakes.'" People v. Keene, 169 Ill.2d 1, 17 (1995). In other words, "what must be affected by the asserted error must be something "fundamental to the integrity of the judicial process." Keene, 169 Ill.2d at 17. Thus, to receive relief under the fundamental unfairness prong, a

defendant must establish that the plain error was so serious that it "prevented him from obtaining a fair trial." People v. Allen, 2006 Ill. Lexis 1079, *19-20 (2006). Under both prongs, the burden of persuasion remains with the defendant. Herron, 215 Ill. 2d at 187.

Significantly, before invoking the plain error exception, it is appropriate to determine whether error occurred at all. People v. Young, 128 Ill. 2d 1, 45 (1989). As stated, defendant raises both an evidentiary claim and constitutional objection to the admission of Juanita's statement to the emergency doctor. An examination of the record and relevant legally authority establishes that Juanita's statements were properly admitted. Recently, in People v. Melchor, the Illinois Supreme Court stressed "the long-recognized policy that 'cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort.'" People v. Melchor, 2007 Ill. LEXIS 861, *12-13 (June 7, 2007), quoting In re E.H., 224 Ill. 2d 172, 178 (2006). The Court explained:

> "'When a court is asked to evaluate the admission of out-of-court statements into evidence, the *firststep* is determining whether the statement passes muster as an evidentiary matter.' (Emphasis in original) E.H., 224 Ill. 2d at 179. If the proponent seeks to admit the statement pursuant to a statutory hearsay exception, the court must evaluate the statement to determine whether it meets the statute's requirements."
> Melchor, 2007 LEXIS 861, 13.

"Only once the statement has first been found admissible as an evidentiary matter should constitutional objections-including Crawford-based confrontation claims-be dealt

with." E.H., 224 Ill. 2d at 179-180. Applying this analytical flowchart, this Court must first

determine whether Juanita's statement was admissible under a hearsay exception.

### A.

**No Plain Error Occurred Where The Trial Court Properly Admitted The Statement By The Victim To The Emergency Room Physician Under 725 ILCS 5/115-13, The Medical Treatment/Diagnosis Exception To The Hearsay Rule, And Where Defendant Fails To Show That He Suffered Any Prejudice, Even If Error Was Committed.**

The People maintain that the trial court properly admitted the testimony of Dr. Lahti

that Juanita told him she had been "tied and raped." The admissibility of evidence is within

the sound discretion of the trial court, and its ruling will not be reversed unless there has been

an abuse of that discretion. People v. Williams, 181 Ill. 2d 392, 313 (1998). An abuse of

discretion will be found only "where the trial court's ruling is arbitrary, fanciful,

unreasonable, or where no reasonable person would take the view adopted by the trial court."

People v. Sutherland, 223 Ill. 2d 187, 272-73 (2006).

Defendant argues that the trial court erred in admitting Juanita's statements to Dr.

Lahti under the common law medical treatment hearsay exception because she did not go to

him for treatment, but was taken to the doctor by the police for evidence collection purposes.

(Deft. Br. 25) In making this argument, defendant claims that the trial court improperly

extended the scope of the hearsay exception to include a victim's statement simply because it

was made to a physician. (Deft. Br. 26) Defendant's reliance the parameters of the common

law hearsay exception relating to statements made to physicians for the purpose of receiving

34

medical treatment is entirely misplaced. The statement at issue was admissible under statutory hearsay exception found in 725 ILCS 115-13, which codified and expanded the medical treatment exception in cases involving criminal sexual assault and criminal sexual abuse.[1]   Section 115-13 provides:

> "In a prosecution for violation of Section 12-13, 12-14, 12-14.1, 12-15 or 12-16 of the 'Criminal Code of 1961' [720 ILCS 5/12-13, 720 ILCS 5/12-14, 720 ILCS 5/12-14.1, 720 ILCS 5/12-15 or 720 ILCS 5/12-16], statements made by the victim to **medical personnel for purposes of medical diagnosis or treatment** including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule." (Emphasis added.) 725 ILCS 5/115-13 (West 2000).

---

[1] Although the trial court in applying the medical treatment exception did not specifically refer to 735 ILCS 5/115-13, a trial judge is presumed to know the law and apply it properly. People v. Howery, 178 Ill. 2d 1, 32 (1997).   Moreover, the question on review is the correctness of the trial court's result, not the correctness of the reasoning upon which that result was based. People v. Thompkins, 121 Ill. 2d 401, 428 (1988).  As a result, this Court may affirm for any reason warranted by the record, regardless of the reasons relied on by the trial judge. People v. Cosby, 305 Ill. App. 3d 211, 220 (1st Dist. 1999).

35

The Appellate Court has held that this statute "is a codification of the firmly rooted common law hearsay exception allowing statements describing medical history, symptoms, pain, or sensations made for purposes of medical diagnosis or treatment" and that the assumption underlying both 115-13 and the common law exception "is that the desire for proper diagnosis or treatment outweighs any motive to falsify." People v. Roy, 201 Ill. App. 3d 166, 179 (4th Dist. 1990); see also People v. Davis, 337 Ill. App. 3d 977, 989 (1st Dist. 2003). A trial court is vested with discretion in determining whether the statements made by the victim were "reasonably pertinent to the victim's diagnosis or treatment." Davis, 337 Ill. App. 3d at 989-990, quoting People v. Williams, 223 Ill. App. 3d 692, 700 (3rd Dist. 1992).

Dr Lahti testified that he was working the night shift as a senior resident in the emergency room department of Christ Hospital in Oak Lawn on August 8, 2001. Juanita was admitted as a patient at approximately 10:00 that evening when she brought in by the police for an evaluation for a sexual assault. Dr. Lahti examined Juanita several hours later around 3:00 a.m. He said that he interviewed Juanita in an examination room in the emergency room and she told him that she was "tied and raped," although she did not state specifically what had been done to her. He testified that Juanita cried several times but did not appear disoriented or confused. Dr. Lahti noted that there was redness around Juanita's wrists and left ankle and identified photographs of both wrists and her ankle. After Juanita informed him that she had been "raped," Dr. Lahti performed a pelvic examination. He testified that her pelvic exam was normal but that in an older woman there could be sexual assault without physical evidence like bruising or tearing. In addition to performing a pelvic examination,

Dr. Lahti took a rape kit from Juanita, which included combing Juanita's head and pubic hair, taking swabs of her mouth, vagina and anus, and taking a blood sample. (R. ZZ6-22)

Defendant's allegation that Dr. Lahti was not acting as a physician, but acting as an arm of the government because he did not provide medical treatment to Juanita and only collected evidence for the police is wholly inaccurate. Dr. Lahti, as an emergency room doctor, would certainly have provided Juanita with medical treatment had he found any injuries that necessitated such treatment. The fact that his examination failed to reveal any injuries requiring actual medical treatment does not render it inadmissible under Section 115-13. Moreover, defendant ignores the fact that Dr. Lahti conducted a pelvic examination of Juanita after she told him she had been "raped." Indeed, Section 115-13 permits the admission of statements relating to the "the inception or general character of the cause or external source" of the condition to be treated or examined.

There is no question that Juanita's statement that she was "tied and raped" falls squarely under Section 115-13 and was, therefore, admissible at trial. In particular, Juanita's statement that she was "tied" explains the redness and bruising on her wrists and her ankle. And, her statement that she was "raped" explains the character or external source pertinent to the doctor's examination and diagnosis of whether she was sexually assaulted. Therefore, contrary to defendant's claim, Juanita's statement that she was "tied and raped" was "reasonably pertinent to the doctor's diagnosis or treatment." The fact that she did not sustained injuries serious enough to require actual medical treatment does not make her statement to Dr. Lahti inadmissible under Section 115-13.

Taking defendant's position to its logical conclusion, the prosecution could only avail itself of the medical treatment/diagnosis exception if the victim sustained injuries requiring actual medical treatment. However, defendant's interpretation ignores the fact the statutory codification of the medical treatment exception applies to all medical personnel, not just physicians, and it covers "diagnosis," not just treatment. In light of the language used in Section 115-13, the admission of a victim's statement that she was raped or sexually abused cannot be dependent on the existence of injuries that require actual medical treatment. In fact, defendant's interpretation is in direct violation of the legislature's clear intent to expand the scope of the exception in sexual assault and sexual abuse prosecutions. See People v. Lewis, 158 Ill. 2d 386, 389 (1994)(In order to determine legislative intent, the statute must be read as a whole, and all relevant parts must be considered.); People v. Fierer, 124 Ill. 2d 176, 188 (1988)("[A] court cannot read into a statute words which are not within the plain intention of the legislature as determined by the statute itself.")

The People's position is fully supported by People v. Rushing, 192 Ill. App. 3d 444 (4th Dist. 1989), where this Court rejected a similar argument. In Rushing, the defendant was convicted of two charges of aggravated criminal sexual abuse, which alleged the defendant committed acts of sexual conduct with the 9-year-old victim by touching her vaginal area with his finger and by having D.B. touch his penis with her hands. Id., 192 Ill. App. 3d at 446.

The defendant challenged the admission of the statements that the victim made to the pediatrician, who examined the victim one month after reporting the sexual abuse and nearly two years after the incident that gave rise to the charges. Specifically, the defendant

contended that the testimony of the pediatrician was in violation of section 115-13 because the details of the incident and the defendant's threat were not relevant to diagnosis and treatment. Significantly, the defendant also argued that statements were not admissible under Section 115-13 because the pediatrician was an examining physician and not a treating physician. In rejecting the defendant's argument, the Court held:

> "Defendant's interpretation of section 115-13 is incorrect. The interpretations which defendant cites are common law rules and not interpretations of the statute. Section 115-13 does not provide for a distinction between examining physicians and treating physicians. Instead, it provides that statements of sexual assault victims to medical personnel for purposes of 'diagnosis or treatment' shall be admitted. The reference to diagnosis or treatment evinces a legislative intent to apply this provision broadly and not to limit the testimony only to treating physicians." (Emphasis added.) Rushing, 192 Ill. App. 3d at 453.

In applying the statute to the facts before it, the Court determined that the victim's report of the acts and threat to the pediatrician "was reasonably pertinent to diagnosis or treatment." Id., 192 Ill. App. 3d at 453. The victim's mother took her to see a physician after the victim reported a vaginal discharge, which she described as being similar to the "goop" from the defendant's "private part." Id. The Court further concluded that in examining and treating such complaints of abuse, details of the sexual acts were pertinent and the threat was

39

relevant to the victim's state of mind and emotional condition. Id. The Court reasoned that "these are all matters which would reasonably be considered and relied upon by medical personnel in making any diagnosis or conclusion as to a patient's condition and proper course of treatment." Id.

Like in the instant case, the pediatrician in Rushing, examined the victim and did not find any injuries that required medical treatment. His examination was aimed at diagnosing whether the victim had been sexually abused. As such, Rushing provides clear precedent for the admission of Juanita's statements to Dr. Lahti under Section 115-13. Like the pediatrician in Rushing, Dr. Lahti examined Juanita in order to evaluate or diagnose whether she had been sexually assaulted. In informing the doctor that she was "tied and raped," Juanita was simply telling Dr. Lahti why she was in the emergency room so that he would know how to properly proceed with her examination and treatment. She had no motive to testify falsely—as is the assumption underlying the statutory exception—and undergo such a personally invasive examination. After receiving the information from Juanita, Dr. Lahti conducted pelvic exam. The doctor testified that the pelvic examination was normal but that in an older woman there could be sexual assault without physical evidence like bruising or tearing. Hence, Dr. Lahti's statement was properly admitted because it explained Dr. Lahti's examination of Juanita and constituted a statement made to medical personnel for purposes of medical diagnosis or treatment under.

Significantly, Illinois courts have consistently and uniformly applied 725 ILCS 5/115-13 to permit the admission a trial statements provided by sexual assault or sexual abuse victims to emergency medical personnel. See People v. Falaster, 273 Ill. App. 3d 694 (5th

Dist. 1995)(holding that the nurse's testimony regarding information she gathered while taking the victim's history, including the identification of her father as the perpetrator, assisted the doctor's diagnosis as to whether sexual assault occurred and how the trauma should be treated); People v. Denny, 241 Ill. App. 3d 345, 361 (4th Dist. 1993)(finding that testimony by emergency room physician and nurses that the victim told them that she was raped fell "within the statutory reach because such statements informed medical personnel both where to look and for what to look when they examined or treated this victim."); People v. Balle, 234 Ill. App. 3d 804, 818 (1st Dist. 1992)(finding the examining emergency room physician's testimony of the statement made to her by a child victim admissible pursuant to the medical personnel exception provision of section 115-13); People v. Coleman, 222 Ill. App. 3d 614, 625 (1st Dist. 1990)(finding that the trial court properly admitted the doctor's testimony that he asked the victim what happened and her response because it was well within the statutory exception). However, in some cases, statements identifying the offender have been found to be beyond the scope of the exception. Davis, 337 Ill. App. 3d at 990. Notably, in the instant case, Dr Lahti did not ask Juanita whether she could identity of the offender and Juanita did not reveal that the fact that she knew the identity of her offender.

Because Juanita's statement that she was "tied and raped" meets the requirements of Section 115-13, it was inherently reliable and admissible at trial. Defendant's complaint that Juanita only revealed she was sexually assaulted hours after the incident during police questioning and that the police took her to the emergency room for evaluation does not render Juanita statement to Dr. Lahti inadmissible under Section 115-13. There is no statutory requirement that the victim seek prompt medical treatment or diagnosis or that the

41

decision to seek medical attention constitute an independent decision without prompting from the police or other concerned individual. These facts are not relevant to the admissibility of Juanita's statements under the statutory exception but go to the weight that the statements should be given at trial.

The case of People v. Bailey, 177 Ill. App. 3d 679 (4th Dist. 1988), provides persuasive precedent. In that case, the defendant argued that Ill. Rev. Stat. Ch. 38, Para. 115-10-- which is a hearsay exception concerning child victims-- should be interpreted to codify the common law prompt complaint rule in rape cases. The Appellate Court rejected that argument by holding that in the absence of a statutory requirement that there be no unexplained delay, "it was the intent of the legislature that any evidence of delay in making the complaint will affect the weight, rather than the admissibility, of the evidence." Bailey, 177 Ill. App. 3d at 683; citing People v. Salas, 138 Ill. App. 3d 48, 56 (2nd Dist. 1985). Likewise, in light of the fact that Section 115-13 does not have a promptness requirement or a requirement that the victim independently seek medical treatment, such factors affect the weight, rather than the admissibility, of the evidence. See also Rushing, 192 Ill. App. 3d at 445 (A child-victim's statements to her pediatrician were found admissible under section 115-13 despite the fact that mother took the child to the pediatrician for a criminal sexual abuse evaluation.)

The preceding discussion firmly establishes that Juanita's statement to the emergency room doctor was properly admitted under 725 ILCS 5/115-13. As a result, defendant has failed to show error much less plain error.

However, even if the trial court's evidentiary ruling to admit Juanita's statement under Section 115-13 was erroneous, defendant fails to meet his burden of showing that such error was prejudicial, because any error was harmless. The admission of hearsay testimony is harmless error where there is sufficient competent evidence to convict the defendant. People v. Billingsley, 184 Ill. App. 3d 142, 147-148 (2nd Dist. 1989). In the context of plain error, under the first prong, defendant cannot show prejudice because the case was not <u>so</u> closely balanced that the error in admitting Juanita's statement "alone severely threatened to tip the scales of justice against him." See Herron, 215 Ill. 2d at 187.

As will be more thoroughly discussed later, other competent evidence was admitted at trial that overwhelmingly proved defendant guilt of aggravated criminal sexual assault. This is not a close case. Defendant confessed to forcing the victim to sign over a check to him by tying her up, threatened to "shove a pen up her ass" and digitally penetrated her with his index finger. Significantly, there was physical evidence that corroborated his statement. The police found the duct tape that defendant used; the victim's wrists and her left ankle were injured; defendant was found in possession of the fraudulent check at the bank. Additionally, defendant's admission of the sexual assault was corroborated by the presence of semen on the bedding and the DNA evidence that implicated defendant. Since the evidence was not closely balanced, any error here would be harmless. See People v. Sims, 192 Ill. 2d 592, 628 (2000).

Under the second prong, defendant cannot show that the admission of Juanita's brief statement constituted a breakdown of the adversarial system, depriving defendant of a fair trial. If error at all, the erroneous admission of Juanita's brief statement constitutes a "typical

43

trail mistake" and does not render defendant's trial fundamentally unfair. See <u>Keene</u>, 169 Ill.2d at 17.

In addition, this case is similar to <u>People v. Coleman</u>, 222 Ill. App. 3d 614, 625 (1st Dist. 1990), where this Court held that, where defendant's guilt was convincingly established, one line of testimony by a doctor that was admitted in error was harmless. In <u>Coleman</u>, this Court held that any error with respect to the admission of a doctor's testimony concerning her conversation with the victim constituted harmless error given the evidence amassed against defendant. <u>Id</u>. As in <u>Coleman</u>, the evidence here convincingly established defendant's guilt, rendering any possible error concerning one line of testimony harmless.

For the reasons stated above, Dr. Lahti's testimony regarding what Juanita told him in the emergency room was properly admitted under the hearsay exception codified in 725 ILCS 5/115-13. Even assuming some error was committed here, it would necessarily be harmless. As a result, defendant has not met his burden of persuasion under the plain error doctrine.

**B.**

**No Plain Error Occurred Where The Admission Of The Victim's Statement To The Emergency Room Physician Did Not Violate Defendant's Sixth Amendment Right To Confrontation Under <u>Crawford v. Washington</u> And Where, Even If Error Occurred, Defendant Fails To Meet His Burden Of Showing Prejudice Because The Admission Of The Statement Was Harmless Beyond A Reasonable Doubt.**

Defendant also argues that the admission of Juanita's statement violated his Sixth Amendment right to confrontation, because she did not testify at trial and her statement was

44

testimonial and, therefore, inadmissible under <u>Crawford v. Washington</u>, 541 U.S. 36, 59 (2004). However, Sixth Amendment jurisprudence establishes that the statement was nontestimonial, and therefore not barred under <u>Crawford</u>. Furthermore, even if the statement was constitutionally inadmissible, defendant fails to meet his burden of showing prejudicial error under the plain error doctrine where the record establishes the admission of Juanita's statement to the emergency room physician was harmless beyond a reasonable doubt.

The Sixth Amendment to the United States Constitution provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." U.S. Const., amend. VI. In <u>Crawford</u>, the United States Supreme Court realigned the scope and reach of the Confrontation Clause's procedural protections in a manner consistent with the original intent of our Framers. Prior to <u>Crawford</u>, the Court had settled on an understanding of the Confrontation Clause as "condition[ing] the admissibility of <u>all</u> hearsay evidence on whether it falls under a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.'" (Emphasis added) <u>Crawford</u>, 541 U.S. at 60, citing <u>Ohio v. Roberts</u>, 448 U.S. 56, 66, 100 S. Ct. 2531 (1980). <u>Crawford</u>, however, recognized that the right of the accused "to be confronted with the witnesses against him" affords "a procedural rather than a substantive guarantee." The Clause "commands that reliability be assessed in a particular manner; by testing in the crucible of cross-examination." <u>Crawford</u>, 541 U.S. at 61.

Pursuant to principles laid out in <u>Crawford</u>, the constitutional protections of the Confrontation Clause now reach only to out of court statements that are "testimonial," leaving "nontestimonial" statements to regulation by statutory and/or common law hearsay

45

principles of the various States. <u>Crawford</u>, 541 U.S. at 68. <u>See also</u> <u>Davis v. Washington</u>, 126 S.Ct. 2266, 2274 (2006). In the instant case, as will be demonstrated below, the challenged statement made to the emergency room physician was "nontestimonial" and, therefore, the introduction of the statement did not offend the Confrontation Clause and was properly admitted.

The <u>Crawford</u> Court found <u>both</u> the historical context which gave rise to the common law right of confrontation in the first instance <u>and</u> the explicit constitutional text of the Confrontation Clause itself by which the Framers chose to express the right they sought to enshrine to be integral, component characteristics of a "testimonial" statement.

With respect to the constitutional claim, the linchpin of this issue involves ascertaining whether or not the contested statements are "testimonial" under <u>Crawford</u> and its progeny, <u>Davis v. Washington</u>, 126 S.Ct. 2266 (2006). The <u>Crawford</u> Court concluded that the history underlying the "common-law right of confrontation" and text of the Confrontation Clause itself "reflect[] an especially acute concern with a specific type of out-of-court statement": "testimonial" statements. <u>Crawford</u>, 541 U.S. at 42-52.

With respect to the "historical background of the Clause," <u>Crawford</u> concluded that the Framers enacted the Confrontation Clause to ensure that our common-law, adversarial understanding of criminal procedure was enshrined and, thereby, protected against the civil or continental tradition of "examination in private by judicial officers" (<u>Crawford</u>, 541 U.S. at 43, citing 3 W. Blackstone, Commentaries on the Laws of England 373-374 (1768)) that had crept into the criminal law of our ancestors. <u>Id.</u> at 43-50. The <u>Crawford</u> Court concluded that "the principal evil at which the Confrontation Clause was directed was the civil-law

46

mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused." Id. at 50. "It was these *practices* * * * that English law's assertion of a right to confrontation was meant to prohibit; and that the founding-era rhetoric decried." (Emphasis added.) Id. at 50.

Thus, the Crawford Court identified from the "historical background" of the Confrontation Clause the "core concerns" of the Framers in enacting the Confrontation Clause: "the civil law abuses [which] the Confrontation Clause targeted." Crawford, 541 U.S. at 51. In other words, the "use of ex parte examinations as evidence against the accused" and the "modern practices with closest kinship to the abuses" (Crawford, 124 S. Ct. at 1374), are the "core concerns" against which the Confrontation Clause serves to guard.

After identifying the true "core concerns" of the Confrontation Clause, the Crawford Court concluded, logically, that "not all hearsay implicates the Sixth Amendment's core concerns." Id. at 51. Thus, the Court turned to the explicit text and, thereby, the manner in which the Framers intended to procedurally guard against these "core concerns." The Court noted that the Framers chose to limit the procedural reach of the Clause's coverage to "'witnesses' against the accused – in other words, those who 'bear testimony'. 1 N. Webster, an American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' Ibid." Id. at 51. The constitutional text itself was employed by the Framers to target its "focus" to the "core concerns" identified by the "historical background" out of which the Clause arose.

Thus, the Crawford Court laid out the framework for identifying "testimonial"

47

statements—those statements that "implicate[] the Sixth Amendment's core concerns." Both the "historical background" and the constitutional text itself employed by the Framers comprise significant components of a statement deemed to be "testimonial" and, therefore, protected by the Confrontation Clause. It is only with "testimonial" hearsay statements that the "accused" is afforded the categorical procedural right to confront the declarant as a means to counteract the "modern practices with closest kinship to the abuses" of "us[ing] ex parte examinations as evidence against the accused."

Thus, somehow, an emerging definition of "testimonial" must entail both these component parts: the "historical background" and the constitutional text itself. In other words, the scope and reach of the Clause's procedural protections in terms of identifying hearsay which must be subjected to the right to confront are limited to situations where a "witness against the accused" "bears testimony" in response to a particular type of "practice": "the involvement of government officers in the production of testimony with an eye toward trial." Id. at 56, n. 7. It is only the end result of these two simultaneous events—a "specific type of out-of-court statement" which the Court termed "testimonial." Id. at 51. At a minimum, however, the Court stated that the term "testimonial" covers "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68.

Crawford laid out three "formulations" in an effort to encapsulate an out of court statement that somehow encompasses the twin components identified by the Court to be the "core concerns" of the Clause. Moreover, the "formulations" proffered by the Crawford Court "all share a common nucleus and then define the Clause's coverage at various levels of

abstraction around it." Id. at 52. These "formulations," distilled to their common "nucleus,"
provide a general framework to determine which "modern practices share the closest kinship
to the abuses at which the Confrontation Clause was directed" (Id. at 68) and, thus, produce
"testimonial" statements.

These three "formulations" are as follows:

> (1) "ex parte in–court testimony or its functional equivalent–
> that is, material such as affidavits, custodial examinations,
> prior testimony that the defendant was unable to cross-
> examine, or similar pretrial statements that declarants would
> reasonably expect to be used prosecutorially. (citation
> omitted)
>
> (2) extrajudicial statements *** contained in formalized
> testimonial materials, such as affidavits, depositions, prior
> testimony, or confessions (citation omitted); or
>
> (3) statements that were made under circumstances which
> would lead an objective witness reasonably to believe that
> the statement would be available for use at a later trial."
>
> (citation omitted). Crawford, 124 S. Ct. at 1364.

The United States Supreme Court next fine-tuned the definition of "testimonial"
within the context of police interrogations in its subsequent decision in Davis v. Washington,
126 S.Ct. 2266 (2006). In Davis, and the companion case of Hammon v. Indiana, addressed
within the Davis decision, the Court took up the more specific question of which particular

"statements taken by police officers in the course of interrogations"—identified by <u>Crawford</u> as a generalized category of "testimonial" statements, were "testimonial" in specific. The two cases under consideration "require[d] [the Court] to determine more precisely which police interrogations produce testimony." <u>Davis</u>, 126 S.Ct. at 2273.

The <u>Davis</u> Court disavowed any effort of "attempting to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as testimonial or nontestimonial." <u>Davis</u>, 126 S.Ct. at 2273. Moreover, the Court made clear that its holding was limited to statements generated from police <u>interrogation</u>: "our holding today makes it unnecessary to consider whether and when statements made to someone other than law enforcement personnel are 'testimonial.'" <u>Davis</u>, 126 S.Ct. at 2274, n. 2. Limited to the specific context of police interrogations, the <u>Davis</u> Court issued the following holding:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."
>
> <u>Davis</u>, 126 S.Ct. at 2273-2274.

Thus, <u>Davis</u> establishes that not all statements generated from police interrogation—one

of the broad categories of "modern practices" identified by the Crawford Court—are "testimonial." In Davis, a 911 operator learned from Michelle McCottry that she had been assaulted by her former boyfriend, who had just fled the scene. Id., 126 S.Ct. 2271. The Davis Court assessed the objective circumstances of the exchange between the victim and the 911 operator. Its assessment of those circumstances could be easily substituted for the circumstances of the instant case:

> "We conclude from all this that the circumstances of McCottry's interrogation objectively indicate its primary purpose was to enable police assistance to meet an ongoing emergency. She simply was not acting as a witness; she was not testifying. What she said was not "a weaker substitute for live testimony." Id. at 24.

Recently, the Illinois Supreme Court took on the task of interpreting the decisions handed down in Crawford and Davis. See People v. Stechly, 2007 Ill. LEXIS 452, *52-55 (April 19, 2007). After examining the holdings in these to cases, the Stechly Court determined that there are two components to a testimonial statement: 1) solemnity, which is established by the potential severe consequences of lying, and 2) the statement must be intended to establish a particular fact, which the Illinois Supreme Court found would be the witness acting in a manner analogous to a witness at trial, describing or giving information regarding events which had previously occurred. Stechly, 2007 Ill. LEXIS 452, *52-55. The Stechly Court also concluded that the focus of the testimonial analysis depends on whether or not the questioning was made by a government officer. In this respect, the Court stated:

> "It is clear, therefore, that when the statements under
> consideration are the product of questioning by the police (or
> those whose "acts [are] acts of the police" (Davis, 547 at n.2 *
> * *)), we must focus on the intent of the questioner in eliciting
> the statement. Moreover, our evaluation of that intent must
> rely on the objective circumstances, not testimony from the
> officer as to his actual intent." Stechly, 207 Ill. LEXIS 452,
> *60.

However, the Court held "that outside of the context of statements produced in response to
government interrogation, it is the declarant's perspective which is paramount in a
testimonial analysis." Stechly, at *72. The Court explained this analysis is also an objective
one:

> There is no reason to believe that the applicability of the
> confrontation clause would depend on objective
> manifestations of intent when the statement is the product of
> police interrogation but would depend on actual subjective
> intent outside of this context. Accordingly, in our view, the
> proper question is not whether the declarant actually did
> intend or foresee that his statement would be used in the
> prosecution. Rather, the question is whether the objective
> circumstances indicate that a reasonable person in the
> declarant's position would have anticipated that his statement

52

likely would be used in prosecution." <u>Stechly</u>, at *72-73.

Significantly, the Court also concluded that the declarant's age is "one of the objective circumstances to be taken into account in determining whether a reasonable person in his or her circumstances would have understood that their statement would be available for use at later trial. <u>Stechly</u>, at *72-73. The Court further held that the determination whether a statement is testimonial is made on a case-by-case basis, because "[e]ach case must be resolved on its own merits, and a pertinent factor in one case may not carry much weight in another." <u>Stechly</u>, at *79-80.

In the instant case, Juanita's statement that she was "tied and raped" is not testimonial under either analysis. First, contrary to defendant's position, Dr. Lahti cannot be considered an arm of the government since he was not acting as an agent of the police. He was not a not a governmental or investigating officer, and, as a result, Juanita's statement was not elicited during a "police" interrogation. There is no evidence that Dr. Lahti position as the senior resident in the hospital rendered him an agent of the police. Moreover, the fact that Dr. Lahti elicited a generic response and did not ask any follow up questions fails to support the conclusion that he was conducting an interrogation aimed at producing statements to be used at a later trial. To the contrary, the information elicited by Dr. Lahti served the purpose of identifying what medical diagnosis or treatment was needed.

In <u>Stechly</u>, the court recognized that not all mandated reporters act as governmental agents. <u>Stechly</u>, 2007 Ill. LEXIS at 85-86. In spite of defendant's efforts to paint this emergency medical provider as an arm of the prosecution, it was simply not the case. (Deft. Br. 26) Dr. Lahti could not anticipate that Juanita would have a stroke and suffer from

53

dementia prior to trial and, therefore, be unavailable to be cross-examined herself as required by Crawford. (R. YY42) What Dr. Lahti simply did was render essential medical care to the victim. He did not ask follow up questions after she said she was tied and raped. He was not conducting and interrogation of the victim in order to preserve testimonial evidence against defendant for use later during his prosecution. He was simply trying to ascertain information from the victim that would assist him in the course of his medical treatment or diagnosis.

Defendant also claims that Dr. Lahti was not treating Juanita because she had not previously complained of pain or asked to see a doctor. (Deft. Br. 25) Detective Doherty testified, however, that when he spoke with Juanita after defendant said he duct taped her to the chair, Juanita's "demeanor changed completely. She became very upset. I then realized that I needed to get her to a hospital for a physical evaluation." (R. ZZ97) Juanita was taken to the hospital because Detective Doherty was concerned that she was in need of medical treatment based on her mental state because she was visibly upset. Here, Dr. Lahti treated the victim as his patient. He thoroughly examined her. In contrast, Nurse Grote in Stechly never examined the patient. Stechly, 2007 Ill. LEXIS at 84. The fact Dr. Lahti's examination showed that no treatment was needed does not render the victim's statement testimonial in nature, nor does it make Dr. Lahti and arm of the prosecution.

In the same vein, defendant attempts to convince this Court that Dr. Lahti did not just medically treat Juanita because he took evidence from her for a rape kit. (Deft. Br. 25-26) By suggesting that the doctor saw Juanita only "for evidence collection purposes" (Deft. Br. 25), defendant attempts to confuse this Court. It is true that Dr. Lahti prepared a sexual assault evidence kit. This, however, was physical evidence and therefore has nothing to do with the

Confrontation Clause. What defendant attempts to do, however, is to capitalize on the fact that Dr. Lahti participated in the preservation of physical evidence in an effort to convince this Court that he had no medical concerns with respect to the victim. Their verbal exchanges with the victim were, according to defendant, solely conducted in order to produce formal *ex parte* evidence against defendant. This claim is simply wrong. Dr. Lahti was primarily concerned with the victim's medical well-being and he was not conducting a Crawford-type interrogation as an arm of the prosecution. In short, the verbal interactions with Dr. Lahti took place for medical, not prosecutorial purposes, and the fact that the doctor later collected physical samples for testing does not change that. It simply cannot be said that he acted as an "investigative and prosecutorial" government official and conducted the type of formalized interrogation of the victim that the Crawford Court requires to render an out-of-court statement constitutionally "testimonial."

Having established that Dr. Lahit was not an agent of the police, under Stechly's second test, it is clear that the objective circumstances indicate that a reasonable person in Juanita's position would not have anticipated that her statement likely would be used in a prosecution. Stechly, at *72-73. In the present case, as in Davis, Juanita was not "acting as a witness." Based upon the objective circumstances of her exchange with Dr. Lahti, she was certainly was not "bearing witness" against the accused. Juanita was acting as an injured senior citizen in the need of assistance. The primary purpose of the exchange between the emergency room doctor and Juanita was to provide the doctor sufficient information for adequate examination and treatment.

55

As stated earlier, the <u>Stechly</u> court found that "the age of the declarant is one of the objective circumstances to be taken into account in determining whether a reasonable person in his or her circumstances would have understood that their statement would be available for use at a later trial." <u>Id</u>. at 88. Juanita here was 75 years old. She was an elderly victim, and that factor is one of the objective circumstances to be taken into account here. Her age, along with the fact that she was emotionally upset and crying during the doctor's examination, establishes that when she revealed to the doctor that she was "tied and raped," she did not do so with the intent that her statement be used later at trial. She did not elaborate on the sexual assault or identify the perpetrator.   In fact, the evidence establishes she was reluctant to event talk with the police about the "rape."

Bearing in mind these objective circumstances, Juanita was not "acting as a witness" or "bearing witness" against the accused and her statement to Dr. Lahti was not made to establish the particular fact. Therefore, her statement does not fall within the core category of *ex parte* testimonial statements that the Court was concerned with in <u>Crawford</u> nor does it have either component required by <u>Stechly</u>. The objective circumstances of the exchange between Juanita and Dr. Lahti could not reasonably lead her to believe she was doing anything other than providing relevant information for medical treatment. She certainly was not acting as a "witness" by providing "a solemn declaration or affirmation made for the purpose of establishing or proving some fact."   She was a 75-year-old woman whose demeanor changed when she was asked about what defendant did to her and was taken to the hospital by a concerned detective. She did not offer any further information after saying she had been tied and raped. She could not have known that her statement would be used at trial,

and a reasonable person in her position would not have thought so either. For these reasons, the contested statement does not satisfy the requisite components of a "testimonial" statement. As such, the trial court properly permitted Dr. Lahti's testimony.

Opinions from other jurisdictions support the People's position that Juanita's statement to Dr. Lahti was nontestimonial. In People v. Vigil, 127 P.3d 916 (Colo. 2006), the Supreme Court of Colorado determined that the child-victim's statement to the doctor were not testimonial because the questioning of the child was to determine his injuries, rather than as an agent of the police. In making this determination, the Vigil Court noted that courts which have analyzed the police interrogation issue in terms of questioning by doctors have reached the conclusion that the statements elicited by doctors were nontestimonial because "a doctor is questioning the child for purpose of providing diagnosis and treatment, rather than eliciting the child's testimony for trial." Vigil, 127 P.3d at 923. (See cases cited therein).

In determining whether the child's statements were testimonial in the case before it, the Vigil Court stated:

> "Although each factual scenario must be judged on its own
> merits, the facts of this case are more like those in the cases
> where courts found a child's statements to a doctor to be non-
> testimonial. As the doctor testified at trial, his purpose in
> questioning the child was to determine whether the child
> would 'say something that could help [medical personnel]
> understand what the potential injuries were.' The child's
> responses helped the doctor develop his opinion regarding

57

whether a sexual assault had occurred and how best to treat the child. Thus, rather than being an agent of the police, the doctor's job involved identifying and treating sexual abuse. The fact that the doctor was a member of a child protection team does not, in of itself, make him a government official absent a more and controlling police presence * * *In fact, the police officer in the instant case testified that she was not involved in the medical examination or in the room when the doctor performed the examination." Vigil, 127 P.3d at 923-924.

Hence, the court found that "from the perspective of an objective witness in the child's position, it would be reasonable to assume that this examination was only for the purpose of medical diagnosis, and not related to the criminal prosecution." Vigil, 127 P.3d at 926.

Like in Vigil, in the instant case, Dr. Lahti elicited from Juanita, a 75-year-old woman, a generic statement that she was "tied and raped," which was sufficient for him to determine what examination he must perform and the nature of the diagnosis to be made. Dr. Lahti did not ask any follow questions concerning the detail of the sexual attack or the identity of the offender. Moreover, the mere fact that he was obligated to perform a rape kit does not, in and of itself, make him a government official absent more and controlling police presence. Dr. Lahti testified that only a nurse was present during the examination. These circumstances clearly demonstrate that from the perspective of an elder adult's position, it would be reasonable to assume that the examination in the instant case was only for the

58

purpose of medical diagnosis, and not related to the criminal prosecution. See also People v. Cage, 155 P.3d 205, 207-208 (Cal. 2007)(In order to diagnose the nature of the wound, the doctor asked the single question of "What happened?" The victim responded that his grandmother held him down and cut him. Court found that the primary purpose of the physician's question, objectively considered, was not to obtain proof of a past criminal act, or the identity of the perpetrator, for possible use in court, but to deal with a contemporaneous medical situation that required immediate information about what caused the victim's wound. Hence, the Court concluded that the child's response was nontestimonial.)

Even assuming, *arguendo,* there was some Confrontation Clause violation here, defendant has failed to meet his burden of demonstrating prejudice under the plain error doctrine, because such a violation constitutes harmless beyond a reasonable doubt. Crawford violations are subject to harmless-error analysis. People v. Patterson, 217 Ill. 2d 407 (2005). The test is whether it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained. Patterson, 217 Ill. 2d at 428.

In re E.H. the Court noted the difference in the standards of review for evidentiary error and constitutional errors and stated that there are exist "a narrow set of cases in which the admission of the same evidence is harmless if considered as an evidentiary error, but not harmless if evaluated pursuant to the constitutional error standard." In re E.H.. 224 Ill. 2d 172, 181 (2006).

The case at hand does not fit into what our Supreme Court described as "a narrow set of cases" which have sufficiently strong evidence to meet the evidentiary harmless standard but not the constitutional harmless standard. As such, defendant cannot meet his burden

59

under the closely balanced prong of the plain error rule. Indeed, the evidence against defendant was overwhelming. Defendant confessed to sexually assaulting Juanita and forcing her to sign the check. (R. 104, 153-56) Such confessions are among the most probative and damaging types of evidence that can be admitted against a defendant. People v. Primm, 319 Ill. App. 3d 411, 425 (1st Dist. 2005); People v. Hayes, 319 Ill. App. 3d 810, 818 (1st Dist. 2001). As detailed above, defendant confessed to these crimes in a handwritten statement, detailing how he bound Juanita's ankles with tape, picked up her feet, threatened to "shove a pen up her ass" and pretended to do so, placed his penis on her thigh one inch from her vagina and put his index finger in her vagina while shaking her bed. (R. ZZ151-54) The statement was published to the jury and corroborated by physical evidence, including a semen stain on Juanita's nightgown and defendant's profile, found in one of 190,000 black individuals, was found on three genetic markers on that stain. (R. YY127, 136) Also, the check with defendant's fingerprint and the testimony of those working at Bank One when defendant attempted to cash the check further corroborates the veracity of defendant's confession. (R. YY137, 69-85) Hence, contrary to defendant's characterization of the evidence, this is not an identification case. In addition, the trial court directed out the counts against defendant regarding penile penetration and the jury was instructed only on the counts pertaining to digital penetration of Juanita. (R. ZZ169-71) The overwhelming nature of the evidence presented against defendant renders the alleged Crawford violation harmless beyond a reasonable doubt. As such, defendant has failed to show that the evidence was so closely balanced that the error in admitting error "alone severely threatened to tip the scales of justice against him." See People v. Herron, 215 Ill. 2d at 187.

Further, there was no breakdown of the adversarial system as required to satisfy the second prong of the plain error test. As stated earlier, "[p]lain error marked by 'fundamental unfairness' occurs only in situations which 'reveal breakdowns in the adversarial system,' as distinguished from 'typical trial mistakes.'" People v. Keene, 169 Ill.2d 1, 17 (1995). In other words, "what must be affected by the asserted error must be something "fundamental to the integrity of the judicial process." Dr. Lahti's testimony was one isolated statement over the course of defendant's trial and it certainly did not impact the fairness of defendant's trial. The admission of Juanita's brief and generic statement constitutes a "typical trial mistake" and did not cause a breakdown of the adversarial system in defendant's trial. Defendant received a fundamentally fair trial.

In conclusion, the People maintain that defendant has waived this argument and has not demonstrated plain error. Defendant has failed to even show that error occurred because Dr. Lahti's testimony that Juanita told him in the emergency room that she had been "tied and raped" was properly admitted under 725 ILCS 5/115-13 (West 2000). Moreover, Juanita's statement was nontestimonial and therefore did not violate defendant's right to confrontation pursuant to Crawford and its progeny. Even assuming Crawford was violated, defendant fails to meet his burden of showing that he was prejudiced where the error was harmless beyond a reasonable doubt and constituted a "typical trial mistake" that did not render his trial fundamentally unfair. Since defendant fails to show plain error, this Court should affirm defendant's conviction for aggravated criminal sexual assault.

61

IV.

## THE TRIAL COURT PROPERLY SENTENCED DEFENDANT TO CONSECUTIVE TERMS OF 30 YEARS AND 5 YEARS IMPRISONMENT.

Defendant claims that he was denied a fair sentencing hearing on his conviction for aggravated criminal sexual assault for several reasons, including the fact that the People read the facts of a prior case in which defendant pled guilty from a police report, the People argued Juanita's age as an aggravating factor and defendant's belief that the court failed to consider mitigating factors. (Deft. Br. 32) The People maintain that defendant's sentence must not be disturbed where the trial court considered the proper factors in sentencing defendant, where the sentence was within the statutory limits and where the forty-four year sentence imposed was a proper exercise of the trial court's discretion.

First, defendant concedes that he failed to object both when the trial court considered factors in aggravation, including Juanita's age, and when the trial court considered the factors in aggravation and mitigation. (Deft. Br. 33) Defendant further admits that the record does not reflect what was included in the motion to reconsider sentence. (Deft. Br. 33) That motion is not part of the record. As discussed above, a defendant must object at trial and include an issue in a post-trial motion to preserve it. People v. Normand, 215 Ill. 2d 539, 544 (2005). Here, defendant did not object and there is no post-sentencing motion included in the record that raises issues from sentencing. (C. 117-18) It is well settled that an appellant bears the burden of preserving a sufficient record for review and any doubts arising from an incomplete record will be resolved against the appellant. People v. Ranstrom, 304 Ill. App. 3d 664, 672 (1st Dist. 1999), citing People v. Hinton, 249 Ill. App. 3d 713, 718 (3rd Dist.

62

1993). Sentencing issues not preserved by the filing of a written post-sentencing motion in compliance with 730 ILCS 5/5-8-1(c) are considered waived. People v. Reed, 177 Ill. 2d 389, 395 (1997); People v. Casillas, 195 Ill. 2d 461, 494 (2000)(finding that consideration of prison records at sentencing was waived when not raised in a post-trial motion). This issue is therefore waived.

Waived issues can only be reviewed under plain error, which is reserved for those instances where the evidence was closely balanced or of such a magnitude that it denied defendant a fair trial. People v. Herron, 215 Ill. 2d 167, 168 (2005). Under the closely balanced prong, defendant has the burden of showing that the evidence was closely balanced, *and* that there was prejudicial error. See e.g. People v. Johnson, 218 Ill. 2d 125, 141 (2005)(emphasis added). Defendant has failed to show that here. As discussed previously, the evidence, including defendant's confession and the DNA evidence, was not closely balanced. See People's Arg. II, infra. Further, the People maintain any alleged error here was not of such a magnitude that defendant was denied his fundamental right to a fair trial. Therefore, there was no plain error.

Should this Court address this issue, it is well established that a trial court's judgment as to the appropriate punishment is entitled to great deference. People v. Beals, 162 Ill. 2d 497, 511 (1994). A sentence will not be altered on review absent a showing that the punishment imposed constitutes a clear abuse of discretion. Id., 162 Ill. 2d at 512. A reasonable judgment as to a proper sentence must be based upon the particular facts of each case, and the trial court is in the best position to judge the weight of the evidence at each

63

sentencing hearing. People v. Jones, 168 Ill. 2d 367, 373 (1995); People v. Smith, 258 Ill. App. 3d 1003, 1028 (1st Dist. 1994).

Whenever a sentence falls within the statutorily mandated guidelines, it is presumed to be proper, and will not be overturned unless there is an affirmative showing that the sentence varies greatly from the purpose and spirit of the law or manifestly violates constitutional guidelines. People v. Boclair, 225 Ill. App. 3d 331, 335 (1st Dist. 1992). In the case at hand, defendant was convicted of aggravated criminal sexual assault, which is a Class X felony pursuant to 720 ILCS 5/12-14(d)(1)(West). Under 730 ILCS 5/5-8-1(a)(3)(West 2000), the maximum sentence for a Class X felony was 30 years imprisonment. Forgery is a Class 3 felony. 720 ILCS 5/17-3(d). The maximum sentence for a Class 3 felony is 5 years imprisonment. 730 ILCS 5/5-8-1(a)(6). Defendant was sentenced to 30 years imprisonment on the aggravated criminal sexual assault conviction and five years imprisonment for fraud. His sentence fell within the statutory guidelines.

1.

### The trial court properly considered defendant's prior conviction.

Defendant argues that the trial court improperly considered the facts of a previous conviction that the People presented from a police report. (Deft. Br. 32) The People maintain that defendant has waived this issue and that the trial court acted properly.

In aggravation the People presented defendant's prior conviction from 1993, a case in which he pled guilty to attempted robbery and aggravated battery of an 88-year-old woman. (R. DDD7) The People read the facts of the case, including the age of the victim, from a

police report. (R. DDD7-8)  Defendant talked his way into the victim's apartment, asked for money, slapped the victim when she refuse and took her into her bedroom. (R. DDD7-8)

The People maintain that this aggravation was properly admitted.  In <u>People v. LaPointe</u>, 88 Ill. 2d 482 (1981), the Illinois Supreme Court held,

> "In Illinois, too, we have long held that the judge in determining the character and extent of punishment is not limited to considering only information which would be admissible under the adversary circumstances of a trial. While it must exercise care to insure the accuracy of information considered and to shield itself from what might be the prejudicial effect of improper materials 'the court is not confined to the evidence showing guilt, for that issue has been settled by the plea. The rules of evidence which ordinarily obtain in a trial where guilt is denied do not bind the court in its inquiry. It may look to the facts of the [crime], and it may search anywhere, within reasonable bounds, for other facts which tend to aggravate or mitigate the offense."

<u>LaPointe</u>, 88 Ill. 2d at 494-95 (citations omitted).

Hearsay evidence is not *per se* inadmissible.  <u>People v. Aleman</u>, 355 Ill. App. 3d 619, 627 (2nd Dist. 2005)(finding that the trial court did not err at sentencing when considering testimony by police officer regarding statements he took from victims where his testimony was based on his official investigation).  Hearsay is admissible at sentencing if it is relevant



and reliable, and the determination of whether evidence is relevant and reliable is left to the discretion of the sentencing judge. People v. Hall, 194 Ill. 2d 305, 352 (2000), citing People v. Jackson, 145 Ill. 2d 43, 115 (1991).

Further, the Illinois Supreme Court has held that, during the hearing in aggravation and mitigation, "the trial court may consider . . . a police report of prior convictions." People v. Dennis, 47 Ill. 2d 120, 134-35 (1970), cert. denied, 91 S. Ct. 2212 (1971). In Dennis, the Illinois Supreme Court found that consideration of a police report of the defendant's prior convictions during the sentencing hearing because strict evidentiary rules do not apply. Id. The same is true in the case at hand. The People maintain that the trial court acted well within its discretion in finding the police report relevant, reliable and therefore admissible.

In challenging the reliability of the police reports, defendant relies on Crawford v. Washington, 541 U.S. 36 (2004), to argue that because the evidence was not provided through live testimony, he was denied the opportunity to rest its trustworthiness under "the crucible of cross-examination." (Deft. Br. 34) Defendant's Crawford claim has absolutely no merit. Crawford rests on the Confrontation Clause of the Sixth Amendment, which the United States Supreme Court has held is a trial right and does not apply to sentencing. Williams v. New York, 337 U.S. 241 (1949). In United States v. Roche, 415 F.3d 614, 618 (7th Cir. 2005), the Seventh Circuit held that Crawford does not render hearsay inadmissible once guilt has been established. See also United States v. Miller, 450 F.3d 270, 273 (7th Cir. 2006). In the instant case, defendant's guilt was clearly established at trial, before the sentencing hearing. Therefore, the Sixth Amendment does not apply at his sentencing hearing, and Crawford in no way bars the admission of evidence in question.

Defendant also relies on <u>People v. Stoutenborough</u>, 64 Ill. App. 3d 489, 493-94 (4th Dist. 1978), for the proposition that allegations of an offense or records of an arrest is insufficient unless presented by firsthand testimony of the witnesses involved. (Deft. Br. 34-35) <u>Stoutenborough</u>, however, concerns only allegations of other crimes for which the defendant was never convicted and it was unclear whether indictments were pending. <u>Id</u>. at 492. The <u>Stoutenborough</u> court also noted that "a court is not bound by the usual rules of evidence" and stated that one of the problems of considering evidence of other offenses at sentencing if the danger that defendant may be taken by surprise by allegations of conduct. <u>Id</u>. at 493. Defendant could not have been surprised, however, that his prior conviction was introduced in aggravation at his sentencing hearing. Here, defendant was convicted of the prior offense and therefore also not surprised. As the <u>Stoutenborough</u> court found that the defendant was not deprived of a fair sentencing hearing, defendant here also received a fair sentencing hearing.

Defendant also relies on <u>People v. Wallace</u>, 145 Ill. App. 3d 247 (2nd Dist. 1986), for support. The Appellate Court in <u>Wallace</u>, however, held that "evidence of criminal conduct unrelated to the offense of which a defendant has been convicted, . . . may be considered at sentencing." <u>Wallace</u>, 145 Ill. App. 3d at 256. The <u>Wallace</u> court found that the trial court's consideration of a pending charge was erroneous. <u>Id</u>. This case is easily distinguishable from <u>Wallace</u> because here the People read in the facts pertaining to defendant's prior conviction, which was unrelated to the conduct for which defendant was convicted in the present case. Further, defendant does not dispute that he had been previously convicted of attempt robbery

and aggravated battery or the veracity of the facts that were read to the trial court. The facts of the conviction were properly admitted and properly considered by the trial court.

### 2.   Juanita's age.

Defendant also argues that the trial court erred in considering Juanita's age as a factor in aggravation because Juanita's age was an element of the offense of aggravated criminal sexual abuse. (Deft. Br. 36)

Defendant relies on People v. Conover, 84 Ill. 2d 400, 404-05 (1981), for the proposition that a necessary element for a conviction cannot be considered as an aggravating factor at sentencing. (Deft. Br. 36) There, the defendant were sentenced for theft-related offenses and the Illinois Supreme Court held that the fact that the defendants obtained proceeds could not be considered a factor in aggravation because, as every theft involves proceeds, the legislature already considered that factor in establishing the penalties. Id. at 405. The Illinois Supreme Court later explained that, in its holding in Conover, it did not intend a rigid application of the rule, thereby restricting the function of a sentencing judge by forcing him to ignore factors relevant to the imposition of sentence. People v. Saldivar, 113 Ill. 2d 256, 268 (1986). A reasoned judgment as to the proper penalty depends on "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant" Id. (citations omitted) In declining to apply Conover, the Illinois Supreme Court held that "[s]ound public policy demands that a defendant's sentence be varied in accordance with the particular circumstances of the criminal offense committed." Id.

68

The Illinois Supreme Court reiterated that holding in <u>People v. Thomas</u>, 171 Ill. 2d 207, 226-27 (1996), where it quoted extensive fro <u>Saldivar</u>. There it explained that <u>Saldivar</u> allowed the sentencing court some discretion in "reconsidering" as an aggravating factor one that had already been considered by the legislature in establishing the applicable sentencing range for the offense. It further emphasized the importance of consideration of the nature and circumstances of the offense. <u>Id</u>. The <u>Thomas</u> court found the sentence there to be a single enhancement, so was the sentence in the case at hand as it fell within the statutory maximum for the offense and was not enhanced.

Defendant also relies on <u>People v. Ferguson</u>, 132 Ill. 2d 86 (1989), where the fact that the victims were under 12 years old was the sole aggravating factor for imposing extended-term sentences. In the case at hand, defendant's sentence was within the statutory range for aggravated criminal sexual assault. Defendant was not given an extended term as the defendant in <u>Ferguson</u> were and <u>Ferguson</u> is thus inapplicable. Instead, <u>Saldivar</u> and <u>Thomas</u> are applicable to the case at hand and, as the Illinois Supreme Court held in those cases, consideration of the nature and circumstances of the offense was relevant and necessary for reasoned judgment in this case.

**3.**

### The trial court did consider factors in mitigation.

Defendant argues that the trial court gave inadequate consideration to factors in mitigation. (Deft. Br. 38) The People maintain that defendant's sentence must not be disturbed where the trial court considered the proper factors in sentencing defendant, where

the sentence was within the statutory limits and where the 30 year and five year sentences imposed were a proper exercise of the trial court's discretion.

A reasonable judgment as to a proper sentence must be based upon the particular facts of each case, and the trial court is in the best position to judge the weight of the evidence at each sentencing hearing. People v. Jones, 168 Ill. 2d 367, 373 (1995); People v. Smith, 258 Ill. App. 3d 1003, 1028 (1st Dist. 1994). There is "a strong presumption that a trial court's sentencing decision is based upon the proper legal reasoning, and the court will be presumed to have considered any evidence of mitigation which is before it." People v. Partin, 156 Ill. App. 3d 365, 373 (1st Dist. 1987). To rebut this presumption, petitioner must make an affirmative showing that the trial court did not consider relevant factors; this showing must be more than a mere recitation of the sentence imposed. People v. Canet, 218 Ill. App. 3d 855, 864 (1st Dist. 1991).

The trial courts are "not obligated to recite and assign value to each factor presented at a sentencing hearing." People v. Ernst, 219 Ill. App. 3d 51, 59 (3rd Dist. 1991), cert. denied, 143 Ill. 2d 642 (1992). On review, an appellate court may not rebalance the aggravating and mitigating factors presented to the trial court. People v. Streit, 142 Ill. 2d 13, 21 (1991). The trial court is presumed to have considered the mitigation evidence before it, but is not required to recite all statutory mitigation factors. People v. Ernst, 219 Ill. App. 3d 51, 59 (3rd Dist. 1991); People v. Partin, 156 Ill. App. 3d 365 (1st Dist. 1987).

As shown above, defendant's sentences are within the statutory guidelines. The trial court heard evidence in aggravation, including defendant's prior criminal record, and in mitigation, including his employment history and military service and statements by

70

defendant and his brother. (R. DDD7-10) The trial court focused on the facts of the case at hand, finding them "appalling." (R. DDD12)

The trial court did not recite the factors presented in mitigation but, as discussed above, it was not required to do so. See Ernst, 219 Ill. App. 3d at 59. Defendant cites People v. Markiewicz, 246 Ill. App. 3d 31, 55 (2nd Dist 1993), which holds that the trial court must take all mitigating factors into account. The case also holds that, "Where mitigating evidence is before the court, it is presumed the court considered that evidence absent some contrary indication other than the sentence imposed." Id., citing People v. Willis, 210 Ill. App. 3d 379, 390 (1st Dist. 1991). In the present case there is no indication that the court did not consider the evidence presented in mitigation and that he was balancing the "many things that go into sentencing. Rehabilitation and the other is safety of society." (R. DDD12) The Illinois Supreme Court has mandated that the objective of restoring an offender to useful citizenship shall not be given greater consideration than the seriousness of the offense. People v. Waud, 69 Ill. 2d 588, 596 (1977)

After stating that it was balancing those two interests, the trial court focused on defendant's prior conviction and the seriousness of the crime at hand, recounting the facts of the case and specifically stating that "society requires based on the facts of the case and background" the maximum sentence. (R. DDD13) The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors. People v. Quintana, 332 Ill. App. 3d 96, 109 (1st Dist. 2002). The trial court here clearly stated that the seriousness of the crime was the most important factor that it considered before sentencing defendant.

71

In addition, this Court has affirmed the maximum sentence for aggravated criminal sexual assault in prior cases. See People v. Villa, 305 Ill. App. 3d 641, 649-50 (1st Dist. 1999)(holding that where the trial judge considered the factors before it, the judge considered the offense to be of a serious nature and properly sentenced the defendant to a term of 30 years within statutory guidelines); People v. Muhammad, 257 Ill. App. 3d 359, 370-71 (1st Dist. 1993); People v. Bosley, 233 Ill. App. 3d 132, 139 (1st Dist. 1992). The People maintain that the trial court here also acted properly in sentencing defendant.

## V.

### THE MITTIMUS MUST BE AMENDED TO REFLECT THE CORRECT AMOUNT OF CREDIT FOR THE TIME DEFENDANT SERVED IN CUSTODY PRIOR TO SENTENCING.

At defendant's sentencing hearing, the trial court merged Count 9, aggravated criminal sexual assault based on the victim's age, into Count 7, aggravated criminal sexual assault predicated on its commission during a residential burglary. (R. DDD5) The jury, however, acquitted defendant of residential burglary. (R. BBB11) On appeal, defendant asserts that the mittimus should be corrected to reflect that defendant was convicted of one count of aggravated criminal sexual assault predicated on the victim's age and one count of forgery. (Deft. Br. 40) Defendant's calculation is correct. "Pursuant to Supreme Court Rule 615, this Court may correct the mittimus without remanding to the trial court." People v. Mitchell, 324 Ill. App. 3d 912, 921 (1st Dist. 1992). Accordingly, without needing to remand this issue to the trial court, this Court should correct the mittimus to reflect that defendant was convicted of one count of aggravated criminal sexual assault predicated on the victim's

72

age and one count of forgery.

## CONCLUSION

The People of the State of Illinois respectfully request that this Honorable Court to affirm defendant's convictions and sentence.

Pursuant to People v. Nicholls, 71 Ill. 2d 166, 374 N.E.2d 194 (1978) and relevant statutory provisions 725 ILCS 5/110-7(h)(West 2006) and 55 ILCS 5/4-2002.1 (West 2006), the People of the State of Illinois respectfully request that this Court grant the People costs and incorporate as part of its judgment and mandate a fee of $100.00 for defending this appeal. In addition, pursuant to People v. Agnew, 105 Ill. 2d 275, 473 N.E.2d 1319 (1985) and 55 ILCS 5/4-2002.1 (West 2006), the People respectfully request that this Court also grant the People an additional fee of $50.00 in the event oral argument is held in this case.

Respectfully Submitted,

RICHARD A. DEVINE,
State's Attorney,
County of Cook,
Room 309 - Richard J. Daley Center,
Chicago, Illinois 60602

Attorney for Plaintiff-Appellee

JAMES E. FITZGERALD,
VERONICA CALDERON MALAVIA,
TASHA-MARIE KELLY,
SHANNAN MCFADDEN,
Assistant State's Attorneys.
   Of Counsel.

74

## CERTIFICATE OF COMPLIANCE

I certify that this brief conforms to the requirements of Rules 341 (a) and (b). The length of this brief, excluding the appendix, is 74 pages.

By: _____

SHANNAN MCFADDEN,
Assistant State's Attorney

No. 1-05-3358

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 01 CR 23568. |
| | ) | |
| **CHARLES SPICER,** | ) | Honorable |
| | ) | Dennis A. Dernbach, |
| Defendant-Appellant. | ) | Judge Presiding. |

---

REPLY BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT

MICHAEL J. PELLETIER
Deputy Defender

LISA SOUTHERLAND
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street, 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

EXHIBIT D

No. 1-05-3358

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 01 CR 23568. |
| | ) | |
| CHARLES SPICER, | ) | Honorable |
| | ) | Dennis A. Dernbach, |
| Defendant-Appellant. | ) | Judge Presiding. |

**REPLY BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT**

I.    **The State failed to prove forgery by delivery beyond a reasonable doubt where the indictment alleged that Charles Spicer attempted to defraud another by presenting a check that was purportedly made by Juanita Cartman, but the State's evidence established that the check was made by Juanita Cartman, not that it was made or altered by another person purporting to be made by Cartman.**

The State alleges that all the elements of forgery were proven because the complainant wrote everything on the check except the payee line, and Mr. Spicer did not have authority to write his name in because the complainant only wrote the check and gave authority to write his name in under duress. The State's argument is encapsulated in this sentence: "[T]he People maintain that because Juanita was forced to write the check under great duress that she did not do so voluntarily and that she did not grant defendant any authority regarding the check." (St. Br. 24) The State has not cited any case stating the duress or coercion is an element of forgery, and so has failed to address the crux of Mr. Spicer's argument.

-1-

The State's reliance on *People v. Murrah*, 255 Ill. App. 3d 742 (4th Dist. 1993) and *People v. Kubanek*, 370 Ill. 646 (1939) is misplaced. (St. Br. 22) In both those cases, the dispute was over the extent of the defendant's authority on the documents. In *Murrah*, the defendant had authority to fill out a corporate credit card application, but his boss testified that he did not have authority to add his name to the list of employees to receive a card after his boss signed the application. *Murrah* at 744. In *Kubanek*, the defendant had authority to fill in the payee lines on the blank checks that the complainant signed, but the complainant testified that defendant was only to do so to pay for her medical expenses and funeral should she die. *Kubanek* at 648. In contrast, here, the only evidence about the writing of the check was from Mr. Spicer's statement to the police, where he said the complainant agreed to write the check. (R. 153-154ZZ) There is no evidence of what authority she may have given Mr. Spicer regarding the check. While she may have written the check and given him authority under duress, Mr. Spicer's actions are more akin to robbery or theft, and the State chose to *nolle* the count of armed robbery. (C. 45; R. XX25) Since duress or coercion is not an element of forgery, Mr. Spicer cannot be convicted because the State chose to proceed under the wrong count.

In its effort to distinguish this case from *People v. Lindquist*, 97 Ill. App. 3d 894 (3rd Dist. 1981), the State again relies on the duress element in stating that the executor in *Lindquist* "voluntarily wrote checks to himself," but here, the complainant only wrote the check after Mr. Spicer threatened her. (St. Br. 24) Again, duress is not an element of forgery, and the State did not prove its case beyond a reasonable doubt. Therefore, Mr. Spicer's conviction for forgery must be reversed.



**II.   Charles Spicer was denied a fair trial because the jury was subjected to improper closing arguments concerning the law of forgery.**

It is telling that the State's response on this issue devotes only one of 10 paragraphs to the merits of whether the prosecutor's statements were proper. (St. Br. 25-29) The rest of the response is devoted to waiver and harmlessness, perhaps because the State has no response to the most relevant case in Mr. Spicer's argument, *People v. Lawler*, which holds that, "it is well established that a prosecutor's misstatements of the law in closing argument can be grounds for reversal." 194 Ill. App. 3d 547, 559 (5th Dist. 1990).

Mr. Spicer argued that the prosecutor's remarks led the jury to mistakenly believe that the law in Illinois is that if one person causes another person to write a check under coercion or duress, the first person is guilty of forgery, where neither duress nor coercion is an element of forgery. (Def. Br. 20-23; *see also* Argument I in Def. Opening Brief, and Reply, *supra*) Where it does address the merits, the State makes Mr. Spicer's point for him when it focuses on the fact that the complainant did not write the check voluntarily, she was forced to write the check, she did not freely give Mr. Spicer any authority regarding the check, and argues that these are elements of "making the check." (St. Br. 27-8) Again, the State is not able to point to any language in the forgery statute, or any case law, to show that involuntariness, coercion, or duress is an element of forgery.

Because none of these is an element of the offense of forgery, the prosecutor's remarks cannot be considered harmless error (St. Br. 25), as Mr. Spicer pointed out in his opening brief. (Def. Br. 22-23) While the jury may have concluded that what Mr. Spicer did was wrong, the only charge they had before them regarding the check was forgery, and they returned a forgery conviction despite the lack of evidence to support

the charge.

Contrary to the State's assertion, erroneous statements by the prosecutor were included in Mr. Spicer's motion for a new trial. (C. 117-118; St. Br. 25-27) Even if the issue is still considered waived because the misstatements were not objected to at trial, this court can consider the issue under the plain error doctrine. The doctrine allows issues forfeited by procedural default to be addressed when (1) the evidence is closely balanced; or (2) the defendant was denied a substantial right and thus, his right to a fair trial. *People v. Herron*, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467 (2005). The plain error rule has been applied to prosecutorial misconduct in closing argument where there was no objection made at trial. *People v. Ridley*, 199 Ill. App. 3d 487, 557 N.E.2d 378, 381-82 (1st Dist. 1990)(it was improper for the prosecution to argue that the jury must find the state witnesses to be lying in order to acquit defendant); *See also People v. Fort*, 14 Ill. 2d 491, 153 N.E.2d 26 (1958); *People v. Dunsworth*, 233 Ill. App. 3d 258, 599 N.E.2d 29, 35 (3rd Dist. 1992); *People v. Johnson*, 149 Ill. App. 3d 465, 500 N.E.2d 728 (3rd Dist. 1986).

Here, both prongs are met. First, the jury deliberations indicate that the evidence was closely balanced, as the jury informed the court three times during deliberations that it was having difficulty reaching a unanimous decision. *See People v. Morey*, 308 Ill. App. 3d 722, 726, 721 N.E.2d 200 (2d Dist. 1999) (finding the evidence to be closely balanced where the jury reported that it was deadlocked during deliberations); (Def. Br. 30-31).

Second, the prosecutor's misstatements that duress or coercion were elements of forgery were an incorrect statement of the law, and therefore affected his right to a fair trial. It is impossible for this court to know to what extent these misstatements affected

-4-

the jury's decision. Accordingly, it cannot be said with confidence that Mr. Spicer's trial was fundamentally fair, and this court can consider these errors under the plain error rule, reverse the conviction, and remand for a new trial.



**III.    The trial court violated Charles Spicer's right of confrontation when it admitted a doctor's testimony that the complaining witness told him she was "tied and raped," where the complaining witness did not testify, the circumstances surrounding the hearsay statement show that it was made for prosecutorial rather than treatment purposes and was therefore testimonial, and Mr. Spicer never had an opportunity to cross-examine the complainant.**

The State argues that Mr. Spicer has waived this issue and cannot meet the test of plain error because even though he objected to the doctor's testimony at trial (R. ZZ8), he did not include the issue in his post-trial motion. (St. Br. 31) However, here, the evidence of whether sexual assault occurred was closely balanced, and the admission of the complainant's hearsay statement when she did not testify certainly affected Mr. Spicer's substantial right to confront the witnesses against him.

As to the closely balanced evidence prong, the jury's three indications to the court that it was having trouble reaching a unanimous verdict show that the evidence was closely balanced. On the sexual assault charge specifically, the only evidence that any sexual conduct occurred was the complainant's statement to the doctor, and Mr. Spicer's inculpatory statement to the police. The doctor testified that his examination of the complainant did not yield any evidence of sexual assault. The DNA evidence was inconclusive at best, where there was no definitive match to Mr. Spicer's DNA, and no evidence about how old the tested semen stain may have been. There was no other physical evidence of sexual assault at the scene, and no witnesses other than the complainant, who did not testify. There was no identification testimony on the sexual assault charge. Thus, the evidence on the sexual assault charge was especially close.

Additionally, the substantial right prong of the plain error test is met where the error involves the "bedrock procedural guarantee [which] applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42 (2004). Accordingly, a defendant's right to confront the witnesses against him is certainly substantial and its

violation implicates the fundamental fairness of the proceedings. Thus, the plain error doctrine applies. *See also People v. Miller*, 363 Ill. App. 3d 67, 72, 842 N.E.2d 290 (1st Dist. 2005) (*Crawford* violation is subject to plain error review because it bears on defendant's right to a fair trial).

On the merits, the State responds that it was not error to admit the complainant's statement to the doctor because it was properly admitted as a hearsay exception under either the common law hearsay exception for statements to treating physicians, or under 725 ILCS 5/115-13, the codification of the common law exception in the case of sexual offenses. (St. Br. 34-44) Mr. Spicer's argument, however, is that the only reason the complainant went to the hospital was for evidence-gathering at the urging of police, not for any diagnosis or treatment, and thus her statement to Dr. Lahti does not fall under the exception, whether common law or statutory. This case is easily distinguished from *People v. Rushing*, 192 Ill. App. 3d 444 (4th Dist. 1989), on which the State relies. (St. Br. 38-40) There, the victim was a 9-year-old girl who reported a vaginal discharge; here, there is no evidence that the complainant suffered from any symptoms. The State misleads this court when it says that the complainant "did not reveal that [sic] the fact that she knew the identify of her offender." (St. Br. 41) The jury did not hear any evidence that the complainant knew the identity of her attacker, beyond Mr. Spicer's inculpatory statement to the police that he had done some work for the complainant that summer. Thus, whether she knew him but did not reveal this to the doctor is of no relevance to the issue of whether her statement that she was "tied and raped" was admissible.

The State's argument that the promptness of the complaint of sexual assault only goes to weight, and not to admissibility, of a hearsay statement, misses the point of Mr.



Spicer's argument. (St. Br. 41-2) Mr. Spicer argues that the delay in reporting the sexual assault - along with the facts that the report was made in the police station, while the police were going back and forth between interviewing the complainant and interviewing Mr. Spicer, right after she had identified him in a lineup (though the lineup testimony was not heard by the jury because the lineup was found to be suggestive), the complainant had refused medical attention several times earlier in the day, and the detective who had been conducting the interviews took the complainant to the hospital, stayed there with her for several hours while she waited, and then took her home where they met an evidence technician - show that the encounter with the doctor, including her statement to him, was for purely prosecutorial purposes, and not for medical diagnosis and treatment, taking the statement out of the rubric of the hearsay exception. (See Def. Br. 24-25)

The State next argues that even if the statement was admitted in error, the error was harmless because there was sufficient competent evidence to convict the defendant. (St. Br. 43) As argued above in the plain error section, the evidence of the sexual assault charge was far from overwhelming. It is impossible for this court to determine what effect a hearsay statement by the complainant had on the jury's verdict, and thus the error cannot be considered harmless. *People v. Coleman*, 222 Ill. App. 3d 614 (1st Dist. 1990) is inapposite because in that case the complainant testified, and therefore her statements to the doctor were not the only testimony the jury heard about the sexual assault. *Id.* at 617.

The State next argues that the complainant's statement to the doctor did not violate Mr. Spicer's confrontation rights under *Crawford* because the statement was not testimonial. (St. Br. 45-61) The State concedes, as Mr. Spicer argued in his opening

-8-

brief (Def. Br. 27-28), that a statement can be testimonial for *Crawford* purposes depending on "whether the objective circumstances [surrounding a statement] indicate that a reasonable person in the declarant's position would have anticipated that his statement likely would be used in prosecution." (St. Br. 52-53, quoting *People v. Stechly*, 2007 Ill. LEXIS 452, *73 (April 19, 2007). Here, the complainant, taken to the hospital by the police after several hours of questioning at the police station, and told by the doctor that the purpose of the rape kit was to collect possible evidence of the offender's genetic material (R. 11ZZ), certainly would have recognized that her statement that she was "tied and raped" would be testified to by the doctor when he testified at trial about his gathering of evidence. The State's assertion that Detective Doherty's purpose in taking the complainant to the hospital was "that she was in need of medical treatment based on her mental state because she was visibly upset" is misleading. (St. Br. 54) Detective Doherty testified only that the complainant's "demeanor changed completely. She became very upset. I then realized that I needed to get her to a hospital for a physical examination." (R. ZZ97) The detective's testimony could just as easily be interpreted to mean that he had to get her to the hospital for a rape kit. There is no evidence to indicate that the complainant ever complained of any pain or symptoms, and in fact she had refused medical treatment several times earlier in the day, including when the responding officer first spoke to her, lending credence to the claim that she only went to the doctor at the urging of the police and was not seeking medical treatment.

Returning to the harmless error question, the State asserts that this case does not fit into the "narrow set of cases" our Supreme Court set out which have sufficiently strong evidence to meet the evidentiary harmless standard but not the constitutional harmless standard. *In re. E.H.* 224 Ill. 2d 172, 181 (2006) (St. Br. 59-60) However, the

-9-

State is unable to state what that narrow set of cases is, and returns to its earlier assertion that the evidence here was overwhelming. As stated above and in Mr. Spicer's opening brief (Def. Br. 29-30), the evidence of sexual assault was far from overwhelming. The State refers to the DNA sample which matched Mr. Spicer's profile and was expected to occur in 1 in 190,000 black individuals (St. Br. 60), but neglected to point out the other sample which showed a match but the profile occurred in 1 in 8 black people. (R. YY140) The State has no response to *People v. Thompson*, 349 Ill. App. 3d 587 (1st Dist. 2004), where this court held that the trial court's admission of a hearsay statement in violation of *Crawford* was not harmless because it was the only evidence, other than defendant's own inculpatory statement to the police, of the offender's identity. *Id.* at 594-595. Here, the complainant's hearsay statement was the only evidence, other than Mr. Spicer's statement to the police, that any sexual assault occurred.

In sum, Mr. Spicer was convicted of aggravated criminal sexual assault where the complaining witness did not testify, but her out-of-court statement that she was raped was admitted for its truth. The court erred in admitting the testimony as a hearsay exception for a statement to a treating physician because her encounter with Dr. Lahti was solely for evidence collection purposes, not treatment, making it a testimonial statement. In the absence of cross-examination of the complainant, the admission of the hearsay statement violated Mr. Spicer's right of confrontation. The admission of the statement was reversible error because the State relied on the hearsay statement in its closing argument, the jury heard no other evidence of any sexual assault beyond Mr. Spicer's inculpatory statement to the police, and the jury did not find the evidence overwhelming. Accordingly, Mr. Spicer's conviction for aggravated criminal sexual assault should be reversed and the cause remanded for a new trial.

**IV. Charles Spicer was denied a fair sentencing hearing on the aggravated criminal sexual assault conviction where the trial court relied on unreliable hearsay evidence of the facts of a previous conviction, as well as the complainant's age, a factor inherent in the offense, as aggravation, and failed to consider the factors presented in mitigation, when sentencing Mr. Spicer to the maximum sentence, 30 years.**

The State's argument that Mr. Spicer has waived this argument and it is not reviewable under plain error fails because it has no response to Mr. Spicer's citation to *People v. Pierce*, 223 Ill. App. 3d 423 (2nd Dist. 1992), which held that errors in sentencing affect a defendant's substantial right to liberty and are thus considered plain error. (St. Br. 62-63)

Reaching the merits of the hearsay evidence from the police report of a prior conviction, the State responds that hearsay evidence is admissible during sentencing (St. Br. 65-66), but has no response to Mr. Spicer's argument that any evidence used at sentencing must be reliable, and that police reports are inherently unreliable. In fact, the State misleads this court with an alleged quote from an Illinois Supreme Court case, attempting to show that the court held that police *reports* may be considered in sentencing. *People v. Dennis*, 47 Ill. 2d 120 (1970) (St. Br. 66). The State's quote from that case is "the trial court may consider . . . a police report of prior convictions" and cites to pp. 134-135 of the case. (St. Br. 66) In fact, no such sentence exists anywhere in that case, and the *Dennis* court was referring to defendant's "rap sheet" when it held that "information relating to prior convictions contained in such a 'rap sheet', even though hearsay, may nonetheless be considered during the hearing in aggravation and mitigation, where strict evidentiary rules are not applicable. *Id.* at 134-135. The "rap sheet" in that case substituted for a pre-sentencing report. *Id.* at 134.

Here, Mr. Spicer is not objecting to the fact of his 1993 guilty plea to attempt

-11-

robbery and aggravated battery, which was included in his pre-sentence investigation report. He is objecting to the alleged facts of that incident being read from an inherently unreliable source, a police report. It is well-established that police reports are hearsay, and the State has no response to that point. (See Def. Br. 34 and *People v. Garrett*, 216 Ill. App. 3d 348, 357 (1st Dist. 1991))

Turning to the trial court's erroneous consideration of the complainant's age as a factor in aggravation, the State claims that *People v. Ferguson*, 132 Ill. 2d 86 (1989) is not on point because it involved an extended-term sentence, and Mr. Spicer was not sentenced to an extended term. (St. Br. 69) However, the principle of *Ferguson*, that the age of the victim cannot be considered for the imposition of a harsher penalty where the penalty for the underlying offense has already been enhanced based on the age of the victim, is directly on point to the instant case. Here, the trial court clearly relied on the victim's age as the major factor of aggravation, and sentenced Mr. Spicer to the maximum sentence even though he had only one prior felony.

In short, Mr. Spicer's case must be remanded for resentencing because the trial court based its maximum sentence on unreliable hearsay evidence from a prior conviction, considered a factor inherent in the instant offense as aggravation, and did not consider mitigating factors.

**V.    The mittimus should be corrected to reflect that Charles Spicer was convicted of only one count of aggravated criminal sexual assault, and that the conviction is for aggravated criminal sexual assault based on the victim's age, not based on residential burglary, where the jury found Mr. Spicer not guilty of residential burglary.**

The State concedes this point.  (St. Br. 72)

## CONCLUSION

For the foregoing reasons, Charles Spicer, Defendant-Appellant, respectfully requests that this Court pursuant to Argument I, reverse his conviction for forgery; pursuant to Argument II, reverse his conviction for forgery and remand for a new trial; pursuant to Argument III, reverse his conviction for aggravated criminal sexual assault and remand for a new trial; pursuant to Argument IV, remand for resentencing on the aggravated criminal sexual assault conviction; pursuant to Argument V, correct the mittimus.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

LISA SOUTHERLAND
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

## CERTIFICATE OF COMPLIANCE

I, Lisa Southerland, certify that this brief conforms to the requirements of Supreme

Court Rule 341(a) and (b). The length of this brief, excluding the appendix is _13_ pages.


LISA SOUTHERLAND
Assistant Appellate Defender

No. 1-05-3358

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT - FIRST DIVISION

---

PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

vs.

CHARLES SPICER,

Defendant-Appellant.

---

Appeal from the Circuit Court of Cook County, Criminal Division.
Honorable **DENNIS A. DERNBACH**, Judge Presiding.

PETITION FOR REHEARING FOR
PLAINTIFF-APPELLEE

RICHARD A. DEVINE,
State's Attorney,
County of Cook,
Room 309 - Richard J. Daley Center,
Chicago, Illinois 60602

Attorney for Plaintiff-Appellee

JAMES E. FITZGERALD,
ASHLEY ROMITO,
SUSAN SCHIERL SULLIVAN,
VERONICA CALDERON MALAVIA,
ANNETTE COLLINS,
Assistant State's Attorneys,
    Of Counsel.

EXHIBIT E

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT - FIRST DIVISION

PEOPLE OF THE STATE OF ILLINOIS,

                                        Plaintiff-Appellee,

                        vs.

CHARLES SPICER,

                                        Defendant-Appellant.

## PETITION FOR REHEARING

Pursuant to Supreme Court Rule 367, the People respectfully ask this Court to reconsider its Opinion issued December 10, 2007, in the above-titled cause and modify the analysis contained therein reflecting its assessment of the constitutionality of admission of the victim's statement to the emergency room doctor. Pursuant to In re E.H., 224 Ill. 2d 172 (2006), it was unnecessary for this Court to engage in a substantive analysis of the constitutional sixth amendment claim given this Court's finding that admission of the statement was harmless beyond a reasonable doubt.

In In re E.H., the Illinois Supreme Court provided an analytical "flowchart" for review of constitutional issues in the Appellate Court. As discussed by the Court, first, an Appellate Court should address any non-constitutional claims prior to reviewing constitutional claims. In re E.H., 224 Ill. 2d at 180. This Court rightly followed this directive and addressed the statutory admissibility of the victim's statement to the doctor

1

under section 115-13 of the Code of Criminal Procedure (725 ILCS 5/115—13 (West 2000).

Finding the statement statutorily admissible, this Court then engaged in a full-blown

substantive review of defendant's constitutional sixth amendment challenge to the statement.

Although this Court ultimately determined that admission of the statement was harmless

beyond a reasonable doubt, this Court nonetheless held that (1) the primary purpose of the

victim's statement to the doctor was not to meet an "on-going emergency" (Davis v.

Washington, 547 U.S. ___, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006)), but was instead to

"prove past events"; (2) the emergency room doctor to whom the victim made her statement

was a "police agent" (People v. Stechly, 225 Ill. 2d 246 (2007); and (3) thus, the victim's

statement to the doctor was "testimonial" (Crawford v. Washington, 541 U.S. 36, 124 S. Ct.

1354, 158 L. Ed. 2d 177 (2004)).   Accordingly, this Court held that admission of the

statement violated defendant's confrontation clause rights where the victim was unavailable

to testify at trial.   Slip Op. at 21.

In so doing, however, this Court unnecessarily substantively reviewed a constitutional

claim when it could have avoided addressing the constitutional claim in its entirety by virtue

of its finding that any constitutional sixth amendment violation was harmless beyond a

reasonable doubt. Instead of reaching the substantive merits of defendant's claim, this Court

could have simply stated that, even presuming a confrontation clause violation, any error was

harmless beyond a reasonable doubt in light of the detailed evidence in this case.  This

proposed course of analysis would appear to be authorized and, indeed, commanded by the

Supreme Court's decision in In re E.H..

2

While the decision in <u>In re E.H.</u> generally propounded on the course to take in analyzing non-constitutional and constitutional claims before the court, it also specifically addressed the instance where a constitutional claim would offer no relief to the defendant because any violation would be harmless beyond a reasonable doubt:

"Even then, if the appellate court ruled the circuit court's section 115-10 ruling was error but harmless error, the court must first consider whether it is necessary to consider the constitutional question in light of the fact that the court had already ruled admission of the evidence harmless. It is true that there is a somewhat higher bar for constitutional error than other trial error to be deemed harmless. Compare, *e.g.*, <u>People v. Nevitt</u>, 135 Ill. 2d 423, 447, 553 N.E.2d 368 (1990) (evidentiary error is harmless 'where there is no reasonable probability that the jury would have acquitted the defendant absent the' error (emphasis added)), with <u>Chapman v. California</u>, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828 (1967) ('before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt' (emphasis added)). Because of the different standards of review, there could theoretically exist a narrow set of cases in which admission of the same evidence is harmless if considered as an evidentiary error, but not harmless if evaluated pursuant to the constitutional error standard. **If and only if this case is a member of that exclusive set would it be proper for the appellate court to go on to evaluate whether admission of the statements did in fact violate <u>Crawford</u>.** For if admission of the statements pursuant to section

3

115-10 was harmless error, **it does not matter whether the statements violate Crawford, unless the different standards of harmless error mandate a different outcome.**" (Emphasis added.)  In re E.H., 224 Ill. 2d at 180.

Construing this language in broad terms suggests that, when constitutional error is ultimately deemed harmless beyond a reasonable doubt, a reviewing court should not address the error substantively, but instead need only resolve whether the purported error was harmless beyond a reasonable doubt.  This reading is in keeping with the principles behind the Court's unwillingness to sanction the wholesale review of all constitutional claims.  The animating principle behind this circumspection is that courts "should not compromise the stability of the legal system by declaring legislation unconstitutional when a particular case does not require it." People v. Lee, 214 Ill. 2d 476, 483 (2005). See also People v. Hampton, 225 Ill. 2d 238 (2007) (appellate court erred in unnecessarily addressing a statute's constitutionality after vacating the defendant's convictions based on a violation of Crawford); People v. Brown, 225 Ill. 2d 188 (2007) (in considering what version of a statute would apply to the defendant's transfer hearing, appellate court erred in focusing on the defendant's *ex post facto* argument before addressing his nonconstitutional argument about legislative intent); Mulay v. Mulay, 225 Ill. 2d 601 (2007) (circuit court improperly declared the grandparent visitation statute unconstitutional before considering the mother's motion to dismiss the grandparents' petition for visitation on nonconstitutional legal insufficiency grounds).

Although in reaching the merits of the constitutional confrontation clause claim, this Court did not strike down legislation, its review of the merits of the constitutional claim sets

4

forth binding precedent on all circuit courts even though such review was unnecessary to the matter before the court and ultimately afforded no relief to this defendant. See, *e.g.*, People v. Cornelius, 213 Ill.2d 178, 189 (2004) ("Th[e] presumption [that statutes are constitutional] derives from the fact that when a circuit court declares a statute unconstitutional, such a holding destabilizes the area of law within which the statute is invalidated until that ruling is reviewed by this court."). The People thus respectfully petition this Court to modify its analysis in keeping with the language in In re E.H..

**CONCLUSION**

For the foregoing reasons, the People respectfully request that this Court grant their petition for rehearing and modify the analysis contained in the published opinion.

Respectfully Submitted,

RICHARD A. DEVINE,
State's Attorney,
County of Cook,
Room 309 - Richard J. Daley Center,
Chicago, Illinois 60602

Attorney for Plaintiff-Appellee

JAMES E. FITZGERALD,
ASHLEY ROMITO,
SUSAN SCHIERL SULLIVAN,
VERONICA CALDERON MALAVIA,
ANNETTE COLLINS,
Assistant State's Attorneys.
Of Counsel.

6

## CERTIFICATE OF COMPLIANCE

I certify that this petition for rehearing conforms to the requirements of Rule 341 (a) and (b). The length of this petition is 6 pages.

By: _____

ANNETTE COLLINS,
Assistant State's Attorney

File Date: _September 3 2008_

Case No: _08cv3577_

ATTACHMENT # _2_

EXHIBIT _F - G_

TAB (DESCRIPTION)

_____

No. 1-05-3358

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 01 CR 23568. |
| | ) | |
| **CHARLES SPICER,** | ) | Honorable |
| | ) | Dennis A. Dernbach, |
| Defendant-Appellant. | ) | Judge Presiding. |

**PETITION FOR REHEARING FOR DEFENDANT-APPELLANT**

MICHAEL J. PELLETIER
Deputy Defender

LISA SOUTHERLAND
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

No. 1-05-3358

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 01 CR 23568. |
| | ) | |
| CHARLES SPICER, | ) | Honorable |
| | ) | Dennis A. Dernbach, |
| Defendant-Appellant. | ) | Judge Presiding. |

## PETITION FOR REHEARING FOR DEFENDANT-APPELLANT

Charles Spicer, Defendant-Appellant, respectfully petitions this Court for

rehearing pursuant to Supreme Court Rule 367 for the reasons that follow.

I.     **This Court's finding that the confrontation clause violation was harmless beyond a reasonable doubt is erroneous where the violation allowed a doctor to testify that the complaining witness told him she was "tied and raped," and the <u>only</u> other evidence of sexual assault was Mr. Spicer's inculpatory statement to the police.**

In a published opinion, this Court found that Mr. Spicer's confrontation rights

were violated when the doctor testified to the complaining witness' statement, but that

the violation was harmless beyond a reasonable doubt because of the "overwhelming

nature of the other evidence" of sexual assault. (Opinion p. 26)  However, the <u>only</u> other

evidence of any sexual conduct during the incident was Mr. Spicer's inculpatory

statement to the police, and this Court ignored the fact that the jury found the evidence

was closely balanced when it informed the trial court three times over its two days of

deliberations that it was deadlocked on one of the counts. (Def. Br. 15-16)  The

-1-

doctor's examination of the complainant did not yield any evidence of sexual assault. The DNA evidence was inconclusive at best, where there was no definitive match to Mr. Spicer's DNA, and no testimony about how old the tested semen stain may have been. There was no other physical evidence of sexual assault at the scene, and no witnesses other than the complainant, who did not testify. There was no identification testimony on the sexual assault charge. Thus, the evidence on the sexual assault charge (as opposed to the forgery charge, where there were two eyewitnesses and a fingerprint), was especially close and it is difficult to see how the confrontation clause violation was harmless under any of the three prongs for harmless constitutional error.

Rehearing is warranted because nowhere in its harmless error analysis does this Court address the fact that Mr. Spicer's jury indicated that the evidence was closely balanced when it informed the court three times over two days of deliberations that it was having difficulty reaching a verdict. *See People v. Lee,* 303 Ill. App. 3d 356, 362, 708 N.E.2d 457 (1st Dist. 1999) (finding the evidence closely balanced based upon the jury's being deadlocked for several hours and on three occasions indicating that it could not reach a unanimous verdict). The omission from the analysis is more troubling because this Court does not state the complete facts surrounding the jury deliberations in its "Background" section, when it states that jury deliberations lasted eight hours, and that the jury indicated twice that it was deadlocked at 11-1 on one of the counts. (Opinion p. 8) In fact, the jury deliberated for eight hours on the first day. (R. BBB3) At some point during those eight hours, the jury indicated that they were deadlocked on one of the three counts, and that the vote was 6-6. (R. BBB3, BBB7) On the second day, they deliberated for at least four hours, and twice indicated that they were deadlocked on one of the counts. (R. BBB3-5) Only after a Prim instruction did they

-2-

reach a verdict. (R. BBB7-8, 11) Thus, the evidence on one of the counts was not overwhelming to this jury, lending credence to Mr. Spicer's claim that the confrontation clause violation was not harmless, and rehearing is warranted.

In addition to omitting the jury deliberations issue, under the first prong of harmless error analysis, whether the error might have contributed to the conviction, this Court found it "hard to believe" that the victim's statement made a difference because what the doctor testified to was "a mere seven words long." (Opinion p. 24) It is not the length of the statement, but the subject of the statement, which makes it crucial to the jury, since it is a statement regarding the precise conduct the jury is to decide upon. In other sexual assault cases, the Illinois Supreme Court has held that a statement from a victim about an alleged attack is "extremely powerful evidence of a defendant's guilt" and that "it would be difficult to argue that such statements did not contribute" to verdicts. *People v. Stechly*, 225 Ill. 2d 246, 305 (2007), citing *People v. Patterson*, 217 Ill. 2d 407, 436 (2005). Additionally, here, the victim's statement came in through a doctor, a witness whose professional status could lead a jury to give the evidence undue weight despite its unreliability as hearsay. (*See, e.g.*, Illinois Pattern Jury Instruction - Civil 200.06, which warns jurors in will contests not to give greater weight to a doctor's testimony on the issue of mental capacity simply because the witness is a doctor.) In its analysis, this Court ignores the fact that the State, in closing argument and in rebuttal, relied on the hearsay statement as corroborating Mr. Wilson's inculpatory statement. (R. AAA11, AAA58) And, as explained above and in Mr. Spicer's briefs, the jury was deadlocked on one of the counts over two days. Thus, contrary to this Court's finding otherwise, it is difficult to see how the victim's statement did <u>not</u> have an impact on the jury's verdict, and rehearing is warranted.

-3-

Under the second prong, whether other evidence in support of the conviction is overwhelming, this Court found that Mr. Spicer's inculpatory statement alone was overwhelming evidence of criminal sexual assault. (Opinion p. 24-25) Rehearing is warranted because neither the State in its brief, nor this Court in its Opinion, is able to point to a case where a defendant's inculpatory statement, without, as here, any other corroborating evidence, was found to be overwhelming. This Court distinguishes *People v. Thompson*, where this Court found the *Crawford* violation not harmless beyond a reasonable doubt based on the fact that the hearsay statements were the only evidence, other than defendant's own inculpatory statements, to identify the defendant as the offender. 349 Ill. App. 3d 587, 594-95 (2004); (Opinion p. 25). In distinguishing *Thompson*, this Court points to the fact that there, the defendant testified and recanted his inculpatory statements, begging the question of whether any defendant whose Sixth Amendment right to confrontation is violated can ever overcome harmless error unless he waives his Fifth Amendment right to remain silent. (Opinion p. 25) Indeed, this Court's finding practically shifts the burden to the defendant to prove that his statement was not true when it states that Mr. Spicer "never once claimed that the statement was not the truth." (Opinion p. 25) In *Thompson*, there was medical and police testimony corroborating the victim's injuries as a result of aggravated battery and unlawful restraint, in addition to the defendant's confession, and this Court still found that evidence not overwhelming. *Id.* at 594. Here, there was simply no evidence, physical or otherwise, other than Mr. Spicer's inculpatory statement, that any conduct of a sexual nature occurred, to support the aggravated criminal sexual assault conviction. Thus, Mr. Spicer's inculpatory statement alone can hardly be called "overwhelming," and rehearing is warranted.

Under the third prong of harmless error analysis, whether the erroneously admitted evidence is cumulative or duplicates properly admitted evidence, this Court makes Mr. Spicer's point for him when it states,

> "The defendant's confession admitted only finger penetration. <u>Without the</u> <u>victim on the stand</u>, it is difficult to ascertain what she meant by the word 'rape,' whether or not in her mind the term was broad enough to include finger penetration." (Opinion p. 26; emphasis added)

It is precisely this evil - a trier of fact finding it difficult to know what a declarant meant when the declarant is not on the stand - that the confrontation clause was meant to prevent. But this Court merely ignores its own statement of the problem, and reverts to its "overwhelming other evidence" finding, a finding not warranted by the record. (Opinion p. 26)

For the reasons above, Mr. Spicer respectfully requests that this Court grant rehearing.

**II.**    **Charles Spicer was denied a fair sentencing hearing on the aggravated criminal sexual assault conviction where the trial court relied on unreliable hearsay evidence of the facts of a previous conviction as aggravation when sentencing Mr. Spicer to the maximum sentence, 30 years.**

On the issue of the unreliable hearsay evidence of the facts of a previous conviction, rehearing is warranted because this Court made two erroneous findings when it found that "there is no evidence that the sentencing court relied on [the police report] for purposes of sentencing" (Opinion p. 35) and "the trial court did not refer to the details contained in the police report." (Opinion p. 36) Both of these findings are belied by the record, warranting rehearing.

First, as this Court acknowledged when it quoted from the trial court at sentencing (Opinion p. 36), the trial court directly referred to the age of the complainant in the 1993 case when it said,

> This is <u>two</u> offenses for violence against women who are senior citizens. And real senior citizens. We are not talking about somebody coming home from working out at the health club who happens to be 61 or 65. That would make him a senior citizen. <u>Those</u> women were <u>well beyond that age</u>."

(R. DDD12-13; emphasis added)

Clearly, the trial court's use of plural meant that it was referring not only to the age of the complainant in the present case, but the age of the complainant in the 1993 case. The only evidence of the complainant's alleged age in the 1993 case came directly from the police report that was read into the record by the Assistant State's Attorney:

> "I think it's important for the court to know with respect to this case and informing the court of certain facts from the police department, the detective's supplementary report of that case. The aggravation in that case is that it involved an 88-year-old woman. \*\*\* (R. DDD7)

Despite this Court's finding otherwise, the trial court did rely on the facts of the

prior conviction when the trial court stated, "In this case, conduct was appalling.

Appalling in the other case." (R. DDD12) The only source of the details of the conduct

in the other case was the police report. Therefore, rehearing is warranted because this

Court's finding that the trial court did not rely on the facts of the previous conviction

that came from the police report is belied by the record.

Furthermore, this Court misconstrues Mr. Spicer's argument when it states that

"[e]ven if the sentencing court had relied on the police report, that fact alone would not

require resentencing" because courts are permitted to consider hearsay information at

sentencing. (Opinion p. 37) Mr. Spicer argued that even though trial courts can consider

hearsay evidence at sentencing, the evidence must be both relevant and reliable *(People*

*v. La Pointe*, 88 Ill. 2d 482 494-495, *citing People v. Crews*, 38 Ill. 2d 331 (1967)), and

that reliability of hearsay evidence can assured by corroboration (*People v. Hall*, 194 Ill.

2d 305, 352, 743 N.E. 2d 521 (2000)), or when it is given under presumably trustworthy

circumstances, such as a dying declaration. *People v. Brisbon*, 106 Ill. 2d 342, 365, 478

N.E. 2d 402 (1985). As Mr. Spicer argued, but this Court did not address, there was no

corroboration here since the police report was the only source of the alleged details of

the prior conviction. There was also no presumption of trustworthiness because police

reports are "the product of secondhand knowledge as to the reporting officer," and are

therefore rank hearsay. *People v. Garrett*, 216 Ill. App. 3d 348, 357, 576 N.E. 2d 331

(1st Dist. 1991). The Illinois Supreme Court has held that double hearsay is only reliable

enough for admission at sentencing if at least some parts of the double hearsay have been

corroborated by other evidence. *People v. Erickson*, 117 Ill. 2d 271, 300 (1987). The

evidence here consisted entirely of triple and quadruple hearsay since the police report

contained what the complainant allegedly told police, and what the complainant allegedly told the police that a neighbor allegedly told her. (R. DDD8) As such, the evidence did not meet the reliability test for admission at sentencing.

This Court's reliance on *People v. Harris* for the proposition that it is within the discretion of the trial court to determine whether hearsay is reliable enough to weigh in sentencing actually supports Mr. Spicer's argument that the hearsay in his case was unreliable. 375 Ill. App. 3d 398, 410 (3rd Dist. 2007); (Opinion p. 37) In holding that the hearsay evidence in *Harris* was reliable, the *Harris* court pointed to the fact that the evidence was admitted through the live testimony of a police detective, who gave the evidentiary basis for his conclusions that the defendant was involved in other robberies, and was subject to cross-examination. *Id.* at 410-411. Neither of these methods of corroboration was available in Mr. Spicer's case because the evidence was presented solely through a police report read by the Assistant State's Attorney. Furthermore, all the cases cited for authority in *Harris* involved live testimony, not reading from police reports. *People v. Perez*, 108 Ill.2d 70 (1985) (allowing correctional officer's testimony that his superior told him that another inmate had told superior that something could possibly happen to officer if defendant was brought back into officer's unit); *People v. Morgan*, 112 Ill.2d 111 (1986) (allowing officer's testimony that he investigated an armed robbery and shooting and discovered that defendant had shot two women in his apartment); *People v. Hudson*, 157 Ill.2d 401 (1993) (allowing correctional investigator's testimony that another inmate had told him about an escape plan that defendant was involved in and that further investigation corroborated inmate's statement; also allowing other officer's testimony that he investigated three robberies and an aggravated assault and that his investigation resulted in defendant's arrest); *People v. Aleman*, 355 Ill.

-8-

App.3d 619 (2nd Dist. 2005) (allowing hearsay testimony of investigating officer regarding defendant's involvement in armed robbery); *People v. Moore*, 250 Ill. App.3d 906 (4th Dist. 1993) (allowing hearsay testimony of social worker regarding defendant's sexual contact with child). Again, because the *Harris* court and its authorities allowed hearsay during sentencing only through live testimony, this Court's finding that resentencing is not required in Mr. Spicer's case warrants rehearing.

## CONCLUSION

For the foregoing reasons, Charles Spicer, Defendant-Appellant, respectfully requests that this Court grant the petition for rehearing.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

LISA SOUTHERLAND
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

## CERTIFICATE OF COMPLIANCE

I, Lisa Southerland, certify that this brief conforms to the requirements of Supreme

Court Rules 341(a) and (b) and 367(a). The length of this brief, excluding the appendix,

is 10 pages.

LISA SOUTHERLAND
Assistant Appellate Defender

**Appendix**
Opinion (December 10, 2007)

NOTICE
fit of this opinion may be
jed or corrected prior to the
for filing of a Petition for
earing or the disposition of
same. *Sutherland*

**FIRST DIVISION**
**DECEMBER 10, 2007**

No. 1-05-3358

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | No. 01 CR 23586 |
| | ) | |
| CHARLES SPICER, | ) | Honorable |
| | ) | Dennis A. Dernbach, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Defendant Charles Spicer was convicted after a jury trial of aggravated sexual assault and forgery and sentenced to consecutive terms of 30 years and 5 years of imprisonment, respectively. On appeal, he alleges errors at both trial and sentencing. For the reasons stated below, we affirm.

BACKGROUND

The State claims that on August 8, 2001, the defendant sexually assaulted and wrongfully forced Juanita Cartman, age 75 or 76, to draw a check on her checking account, in her apartment on South Calumet Avenue in Chicago. The defendant attempted to cash the check later that day and was arrested.

At trial, Officer Sheila Jackson testified that on August 8, 2001, at approximately 11 a.m., Officer Jackson responded to a call concerning an elderly robbery victim. She met with the victim in her apartment, where she observed a dining room chair with duct tape on the arm and legs, as

No. 1-05-3358

well as redness around the victim's wrists and on both arms. The victim provided a description

of the offender, which Officer Jackson relayed over the radio.

Pier Thomaston testified that on August 8, 2001, at shortly before noon, she was working

as a teller at the Bank One at 6700 South Stony Island when the defendant presented her with a

check drawn on the victim's account. She noticed that the name of the payee was not written in

the same handwriting as the rest of the check. After seeing an alert for this account on the

signature verification screen on her computer, she left the defendant and went to speak with her

supervisor. A bank security guard approached the defendant, who then shoved the guard and ran

out the front door, with the guard giving chase.

The teller testified that while looking through the bank windows, she saw the defendant go

over a fence at a construction site and then lost sight of him. Approximately 10 minutes later, she

identified a person in the back of a police squad car as the customer who had just presented her

with the victim's check. Terrence McCullough, the security guard, also identified the defendant

as the man at the teller's window whom he chased before police arrived and whom he identified in

the back of the police vehicle.

Officer Harlan Hasbrough testified that on August 8, 2001, he responded to a radio call

shortly after noon and went to 1523 East 68th Street to look for a suspect who had run from the

bank. He found the defendant under the porch of an apartment at that address.

Detective Raymond Doherty[1] testified that he and his partner, Detective Gillespie, were

---

[1]Raymond Doherty was a sergeant at the time of trial and a detective at the time of the

2

No. 1-05-3358

assigned to a robbery investigation on August 8, 2001, and met with Officer Jackson and the victim in the victim's apartment. After hearing a call on the radio, he went to the bank, where he saw the defendant in the back of a police vehicle that was parked near the bank, and recovered a check from the teller who said the defendant had tried to cash it. He then returned to the victim's apartment and took the victim to the police station where the defendant was also taken.

Detective Doherty testified that at approximately 1 p.m. on August 8 he and his partner interviewed the victim, and at 1:30 p.m. they interviewed the defendant. Defendant told them that he had received a telephone call from a friend named John Thomas that morning; that when he later met Thomas, Thomas gave defendant a check to cash; and that a security guard at the bank tried to detain him. Detective Doherty testified that the defendant provided a vague description of John Thomas, whom Detective Doherty was unable to locate.

Detective Doherty testified that he and his partner interviewed defendant again at 5:30 p.m. on August 8. Defendant then admitted going to the victim's apartment with Thomas and stated that the victim owed him money and that both he and Thomas left after a short conversation. Detective Doherty testified that the defendant then told him that Thomas gave the defendant some money that Thomas had taken from the victim's home and a check. The defendant also admitted to duct taping the victim to the chair after she signed the check.

Detective Doherty then interviewed the victim again at approximately 6 p.m. When she became upset, he decided to take her to a hospital. The victim had previously refused medical

_____

investigation.

3

No. 1-05-3358

attention. Before leaving for the hospital, Detective Doherty called for an evidence technician to take a buccal swab of the defendant. Then he transported the victim to the hospital and remained while she was there, transporting her home at approximately 3 a.m. the following morning. He had an evidence technician meet him at the victim's home to collect her bedding.

Detective Doherty testified that he returned to work at approximately 9 a.m. on August 9 and spoke to the defendant several times that day. The first interview occurred at approximately 1 p.m. The detective testified that he told the defendant that he did not believe him. The defendant then told him that he was in the apartment with the victim, that he told her to sign the check and that if she did not, he would "shove the pen up her ass." Approximately three hours later that day, Detective Doherty had another interview with the defendant in which the detective told the defendant that he did not believe the defendant's "story" and that he thought the defendant was "holding back some information." Then the defendant gave essentially the same statement that he later repeated in front of Assistant State's Attorney (ASA) James Lynch.

Detective Doherty testified that at approximately 4:30 p.m., ASA Lynch interviewed the defendant with Detective Doherty and his partner present. The statement was written down by hand by ASA Lynch, and reviewed and signed by defendant.

ASA Lynch testified that he went to the police station at approximately 1:15 p.m. and questioned the defendant twice that afternoon. At approximately 2:30 p.m., defendant gave a statement in which "he was denying the essentials of any sexual crimes against" the victim. At approximately 4:30 p.m., ASA Lynch took an oral statement from the defendant, which was consistent with the statement that Lynch later wrote down. At 5:15 p.m, ASA Lynch began

4

No. 1-05-3358

writing the statement down by hand, with the defendant sitting next to him and using a question and answer format. The written statement was signed by ASA Lynch, Detective Doherty and the defendant. ASA Lynch read the statement to the jury.

In the statement, the defendant stated that he was 41 years old and that he had cleaned up the victim's basement and around her house several times. On August 8, 2001, he went to the victim's apartment with his friend John Thomas to speak to her about money which he felt that she owed him for the work. He followed her into her bedroom, stating that he wanted his money. Then he went into the kitchen, where his friend John Thomas was located. John had followed them inside the apartment and the defendant did not believe that the victim had seen John.

The statement further claimed that defendant received a roll of duct tape from John and then went back into the bedroom and taped the victim's ankles together as she sat on the bed. He told her to lie down and he started to tape her wrists, but stopped because the victim complained that her arm hurt. The victim then told him that there was money in a beer stein in the kitchen. He went into the kitchen and John retrieved $90 from the stein. He then went back to the victim and told her that it was not enough money. He and John then removed $35 from her purse. The defendant received $60 of the money, and John received the rest and left.

The statement claimed that defendant then demanded more money. When the victim stated that she had no more money, defendant said that he had seen her bank statement and knew she had $10,000 in the bank, and told the victim to write him a check. He then went into the kitchen to bring the victim water and her checkbook. When he returned, the victim stated that she had to go to the bathroom. He carried her to the toilet and moved her gown aside for her. When

5

No. 1-05-3358

she was done, he carried her back to the bed.

The statement further claimed that defendant kept ordering the victim to write him a check and the victim kept refusing. Eventually, he picked up her taped feet, placed them on the bed with her knees up and threatened to shove a pen "up her ass." He then placed his penis on her thigh and placed the index finger of his left hand in her vagina up to the knuckle and then shook the bed with his knees. The victim then said that she would write the check.

The statement claimed that defendant retrieved the checkbook for the victim. He cut the tape from her ankles and handed her glasses to her so she could write the check. The victim went to the dresser to write the check, and defendant told her to write the check in the amount of $7,000, leaving the payee blank and writing "remodeling" on the memo line. The defendant then took the victim into the dining room, sat her down in a chair, and taped her hands and ankles to the arms and legs of the chair. He then gave her some water, placed a fan on her and left with the check.

The statement claimed that defendant first tried unsuccessfully to find someone to cash the check and then he went to the bank. After writing his name on the check as payee, he gave the check to the teller to cash. Another lady, other than the teller, told security to hold him and he broke free from security and ran. He ran to a place where he previously lived and hid under the stairs until he was found by the police.

Dr. Jeffrey Lahti testified that he was working in the emergency room at Christ Hospital on August 8, 2001. The victim was brought to the hospital at approximately 10 p.m., and examined at around 3 a.m. on August 9 "for an evaluation for a sexual assault." During his

6

No. 1-05-3358

interview, the victim stated that she had been "tied and raped." The pelvic examination was normal. He did observe redness on her wrists and redness and swelling of her left ankle.

John Onstwedder testified as an expert in fingerprint analysis, employed in the crime laboratory of the Illinois State Police. He examined the check presented on August 8 and found two fingerprints on the check which he compared with a fingerprint standard for the defendant. One print on the check was not clear enough for analysis but the other print matched the defendant's right thumb. He was unable to retrieve prints on the duct tape that he had received from the crime scene.

Jennifer Reynolds, an employee of Cellmark, a private laboratory, was qualified as an expert in DNA analysis. She testified that she conducted the DNA testing on the vaginal swab, and there was no DNA found on the swab belonging to anyone other than the victim.

Dr. Jennifer McCritchie testified as a DNA expert with the Illinois State Police. The vaginal, oral and rectal swabs from the victim did not contain semen, and neither did the fitted bedsheet. A semen stain was found on the victim's nightgown and housecoat. Neither semen stain contained sperm cells. On the nonsperm fraction of the nightgown stain there was a match to defendant's DNA in 7 of the 13 genetic markers, but 4 of those areas contained only partial information. Statistical analysis was performed on the other three areas, and the witness testified that "the profile that I found would be expected to occur in 1 of 190,000 black; 1 in 410,000 white; or 1 in 1,000,000 Hispanic unrelated individuals.."

Dr. Miguel Stubbs testified that he had been treating the victim at a nursing home in Georgia since 2002. When she was admitted, she was 75 or 76 years old. She was suffering from

7

No. 1-05-3358

moderate to severe dementia and a past stroke. When he first met the victim in 2002, she was already suffering from mild to moderate dementia and that the progression of such a condition takes a number of years.

The State rested after presenting the above witnesses, and the defense moved for a directed verdict, which was granted for counts IV and VIII. These counts had alleged criminal sexual assault based on penetration of the vagina by the defendant's penis. The defense did not present any evidence in its case in chief.

Jury deliberations began on July 28 and lasted for eight hours. On the second day of deliberations, the foreperson stated they did not have a unanimous verdict on one of the three counts and the jury was split 11 to 1. An hour later, the jurors sent a note stating that they had stopped deliberations, believing that they would not reach a unanimous verdict. Over defendant's objection, the trial court read the jury the Prim instruction, and the jury continued deliberating. Later that day, the jury did reach unanimous verdicts, finding defendant guilty of aggravated criminal sexual assault and forgery, and finding defendant not guilty of residential burglary.

The trial court sentenced defendant to 30 years imprisonment for the aggravated sexual assault count and 5 years imprisonment for the forgery count, with the sentences to be served consecutively. This appeal followed.

## ANALYSIS

Defendant appeals claiming: (1) that the doctor's testimony that the victim stated that she had been "tied and raped" was inadmissible hearsay and violated his sixth amendment right to confrontation; (2) that the State failed to prove forgery beyond a reasonable doubt; (3) that the

8

No. 1-05-3358

defendant was denied a fair trial because the jury was subjected to improper closing arguments concerning the law of forgery; and (4) that the defendant was denied a fair sentencing hearing.

### Doctor's Report of Victim's Statement

Defendant claims that it was error for the trial court to admit the doctor's testimony concerning the victim's statement that she was "tied and raped" because, first, the statement did not fall within the hearsay exception for statements made for the purposes of medical diagnosis; and second, because the admission of the statement violated defendant's sixth amendment right to confront the witnesses against him.

This court will review this claim for plain error. Although the defense filed a pretrial motion seeking to exclude the victim's statement to the doctor on confrontation clause grounds and the defense objected again at trial during the doctor's testimony,[2] the defense failed to raise the issue in his posttrial motion. The Illinois Supreme Court has held that a "defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to preserve any alleged error for review." People v. Woods, 214 Ill. 2d 455, 470 (2005); People v. Piatowski, 225 Ill. 2d 551, 564 (2007). Although defendant did object to the statement at trial, defendant's posttrial motion raised nine separate claims but none claimed a hearsay error, a sixth amendment

---

[2]At trial, the following exchange occurred. Defense counsel asked: "Dr. Lahti, when you interviewed Ms. Cartman, what did she say had been done to her?" The defense counsel stated: "Objection." The court responded: "Overruled." The doctor answered: "She said she was tied and raped."

No. 1-05-3358

violation or any issue with respect to the doctor's testimony. Defendant concedes in his brief to this court that he failed to raise the issue in his posttrial motion.

However, even when the defendant has failed to preserve an error for review, an appellate court may still review for plain error. "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." Piatowski, 225 Ill. 2d at 565; Woods, 214 Ill. 2d at 471. However, if there is no error at all, we need not reach the question of plain error. Piatowski, 225 Ill. 2d at 565 (plain error doctrine requires "first" that an error occurred); People v. Nicholas, 218 Ill. 2d 104, 121 (2006) (where "there was no error at all," there cannot be plain error).

The Illinois Supreme Court has held that when reviewing the admissibility of a hearsay statement, an appellate court must determine, first, whether the statement met the statutory requirements of a hearsay exception. Only if the court determines that the statement qualifies as a hearsay exception may the court then proceed to consider the sixth amendment issue. People v. Melchor, 226 Ill. 2d 24, 34-35 (2007) (vacated appellate court opinion and remanded with instructions to consider the hearsay exception first before proceeding to the sixth amendment issue).

Hearsay analysis and sixth amendment analysis are completely different. A statement may

No. 1-05-3358

be admissible under hearsay rules but barred by the sixth amendment and vice versa. As the

Supreme Court observed, "[a]n off-hand, overhead remark" may be excluded by hearsay rules but

permitted by the confrontation clause, while "ex parte examinations" are sometimes admissible

under modern hearsay rules but not "condoned" by the sixth amendment. Crawford v.

Washington, 541 U.S. 36, 51, 158 L.Ed2d 177 192, 124 S. Ct. 1354, 1364 (2004).

The rule against hearsay generally prevents the introduction at trial of out-of-court

statements offered to prove the truth of the matter asserted. People v. Murdock, 259 Ill. App. 3d

1014, 1024 (1994). However, the rule has many exceptions. Section 5/115-13 of the Code of

Criminal Procedure of 1963 (725 ILCS 5/115-13 (West 2000) provides a statutory exception to

the hearsay rule, for statements made for purposes of medical diagnosis. It states in full:

> "In a prosecution for violation of Section 12-13, 12-14, 12-14.1,
>
> 12-15 or 12-16 of the 'Criminal Code of 1961,' statements made by the
>
> victim to medical personnel for purposes of medical diagnosis or treatment
>
> including descriptions of the cause of symptom, pain or sensations, or the
>
> inception or general character of the cause or external source thereof
>
> insofar as reasonably pertinent to diagnosis or treatment shall be admitted
>
> as an exception to the hearsay rule." 725 ILCS 5/115-13 (West 2000).

The above exception by this statute applies only in sexual assault cases. The five statutory

sections listed in the exception are for, respectively: (1) criminal sexual assault; (2) aggravated

criminal sexual assault; (3) predatory criminal sexual assault of a child; (4) criminal sexual abuse;

and (5) aggravated criminal sexual abuse (720 ILCS 5/12-13, 12-4.1, 12-15, 12-16) (West

11

No. 1-05-3358

2000)).

A trial court is "vested with discretion" in determining whether a victim's statements to a physician fall within the medical diagnosis exception to the hearsay rule. Thus, this court will reverse only for an abuse of discretion of a trial court's determination that the medical diagnosis exception applies. <u>People v. Davis</u>, 337 Ill. App. 3d 977, 989-90 (2003).

Defendant claims that the trial court erred in admitting the victim's statement under the medical diagnosis exception because the victim allegedly did not go to the doctor for treatment but rather for evidence collection purposes.[3] Defendant has failed to cite a single case to support his claim. In addition, the Illinois Supreme Court has previously rejected the distinction that defendant asks this court to draw between examining and treating physicians. <u>People v. Falaster,</u> 173 Ill. 2d 220, 229-30 (1996).

In <u>Falaster,</u> a child claimed that she had been abused by her father for years. <u>Falaster,</u> 173 Ill. 2d at 222-23. After the child victim contacted the authorities, she was referred to a registered nurse who took a history from the victim, prior to a physical examination. <u>Falaster,</u> 173 Ill. 2d at 223. The defendant objected to the nurse's testimony about the victim's history on the ground that "the victim underwent the examination solely as a means of developing evidence for use in a subsequent prosecution." <u>Falaster,</u> 173 Ill. 2d at 229.

---

[3]Defendant does not claim that the particular statement at issue, that the victim was "tied and raped," was not pertinent to the victim's diagnosis and treatment. Instead, defendant claims that the entire examination was for evidentiary rather than diagnostic purposes.

12

No. 1-05-3358

Holding that the victim's history was "within the scope" of the statutory exception, the supreme court stated that "the diagnostic purpose of the examination" was not "incompatible with its investigatory function," and that "the statute does not distinguish between examining physicians and treating physicians." Falaster, 173 Ill. 2d at 229-30; People v. Rushing, 192 Ill. App. 3d 444, 453 (1989) (holding that the medical diagnosis exception "does not provide for a distinction between examining physicians and treating physicians," this court noted that the statutory "reference to diagnosis or treatment evinces a legislative intent *** not to limit the testimony only to treating physicians").

Similarly, in the case at bar, the diagnostic purpose of the examination was not incompatible with its investigative function. After answering questions at a police station, the victim was taken by a police detective to the emergency room of a hospital. During the evaluation by the emergency room physician, the victim told the doctor that she had been "tied and raped."

Almost all emergency room visits by sexual assault victims will have both evidence collection aspects and medical aspects. If we were to hold that an evidence collection purpose made statements from a sexual assault evaluation inadmissible, we would in effect obliterate the statute, which applies only in sexual assault cases. See People v. West, 355 Ill. App. 3d 28, 37 (2005) (victim's description of sexual assault to emergency room physician and nurse was within statutory exception for medical diagnosis).

Since we hold that the victim's statement to the doctor falls within the medical diagnosis exception to the hearsay rule, we now proceed to the confrontation clause issue. Melchor, 226 Ill.

13

No. 1-05-3358

2d at 34 (appellate court may proceed to sixth amendment issue after first determining that the trial court's hearsay ruling was correct). The defendant claims that introduction of the victim's statement that she was "tied and raped" violated his sixth amendment right to confront the witnesses against him, since the victim was unavailable to testify at trial.

There is no dispute that the victim was unavailable to testify at trial. The parties stipulated prior to a trial that a doctor currently treating the victim would testify that the victim was not available to testify at trial due to a serious medical condition unrelated to the charges against defendant. Between the time of the incident and the time of defendant's trial, the elderly victim had been admitted to a nursing home, suffering from moderate to severe dementia.

In People v. Purcell, 364 Ill. App. 3d 283 (2006), the appellate court discussed the appropriate standard of review for a claim that a trial court admitted a hearsay statement in violation of the sixth amendment. We held that we will defer to a trial court's evidentiary ruling " ' "unless the trial court's exercise of discretion has been frustrated by an erroneous rule of law." ' [Citations.]" Purcell, 364 Ill. App. 3d at 293.

The sixth amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***." U.S. Const., amend. VI. This part of the sixth amendment is known as the confrontation clause and applies to the states through the fourteenth amendment. People v. Stechly, 225 Ill. 2d 246, 264 (2007).

In 2004, with Crawford v. Washington, 541 U.S. 36, 158 L.Ed. 2d 177, 124 S. Ct. 1254 (2004), the United States Supreme Court "fundamentally altered its approach to confrontation

14

No. 1-05-3358

clause analysis." Stechly, 225 Ill. 2d at 264-65. Prior to Crawford, the United States Supreme

Court had held that the sixth amendment permitted the introduction of hearsay statements by

unavailable declarants, so long as the statements had " 'adequate "indicia of reliability." " ' "

Stechly, 225 Ill. 2d at 264, discussing and quoting Ohio v. Roberts, 448 U.S. 56, 66, 65 L.Ed. 2d

597, 608, 100 S. Ct. 2531, 2589 (1980).

In Crawford, the United States Supreme Court held: "[w]here testimonial statements are

at issue, the only indicum of reliability sufficient to satisfy constitutional demands is the one the

Constitution actually proscribes: confrontation." Crawford, 541 U.S. at 68-69, 158 L.Ed. $2^d$ at

203, 124 S. Ct. at 1374. Since, in the case at bar, there was no opportunity for cross-

examination, the only question is whether the victim's statement to the emergency-room physician

was "testimonial."

Unfortunately, "the Crawford Court explicitly declined to define what exactly makes a

statement 'testimonial.' " Stechly, 225 Ill. 2d at 266 (discussing Crawford). After noting several

possible definitions of "testimonial," the Crawford Court declined to adopt one, stating "[w]e

leave for another day any effort to spell out a comprehensive definition of 'testimonial.' "

Crawford, 541 U.S. at 51-52, 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. The Court noted

that "[r]egardless of the precise articulation, some statements qualify under any definition."

Crawford, 541 U.S. at 52 158 L. Ed. 2d at 193, 124 S. Ct. at 1364. The Court held: "Whatever

else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a

grand jury, or at a former trial; and to police interrogations." Crawford, 541 U.S. at 68, 158 L.

Ed. 2d at 203, 124 S. Ct. at 1374.

15

No. 1-05-3358

In Davis v. Washington, 547 U.S. ___, ___, 165 L.Ed. 2d 224, 237-38, 126 S. Ct. 2266, 2273-74 (2006), the United States Supreme Court modified the part of its Crawford holding that concerned police interrogation. In Davis, the Court held that some responses to police interrogation were testimonial, while others were not. Davis, 547 U.S. ___, 165 L.Ed. 2d at 237, 126 S. Ct. at 2273-74. The Davis Court drew the following distinction:

> "Statements are nontestimonial when made in the course of police
> interrogation under circumstances objectively indicating that the
> primary purpose of the interrogation is to enable police assistance
> to meet an ongoing emergency. They are testimonial when the
> circumstances objectively indicate that there is no such ongoing
> emergency, and that the primary purpose of the interrogation is to
> establish or prove past events potentially relevant to later criminal
> prosecution." Davis, 547 U.S. ___, 165 L.Ed. 2d at 237, 126 S.
> Ct. at 2273-74.

Thus, to apply Davis, we must determine whether the questioning qualified as "police" questioning[4] and whether the "primary purpose" was "to meet an ongoing emergency" or to

---

[4] In Crawford, the United States Supreme Court stated that "the term 'interrogation' " was to be used "in its colloquial, rather than any technical legal [] sense." Crawford, 541 U.S. at 53 n.4, 158 L.Ed. 2d at 194 n.4, S. Ct. at 1365 n.4; West, 355 Ill. App. 3d at 35 ("according to Crawford, the term 'interrogation' is to be viewed in a colloquial, rather than a technical, sense").

16

No. 1-05-3358

"prove past events." <u>Davis</u>, 547 U.S. ___, 165 L.Ed. 2d at 237, 126 S. Ct. at 2273-74.

The second question is easier to answer than the first, because in <u>Davis</u> the Court assumed without deciding that the 911 operators at issue in <u>Davis</u> were police agents. <u>Davis</u>, 547 U.S. at ___ n.2, 165 L.Ed. 2d at 238 n.2, 126 S. Ct. at 2274 n.2. [5]As a result, the <u>Davis</u> Court focused on the second question, providing many examples and guidelines for analyzing "primary purpose" but providing little guidance for determining what constitutes "police" interrogation. The Court left open for another day the question of "when statements made to someone other than law enforcement personnel are 'testimonial.' " <u>Davis</u>, 547 U.S. at ___ n.2, 165 L.Ed. 2d at 238 n.2, 126 S. Ct. at 2274 n.2.

Pursuant to the guidelines and examples provided by the <u>Davis</u> Court, there is no doubt that the primary purpose in the case at bar was to "prove past events" rather than to "meet an ongoing emergency." In <u>Davis</u>, the Court listed four factors that point to an ongoing emergency: (1) the declarant "was speaking about events <u>as they were actually happening</u>", (2) the statement was "a call for help against [a] bona fide physical threat"; (3) "the *** statements were necessary to be able to <u>resolve</u> the present emergency"; and (4) the declarant was not "responding calmly" and was instead giving "frantic answers." <u>Davis</u>, 547 U.S. at ___, 165

---

[5] The <u>Davis</u> Court stated: "If 911 operators are not themselves law enforcement officers, they may at least be agents of law enforcement when they conduct interrogations of 911 callers. For purposes of this opinion (and without deciding the point), we consider their acts to be acts of the police" . <u>Davis</u>, 547 U.S. at ___ n.2, 165 L. Ed. 2d at 238 n.2, 126 S. Ct. at 2274 n.2.

17

No. 1-05-3358

L.Ed. 2d at 240, 126 S. Ct. at 2276, 2277 (emphasis in original).

All four factors support a finding that the statement at bar was to prove past events. First, when the victim told the doctor that she had been "tied and raped," she was not speaking about events as they were actually happening but rather about an event that had happened the day before. Second, her statement to the doctor was not a present cry for help against an existing physical threat, since she was safe in the hospital. Third, the statement was not intended to resolve a present emergency; in fact, the victim had stated that she did not want to see a doctor and the police waited approximately seven hours before transporting her to a hospital. Fourth, although the elderly victim was upset and cried several times during the male doctor's examination of her, there is nothing in the record to suggest that she was "frantic."

In Davis, the Court discussed a rape case as an example. Davis, 547 U.S. at ___, 165 L. Ed. 2d at 241, 126 S. Ct. at 2277. In the case discussed, a young girl had " 'immediately on her coming home, told all the circumstances of her injury, to her mother. [Citation.]" Davis, 547 U.S. at ___, 165 L. Ed. 2d at 241, 126 S. Ct. at 2277. The Court stated that if the statement had recounted "the girl's screams for aid as she was being chased by her assailant" then the statement would have concerned an ongoing emergency. Davis, 547 U.S. at ___, 165 L. Ed. 2d at 241, 126 S. Ct. at 2277. However, "by the time the victim got home, her story was an account of past events." Davis, 547 U.S. at ___, 165 L. Ed. 2d at 241, 126 S. Ct. at 2277. Similarly, in the case at bar, by the time the victim had been questioned at the police station and then transported by police to a hospital, her story was an account of past events.

Thus, in the instant case, if the victim had made her statement about past events to a

18

No. 1-05-3358

police officer, it would have qualified as testimonial pursuant to Davis. West, 355 Ill. App. 3d at 35 (statements made at hospital by sexual assault victim to police officers were testimonial for purposes of Crawford). The question then is whether our holding should be different because the police officer transported her to a doctor, so that the doctor took the statement instead of the officer who was waiting in the hospital.

The United States Supreme Court has stated that most cases applying the confrontation clause "involved testimonial statements of the most formal sort -- sworn testimony in prior judicial proceedings or formal depositions under oath." Davis, 547 U.S. at ___, 165 L. Ed. 2d at 239, 126 S. Ct. at 2275-76. In Crawford, the Supreme Court found that modern police interrogations were also testimonial because "[p]olice interrogations bear a striking resemblance to examinations by justices of the peace in England." Crawford, 541 U.S. at 52, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364. The Court found that both had "an essentially investigative and prosecutorial function." Crawford, 541 U.S. at 53, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365..

While the old English magistrate and the modern American police officer had a single essential function which was to investigate, the issue of a doctor in a rape case is more complicated because the doctor has a dual function, both to investigate the alleged crime and to treat the victim medically. For example, the doctor in the case at bar served an investigative function by completing a rape kit, which required him to comb the victim's head and pubic hair looking for other people's hair and to obtain oral, vaginal and rectal swabs to check for the presence of other people's bodily fluids. As the doctor explained on the stand, he was "to look for evidence."

19

No. 1-05-3358

In <u>Davis</u>, the United States Supreme Court held that "we do not think it [is] conceivable that the protections of the Confrontation Clause can readily be evaded by having a note-taking policeman recite the unsworn hearsay testimony of the declarant, instead of having the declarant sign a deposition." <u>Davis</u>, 547 U.S. at ___, 165 L. Ed. 2d at 239, 126 S. Ct. at 2276 (emphasis omitted). Similarly, this court finds that the protections of the confrontation clause cannot be evaded by having the note-taking policeman simply bring the victim to a note-taking doctor.[6]

In <u>Stechly</u>, the Illinois Supreme Court held that statements of a sexual abuse victim to a nurse in an emergency room were "unquestionably" testimonial under <u>Davis</u> and thus barred by the confrontation clause, where the victim was unavailable for cross-examination. <u>Stechly</u>, 225 Ill. 2d at 299. The victim's statements to the nurse concerned both the perpetrator's identity and the nature of the abuse. <u>Stechly</u>, 225 Ill. 2d at 252, 256. The Illinois Supreme Court held that the nurse in <u>Stechly</u> was acting as an "agent[] *** for purposes of confrontation clause analysis" because the nurse took no further action other than to pass information on to the authorities.

---

[6] Our opinion "in no way impugned" the police officer's action in bringing the victim to the doctor. <u>Davis</u>, 547 U.S. at ___ n.6, 165 L. Ed. 2d at 243 n.6, 126 S. Ct. at 2279 n.6. Unlike other constitutional clauses such as the Fourth Amendment's guarantee against unreasonable search and seizure, the confrontation clause "in no way governs police conduct." <u>Davis</u>, 547 U.S. at ___ n.6, 165 L. Ed. 2d at 243 n.6, 126 S. Ct. at 2279 n.6. The Confrontation Clause regulates "the trial use of" properly obtained statements. <u>Davis</u>, 547 U.S. at ___ n.6, 165 L. Ed. 2d at 243 n.6, 126 S. Ct. at 2279 n.6.

No. 1-05-3358

Stechly, 225 Ill. 2d at 300-01. Similarly, in the case at bar, the emergency room doctor testified

that he took no further action after performing "an evaluation for sexual assault," which included

completing the rape kit. Thus Stechly requires a finding in the case at bar that the statement was

testimonial.

Prior to Stechly, the appellate court in West held that a sexual assault victim's statements

about the nature of her assault to an emergency room doctor were not testimonial. West, 355 Ill.

App. 3d at 37.[7] However, this decision was prior to both the Illinois Supreme Court's decision in

Stechly and the United States Supreme Court's decision in Davis.[8]

Having found a confrontation clause violation, we must next determine whether the error

was "harmless beyond a reasonable doubt." Stechly, 225 Ill. 2d at 304 ("Crawford violations are

---

[7]The court in West held that while a sexual assault victim's statements about the nature of

her assault to a police officer were testimonial, her subsequent, similar statements to an

emergency room doctor were not. West, 355 Ill. App. 3d at 37.

[8] In West, the appellate court held that the victim's statements to the doctor about the

nature of the attack were nontestimonial and thus admissible under the sixth amendment, whereas

the victim's statements to the doctor about the identity of the perpetrator were testimonial and

thus not admissible. West, 355 Ill. App. 3d at 37. As noted above, the Illinois Supreme Court in

Stechly held inadmissible the victim's statements about both the identity of the perpetrator and the

nature of the sexual abuse. Stechly, 225 Ill. 2d at 252, 256. The supreme court did not draw the

same distinction between identity and nature of the assault that the appellate court did.

21

No. 1-05-3358

subject to harmless-error analysis"); People v. Thompson, 349 Ill. App. 3d 587, 594 (2004)

(applying harmless error analysis to confrontation clause error). An error is harmless if "it

appears beyond a reasonable doubt that the error at issue did not contribute to the verdict

obtained." Stechly, 225 Ill. 2d at 304; People v. Nitz, 219 Ill. 2d 400, 410 (2006) (error is

harmless if "the result would have been the same absent the error").

To determine whether an error was harmless, this court must consider: (1) whether the

error "might have contributed to the conviction"; (2) whether other evidence is "overwhelming"

in support of the conviction; and (3) whether the erroneously admitted evidence is "cumulative or

duplicates properly admitted evidence." Stechly, 225 Ill. 2d at 304-05; Thompson, 349 Ill. App.

3d at 594 (same).

The "tied and raped" statement was admitted to support the conviction for aggravated

criminal sexual assault (720 ILCS 5/12-14 (West 2000)). A person is guilty of "aggravated

criminal sexual assault" if he commits "criminal sexual assault" on a victim 60 years of age or

older, 720 ILCS 5/12-14 (a)(5) (West 2000)). A person is guilty of "criminal sexual assault" if he

"commits an act of sexual penetration by the use of force," 720 ILCS 5/12-13(a)(1) (West 2000).

"Sexual penetration" is defined as either: "any contact *** between the sex organ or anus of one

person by an object, the sex organ, mouth or anus of another person," or "any intrusion, however

slight, of any part of the body of one person or of any animal or object into the sex organ or anus

of another person." 720 ILCS 5/12- 12(f) (West 2006). Since the essential elements of a crime

must be proved beyond a reasonable doubt, the state had the burden of proving penetration

beyond a reasonable doubt. People v. Wheeler, 226 Ill. 2d 92, 114 (2007) (due process requires

22

No. 1-05-3358

proof beyond a reasonable doubt of "the essential elements of the crime").

The only evidence[9] of the element[10] of penetration consisted of: 1. the defendant's statement, transcribed by ASA Lynch, that the defendant inserted his finger into the victim's vagina;[11] and (2) the victim's statement to the doctor that she was "raped." Finger insertion falls

---

[9] The semen found on the victim's housecoat is not evidence of penetration. It is consistent with the defendant' statement that he placed his penis on the victim's thigh and did not penetrate. In fact, it could be argued that the presence of semen on the housecoat and not on the vaginal or anal swabs is evidence of a lack of penetration.

[10] The defendant was not charged with criminal sexual abuse which would have required only sexual conduct and not penetration (720 ILCS 5/12-15 (West 2000). "Sexual conduct' includes "any transfer or transmission of semen by the accused upon any part of the clothed or unclothed body of the victim" (720 ILCS 5/12-12(e) (West 2000).

[11] The defendant's statement that he placed his penis on the victim's thigh was not evidence of "penetration" as defined in the statute. The statute requires either intrusion or a certain type of contact. First, placing his penis on the victim's thigh was not an intrusion into her "sex organ" or anus, as the statute requires. Second, the act did qualify as a "contact" either. To be a "contact," his penis would have to come in contact with "an object, the sex organ, mouth or anus" of the victim. Her thigh is not an object or sex organ, so it does not fall within the plain language of the statute. Later in the same sentence, the legislators used the words "any part of the body," but they chose not to use it here.

No. 1-05-3358

withing the statute's definition of "penetration." Penetration is defined as including "any intrusion" by "any part of the body," such as a finger, into the victim's vagina. 720 ILCS 5/12-12(f)(2000).

     The defendant's statement by itself was, without a doubt, sufficient evidence for a jury to find the defendant guilty of penetration. People v. McIntosh, 305 Ill. App. 3d 462, 467-68 (1999) (victim's statement was sufficient to prove sexual assault beyond a reasonable doubt). However, the question on this appeal is not whether the defendant's statement was sufficient evidence, but whether it was such overwhelming evidence that admission of the victim's statement was harmless error beyond a reasonable doubt.

     We find the defendant's statement to be overwhelming evidence of penetration. First, it is doubtful that the victim's statement contributed to the jury's finding of penetration. Thompson, 349 Ill. App. 3d at 594 (first prong of harmless error analysis requires the court to consider whether error "might have contributed to the conviction"). The doctor's entire report of the victim's account of the crime was a mere seven words long: "She said she was tied and raped." When those seven words are compared against the detailed, multipage and signed confession of the defendant, it is hard to believe that the victim's statement had much impact.

     Second, the defendant's statement was "overwhelming" evidence in support of his conviction. Thompson, 349 Ill. App. 3d at 594 (second prong of a harmless error analysis requires the court to consider whether other evidence was "overwhelming"). Defendant's statement was never recanted and never refuted. Prior to trial, the defendant moved to suppress his statement on the ground that he was in pain from injuries and suffering from heroin and

24

No. 1-05-3358

alcohol withdrawal. During the suppression hearing, he testified about his pain and suffering. However, he never once claimed that the statement was not the truth; [12] and we cannot find evidence in the record which contradicts the defendant's statement.

Since the defendant's statement was unrecanted and unrefuted, it is completely distinguishable from the statement in Thompson, which this court found was not "overwhelming" evidence. Thompson, 349 Ill. App. 3d at 595. In Thompson, the defendant was accused of assault, and the evidence of assault consisted of: police and medical testimony concerning the physical condition of the victim and the site; the defendant's inculpatory statements; and the victim's statements. Thompson, 349 Ill. App. 3d at 594. After finding that admission of the victim's statements violated the defendant's right to confrontation, this court then found that the error was not harmless because the other evidence was not "overwhelming." Thompson, 349 Ill. App. 3d at 594-95. In finding that the other evidence was not overwhelming, this court noted that the defendant had testified at trial and refuted the earlier inculpatory statements attributed to him. Thompson, 349 Ill. App. 3d at 594-95. Thus unlike the defendant's admission in the case at bar, the defendant's admission in Thompson was recanted and refuted.

Third, it is difficult to assess whether the victim's statement of being "raped" was

---

[12]At the suppression hearing, the assistant State's Attorney asked the defendant: "I take it then that you don't remember giving all of the details that are contained in this 6 page statement? You don't remember telling the state's attorney that information?" The defendant responded: "I recollect."

25

No. 1-05-3358

cumulative of other properly admitted evidence. The defendant's confession admitted only finger penetration. Without the victim on the stand, it is difficult to ascertain what she meant by the word "rape," whether or not in her mind the term was broad enough to include finger penetration. However, considering the overwhelming nature of the other evidence, this court finds that the confrontation clause error was harmless beyond a reasonable doubt. Since the error was harmless, we do not have to consider whether it rose to the level of plain error.

### Forgery Conviction

Defendant also claims that the state failed to prove him guilty of forgery beyond a reasonable doubt. The due process clause of the fourteenth amendment to the United States Constitution "requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " People v. Cunningham, 212 Ill. 2d 274, 278 (2004), quoting In re Winship, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073 (1970).

When we review a claim that the evidence was insufficient to sustain a conviction, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Cunningham, 212 Ill. 2d at 278 (emphasis in original), quoting Jackson v. Virginia, 443 U.S. 307, 319, 61 L.Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); People v. Hunter, 331 Ill. App. 3d 1017, 1025 (2002). "The Jackson standard applies in all criminal cases, regardless of the nature of the evidence." Cunningham, 212 Ill. 2d at 279. In applying this standard, "[a] reviewing court must allow all reasonable inferences from the record in favor of the prosecution."

26

No. 1-05-3358

Cunningham, 212 Ill. 2d at 280.

Defendant claims on appeal that the State failed to prove forgery beyond a reasonable doubt, because the indictment alleged that the check was not written by the victim when the State's evidence showed that almost all of the check was actually written by the victim.

Count XVI, the forgery by delivery count of the indictment,[13] alleged that the defendant:

> "with intent to defraud, knowingly delivered a document to wit: a
> check number 1602, dated August 8, 2001, in the amount of
> $7,000.00, on the account of Juanita Cartman, drawn on Bank One,
> made payable to Charles Spicer, apparently capable of defrauding
> another in such a manner that it purported to have been made by
> Juanita Cartman, knowing that it was not made by Juanita Cartman,
> in violation of Chapter 720 Act 5 Section 17-3(a)(2) of the Illinois
> Compiled Statutes 1992 as amended."

Section 17-3(a)(2) states: "A person commits forgery when, with intent to defraud, he knowingly: *** (2) issues or delivers such document knowing it to have been thus made or

---

[13]The indictment alleged two counts of forgery: forgery by knowingly altering a document, in violation of section 17-3(a)(1); (720 ILCS 5/17-3(a)(1)(West 2000)); and forgery by knowingly delivering a document, in violation of section 17-3(a)(2)(720 ILCS 5/17-3(a)(2)(West 2000)). In the jury charge, the trial court instructed the jury on only the latter type of forgery, forgery by delivery.

No. 1-05-3358

altered," 720 ILCS 5/17-3(a)(2)(West 2000). "[S]uch document" is defined as:

> "any document apparently capable of defrauding another in
>
> such manner that it purports to have been made by another or at
>
> another time, or with different provisions, or by authority of one
>
> who did not give such authority," (720 ILCS 5/17-3(a)(1)(2000).

In essence, the defendant claims that the indictment [14]charged the first clause[15] of the above statutory definition, that the check "purports to have been made by another," when the State's evidence proved that most of the check was not "made by another" but in fact was made by the victim herself.

The only evidence presented at trial concerning the making of the check came from the written statement signed by defendant. The defendant stated that the victim made out the check except for the payee line, which the defendant made out to himself. The defendant's statement was corroborated by the testimony of the bank teller, who stated that "[t]he payee was filled in, but it wasn't the account holder's handwriting."

---

[14]The jury charge also stated that the jury had to find that "the defendant knowingly issued or delivered a check which he knew had been made or altered so that it appeared to have been made by another."

[15]It is curious that, in a case such as this where the crime was perpetuated by duress and threat of force, neither the indictment nor the jury instructions charged the third clause: "by authority of one who did not give such authority." 720 ILCS 5/17-3(a)(1)(West 2000).

28

No. 1-05-3358

Defendant claims that the case at bar is similar to People v. Lindquist, 97 Ill. App. 3d 894 (1981). See also People v. Rennels, 227 Ill. App. 3d 263 (1992). In Lindquist, the defendant, as estate executor, had the authority to write checks on the estate account. Lindquist, 97 Ill. App. 3d at 895. The State claimed that he committed forgery when he wrote checks to withdraw funds for his own purposes. Lindquist, 97 Ill. App. 3d at 895. The appellate court stated that it was surprised that the defendant was not charged with theft, but held that he was not guilty of forgery. Lindquist, 97 Ill. App. 3d at 895.

The Lindquist case is completely different from the case at bar. Unlike the defendant in Lindquitst, the defendant in the case at bar had no authority either to write checks or to withdraw funds from the victim's account.

People v. Murrah, 255 Ill. App. 3d 742 (1993), cited by the State, is more instructive. In Murrah, the defendant was charged with forgery in connection with an application for a corporate credit card. Murrah, 255 Ill. App. 3d at 743. The defendant's supervisor testified that when he signed the application for the corporate credit card, the line for "additional cards for other employees" was blank. Murrah, 255 Ill. App. 3d at 744. At some point, defendant's name was typed on that line, and the defendant received a credit card. Murrah, 255 Ill. App. 3d at 744. The appellate court found that the jury could have inferred that the defendant added his name after his supervisor had signed the application and that this inference was sufficient to support the charge that the defendant "made or altered a document" with intent to defraud. Murrah, 255 Ill. App. 3d at 747. The Murrah defendant's adding his name to the credit card application is similar

29

No. 1-05-3358

to our defendant's adding his name to the victim's check. People v. Kubanek, 370 Ill. 646, 648 (1939) (defendant was guilty of forgery "by filing in the checks over the admittedly genuine signature of" the victim).

Thus, after reviewing the evidence in the light most favorable to the prosecution, this court finds that a rational trier of fact could have found the essential elements of the crime of forgery beyond a reasonable doubt.

### Closing Argument

The defendant claims that he was denied a fair trial because the prosecutor in closing argument allegedly suggested that duress or coercion was an element of forgery, which is not the law.

The defendant waived this issue by failing to object at trial. People v. Woods, 214 Ill. 2d 455, 470 (2005) (error is not preserved for appellate review if defendant fails to "specifically object at trial"); Piatowski, 225 Ill. 2d at 564. As noted above, even when the defendant has failed to preserve an error for review, an appellate court may still review for plain error. The plain error doctrine allows a reviewing court to consider an unpreserved error when either (1) the evidence is "so closely balanced that the error alone threatened to tip the scales of justice against the defendant," or (2) the "error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." Piatowski, 225 Ill. 2d at 565; Woods, 214 Ill. 2d at 471. " 'In both instances, the burden of persuasion remains with the defendant.' " Piatowski, 225 Ill. 2d at 564, quoting People v. Herron, 215 Ill. 2d 167, 187 (2005).

As noted above, before we may examine either prong of the plain error doctrine, we must

30

No. 1-05-3358

first determine whether there was any error at all. Piatowski, 225 Ill. 2d at 565 (plain error doctrine requires "first" that an error occurred); People v. Nicholas, 218 Ill. 2d 104, 121 (2006) (where "there was no error at all," there cannot be plain error); People v. Johnson, 218 Ill. 2d 125, 139 (2005) ("Clearly, there can be no plain error if there is no error"). For a prosecutor's closing remarks to constitute error, they must fall outside the "wide latitude" accorded a prosecutor in making a closing. People v. Nicholas, 218 Ill. 2d 104, 121 (2006); People v. Hart, 214 Ill. 2d 490, 513 (2005) ("[t]he law gives a prosecutor wide latitude in argument"). "In closing, the prosecutor may comment on the evidence and any fair, reasonable inferences it yields." Nicholas, 218 Ill. 2d at 121; Hart, 214 Ill. 2d at 513. "A closing argument must be viewed in its entirety, and the challenged remarks must be viewed in their context." Nicholas, 218 Ill. 2d at 122.

The defendant claims that the prosecutor erred in closing argument when he made the following two remarks. First, the prosecutor stated: "It's her writing [on the check]; but make no mistake about it, he's the one that made the check. He just used her hands to do it." Second, during rebuttal, the prosecutor stated that it was unreasonable for the defense to argue that "[s]he wasn't forced to write out that check."

The defendant cannot now object to the prosecutor's remark in rebuttal when defense counsel invited the alleged error. A defendant cannot complain on appeal about an error that was "procured or invited by the defendant" at trial. People v. Harvey, 211 Ill. 2d 368, 386 (2004); People v. Bush, 214 Ill. 2d 318, 333 (2005); People v. Caffey, 205 Ill. 2d 52, 114 (2001). The prosecutor made the rebuttal remark in response to defense counsel's remarks in the defense

31

No. 1-05-3358

closing that the State had failed to prove that the defendant "made her write him a check."

Defense counsel argued in closing that the State had failed to prove:

> "whether it [the check] was given to him willingly or not by Juanita
>
> Cartman, whether she knew he had it, whether she wrote it out for
>
> him under force, duress, we don't know these things. They haven't
>
> been proved."

In closing, the defense put forth the "theory" that the elderly victim was acting not out of duress but out of confusion:

> "Now here is a theory *** Ms. Cartman would not be the first
>
> elderly person to lose control of a large sum of money they did not
>
> mean to lose. She would not be the first person who wrote out a
>
> check with too many zeroes on the end or wrote a check thinking
>
> they were paying for something and found out later they were never
>
> going to get it."

Defense's repeated comments about lack of force or duress certainly invited the prosecutor's rebuttal comment to the jury that "you don't believe *** for one minute" the defense assertion that "[s]he wasn't forced to write out that check." People v. Sutton, 316 Ill. App. 3d 874, 893 (2000) ("[w]here there are allegations of prosecutorial misconduct [during closing], arguments of both the prosecutor and defense counsel must be reviewed in their entirety").

As for the first allegedly improper comment, that the defendant forced the victim to write the check, the defendant claims that this remark was a "misstatement" by the prosecutor that

No. 1-05-3358

duress or force was an element of fraud. First, the statement was factually not a "misstatement" but a more than reasonable inference to be drawn from the evidence presented at trial. Second, the prosecutor never told the jury that duress or force was an element of fraud; and to the extent that the jury was laboring under that misapprehension, the court properly instructed the jury about the elements of fraud. The defendant has not challenged any aspect of the jury charge on appeal. Viewing the closing in its entirety and in context, this court cannot find that the two challenged remarks constituted reversible error. Nicholas, 218 Ill. 2d at 122 (closing "must be viewed in its entirety" and "remarks must be viewed in their context").

Even if there was error, it did not rise to the level of plain error. First, the evidence supporting the forgery charge was not closely balanced. Piatowski, 225 Ill. 2d at 565 (plain error if evidence is "so closely balanced that the error alone threatened to tip the scales of justice against the defendant"); Woods, 214 Ill. 2d at 471. On one side of the scale, the evidence of forgery included: (1) defendant's signed and detailed statement concerning the making of the check; (2) the fingerprint expert's testimony about the defendant's fingerprint on the check; (3) the teller's testimony concerning the defendant's presentation of the check at the bank, and the fact that the payee was in a different handwriting than the balance of the check; and (4) testimony by the teller, the security guard, and the police officer about the defendant's immediate flight out of the door of the bank, over a fence at a construction site and finally hiding under a porch of a nearby building. People v. Harris, 225 Ill. 2d 1, 23 (2007) ("evidence of flight" is generally "admissible as proof of consciousness of guilt"); People v. Hart, 214 Ill. 2d 490, 519 (2005) (same). On the other side of the scale, there was no evidence disputing the forgery. Far from

33

No. 1-05-3358

being closely balanced, the scales tipped heavily toward the jury's verdict of forgery. In Piatowski, the Illinois Supreme Court recently held that the evidence in the case before it was not closely balanced where the State presented "no physical evidence to connect defendant" to the crime and "no inculpatory statements by defendant." Piatowski, 225 Ill. 2d at 567. In contrast to Piatowski, the case at bar included both physical evidence, such as the check with defendant's fingerprint, and the defendant's highly inculpatory statements, as well as the teller's eyewitness testimony about the check's presentation and separate handwriting for the line of the payee, and the defendant's flight.

Second, if there was an error in the prosecutor's closing argument, it was not so serious that it affected the fairness of the defendant's trial. Piatowski, 225 Ill. 2d at 565; Woods, 214 Ill. 2d at 471. As discussed above, the first allegedly improper remark was invited by defense counsel; and the second remark was a factual assertion reasonably drawn from the evidence which did not state that duress or force was an element of forgery. Thus, even assuming there was an error, the defendant has failed to show that it rose to the level of plain error.

## Sentencing Hearing

Defendant claims that he was denied a fair sentencing hearing when he received the maximum sentence of 30 years for aggravated sexual assault. Defendant claims that the sentencing court erred: (1) by relying on a police report for the facts of defendant's prior conviction; (2) by considering the victim's age as an aggravating factor when age was already an element of the offense; and (3) by failing to consider mitigating factors, such as defendant's lack of a lengthy criminal record. In his brief to this court, the defendant concedes that he waived these issues by

34

No. 1-05-3358

failing to raise them properly below and that the plain error doctrine applies.

"It is well settled that a trial judge's sentencing decisions are entitled to great deference and will not be altered on appeal absent an abuse of discretion." People v. Jackson, 375 Ill. App. 3d 796, 800 (2007). "A sentence which falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense." Jackson, 375 Ill. App. 3d at 800. Although the sentencing court in the case at bar chose to give the maximum sentence, that sentence was still within the statutory range (720 ILCS 5/12-14(d)(1)); and defendant has not claimed on appeal that his sentence was "manifestly disproportionate" to the crime.

First, with respect to the police report, there is no evidence that the sentencing court relied on it for purposes of sentencing. At the sentencing hearing, the prosecutor informed the court that the defendant had pled guilty on April 6, 1993, to attempted robbery and aggravated battery of an 88-year-old victim, for which the defendant received a sentence of three years. The defense did not dispute the fact of the conviction or the age of the victim, at sentencing or on this appeal.[16]

The prosecutor then related the following facts from a detective's report about the 1993 case:

---

[16]At sentencing, the defendant disputed having committed the aggravated battery but admitted the conviction. Defendant claimed that he pled guilty in 1993 in order to "[g]et it over with, they came to me with the battery charge and I took."

35

No. 1-05-3358

"In a very similar manner, the facts involve the defendant talking his way into her apartment, asking for money, taking her into her bedroom. When she refused to give him money, slapping and hitting this victim who sustained injuries in that case, a small cut to the right side of the face, a bruise to the left chest area and a minor bruise to the neck area. *** The victim also related to the police that a neighbor called during this incident and the neighbor even told the police that the victim said to her, he's back again and he's hitting me. And heard the victim say ouch, stop hitting me."

During the sentencing hearing, the trial court did not refer to the details contained in the police report. With respect to the 1993 case, the trial court focused primarily on the victim's age, noting that it was another aggravated battery "with another elderly woman." In announcing the sentence, the trial court stated:

"This is two offenses for violence against women who are senior citizens. And real senior citizens. We are not talking about somebody coming home from working out at the health club who happens to be 61 or 65. That would make him a senior citizen. Those women were well beyond that age.

I think that society requires based on facts of the case and background, on count nine will merge into count seven, on count seven I sentence you to 30 years [in the] Illinois Department of

36

No. 1-05-3358

Corrections."

The above remarks indicate that the trial court relied primarily not on the details in the police report, but on the facts of the conviction and the prior victim's age, facts that the defense has never disputed or raised as an issue on this appeal. Kliner, 185 Ill. 2d 81, 172, (1998) (noting that "the trial judge did not cite to any of the evidence here challenged"). "[W]hen the trial judge is the sentencer, it is presumed that the trial judge based his decision upon competent and reliable evidence." Kliner, 185 Ill. 2d at 174. The defendant in the case at bar has failed to rebut that presumption.

Even if the sentencing court had relied on the police report, that fact alone would not require resentencing. The defendant objects to admission of the report as unreliable hearsay. However, a court is permitted to consider hearsay information at sentencing. People v. Harris, 375 Ill. App. 3d 398, 409 (2007). The "ordinary rules of evidence which govern at trial are relaxed at the sentencing hearing." Harris, 375 Ill. App. 3d at 408. At sentencing, a "hearsay objection affects the weight rather than the admissibility of the evidence." Harris, 375 Ill. App. 3d at 409. It is left to the "sound discretion" of the trial court to determine whether hearsay is reliable enough to weigh in sentencing. Harris, 375 Ill. App. 3d at 410. The Illinois Supreme Court has held that a sentencing court may consider even uncharged conduct contained in a rap sheet. People v. Kliner, 185 Ill. 2d 81, 171, 172 (1998) ("defendant's Chicago police department 'rap sheet' which indicated defendant's prior arrests" was relevant to sentencing "because it provides an insight into the defendant's character").

Second, the defendant claims that the trial court improperly considered the victim's

37

No. 1-05-3358

age as an aggravating factor in sentencing when the victim's age was already an element of the offense. Aggravated sexual assault requires, as an element of the offense, finding one factor from a list of aggravating factors. (720 ILCS 5/12-14 (a)(West 2000)). One of these factors is that "the victim was 60 years of age or over when the offense was committed." 720 ILCS 5/12-14(a) (5)(West 2000)).

"As a general rule, the consideration of a factor which is necessarily implicit in an offense cannot be used as an aggravating factor in sentencing." People v. Burge, 254 Ill. App. 3d 85, 88 (1993). "Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing 'a harsher sentence than might have otherwise have been imposed.' People v. Phelps, 211 Ill. 2d 1, 11-12 (2004) quoting People v. Gonzalez, 51 Ill. 2d 79, 83-84 (1992). "Such dual use of a single factor is often referred to as 'a double enhancement.' " Phelps, 211 Ill. 2d at 12, quoting Gonzalez, 151 Ill. 2d at 85.

In support of his claim that the trial court erred in sentencing him, the defendant cited People v. White, 114 Ill. 2d 61 (1986), which the supreme court called a "textbook example of double enhancement." Phelps, 211 Ill. 2d at 12. The supreme court explained that: "In White, this court held that *** the victim's age cannot form the basis for an extended-term sentence where the defendant is convicted of aggravated battery of a child." Phelps, 211 Ill. 2d at 12. However, White is distinguishable from the case at bar because in the case at bar, age was not used as the basis for an extended-term sentence. The trial court in the case at bar sentenced the defendant within the statutory maximum for the offense. The other two cases cited by defendant

38

No. 1-05-3358

in support of his claim also involved extended-term sentences, and are similarly distinguishable.[17]

Although it is a "general rule" that an element of the offense should not also be used as a sentencing factor, "this rule should not be applied rigidly." Burge, 254 Ill. App. 3d at 88. "The rule that a court may not consider a factor inherent in the offense is not meant to be applied rigidly, because sound public policy dictates that a sentence be varied in accordance with the circumstances of the offense." People v. Cain, 221 Ill. App. 3d 574, 575 (1991). Thus, a sentencing court may consider "the degree of harm threatened" in an armed robbery although threatened harm is implicit in the offense (Burge, 254 Ill. App. 3d at 89); and the degree of harm in an aggravated criminal sexual assault, although "serious harm *** [is] an element implicit in the crime." People v. Smith, 215 Ill. App. 3d 1029, 1038 (1991).

In assessing the degree of harm, a sentencing court may consider, for example, "whether the victim is particularly young" even though the victim's age is an element of the sexual assault

---

[17]The defendant also cited People v. Conover, 84 Ill. 2d 400 (1981), and People v. Ferguson, 132 Ill. 2d 86 (1989). Conover and Ferguson involved the question of whether the aggravating factor permitted the sentencing court to impose "an extended-term sentence" (Ferguson, 132 Ill. 2d at 95) or "a more severe penalty" (Conover, 84 Ill. 2d at 405) for the offense than the legislature had authorized for the offense. These cases are distinguishable from the case at bar because the trial court in the case at bar sentenced the defendant within the statutory maximum for the offense.

39

No. 1-05-3358

count for which defendant was convicted. People v. Thurmond, 317 Ill. App. 3d 1133, 1144 (2000) (emphasis omitted). In Thurmond, the sexual assault victim was only 12 years old. Thurmond, 317 Ill. App. 3d at 1136. The appellate court held that "the trial court did not err by recognizing that [the victim] was particularly young at the time of the offense." Thurmond, 317 Ill. App. 3d at 1144-45. The appellate court stated "there is a difference between being under age 18 and being significantly under age 18." Thurmond, 317 Ill. App. 3d at 1144.

Just as a trial court may consider whether a sexual assault victim was particularly young, a trial court may also consider whether a victim was particularly senior. In the case at bar, the trial court did not err when it considered that the victim was 15 years above the age required in the statute. The victim in the case at bar was 75 or 76 years old at the time of the offense; and the age required for aggravated sexual assault was only 60, 720 ILCS 5/12-14(a)(5)(West 2000).

Third, the defendant claims that the sentencing court failed to consider mitigating factors, such as defendant's lack of a lengthy criminal record, his associate's degree, his work history and his honorable discharge from the military. Defense counsel stated most of these facts at sentencing; and the trial judge acknowledged that he had "[r]eviewed the background" and that "there are many things that go into sentencing."

"[T]here is no mandatory requirement that the trial judge recite all" the mitigating and aggravating factors "before imposing sentence." Jackson, 375 Ill. App. 3d at 802. "It is presumed that the trial judge considered all of the factors unless the record indicates to the contrary." Jackson, 375 Ill. App. 3d at 802. We can find no evidence of "an abuse of discretion" in the sentencing record. Jackson, 375 Ill. App. 3d at 800.

No. 1-05-3358

## Correction of Mittimus

Both the State and the defense agree that the mittimus must be corrected. The "Order of Commitment and Sentence" states that the defendant was "adjudged guilty of the offense(s) enumerated below" and then lists three separate offenses: (1) "AGG. CRIM SEX ASSAULT/FELONY"; (2) "AGG. CRIM SEX ASLT/VICTIM>60"; and (3) "FORGERY/ISSUE/DELIVER DOCUMENT."

At sentencing, the trial court merged count IX, aggravated criminal sexual assault based on the victim's age, with count VII, aggravated criminal sexual assault predicated on its commission during a residential burglary. However, the jury had acquitted defendant of residential burglary.

The jury found defendant guilty of, and the trial court entered judgment and sentenced defendant on one count of aggravated criminal sexual assault and on one count of forgery. Accordingly, the order must be corrected to eliminate "AGG CRIM SEX ASSAULT/FELONY." "Pursuant to Supreme Court Rule 615 (134 Ill. 2d R. 615), a reviewing court on appeal may correct the mittimus at any time, without remanding the cause to the trial court." People v. Jones, 371 Ill. App. 3d 303, 310 (2007).

## CONCLUSION

For the foregoing reasons, the defendant's conviction and sentence are affirmed, and the mittimus is corrected.

CAHILL, P.J., and WOLFSON, J., concur.

41



884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 1



**H**
People v. Spicer
Ill.App. 1 Dist.,2007.

Appellate Court of Illinois,First District, First Division.
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Charles SPICER, Defendant-Appellant.
**No. 1-05-3358.**

Dec. 10, 2007.
As Modified Upon Denial of Rehearing Feb. 25, 2008.

**Background:** Defendant was convicted in a jury trial in the Circuit Court, Cook County, Dennis A. Dernbach, J., of aggravated sexual assault and forgery. Defendant appealed.

**Holdings:** On denial of rehearing, the Appellate Court, Robert E. Gordon, J., held that:
(1) victim's statement to doctor that defendant tied and raped her fell within hearsay exception for statements made for purposes of medical diagnosis;
(2) admission of victim's statement violated defendant's right of confrontation;
(3) confrontation clause error was harmless;
(4) evidence was sufficient to support forgery conviction;
(5) defense counsel's closing remarks invited any error in prosecutor's alleged implying during rebuttal that duress or coercion were elements of forgery;
(6) prosecutor's closing comment that defendant forced victim to write check did not mislead jury into believing that duress or coercion were elements of forgery;
(7) any error in prosecutor's comments did not rise to level of plain error; and
(8) statutory maximum sentence was not abuse of discretion.

Affirmed; mittimus corrected.

West Headnotes

**[1] Criminal Law 110 🔑1030(1)**

110 Criminal Law
  110XXIV Review
    110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
      110XXIV(E)1 In General
        110k1030 Necessity of Objections in General
          110k1030(1) k. In General. Most Cited Cases
Even when the defendant has failed to preserve an error for review, an appellate court may still review for plain error.

**[2] Criminal Law 110 🔑1030(1)**

110 Criminal Law
  110XXIV Review
    110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
      110XXIV(E)1 In General
        110k1030 Necessity of Objections in General
          110k1030(1) k. In General. Most Cited Cases
The plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.

**[3] Criminal Law 110 🔑1030(1)**

110 Criminal Law
  110XXIV Review

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT G

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 2

110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
110XXIV(E)1 In General
110k1030 Necessity of Objections in General
110k1030(1) k. In General. Most Cited Cases
If there is no error at all, the appellate court need not reach the question of plain error.

**[4] Criminal Law 110 ☞662.8**

110 Criminal Law
110XX Trial
110XX(C) Reception of Evidence
110k662 Right of Accused to Confront Witnesses
110k662.8 k. Out-Of-Court Statements and Hearsay in General. Most Cited Cases
Only if the court determines that the out-of-court statement qualifies as a hearsay exception may the court then proceed to consider the Sixth Amendment confrontation issue. U.S.C.A. Const.Amend. 6.

**[5] Criminal Law 110 ☞419(1)**

110 Criminal Law
110XVII Evidence
110XVII(N) Hearsay
110k419 Hearsay in General
110k419(1) k. In General. Most Cited Cases

**Criminal Law 110 ☞662.8**

110 Criminal Law
110XX Trial
110XX(C) Reception of Evidence
110k662 Right of Accused to Confront Witnesses
110k662.8 k. Out-Of-Court Statements and Hearsay in General. Most Cited Cases
Hearsay analysis and Sixth Amendment confrontation clause analysis are completely different: a statement may be admissible under hearsay rules but barred by the Sixth Amendment and vice versa. U.S.C.A. Const.Amend. 6.

**[6] Criminal Law 110 ☞419(1)**

110 Criminal Law
110XVII Evidence
110XVII(N) Hearsay
110k419 Hearsay in General
110k419(1) k. In General. Most Cited Cases
The rule against hearsay prevents the introduction at trial of out-of-court statements offered to prove the truth of the matter asserted.

**[7] Criminal Law 110 ☞367**

110 Criminal Law
110XVII Evidence
110XVII(E) Res Gestae
110k362 Res Gestae; Excited Utterances
110k367 k. Statements as to and Expressions of Personal Injury or Suffering. Most Cited Cases
A trial court is vested with discretion in determining whether a victim's statements to a physician fall within the medical diagnosis exception to the hearsay rule. S.H.A. 720 ILCS 5/12-13.

**[8] Criminal Law 110 ☞367**

110 Criminal Law
110XVII Evidence
110XVII(E) Res Gestae
110k362 Res Gestae; Excited Utterances
110k367 k. Statements as to and Expressions of Personal Injury or Suffering. Most Cited Cases
Victim's statement to emergency room doctor that defendant had tied and raped her fell within hearsay exception for statements made for purposes of medical diagnosis, despite claim that victim went to doctor not for treatment but for evidence collection purposes; diagnostic purpose of exam was not incompatible with its investigative function. S.H.A. 725 ILCS 5/115-13.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

**[9] Criminal Law 110 €═⇒662.8**

110 Criminal Law
    110XX Trial
       110XX(C) Reception of Evidence
         110k662 Right of Accused to Confront
Witnesses
           110k662.8 k. Out-Of-Court Statements
and Hearsay in General. Most Cited Cases
Victim's statement to emergency room doctor that
defendant had tied and raped her was testimonial in
nature, and thus, violated defendant's right of con-
frontation under *Crawford*; primary purpose of
statement was to prove what happened previous day
rather than to meet ongoing emergency, victim was
not under any existing threat nor was seeking help
when she made statement, doctor's focus was to in-
vestigate and to collect evidence, and doctor took
no further action after performing sexual assault
evaluation. U.S.C.A. Const.Amend. 6.

**[10] Criminal Law 110 €═⇒1168(2)**

110 Criminal Law
    110XXIV Review
       110XXIV(Q) Harmless and Reversible Error
         110k1168 Rulings as to Evidence in Gen-
eral
           110k1168(2) k. Reception of Evidence.
Most Cited Cases
Confrontation clause error in admitting victim's
statement to emergency room doctor that defendant
had tied and raped her was harmless in trial for ag-
gravated sexual assault, where doctor's entire report
of victim's account of crime was a mere seven
words long and defendant made a lengthy and de-
tailed confession, which was unredacted and unre-
futed, admitting that he penetrated victim's vagina
with finger. U.S.C.A. Const.Amend. 6.

**[11] Criminal Law 110 €═⇒1168(2)**

110 Criminal Law
    110XXIV Review
       110XXIV(Q) Harmless and Reversible Error
         110k1168 Rulings as to Evidence in Gen-

eral
           110k1168(2) k. Reception of Evidence.
Most Cited Cases
Confrontation clause violations are subject to harm-
less error analysis. U.S.C.A. Const.Amend. 6.

**[12] Criminal Law 110 €═⇒1162**

110 Criminal Law
    110XXIV Review
       110XXIV(Q) Harmless and Reversible Error
         110k1162 k. Prejudice to Rights of Party
as Ground of Review. Most Cited Cases
An error is "harmless" if it appears beyond a reas-
onable doubt that the error at issue did not contrib-
ute to the verdict obtained.

**[13] Criminal Law 110 €═⇒1169.1(1)**

110 Criminal Law
    110XXIV Review
       110XXIV(Q) Harmless and Reversible Error
         110k1169 Admission of Evidence
           110k1169.1 In General
             110k1169.1(1) k. Evidence in Gen-
eral. Most Cited Cases

**Criminal Law 110 €═⇒1169.2(1)**

110 Criminal Law
    110XXIV Review
       110XXIV(Q) Harmless and Reversible Error
         110k1169 Admission of Evidence
           110k1169.2 Curing Error by Facts Es-
tablished Otherwise
             110k1169.2(1) k. In General. Most
Cited Cases
To determine whether an error was harmless, the
appellate court must consider: (1) whether the error
might have contributed to the conviction; (2)
whether other evidence is overwhelming in support
of the conviction; and (3) whether the erroneously
admitted evidence is cumulative or duplicates prop-
erly admitted evidence.

**[14] Forgery 181 €═⇒44(2)**

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 4

181 Forgery
    181k44 Weight and Sufficiency of Evidence
        181k44(2) k. Making False Instrument or
Signature and Forged Character of Paper. Most
Cited Cases
Evidence was sufficient to show that check drawn
on victim's bank account was made by another, as
required to support forgery conviction, despite
evidence that victim had signed check and filled out
amount; payee was left blank and defendant had
written his name as payee after victim had signed
check. S.H.A. 720 ILCS 5/17-3(a)(2).

**[15] Constitutional Law 92 €══4694**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)5 Evidence and Witnesses
                92k4694 k. Degree of Proof; Reason-
able Doubt. Most Cited Cases
The Due Process Clause of the Fourteenth Amend-
ment requires that a person may not be convicted in
state court except upon proof beyond a reasonable
doubt of every fact necessary to constitute the
crime with which he is charged. U.S.C.A.
Const.Amend. 14.

**[16] Criminal Law 110 €══1159.2(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(P) Verdicts
            110k1159 Conclusiveness of Verdict
                110k1159.2 Weight of Evidence in
General
                110k1159.2(1) k. In General. Most
Cited Cases
The *Jackson* standard of review governing a chal-
lenge to the sufficiency of the evidence applies in
all criminal cases, regardless of the nature of the
evidence.

**[17] Criminal Law 110 €══1037.1(2)**

110 Criminal Law

110XXIV Review
    110XXIV(E) Presentation and Reservation in
Lower Court of Grounds of Review
        110XXIV(E)1 In General
            110k1037 Arguments and Conduct of
Counsel
            110k1037.1 In General
                110k1037.1(2) k. Particular
Statements, Arguments, and Comments. Most Cited
Cases
Defendant waived claim on direct appeal that pro-
secutor allegedly incorrectly suggested during clos-
ing argument that duress or coercion was element
of forgery, where he did not object to statement at
trial.

**[18] Criminal Law 110 €══1030(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(E) Presentation and Reservation in
Lower Court of Grounds of Review
        110XXIV(E)1 In General
            110k1030 Necessity of Objections in
General
            110k1030(1) k. In General. Most
Cited Cases
The plain error doctrine allows a reviewing court to
consider an unpreserved error when either (1) the
evidence is so closely balanced that the error alone
threatened to tip the scales of justice against the de-
fendant, or (2) the error was so serious that it af-
fected the fairness of the defendant's trial and chal-
lenged the integrity of the judicial process.

**[19] Criminal Law 110 €══1141(2)**

110 Criminal Law
    110XXIV Review
        110XXIV(M) Presumptions
            110k1141 In General
                110k1141(2) k. Burden of Showing Er-
ror. Most Cited Cases
The burden of persuasion on both prongs of plain
error analysis remains with the defendant.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 5

**[20] Criminal Law 110 ☞2073**

110 Criminal Law
   110XXXI Counsel
      110XXXI(F) Arguments and Statements by Counsel
         110k2071 Scope of and Effect of Summing Up
            110k2073 k. For Prosecution. Most Cited Cases
   (Formerly 110k709)
For a prosecutor's closing remarks to constitute error, they must fall outside the wide latitude accorded a prosecutor in making a closing.

**[21] Criminal Law 110 ☞2094**

110 Criminal Law
   110XXXI Counsel
      110XXXI(F) Arguments and Statements by Counsel
         110k2093 Comments on Evidence or Witnesses
            110k2094 k. In General. Most Cited Cases
   (Formerly 110k720(1))

**Criminal Law 110 ☞2103**

110 Criminal Law
   110XXXI Counsel
      110XXXI(F) Arguments and Statements by Counsel
         110k2102 Inferences from and Effect of Evidence
            110k2103 k. In General. Most Cited Cases
   (Formerly 110k720(6))
In closing, the prosecutor may comment on the evidence and any fair, reasonable inferences it yields.

**[22] Criminal Law 110 ☞2072**

110 Criminal Law
   110XXXI Counsel
      110XXXI(F) Arguments and Statements by Counsel
         110k2071 Scope of and Effect of Summing Up
            110k2072 k. In General. Most Cited Cases
   (Formerly 110k708.1)
A closing argument must be viewed in its entirety, and the challenged remarks must be viewed in their context.

**[23] Criminal Law 110 ☞2171**

110 Criminal Law
   110XXXI Counsel
      110XXXI(F) Arguments and Statements by Counsel
         110k2164 Rebuttal Argument; Responsive Statements and Remarks
            110k2171 k. Statements Regarding Applicable Law. Most Cited Cases
   (Formerly 110k726)
Defense counsel's closing remark that State had failed to prove that defendant made victim write check invited any error in prosecutor's alleged implying that duress or coercion were elements of forgery, with rebuttal closing comment that victim "wasn't forced to write that check."

**[24] Criminal Law 110 ☞1137(2)**

110 Criminal Law
   110XXIV Review
      110XXIV(L) Scope of Review in General
         110XXIV(L)11 Parties Entitled to Allege Error
            110k1137 Estoppel
               110k1137(2) k. Error Committed or Invited by Party Complaining in General. Most Cited Cases
A defendant cannot complain on appeal about an error that was procured or invited by the defendant at trial.

**[25] Criminal Law 110 ☞2110**

110 Criminal Law

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 6

110XXXI Counsel
    110XXXI(F) Arguments and Statements by Counsel
        110k2102 Inferences from and Effect of Evidence
           110k2110 k. Counterfeiting and Forgery. Most Cited Cases
    (Formerly 110k720(7.1))
Prosecutor's closing comment that defendant forced victim to write check did not mislead jury into believing that duress or coercion were elements of forgery; statement was reasonable inference drawn from evidence presented at trial, prosecutor never told jury that duress or force were element of forgery, and trial court instructed jury on elements of offense.

**[26] Criminal Law 110 ☞1037.1(2)**

110 Criminal Law
    110XXIV Review
        110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
           110XXIV(E)1 In General
                110k1037 Arguments and Conduct of Counsel
                110k1037.1 In General
                    110k1037.1(2) k. Particular Statements, Arguments, and Comments. Most Cited Cases
Any error in prosecutor's closing comment that defendant forced victim to write check, which comment allegedly implied that duress or force were element of forgery, did not rise to level of plain error; there was no evidence to dispute forgery, and it did not effect fairness of defendant's trial.

**[27] Sentencing and Punishment 350H ☞35**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(B) Extent of Punishment in General
           350Hk33 Effect of Statute or Regulatory Provision
           350Hk35 k. Discretion of Court. Most Cited Cases

A sentence which falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense.

**[28] Sentencing and Punishment 350H ☞94**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(E) Factors Related to Offender
           350Hk93 Other Offenses, Charges, Misconduct
           350Hk94 k. In General. Most Cited Cases

**Sentencing and Punishment 350H ☞122**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(F) Factors Related to Status of Victim
           350Hk122 k. Age. Most Cited Cases

**Sentencing and Punishment 350H ☞313**

350H Sentencing and Punishment
    350HII Sentencing Proceedings in General
        350HII(F) Evidence
           350Hk313 k. Other Offenses, Charges, Misconduct. Most Cited Cases
Statutory maximum sentence was not abuse of discretion based on trial court's alleged reliance on police report about prior similar case of attempted robbery and aggravated battery of elderly victim; trial court did not rely on contents of report but on fact of prior conviction and victim's age, which were not in dispute, and trial court was not precluded from considering information contained in report in fashioning sentence for aggravated sexual assault.

**[29] Sentencing and Punishment 350H ☞317**

350H Sentencing and Punishment
    350HII Sentencing Proceedings in General
        350HII(F) Evidence
           350Hk317 k. Hearsay. Most Cited Cases
A court is permitted to consider hearsay information at sentencing.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 7

**[30] Sentencing and Punishment 350H ⬤⟿303**

350H Sentencing and Punishment
    350HII Sentencing Proceedings in General
        350HII(F) Evidence
           350Hk303 k. Applicability of Rules of
Evidence in General. Most Cited Cases
The ordinary rules of evidence which govern at trial
are relaxed at the sentencing hearing.

**[31] Sentencing and Punishment 350H ⬤⟿317**

350H Sentencing and Punishment
    350HII Sentencing Proceedings in General
        350HII(F) Evidence
           350Hk317 k. Hearsay. Most Cited Cases
At sentencing, a hearsay objection affects the
weight rather than the admissibility of the evidence.

**[32] Sentencing and Punishment 350H ⬤⟿317**

350H Sentencing and Punishment
    350HII Sentencing Proceedings in General
        350HII(F) Evidence
           350Hk317 k. Hearsay. Most Cited Cases
It is left to the sound discretion of the trial court to
determine whether hearsay is reliable enough to
weigh in sentencing.

**[33] Sentencing and Punishment 350H ⬤⟿142**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(G) Dual Use
           350Hk137 Elements of Offense
               350Hk142 k. Status of Victim. Most
Cited Cases
Trial court was not precluded from considering eld-
erly victim's age in sentencing for aggravated sexu-
al assault, even though victim's age was element of
offense. S.H.A. 720 ILCS 5/12-14(a)(5).

**[34] Sentencing and Punishment 350H ⬤⟿136**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(G) Dual Use

           350Hk136 k. Facts Inherent in Conduct
Constituting Offense. Most Cited Cases
The consideration of a factor which is necessarily
implicit in an offense cannot be used as an aggrav-
ating factor in sentencing.

**[35] Sentencing and Punishment 350H ⬤⟿138**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(G) Dual Use
           350Hk137 Elements of Offense
               350Hk138 k. In General. Most Cited
Cases
A single factor cannot be used both as an element
of an offense and as a basis for imposing a harsher
sentence than might have otherwise been im-
posed: such dual use of a single factor is often re-
ferred to as a "double enhancement."

**[36] Sentencing and Punishment 350H ⬤⟿138**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(G) Dual Use
           350Hk137 Elements of Offense
               350Hk138 k. In General. Most Cited
Cases
Although it is a general rule that an element of the
offense should not also be used as a sentencing
factor, this rule should not be applied rigidly.

**[37] Sentencing and Punishment 350H ⬤⟿136**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(G) Dual Use
           350Hk136 k. Facts Inherent in Conduct
Constituting Offense. Most Cited Cases
The rule that a court may not consider a factor in-
herent in the offense is not meant to be applied ri-
gidly, because sound public policy dictates that a
sentence be varied in accordance with the circum-
stances of the offense.

**[38] Sentencing and Punishment 350H ⬤⟿122**

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 8

350H Sentencing and Punishment
   350HI Punishment in General
     350HI(F) Factors Related to Status of Victim
      350Hk122 k. Age. Most Cited Cases

**Sentencing and Punishment 350H ⬅═⇒142**

350H Sentencing and Punishment
   350HI Punishment in General
     350HI(G) Dual Use
      350Hk137 Elements of Offense
       350Hk142 k. Status of Victim. Most
Cited Cases
In assessing the degree of harm, for purposes of
sentencing, a sentencing court may consider, for ex-
ample, whether the victim is particularly young,
even though the victim's age is an element of the
sexual assault count for which defendant was con-
victed.

**[39] Assault and Battery 37 ⬅═⇒100**

37 Assault and Battery
   37II Criminal Responsibility
     37II(C) Sentence and Punishment
      37k100 k. In General. Most Cited Cases

**Sentencing and Punishment 350H ⬅═⇒102**

350H Sentencing and Punishment
   350HI Punishment in General
     350HI(E) Factors Related to Offender
      350Hk93 Other Offenses, Charges, Mis-
conduct
       350Hk102 k. Lack of Significant Prior
Record. Most Cited Cases

**Sentencing and Punishment 350H ⬅═⇒117**

350H Sentencing and Punishment
   350HI Punishment in General
     350HI(E) Factors Related to Offender
      350Hk117 k. Other Offender-Related
Considerations. Most Cited Cases
Statutory maximum sentence of 30 years for ag-
gravated sexual assault was not abuse of discretion
based on trial court's alleged failure to consider

mitigating factors such as defendant's lack of crim-
inal record, work history, and honorable discharge
from military, where there was no mandatory re-
quirement that trial court recite all mitigating and
aggravating factors before imposing sentence, and
there was no showing that trial court did not con-
sider all factors.

**[40] Sentencing and Punishment 350H ⬅═⇒466**

350H Sentencing and Punishment
   350HII Sentencing Proceedings in General
     350HII(I) Execution of Sentence
      350Hk461 Commitment or Mittimus
       350Hk466 k. Amendment and Correc-
tion. Most Cited Cases
A reviewing court on appeal may correct the mit-
timus at any time, without remanding the cause to
the trial court. Sup.Ct.Rules, Rule 615.

**678 Office of the State Appellate Defender, Mi-
chael J. Pelletier, Deputy Defender, Lisa Souther-
land, Assistant Appellate Defender, Chicago, IL,
for Appellant.
**679 Richard A. Devine, State's Attorney, Chica-
go, IL (James E. Fitzgerald, Veronica Calderon-Ma-
lavia, Tasha Marie Kelly, Shannan McFadden, of
counsel), for Appellee.

***711 MODIFIED OPINION UPON DENIAL OF
PETITION FOR REHEARING

Justice ROBERT E. GORDON delivered the Modi-
fied Opinion of the court:
*443 Defendant Charles Spicer was convicted after
a jury trial of aggravated sexual assault and forgery
and sentenced to consecutive terms of 30 years and
5 years of imprisonment, respectively. On appeal,
he alleges errors at both trial and sentencing. For
the reasons stated below, we affirm.

## BACKGROUND

The State claims that on August 8, 2001, the de-
fendant sexually assaulted and wrongfully forced
Juanita Cartman, age 75 or 76, to draw a check on

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

her checking account, in her apartment on South Calumet Avenue in Chicago. The defendant attempted to cash the check later that day and was arres- ted.

At trial, Officer Sheila Jackson testified that on August 8, 2001, at approximately 11 a.m., Officer Jackson responded to a call concerning an elderly robbery victim. She met with the victim in her apartment, where she observed a dining room chair with duct tape on the arm and legs, as well as redness around the victim's wrists and on both arms. The victim provided a description of the offender, which Officer Jackson relayed over the radio.

Pier Thomaston testified that on August 8, 2001, at shortly before noon, she was working as a teller at the Bank One at 6700 South Stony Island when the defendant presented her with a check drawn on the victim's account. She noticed that the name of the payee was not written in the same handwriting as the rest of the check. After seeing an alert for this account on the signature verification screen on her computer, she left the defendant and went to speak with her supervisor. A bank security guard approached the defendant, who then shoved the guard and ran out the front door, with the guard giving chase.

The teller testified that while looking through the bank windows, she saw the defendant go over a fence at a construction site and then *444 lost sight of him. Approximately 10 minutes later, she identified a person in the back of a police squad car as the customer who had just presented her with the victim's check. Terrence McCullough, the security guard, also identified the defendant as the man at the teller's window whom he chased before police arrived and whom he identified in the back of the police vehicle.

Officer Harlan Hasbrough testified that on August 8, 2001, he responded to a radio call shortly after noon and went to 1523 East 68th Street to look for a suspect who had run from the bank. He found the defendant under the porch of an apartment at that address.

Detective Raymond Doherty [FN1] testified that he and his partner, Detective Gillespie, were assigned to a robbery investigation on August 8, 2001, and met with Officer Jackson and the victim in the victim's apartment. After hearing a call on the radio, he went to the bank, where he saw the defendant in the back of a police vehicle that was parked near the bank, and recovered a check from the teller who said the defendant had tried to cash it. He ***712 **680 then returned to the victim's apartment and took the victim to the police station where the defendant was also taken.

> FN1. Raymond Doherty was a sergeant at the time of trial and a detective at the time of the investigation.

Detective Doherty testified that at approximately 1 p.m. on August 8 he and his partner interviewed the victim, and at 1:30 p.m. they interviewed the defendant. Defendant told them that he had received a telephone call from a friend named John Thomas that morning; that when he later met Thomas, Thomas gave defendant a check to cash; and that a security guard at the bank tried to detain him. Detective Doherty testified that the defendant provided a vague description of John Thomas, whom Detective Doherty was unable to locate.

Detective Doherty testified that he and his partner interviewed defendant again at 5:30 p.m. on August 8. Defendant then admitted going to the victim's apartment with Thomas and stated that the victim owed him money and that both he and Thomas left after a short conversation. Detective Doherty testified that the defendant then told him that Thomas gave the defendant some money that Thomas had taken from the victim's home and a check. The defendant also admitted to duct taping the victim to the chair after she signed the check.

Detective Doherty then interviewed the victim again at approximately 6 p.m. When she became upset, he decided to take her to a hospital. The vic-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 10

tim had previously refused medical attention. Before leaving for the hospital, Detective Doherty called for an evidence *445 technician to take a buccal swab of the defendant. Then he transported the victim to the hospital and remained while she was there, transporting her home at approximately 3 a.m. the following morning. He had an evidence technician meet him at the victim's home to collect her bedding.

Detective Doherty testified that he returned to work at approximately 9 a.m. on August 9 and spoke to the defendant several times that day. The first interview occurred at approximately 1 p.m. The detective testified that he told the defendant that he did not believe him. The defendant then told him that he was in the apartment with the victim, that he told her to sign the check and that if she did not, he would "shove the pen up her ass." Approximately three hours later that day, Detective Doherty had another interview with the defendant in which the detective told the defendant that he did not believe the defendant's "story" and that he thought the defendant was "holding back some information." Then the defendant gave essentially the same statement that he later repeated in front of Assistant State's Attorney (ASA) James Lynch.

Detective Doherty testified that at approximately 4:30 p.m., ASA Lynch interviewed the defendant with Detective Doherty and his partner present. The statement was written down by hand by ASA Lynch, and reviewed and signed by defendant.

ASA Lynch testified that he went to the police station at approximately 1:15 p.m. and questioned the defendant twice that afternoon. At approximately 2:30 p.m., defendant gave a statement in which "he was denying the essentials of any sexual crimes against" the victim. At approximately 4:30 p.m., ASA Lynch took an oral statement from the defendant, which was consistent with the statement that Lynch later wrote down. At 5:15 p.m., ASA Lynch began writing the statement down by hand, with the defendant sitting next to him and using a question and answer format. The written statement was

signed by ASA Lynch, Detective Doherty and the defendant. ASA Lynch read the statement to the jury.

**681 ***713 In the statement, the defendant stated that he was 41 years old and that he had cleaned up the victim's basement and around her house several times. On August 8, 2001, he went to the victim's apartment with his friend John Thomas to speak to her about money which he felt that she owed him for the work. He followed her into her bedroom, stating that he wanted his money. Then he went into the kitchen, where his friend John Thomas was located. John had followed them inside the apartment and the defendant did not believe that the victim had seen John.

The statement further claimed that defendant received a roll of *446 duct tape from John and then went back into the bedroom and taped the victim's ankles together as she sat on the bed. He told her to lie down and he started to tape her wrists, but stopped because the victim complained that her arm hurt. The victim then told him that there was money in a beer stein in the kitchen. He went into the kitchen and John retrieved $90 from the stein. He then went back to the victim and told her that it was not enough money. He and John then removed $35 from her purse. The defendant received $60 of the money, and John received the rest and left.

The statement claimed that defendant then demanded more money. When the victim stated that she had no more money, defendant said that he had seen her bank statement and knew she had $10,000 in the bank, and told the victim to write him a check. He then went into the kitchen to bring the victim water and her checkbook. When he returned, the victim stated that she had to go to the bathroom. He carried her to the toilet and moved her gown aside for her. When she was done, he carried her back to the bed.

The statement further claimed that defendant kept ordering the victim to write him a check and the victim kept refusing. Eventually, he picked up her

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

taped feet, placed them on the bed with her knees up and threatened to shove a pen "up her ass." He then placed his penis on her thigh and placed the index finger of his left hand in her vagina up to the knuckle and then shook the bed with his knees. The victim then said that she would write the check.

The statement claimed that defendant retrieved the checkbook for the victim. He cut the tape from her ankles and handed her glasses to her so she could write the check. The victim went to the dresser to write the check, and defendant told her to write the check in the amount of $7,000, leaving the payee blank and writing "remodeling" on the memo line. The defendant then took the victim into the dining room, sat her down in a chair, and taped her hands and ankles to the arms and legs of the chair. He then gave her some water, placed a fan on her and left with the check.

The statement claimed that defendant first tried unsuccessfully to find someone to cash the check and then he went to the bank. After writing his name on the check as payee, he gave the check to the teller to cash. Another lady, other than the teller, told security to hold him and he broke free from security and ran. He ran to a place where he previously lived and hid under the stairs until he was found by the police.

Dr. Jeffrey Lahti testified that he was working in the emergency room at Christ Hospital on August 8, 2001. The victim was brought to the hospital at approximately 10 p.m., and examined at around 3 a.m. *447 on August 9 "for an evaluation for a sexual assault." During his interview, the victim stated that she had been "tied and raped." The pelvic examination was normal. He did observe redness on her wrists and redness and swelling of her left ankle.

**682 ***714 John Onstwedder testified as an expert in fingerprint analysis, employed in the crime laboratory of the Illinois State Police. He examined the check presented on August 8 and found two fingerprints on the check which he compared with a

fingerprint standard for the defendant. One print on the check was not clear enough for analysis but the other print matched the defendant's right thumb. He was unable to retrieve prints on the duct tape that he had received from the crime scene.

Jennifer Reynolds, an employee of Cellmark, a private laboratory, was qualified as an expert in DNA analysis. She testified that she conducted the DNA testing on the vaginal swab, and there was no DNA found on the swab belonging to anyone other than the victim.

Dr. Jennifer McCritchie testified as a DNA expert with the Illinois State Police. The vaginal, oral and rectal swabs from the victim did not contain semen, and neither did the fitted bedsheet. A semen stain was found on the victim's nightgown and housecoat. Neither semen stain contained sperm cells. On the nonsperm fraction of the nightgown stain there was a match to defendant's DNA in 7 of the 13 genetic markers, but 4 of those areas contained only partial information. Statistical analysis was performed on the other three areas, and the witness testified that "the profile that I found would be expected to occur in 1 of 190,000 black; 1 in 410,000 white; or 1 in 1,000,000 Hispanic unrelated individuals."

Dr. Miguel Stubbs testified that he had been treating the victim at a nursing home in Georgia since 2002. When she was admitted, she was 75 or 76 years old. She was suffering from moderate to severe dementia and a past stroke. When he first met the victim in 2002, she was already suffering from mild to moderate dementia and that the progression of such a condition takes a number of years.

The State rested after presenting the above witnesses, and the defense moved for a directed verdict, which was granted for counts IV and VIII. These counts had alleged criminal sexual assault based on penetration of the vagina by the defendant's penis. The defense did not present any evidence in its case in chief.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 12

Jury deliberations began on July 28 and lasted for eight hours. On the second day of deliberations, the foreperson stated they did not have a unanimous verdict on one of the three counts and the jury was split 11 to 1. An hour later, the jurors sent a note stating that they had stopped deliberating, believing that they would not reach a \*448 unanimous verdict. Over defendant's objection, the trial court read the jury the *Prim* instruction, and the jury continued deliberating. Later that day, the jury did reach unanimous verdicts, finding defendant guilty of aggravated criminal sexual assault and forgery, and finding defendant not guilty of residential burglary.

The trial court sentenced defendant to 30 years imprisonment for the aggravated sexual assault count and 5 years imprisonment for the forgery count, with the sentences to be served consecutively. This appeal followed.

## ANALYSIS

Defendant appeals claiming: (1) that the doctor's testimony that the victim stated that she had been "tied and raped" was inadmissible hearsay and violated his sixth amendment right to confrontation; (2) that the State failed to prove forgery beyond a reasonable doubt; (3) that the defendant was denied a fair trial because the jury was subjected to improper closing arguments concerning the law of forgery; and (4) that the defendant was denied a fair sentencing hearing.

### \*\*683 \*\*\*715 *Doctor's Report of Victim's Statement*

Defendant claims that it was error for the trial court to admit the doctor's testimony concerning the victim's statement that she was "tied and raped" because, first, the statement did not fall within the hearsay exception for statements made for the purposes of medical diagnosis; and second, because the admission of the statement violated defendant's sixth amendment right to confront the witnesses

against him.

This court will review this claim for plain error. Although the defense filed a pretrial motion seeking to exclude the victim's statement to the doctor on confrontation clause grounds and the defense objected again at trial during the doctor's testimony,[FN2] the defense failed to raise the issue in his posttrial motion. The Illinois Supreme Court has held that a "defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to preserve any alleged error for review." *People v. Woods*, 214 Ill.2d 455, 470, 293 Ill.Dec. 277, 828 N.E.2d 247 (2005); *People v. Piatkowski*, 225 Ill.2d 551, 564, 312 Ill.Dec. 338, 870 N.E.2d 403 (2007). Although defendant did object to the statement at trial, defendant's posttrial motion raised nine separate claims but none claimed a hearsay error, a sixth amendment\*449 violation or any issue with respect to the doctor's testimony. Defendant concedes in his brief to this court that he failed to raise the issue in his posttrial motion.

> FN2. At trial, the following exchange occurred. Defense counsel asked: "Dr. Lahti, when you interviewed Ms. Cartman, what did she say had been done to her?" The defense counsel stated: "Objection." The court responded: "Overruled." The doctor answered: "She said she was tied and raped."

[1][2][3] However, even when the defendant has failed to preserve an error for review, an appellate court may still review for plain error. "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski*, 225 Ill.2d at 565, 312 Ill.Dec. 338, 870 N.E.2d 403; *Woods*,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 13

214 Ill.2d at 471, 293 Ill.Dec. 277, 828 N.E.2d 247. However, if there is no error at all, we need not reach the question of plain error. *Piatkowski,* 225 Ill.2d at 565, 312 Ill.Dec. 338, 870 N.E.2d 403 (plain error doctrine requires "first" that an error occurred); *People v. Nicholas,* 218 Ill.2d 104, 121, 299 Ill.Dec. 637, 842 N.E.2d 674 (2006) (where "there was no error at all," there cannot be plain error).

[4] The Illinois Supreme Court has held that when reviewing the admissibility of a hearsay statement, an appellate court must determine, first, whether the statement met the statutory requirements of a hearsay exception. Only if the court determines that the statement qualifies as a hearsay exception may the court then proceed to consider the sixth amendment issue. *People v. Melchor,* 226 Ill.2d 24, 34-35, 312 Ill.Dec. 632, 871 N.E.2d 32 (2007) (vacated appellate court opinion and remanded with instructions to consider the hearsay exception first before proceeding to the sixth amendment issue).

[5] Hearsay analysis and sixth amendment analysis are completely different. A statement may be admissible under hearsay***716 **684 rules but barred by the sixth amendment and vice versa. As the Supreme Court observed, "[a]n off-hand, overhead remark" may be excluded by hearsay rules but permitted by the confrontation clause, while "*ex parte* examinations" are sometimes admissible under modern hearsay rules but not "condoned" by the sixth amendment. *Crawford v. Washington,* 541 U.S. 36, 51, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177 192 (2004).

[6] The rule against hearsay generally prevents the introduction at trial of out-of-court statements offered to prove the truth of the matter asserted. *People v. Murdock,* 259 Ill.App.3d 1014, 1024, 198 Ill.Dec. 254, 632 N.E.2d 313 (1994). However, the rule has many exceptions. Section 5/115-13 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-13 (West 2000)) provides a statutory exception to the hearsay rule, for statements made for purposes of medical diagnosis. It states in full:

"In a prosecution for violation of Section 12-13, 12-14, 12-14.1, *450 12-15 or 12-16 of the 'Criminal Code of 1961,' statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule." 725 ILCS 5/115-13 (West 2000).

The above exception by this statute applies only in sexual assault cases. The five statutory sections listed in the exception are for, respectively: (1) criminal sexual assault; (2) aggravated criminal sexual assault; (3) predatory criminal sexual assault of a child; (4) criminal sexual abuse; and (5) aggravated criminal sexual abuse (720 ILCS 5/12-13, 12-4.1, 12-15, 12-16 (West 2000)).

[7] A trial court is "vested with discretion" in determining whether a victim's statements to a physician fall within the medical diagnosis exception to the hearsay rule. Thus, this court will reverse only for an abuse of discretion of a trial court's determination that the medical diagnosis exception applies. *People v. Davis,* 337 Ill.App.3d 977, 989-90, 272 Ill.Dec. 397, 787 N.E.2d 212 (2003).

[8] Defendant claims that the trial court erred in admitting the victim's statement under the medical diagnosis exception because the victim allegedly did not go to the doctor for treatment but rather for evidence collection purposes.[FN3] Defendant has failed to cite a single case to support his claim. In addition, the Illinois Supreme Court has previously rejected the distinction that defendant asks this court to draw between examining and treating physicians. *People v. Falaster,* 173 Ill.2d 220, 229-30, 218 Ill.Dec. 902, 670 N.E.2d 624 (1996).

> FN3. Defendant does not claim that the particular statement at issue, that the victim was "tied and raped," was not pertinent to the victim's diagnosis and treatment. In-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 14

stead, defendant claims that the entire examination was for evidentiary rather than diagnostic purposes.

In *Falaster*, a child claimed that she had been abused by her father for years. *Falaster*, 173 Ill.2d at 222-23, 218 Ill.Dec. 902, 670 N.E.2d 624. After the child victim contacted the authorities, she was referred to a registered nurse who took a history from the victim, prior to a physical examination. *Falaster*, 173 Ill.2d at 223, 218 Ill.Dec. 902, 670 N.E.2d 624. The defendant objected to the nurse's testimony about the victim's history on the ground that "the victim underwent the examination solely as a means of developing evidence for use in a subsequent prosecution***717 **685 *Falaster*, 173 Ill.2d at 229, 218 Ill.Dec. 902, 670 N.E.2d 624.

Holding that the victim's history was "within the scope" of the statutory exception, the supreme court stated that "the diagnostic purpose of the examination" was not "incompatible with its investigatory function," and that "the statute does not distinguish between ***451 examining physicians and treating physicians." *Falaster*, 173 Ill.2d at 229-30, 218 Ill.Dec. 902, 670 N.E.2d 624; *People v. Rushing*, 192 Ill.App.3d 444, 453, 139 Ill.Dec. 403, 548 N.E.2d 788 (1989) (holding that the medical diagnosis exception "does not provide for a distinction between examining physicians and treating physicians," this court noted that the statutory "reference to diagnosis or treatment evinces a legislative intent * * * not to limit the testimony only to treating physicians").

Similarly, in the case at bar, the diagnostic purpose of the examination was not incompatible with its investigative function. After answering questions at a police station, the victim was taken by a police detective to the emergency room of a hospital. During the evaluation by the emergency room physician, the victim told the doctor that she had been "tied and raped."

Almost all emergency room visits by sexual assault victims will have both evidence collection aspects

and medical aspects. If we were to hold that an evidence collection purpose made statements from a sexual assault evaluation inadmissible, we would in effect obliterate the statute, which applies only in sexual assault cases. See *People v. West*, 355 Ill.App.3d 28, 37, 291 Ill.Dec. 72, 823 N.E.2d 82 (2005) (victim's description of sexual assault to emergency room physician and nurse was within statutory exception for medical diagnosis).

[9] Since we hold that the victim's statement to the doctor falls within the medical diagnosis exception to the hearsay rule, we now proceed to the confrontation clause issue. *Melchor*, 226 Ill.2d at 312 Ill.Dec. 632, 871 N.E.2d 32 (appellate court may proceed to sixth amendment issue after first determining that the trial court's hearsay ruling was correct). The defendant claims that introduction of the victim's statement that she was "tied and raped" violated his sixth amendment right to confront the witnesses against him, since the victim was unavailable to testify at trial.

There is no dispute that the victim was unavailable to testify at trial. The parties stipulated prior to trial that a doctor currently treating the victim would testify that the victim was not available to testify at trial due to a serious medical condition unrelated to the charges against defendant. Between the time of the incident and the time of defendant's trial, the elderly victim had been admitted to a nursing home, suffering from moderate to severe dementia.

In *People v. Purcell*, 364 Ill.App.3d 283, 301 Ill.Dec. 241, 846 N.E.2d 203 (2006), the appellate court discussed the appropriate standard of review for a claim that a trial court admitted a hearsay statement in violation of the sixth amendment. We held that we will defer to a trial court's evidentiary ruling " ' "unless the trial court's exercise of discretion has been frustrated by an erroneous rule of law." ' [Citations.]" *Purcell*, 364 Ill.App.3d at 293, 301 Ill.Dec. 241, 846 N.E.2d 203.

***452 The sixth amendment to the United States Constitution provides that: "In all criminal prosecu-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 15

tions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." U.S. Const., amend. VI. This part of the sixth amendment is known as the confrontation ***718 **686 clause and applies to the states through the fourteenth amendment. *People v. Stechly,* 225 Ill.2d 246, 264, 312 Ill.Dec. 268, 870 N.E.2d 333 (2007).

In 2004, with *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court "fundamentally altered its approach to confrontation clause analysis." *Stechly,* 225 Ill.2d at 264-65, 312 Ill.Dec. 268, 870 N.E.2d 333. Prior to *Crawford,* the United States Supreme Court had held that the sixth amendment permitted the introduction of hearsay statements by unavailable declarants, so long as the statements had " 'adequate "indicia of reliability." ' " *Stechly,* 225 Ill.2d at 264, 312 Ill.Dec. 268, 870 N.E.2d 333, discussing and quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980).

In *Crawford,* the United States Supreme Court held: "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually proscribes: confrontation." *Crawford,* 541 U.S. at 68-69, 124 S.Ct. at 1374, 158 L.Ed.2d at 203. Since, in the case at bar, there was no opportunity for cross-examination, the only question is whether the victim's statement to the emergency-room physician was "testimonial."

Unfortunately, "the *Crawford* Court explicitly declined to define what exactly makes a statement 'testimonial.' "*Stechly,* 225 Ill.2d at 266, 312 Ill.Dec. 268, 870 N.E.2d 333 (discussing *Crawford* ). After noting several possible definitions of "testimonial," the *Crawford* Court declined to adopt one, stating "[w]e leave for another day any effort to spell out a comprehensive definition of 'testimonial.' "*Crawford,* 541 U.S. at 51-52, 68, 124 S.Ct. at 1374, 158 L.Ed.2d at 203. The Court noted that "[r]egardless of the precise articulation,

some statements qualify under any definition." *Crawford,* 541 U.S. at 52, 124 S.Ct. at 1364, 158 L.Ed.2d at 193. The Court held: "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374, 158 L.Ed.2d at 203.

In *Davis v. Washington,* 547 U.S. 813, 821-24, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224, 237-38 (2006), the United States Supreme Court modified the part of its *Crawford* holding that concerned police interrogation. In *Davis,* the Court held that some responses to police interrogation were testimonial, while others were not. *Davis,* 547 U.S. at 821-24, 126 S.Ct. at 2273-74, 165 L.Ed.2d at 237. The *Davis* Court drew the following distinction:

> *453 "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis,* 547 U.S. at 822, 126 S.Ct. at 2273-74, 165 L.Ed.2d at 237.

Thus, to apply *Davis,* we must determine whether the questioning qualified as "police" questioning FN4 and whether the "primary***719 **687 purpose" was "to meet an ongoing emergency" or to "prove past events." *Davis,* 547 U.S. at 822, 126 S.Ct. at 2273-74, 165 L.Ed.2d at 237.

> FN4. In *Crawford,* the United States Supreme Court stated that "the term 'interrogation' " was to be used "in its colloquial, rather than any technical legal [ ] sense." *Crawford,* 541 U.S. at 53 n. 4, 124 S.Ct. at 1365 n. 4, 158 L.Ed.2d at 194 n. 4; *West,* 355 Ill.App.3d at 35, 291 Ill.Dec.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

> 72, 823 N.E.2d 82 ("according to *Crawford,* the term 'interrogation' is to be viewed in a colloquial, rather than a technical, sense").

The second question is easier to answer than the first, because in *Davis* the Court assumed without deciding that the 911 operators at issue in *Davis* were police agents. *Davis,* 547 U.S. at 823 n. 2, 126 S.Ct. at 2274 n. 2, 165 L.Ed.2d at 238 n. 2.[FN5] As a result, the *Davis* Court focused on the second question, providing many examples and guidelines for analyzing "primary purpose" but providing little guidance for determining what constitutes "police" interrogation. The Court left open for another day the question of "when statements made to someone other than law enforcement personnel are 'testimonial.' "*Davis,* 547 U.S. at 823 n. 2, 126 S.Ct. at 2274 n. 2, 165 L.Ed.2d at 238 n. 2.

> FN5. The *Davis* Court stated: "If 911 operators are not themselves law enforcement officers, they may at least be agents of law enforcement when they conduct interrogations of 911 callers. For purposes of this opinion (and without deciding the point), we consider their acts to be acts of the police." *Davis,* 547 U.S. at 823 n. 2, 126 S.Ct. at 2274 n. 2, 165 L.Ed.2d at 238 n. 2.

Pursuant to the guidelines and examples provided by the *Davis* Court, there is no doubt that the primary purpose in the case at bar was to "prove past events" rather than to "meet an ongoing emergency." In *Davis,* the Court listed four factors that point to an ongoing emergency: (1) the declarant "was speaking about events *as they were actually happening*" ; (2) the statement was "a call for help against [a] bona fide physical threat"; (3) "the * * * statements were necessary to be able to *resolve* the present emergency"; and (4) the declarant was not "responding calmly" and was instead giving "frantic *454 answers." *Davis,* 547 U.S. at 827, 126 S.Ct. at 2276, 2277, 165 L.Ed.2d at 240 (emphasis in original).

All four factors support a finding that the statement at bar was to prove past events. First, when the victim told the doctor that she had been "tied and raped," she was not speaking about events as they were actually happening but rather about an event that had happened the day before. Second, her statement to the doctor was not a present cry for help against an existing physical threat, since she was safe in the hospital. Third, the statement was not intended to resolve a present emergency; in fact, the victim had stated that she did not want to see a doctor and the police waited approximately seven hours before transporting her to a hospital. Fourth, although the elderly victim was upset and cried several times during the male doctor's examination of her, there is nothing in the record to suggest that she was "frantic."

In *Davis,* the Court discussed a rape case as an example. *Davis,* 547 U.S. at 828, 126 S.Ct. at 2277, 165 L.Ed.2d at 241. In the case discussed, a young girl had " 'immediately on her coming home, told all the circumstances of her injury' to her mother. [Citation.]" *Davis,* 547 U.S. at 828, 126 S.Ct. at 2277, 165 L.Ed.2d at 241. The Court stated that if the statement had recounted "the girl's screams for aid as she was being chased by her assailant" then the statement would have concerned an ongoing emergency. *Davis,* 547 U.S. at 828, 126 S.Ct. at 2277, 165 L.Ed.2d at 241. However, "by the time the victim got home, her story was an account of past events." *Davis,* 547 U.S. at 828, 126 S.Ct. at 2277, 165 L.Ed.2d at 241. Similarly, in the case at bar, by the time the victim had been questioned at the police station and ***720 **688 then transported by police to a hospital, her story was an account of past events.

Thus, in the instant case, if the victim had made her statement about past events to a police officer, it would have qualified as testimonial pursuant to *Davis. West,* 355 Ill.App.3d at 35, 291 Ill.Dec. 72, 823 N.E.2d 82 (statements made at hospital by sexual assault victim to police officers were testimonial for purposes of *Crawford* ). The question

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

then is whether our holding should be different because the police officer transported her to a doctor, so that the doctor took the statement instead of the officer who was waiting in the hospital.

The United States Supreme Court has stated that most cases applying the confrontation clause "involved testimonial statements of the most formal sort-sworn testimony in prior judicial proceedings or formal depositions under oath." *Davis,* 547 U.S. at 826, 126 S.Ct. at 2275-76, 165 L.Ed.2d at 239. In *Crawford,* the Supreme Court found that modern police interrogations were also testimonial because **\*455** "[p]olice interrogations bear a striking resemblance to examinations by justices of the peace in England." *Crawford,* 541 U.S. at 52, 124 S.Ct. at 1364, 158 L.Ed.2d at 193. The Court found that both had "an essentially investigative and prosecutorial function." *Crawford,* 541 U.S. at 53, 124 S.Ct. at 1365, 158 L.Ed.2d at 194.

While the old English magistrate and the modern American police officer had a single essential function which was to investigate, the issue of a doctor in a rape case is more complicated because the doctor has a dual function, both to investigate the alleged crime and to treat the victim medically. For example, the doctor in the case at bar served an investigative function by completing a rape kit, which required him to comb the victim's head and pubic hair looking for other people's hair and to obtain oral, vaginal and rectal swabs to check for the presence of other people's bodily fluids. As the doctor explained on the stand, he was "to look for evidence."

In *Davis,* the United States Supreme Court held that "we do not think it [is] conceivable that the protections of the Confrontation Clause can readily be evaded by having a note-taking policeman recite the unsworn hearsay testimony of the declarant, instead of having the declarant sign a deposition." *Davis,* 547 U.S. at 826, 126 S.Ct. at 2276, 165 L.Ed.2d at 239 (emphasis omitted). Similarly, this court finds that the protections of the confrontation clause cannot be evaded by having the note-taking

policeman simply bring the victim to a note-taking doctor.[FN6]

> FN6. Our opinion "in no way impugned" the police officer's action in bringing the victim to the doctor. *Davis,* 547 U.S. at 832 n. 6, 126 S.Ct. at 2279 n. 6, 165 L.Ed.2d at 243 n. 6. Unlike other constitutional clauses such as the Fourth Amendment's guarantee against unreasonable search and seizure, the confrontation clause "in no way governs police conduct." *Davis,* 547 U.S. at 832 n. 6, 126 S.Ct. at 2279 n. 6, 165 L.Ed.2d at 243 n. 6. The Confrontation Clause regulates "the trial use of" properly obtained statements. *Davis,* 547 U.S. at 832 n. 6, 126 S.Ct. at 2279 n. 6, 165 L.Ed.2d at 243 n. 6.

In *Stechly,* the Illinois Supreme Court held that statements of a sexual abuse victim to a nurse in an emergency room were "unquestionably" testimonial under *Davis* and thus barred by the confrontation clause, where the victim was unavailable for cross-examination. *Stechly,* 225 Ill.2d at 299, 312 Ill.Dec. 268, 870 N.E.2d 333. The victim's statements to the nurse concerned both the perpetrator's identity and the nature of the abuse. *Stechly,* 225 Ill.2d at 252, 256, 312 Ill.Dec. 268, 870 N.E.2d 333. The Illinois Supreme Court held that the nurse in *Stechly* was acting as an "agent[ ] * * * for purposes of confrontation clause analysis" because the **\*\*\*721 \*\*689** nurse took no further action other than to pass information on to the authorities. *Stechly,* 225 Ill.2d at 300-01, 312 Ill.Dec. 268, 870 N.E.2d 333. Similarly, in the case at bar, the emergency room doctor**\*456** testified that he took no further action after performing "an evaluation for sexual assault," which included completing the rape kit. Thus *Stechly* requires a finding in the case at bar that the statement was testimonial.

Prior to *Stechly,* the appellate court in *West* held that a sexual assault victim's statements about the nature of her assault to an emergency room doctor were not testimonial. *West,* 355 Ill.App.3d at 37,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 18

291 Ill.Dec. 72, 823 N.E.2d 82.[FN7] However, this decision was prior to both the Illinois Supreme Court's decision in *Stechly* and the United States Supreme Court's decision in *Davis*.[FN8]

> FN7. The court in *West* held that while a sexual assault victim's statements about the nature of her assault to a police officer were testimonial, her subsequent, similar statements to an emergency room doctor were not. *West,* 355 Ill.App.3d at 37, 291 Ill.Dec. 72, 823 N.E.2d 82.

> FN8. In *West,* the appellate court held that the victim's statements to the doctor about the nature of the attack were nontestimonial and thus admissible under the sixth amendment, whereas the victim's statements to the doctor about the identity of the perpetrator were testimonial and thus not admissible. *West,* 355 Ill.App.3d at 37, 291 Ill.Dec. 72, 823 N.E.2d 82. As noted above, the Illinois Supreme Court in *Stechly* held inadmissible the victim's statements about both the identity of the perpetrator and the nature of the sexual abuse. *Stechly,* 225 Ill.2d at 252, 256, 312 Ill.Dec. 268, 870 N.E.2d 333. The supreme court did not draw the same distinction between identity and nature of the assault that the appellate court did.

[10][11][12] Having found a confrontation clause violation, we must next determine whether the error was "harmless beyond a reasonable doubt." "*Crawford* violations are subject to harmless-error analysis." *Stechly,* 225 Ill.2d at 304, 312 Ill.Dec. 268, 870 N.E.2d 333; *People v. Thompson,* 349 Ill.App.3d 587, 594, 285 Ill.Dec. 696, 812 N.E.2d 516 (2004) (applying harmless error analysis to confrontation clause error). An error is harmless if "it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained." *Stechly,* 225 Ill.2d at 304, 312 Ill.Dec. 268, 870 N.E.2d 333; *People v. Nitz,* 219 Ill.2d 400, 410, 302 Ill.Dec. 418, 848 N.E.2d 982 (2006) (error is

harmless if "the result would have been the same absent the error").

[13] To determine whether an error was harmless, this court must consider: (1) whether the error "might have contributed to the conviction"; (2) whether other evidence is "overwhelming" in support of the conviction; and (3) whether the erroneously admitted evidence is "cumulative or duplicates properly admitted evidence." *Stechly,* 225 Ill.2d at 304-05, 312 Ill.Dec. 268, 870 N.E.2d 333; *Thompson,* 349 Ill.App.3d at 594, 285 Ill.Dec. 696, 812 N.E.2d 516 (same).

The "tied and raped" statement was admitted to support the conviction for aggravated criminal sexual assault (720 ILCS 5/12-14 (West 2000)). A person is guilty of "aggravated criminal sexual assault" if he commits "criminal sexual assault" on a victim 60 years of *457 age or older, 720 ILCS 5/12-14 (a)(5) (West 2000). A person is guilty of "criminal sexual assault" if he "commits an act of sexual penetration by the use of force,"720 ILCS 5/12-13(a)(1) (West 2000). "Sexual penetration" is defined as either: "any contact * * * between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person," or "any intrusion, however slight, of any part of the body of one ***722 **690 person or of any animal or object into the sex organ or anus of another person." 720 ILCS 5/12-12(f) (West 2006). Since the essential elements of a crime must be proved beyond a reasonable doubt, the state had the burden of proving penetration beyond a reasonable doubt. *People v. Wheeler,* 226 Ill.2d 92, 114, 313 Ill.Dec. 1, 871 N.E.2d 728 (2007) (due process requires proof beyond a reasonable doubt of "the essential elements of the crime").

The only evidence [FN9] of the element [FN10] of penetration consisted of: 1. the defendant's statement, transcribed by ASA Lynch, that the defendant inserted his finger into the victim's vagina; FN11 and (2) the victim's statement to the doctor that she was "raped." Finger insertion falls within the statute's definition of "penetration." Penetration

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 19

is defined as including "any intrusion" by "any part of the body," such as a finger, into the victim's vagina. 720 ILCS 5/12-12(f)(2000).

> FN9. The semen found on the victim's housecoat is not evidence of penetration. It is consistent with the defendant' statement that he placed his penis on the victim's thigh and did not penetrate. In fact, it could be argued that the presence of semen on the housecoat and not on the vaginal or anal swabs is evidence of a lack of penetration.

> FN10. The defendant was not charged with criminal sexual abuse which would have required only sexual conduct and not penetration (720 ILCS 5/12-15 (West 2000)). "Sexual conduct" includes "any transfer or transmission of semen by the accused upon any part of the clothed or unclothed body of the victim" (720 ILCS 5/12-12(e) (West 2000)).

> FN11. The defendant's statement that he placed his penis on the victim's thigh was not evidence of "penetration" as defined in the statute. The statute requires either intrusion or a certain type of contact. First, placing his penis on the victim's thigh was not an intrusion into her "sex organ" or anus, as the statute requires. Second, the act did qualify as a "contact" either. To be a "contact," his penis would have to come in contact with "an object, the sex organ, mouth or anus" of the victim. Her thigh is not an object or sex organ, so it does not fall within the plain language of the statute. Later in the same sentence, the legislators used the words "any part of the body," but they chose not to use it here.

Applying the three-part harmless error analysis, we find the error to be harmless. First, it is doubtful that the victim's statement contributed to the jury's finding of penetration. *Thompson*, 349 Ill.App.3d at

594, 285 Ill.Dec. 696, 812 N.E.2d 516 (first prong of harmless error analysis requires the **\*458** court to consider whether error "might have contributed to the conviction"). The doctor's entire report of the victim's account of the crime was a mere seven words long: "She said she was tied and raped." When those seven words are compared against the detailed, multipage and signed confession of the defendant, it is hard to believe that the victim's statement had much impact.

Second, the defendant's statement was "overwhelming" [FN12] evidence in support of his conviction. *Thompson*, 349 Ill.App.3d at 594, 285 Ill.Dec. 696, 812 N.E.2d 516 (second prong of a harmless error analysis requires the court to consider whether other evidence was "overwhelming"). Defendant's statement was never recanted and never refuted. Prior to trial, the defendant moved to suppress his statement on the ground that he was in pain from injuries**\*\*\*723 \*\*691** and suffering from heroin and alcohol withdrawal. During the suppression hearing, he testified about his pain and suffering. However, he never once claimed that the statement was not the truth; [FN13] AND WE CANNOT FIND EVidence in the record which contradicts the defendant's statement.

> FN12. The defendant's statement by itself was, without a doubt, sufficient evidence for a jury to find the defendant guilty of penetration. *People v. McIntosh*, 305 Ill.App.3d 462, 467-68, 238 Ill.Dec. 789, 712 N.E.2d 893 (1999) (victim's statement was sufficient to prove sexual assault beyond a reasonable doubt). However, the question on this appeal is not whether the defendant's statement was sufficient evidence, but whether it was such overwhelming evidence that admission of the victim's statement was harmless error beyond a reasonable doubt. We find that it was.

> FN13. At the suppression hearing, the assistant State's Attorney asked the defendant: "I take it then that you don't remember

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 20

giving all of the details that are contained in this 6 page statement? You don't remember telling the state's attorney that information?" The defendant responded: "I recollect."

Since the defendant's statement was unrecanted and unrefuted, it is completely distinguishable from the statement in *Thompson,* which this court found was not "overwhelming" evidence. *Thompson,* 349 Ill.App.3d at 595, 285 Ill.Dec. 696, 812 N.E.2d 516. In *Thompson,* the defendant was accused of assault, and the evidence of assault consisted of: police and medical testimony concerning the physical condition of the victim and the site; the defendant's inculpatory statements; and the victim's statements. *Thompson,* 349 Ill.App.3d at 594, 285 Ill.Dec. 696, 812 N.E.2d 516. After finding that admission of the victim's statements violated the defendant's right to confrontation, this court then found that the error was not harmless because the other evidence was not "overwhelming." *Thompson,* 349 Ill.App.3d at 594-95, 285 Ill.Dec. 696, 812 N.E.2d 516. In finding that the other evidence was not overwhelming, this court noted that the defendant had testified at trial and refuted the earlier inculpatory statements attributed to him. *Thompson,* 349 Ill.App.3d at 594-95, 285 Ill.Dec. 696, 812 N.E.2d 516. Thus unlike the defendant's admission in the *459 case at bar, the defendant's admission in *Thompson* was recanted and refuted.

Third, it is difficult to assess whether the victim's statement of being "raped" was cumulative of other properly admitted evidence. The defendant's confession admitted only finger penetration. Without the victim on the stand, it is difficult to ascertain what she meant by the word "rape," whether or not in her mind the term was broad enough to include finger penetration. However, considering the overwhelming nature of the other evidence, this court finds that the confrontation clause error was harmless beyond a reasonable doubt. Since the error was harmless, we do not have to consider whether it rose to the level of plain error.

In his petition for a rehearing, defendant cited the Illinois Supreme Court's opinion in *People v. Stechly,* 225 Ill.2d 246, 305, 312 Ill.Dec. 268, 870 N.E.2d 333 (2007) for the proposition that a sexual assault victim's statement about the attack will always have an impact upon the jury. In *Stechly,* the supreme court held that the admission of a nontestifying victim's statements violated the defendant's confrontation clause rights and was not harmless error. *Stechly,* 225 Ill.2d at 302, 305, 312 Ill.Dec. 268, 870 N.E.2d 333. The supreme court observed: " '[t]he statements of a victim identifying her attacker and describing the attack are extremely powerful evidence of a defendant's guilt. It would be difficult to argue that such statements did not contribute to [a guilty] verdict." *Stechly,* 225 Ill.2d at 305, 312 Ill.Dec. 268, 870 N.E.2d 333 (brackets in original), quoting *dicta* in *People v. Patterson,* 217 Ill.2d 407, 436, 299 Ill.Dec. 157, 841 N.E.2d 889 (2005).

Comparing the magnitude of the error in *Stechly* to the error in our case is like comparing an elephant to a pin. The wrongfully admitted evidence in *Stechly* consisted of multiple, lengthy and detailed statements. *Stechly,* 225 Ill.2d at 305, 312 Ill.Dec. 268, 870 N.E.2d 333. When recounting***724 **692 one of the child victim's statements, even the social worker noted that the statement was unusually long and comprehensive.*Stechly,* 225 Ill.2d at 253, 312 Ill.Dec. 268, 870 N.E.2d 333. The testimony included the child's "demonstration of the conduct at issue through the use of dolls." *Stechly,* 225 Ill.2d at 305, 312 Ill.Dec. 268, 870 N.E.2d 333. In describing the harm done by the admission of these statements, the supreme court noted the statements were "precise," " clear" and "consistent with each other." *Stechly,* 225 Ill.2d at 305, 312 Ill.Dec. 268, 870 N.E.2d 333. The supreme court was particularly troubled by the fact that the "child's consistent repetition of the story *strongly* reinforced its believability." *Stechly,* 225 Ill.2d at 309, 312 Ill.Dec. 268, 870 N.E.2d 333 (emphasis in original). The supreme court did not find the other evidence over-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 21

whelming because at trial the defendant recanted his prior confession and there were inconsistencies in the witnesses' testimony. *Stechly,* 225 Ill.2d at 305-08, 312 Ill.Dec. 268, 870 N.E.2d 333.

By contrast, in the case at bar, there was no repetition and no demonstrations with dolls. There were no concerns about reinforcement*460 through consistency, because there was only one statement. The one statement was neither lengthy nor detailed. In the case at bar, it was the defendant's confession that was lengthy and detailed, not the victim's statement. The victim's three-word "tied and raped" statement is not the sort of attack description that our supreme court was worried would become " 'powerful evidence.' " *Stechly,* 225 Ill.2d at 305, 312 Ill.Dec. 268, 870 N.E.2d 333, quoting *Patterson,* 217 Ill.2d at 436, 299 Ill.Dec. 157, 841 N.E.2d 889. In sum, the victim's three-word statement does not compare to the multiple, lengthy, detailed statements and doll demonstrations that the supreme court in *Stechly* found to be powerful evidence.

### Forgery Conviction

[14][15] Defendant also claims that the state failed to prove him guilty of forgery beyond a reasonable doubt. The due process clause of the fourteenth amendment to the United States Constitution "requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham,* 212 Ill.2d 274, 278, 288 Ill.Dec. 616, 818 N.E.2d 304 (2004), quoting *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970).

[16] When we review a claim that the evidence was insufficient to sustain a conviction, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Cunning-*

*ham,* 212 Ill.2d at 278, 288 Ill.Dec. 616, 818 N.E.2d 304 (emphasis in original), quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *People v. Hunter,* 331 Ill.App.3d 1017, 1025, 265 Ill.Dec. 342, 772 N.E.2d 380 (2002). "The *Jackson* standard applies in all criminal cases, regardless of the nature of the evidence." *Cunningham,* 212 Ill.2d at 279, 288 Ill.Dec. 616, 818 N.E.2d 304. In applying this standard, "[a] reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *Cunningham,* 212 Ill.2d at 280, 288 Ill.Dec. 616, 818 N.E.2d 304.

Defendant claims on appeal that the State failed to prove forgery beyond a reasonable doubt, because the indictment alleged that the check was not written by the victim when the State's evidence showed that almost all of the check was actually written by the victim.

**\*\*693 \*\*\*725 Count XVI,** the forgery by delivery count of the indictment, [FN14] ALLEGED THAT THE defendant:

> FN14. The indictment alleged two counts of forgery: forgery by knowingly altering a document, in violation of section 17-3(a)(1); (720 ILCS 5/17-3(a)(1)(West 2000)); and forgery by knowingly delivering a document, in violation of section 17-3(a)(2)(720 ILCS 5/17-3(a)(2)(West 2000)). In the jury charge, the trial court instructed the jury on only the latter type of forgery, forgery by delivery.

**\*461** "with intent to defraud, knowingly delivered a document to wit: a check number 1602, dated August 8, 2001, in the amount of $7,000.00, on the account of Juanita Cartman, drawn on Bank One, made payable to Charles Spicer, apparently capable of defrauding another in such a manner that it purported to have been made by Juanita Cartman, knowing that it was not made by Juanita Cartman, in violation of Chapter 720 Act 5 Section 17-3(a)(2) of the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 22

Illinois Compiled Statutes 1992 as amended."

Section 17-3(a)(2) states: "A person commits forgery when, with intent to defraud, he knowingly: * * * (2) issues or delivers such document knowing it to have been thus made or altered,"720 ILCS 5/17-3(a)(2)(West 2000). "[S]uch document" is defined as:

> "any document apparently capable of defrauding another in such manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority," (720 ILCS 5/17-3(a)(1)(2000)).

In essence, the defendant claims that the indictment FN15 charged the first clause [FN16] of the above statutory definition, that the check "purports to have been made by another," when the State's evidence proved that most of the check was not "made by another" but in fact was made by the victim herself.

> FN15. The jury charge also stated that the jury had to find that "the defendant knowingly issued or delivered a check which he knew had been made or altered so that it appeared to have been made by another."

> FN16. It is curious that, in a case such as this where the crime was perpetuated by duress and threat of force, neither the indictment nor the jury instructions charged the third clause: "by authority of one who did not give such authority." 720 ILCS 5/17-3(a)(1)(West 2000).

The only evidence presented at trial concerning the making of the check came from the written statement signed by defendant. The defendant stated that the victim made out the check except for the payee line, which the defendant made out to himself. The defendant's statement was corroborated by the testimony of the bank teller, who stated that "[t]he payee was filled in, but it wasn't the account

holder's handwriting."

Defendant claims that the case at bar is similar to *People v. Lindquist,* 97 Ill.App.3d 894, 53 Ill.Dec. 653, 424 N.E.2d 66 (1981). See also *People v. Rennels,* 227 Ill.App.3d 263, 169 Ill.Dec. 250, 591 N.E.2d 130 (1992). In *Lindquist,* the defendant, as estate executor, had the authority to write checks on the estate account. *Lindquist,* 97 Ill.App.3d at 895, 53 Ill.Dec. 653, 424 N.E.2d 66. The State claimed that he committed forgery when *462 he wrote checks to withdraw funds for his own purposes. *Lindquist,* 97 Ill.App.3d at 895, 53 Ill.Dec. 653, 424 N.E.2d 66. The appellate court stated that it was surprised that the defendant was not charged with theft, but held that he was not guilty of forgery. *Lindquist,* 97 Ill.App.3d at 895, 53 Ill.Dec. 653, 424 N.E.2d 66.

The *Lindquist* case is completely different from the case at bar. Unlike the defendant in *Lindquist,* the defendant in ***726 **694 the case at bar had no authority either to write checks or to withdraw funds from the victim's account.

*People v. Murrah,* 255 Ill.App.3d 742, 194 Ill.Dec. 496, 627 N.E.2d 1138 (1993), cited by the State, is more instructive. In *Murrah,* the defendant was charged with forgery in connection with an application for a corporate credit card. *Murrah,* 255 Ill.App.3d at 743, 194 Ill.Dec. 496, 627 N.E.2d 1138. The defendant's supervisor testified that when he signed the application for the corporate credit card, the line for "additional cards for other employees" was blank. *Murrah,* 255 Ill.App.3d at 744, 194 Ill.Dec. 496, 627 N.E.2d 1138. At some point, defendant's name was typed on that line, and the defendant received a credit card. *Murrah,* 255 Ill.App.3d at 744, 194 Ill.Dec. 496, 627 N.E.2d 1138. The appellate court found that the jury could have inferred that the defendant added his name after his supervisor had signed the application and that this inference was sufficient to support the charge that the defendant "made or altered a document" with intent to defraud. *Murrah,* 255 Ill.App.3d at 747, 194 Ill.Dec. 496, 627 N.E.2d

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 23

1138. The *Murrah* defendant's adding his name to the credit card application is similar to our defendant's adding his name to the victim's check. *People v. Kubanek*, 370 Ill. 646, 648, 19 N.E.2d 573 (1939) (defendant was guilty of forgery "by filing in the checks over the admittedly genuine signature of" the victim).

Thus, after reviewing the evidence in the light most favorable to the prosecution, this court finds that a rational trier of fact could have found the essential elements of the crime of forgery beyond a reasonable doubt.

*Closing Argument*

The defendant claims that he was denied a fair trial because the prosecutor in closing argument allegedly suggested that duress or coercion was an element of forgery, which is not the law.

[17][18][19] The defendant waived this issue by failing to object at trial. *People v. Woods*, 214 Ill.2d 455, 470, 293 Ill.Dec. 277, 828 N.E.2d 247 (2005) (error is not preserved for appellate review if defendant fails to "specifically object at trial"); *Piatkowski*, 225 Ill.2d at 564, 312 Ill.Dec. 338, 870 N.E.2d 403. As noted above, even when the defendant has failed to preserve an error for review, an appellate court may still review for plain error. The plain error doctrine allows a reviewing court to consider an unpreserved error when either (1) the evidence is "so closely balanced that the error alone threatened to tip the scales of justice against the defendant," or (2) the "error was so serious that **463** it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Piatkowski*, 225 Ill.2d at 565, 312 Ill.Dec. 338, 870 N.E.2d 403; *Woods*, 214 Ill.2d at 471, 293 Ill.Dec. 277, 828 N.E.2d 247. " 'In both instances, the burden of persuasion remains with the defendant.' " *Piatkowski*, 225 Ill.2d at 564, 312 Ill.Dec. 338, 870 N.E.2d 403, quoting *People v. Herron*, 215 Ill.2d 167, 187, 294 Ill.Dec. 55, 830 N.E.2d 467 (2005).

[20][21][22] As noted above, before we may examine either prong of the plain error doctrine, we must first determine whether there was any error at all. *Piatkowski*, 225 Ill.2d at 565, 312 Ill.Dec. 338, 870 N.E.2d 403 (plain error doctrine requires "first" that an error occurred); *People v. Nicholas*, 218 Ill.2d 104, 121, 299 Ill.Dec. 637, 842 N.E.2d 674 (2006) (where "there was no error at all," there cannot be plain error); *People v. Johnson*, 218 Ill.2d 125, 139, 299 Ill.Dec. 677, 842 N.E.2d 714 (2005) ("Clearly, there can be no plain error if there is no error"). For a prosecutor's ***727 **695 closing remarks to constitute error, they must fall outside the "wide latitude" accorded a prosecutor in making a closing. *People v. Nicholas*, 218 Ill.2d 104, 121, 299 Ill.Dec. 637, 842 N.E.2d 674 (2006); *People v. Hart*, 214 Ill.2d 490, 513, 293 Ill.Dec. 290, 828 N.E.2d 260 (2005) ("[t]he law gives a prosecutor wide latitude in argument"). "In closing, the prosecutor may comment on the evidence and any fair, reasonable inferences it yields." *Nicholas*, 218 Ill.2d at 121, 299 Ill.Dec. 637, 842 N.E.2d 674; *Hart*, 214 Ill.2d at 513, 293 Ill.Dec. 290, 828 N.E.2d 260. "A closing argument must be viewed in its entirety, and the challenged remarks must be viewed in their context." *Nicholas*, 218 Ill.2d at 122, 299 Ill.Dec. 637, 842 N.E.2d 674.

The defendant claims that the prosecutor erred in closing argument when he made the following two remarks. First, the prosecutor stated: "It's her writing [on the check]; but make no mistake about it, he's the one that made the check. He just used her hands to do it." Second, during rebuttal, the prosecutor stated that it was unreasonable for the defense to argue that "[s]he wasn't forced to write out that check."

[23][24] The defendant cannot now object to the prosecutor's remark in rebuttal when defense counsel invited the alleged error. A defendant cannot complain on appeal about an error that was "procured or invited by the defendant" at trial. *People v. Harvey*, 211 Ill.2d 368, 386, 286 Ill.Dec. 124, 813 N.E.2d 181 (2004); *People v. Bush*, 214

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 24

Ill.2d 318, 333, 292 Ill.Dec. 926, 827 N.E.2d 455 (2005); *People v. Caffey*, 205 Ill.2d 52, 114, 275 Ill.Dec. 390, 792 N.E.2d 1163 (2001). The prosecutor made the rebuttal remark in response to defense counsel's remarks in the defense closing that the State had failed to prove that the defendant "made her write him a check." Defense counsel argued in closing that the State had failed to prove:

> "whether it [the check] was given to him willingly or not by Juanita No. 1-05-3358 Cartman, whether she knew he had it, whether she wrote it out for him under force, duress, we don't know these things. They haven't been proved."

In closing, the defense put forth the "theory" that the elderly victim was acting not out of duress but out of confusion:

> **\*464** "Now here is a theory * * * Ms. Cartman would not be the first elderly person to lose control of a large sum of money they did not mean to lose. She would not be the first person who wrote out a check with too many zeroes on the end or wrote a check thinking they were paying for something and found out later they were never going to get it."

Defense's repeated comments about lack of force or duress certainly invited the prosecutor's rebuttal comment to the jury that "you don't believe * * * for one minute" the defense assertion that "[s]he wasn't forced to write out that check." *People v. Sutton*, 316 Ill.App.3d 874, 893, 250 Ill.Dec. 780, 739 N.E.2d 543 (2000) ("[w]here there are allegations of prosecutorial misconduct [during closing], arguments of both the prosecutor and defense counsel must be reviewed in their entirety").

[25] As for the first allegedly improper comment, that the defendant forced the victim to write the check, the defendant claims that this remark was a "misstatement" by the prosecutor that duress or force was an element of fraud. First, the statement was factually not a "misstatement" but a more than reasonable inference to be drawn from the evidence presented at trial. Second, the prosecutor never told

the jury that duress or force was an element of fraud; and to the extent that the jury was laboring under that misapprehension,**\*\*\*728 \*\*696** the court properly instructed the jury about the elements of fraud. The defendant has not challenged any aspect of the jury charge on appeal. Viewing the closing in its entirety and in context, this court cannot find that the two challenged remarks constituted reversible error. *Nicholas*, 218 Ill.2d at 122, 299 Ill.Dec. 637, 842 N.E.2d 674 (closing "must be viewed in its entirety" and "remarks must be viewed in their context").

[26] Even if there was error, it did not rise to the level of plain error. First, the evidence supporting the forgery charge was not closely balanced. *Piatkowski*, 225 Ill.2d at 565, 312 Ill.Dec. 338, 870 N.E.2d 403 (plain error if evidence is "so closely balanced that the error alone threatened to tip the scales of justice against the defendant"); *Woods*, 214 Ill.2d at 471, 293 Ill.Dec. 277, 828 N.E.2d 247. On one side of the scale, the evidence of forgery included: (1) defendant's signed and detailed statement concerning the making of the check; (2) the fingerprint expert's testimony about the defendant's fingerprint on the check; (3) the teller's testimony concerning the defendant's presentation of the check at the bank, and the fact that the payee was in a different handwriting than the balance of the check; and (4) testimony by the teller, the security guard, and the police officer about the defendant's immediate flight out of the door of the bank, over a fence at a construction site and finally hiding under a porch of a nearby building. *People v. Harris*, 225 Ill.2d 1, 23, 310 Ill.Dec. 351, 866 N.E.2d 162 (2007) ("evidence of flight" is generally "admissible as proof of consciousness of guilt"); **\*465** *People v. Hart*, 214 Ill.2d 490, 519, 293 Ill.Dec. 290, 828 N.E.2d 260 (2005) (same). On the other side of the scale, there was no evidence disputing the forgery. Far from being closely balanced, the scales tipped heavily toward the jury's verdict of forgery. In *Piatkowski*, the Illinois Supreme Court recently held that the evidence in the case before it was not closely balanced where the State

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

presented "no physical evidence to connect defendant" to the crime and "no inculpatory statements by defendant." *Piatkowski,* 225 Ill.2d at 567, 312 Ill.Dec. 338, 870 N.E.2d 403. In contrast to *Piatkowski,* the case at bar included both physical evidence, such as the check with defendant's fingerprint, and the defendant's highly inculpatory statements, as well as the teller's eyewitness testimony about the check's presentation and separate handwriting for the line of the payee, and the defendant's flight.

Second, if there was an error in the prosecutor's closing argument, it was not so serious that it affected the fairness of the defendant's trial. *Piatkowski,* 225 Ill.2d at 565, 312 Ill.Dec. 338, 870 N.E.2d 403; *Woods,* 214 Ill.2d at 471, 293 Ill.Dec. 277, 828 N.E.2d 247. As discussed above, the first allegedly improper remark was invited by defense counsel; and the second remark was a factual assertion reasonably drawn from the evidence which did not state that duress or force was an element of forgery. Thus, even assuming there was an error, the defendant has failed to show that it rose to the level of plain error.

*Sentencing Hearing*

Defendant claims that he was denied a fair sentencing hearing when he received the maximum sentence of 30 years for aggravated sexual assault. Defendant claims that the sentencing court erred: (1) by relying on a police report for the facts of defendant's prior conviction; (2) by considering the victim's age as an aggravating factor when age was already an element of the offense; and (3) by failing to consider mitigating factors, such as defendant's lack of a lengthy criminal record. In his brief to this court, the defendant concedes that he waived these issues by failing to raise ***729 **697 them properly below and that the plain error doctrine applies.

[27] "It is well settled that a trial judge's sentencing decisions are entitled to great deference and will not be altered on appeal absent an abuse of discre-

tion." *People v. Jackson,* 375 Ill.App.3d 796, 800, 314 Ill.Dec. 496, 874 N.E.2d 592 (2007). "A sentence which falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense." *Jackson,* 375 Ill.App.3d at 800, 314 Ill.Dec. 496, 874 N.E.2d 592. Although the sentencing court in the case at bar chose to give the maximum sentence, that sentence was still within the statutory range (720 ILCS 5/12-14(d)(1)); and defendant has not claimed on appeal that his sentence was "manifestly disproportionate" to the crime.

[28] First, with respect to the police report, there is no evidence that the sentencing court relied on it for purposes of sentencing. At the *466 sentencing hearing, the prosecutor informed the court that the defendant had pled guilty on April 6, 1993, to attempted robbery and aggravated battery of an 88-year-old victim, for which the defendant received a sentence of three years. The defense did not dispute the fact of the conviction or the age of the victim, at sentencing or on this appeal.[FN17]

> FN17. At sentencing, the defendant disputed having committed the aggravated battery but admitted the conviction. Defendant claimed that he pled guilty in 1993 in order to "[g]et it over with, they came to me with the battery charge and I took."

The prosecutor then related the following facts from a detective's report about the 1993 case:

"In a very similar manner, the facts involve the defendant talking his way into her apartment, asking for money, taking her into her bedroom. When she refused to give him money, slapping and hitting this victim who sustained injuries in that case, a small cut to the right side of the face, a bruise to the left chest area and a minor bruise to the neck area. * * * The victim also related to the police that a neighbor called during this incident and the neighbor even told the police that the victim said to her, he's back again and he's hitting me. And heard the victim say ouch, stop hitting

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 26

me."

During the sentencing hearing, the trial court did not refer to the details contained in the police report. With respect to the 1993 case, the trial court focused primarily on the victim's age, noting that it was another aggravated battery "with another elderly woman." In announcing the sentence, the trial court stated:

"This is two offenses for violence against women who are senior citizens. And real senior citizens. We are not talking about somebody coming home from working out at the health club who happens to be 61 or 65. That would make him a senior citizen. Those women were well beyond that age.

I think that society requires based on facts of the case and background, on count nine will merge into count seven, on count seven I sentence you to 30 years [in the] Illinois Department of Corrections."

The above remarks indicate that the trial court relied primarily not on the details in the police report, but on the facts of the conviction and the prior victim's age, facts that the defense has never disputed or raised as an issue on this appeal. *Kliner,* 185 Ill.2d 81, 172, 235 Ill.Dec. 667, 705 N.E.2d 850 (1998) (noting that "the trial judge did not cite to any of the evidence here challenged"). "[W]hen the trial judge is the sentencer, it is presumed that the ***730 **698 trial judge based his decision upon competent and reliable evidence." *Kliner,* 185 Ill.2d at 174, 235 Ill.Dec. 667, 705 N.E.2d 850. The defendant in the case at bar has failed to rebut that presumption.

[29][30][31] *467 Even if the sentencing court had relied on the police report, that fact alone would not require resentencing. The defendant objects to admission of the report as hearsay. However, a court is permitted to consider hearsay information at sentencing. *People v. Harris,* 375 Ill.App.3d 398, 409, 313 Ill.Dec. 960, 873 N.E.2d 584 (2007). The

"ordinary rules of evidence which govern at trial are relaxed at the sentencing hearing." *Harris,* 375 Ill.App.3d at 408, 313 Ill.Dec. 960, 873 N.E.2d 584. At sentencing, a "hearsay objection affects the weight rather than the admissibility of the evidence." *Harris,* 375 Ill.App.3d at 409, 313 Ill.Dec. 960, 873 N.E.2d 584.

[32] It is left to the "sound discretion" of the trial court to determine whether hearsay is reliable enough to weigh in sentencing. *Harris,* 375 Ill.App.3d at 410, 313 Ill.Dec. 960, 873 N.E.2d 584. The Illinois Supreme Court has held that a sentencing court may consider even uncharged conduct contained in a rap sheet. *People v. Kliner,* 185 Ill.2d 81, 171, 172, 235 Ill.Dec. 667, 705 N.E.2d 850 (1998) ("defendant's Chicago police department 'rap sheet' which indicated defendant's prior arrests" was relevant to sentencing "because it provides an insight into the defendant's character").

[33] Second, the defendant claims that the trial court improperly considered the victim's age as an aggravating factor in sentencing when the victim's age was already an element of the offense. Aggravated sexual assault requires, as an element of the offense, finding one factor from a list of aggravating factors. (720 ILCS 5/12-14 (a)(West 2000)). One of these factors is that "the victim was 60 years of age or over when the offense was committed." (720 ILCS 5/12-14(a)(5)(West 2000)).

[34][35] "As a general rule, the consideration of a factor which is necessarily implicit in an offense cannot be used as an aggravating factor in sentencing." *People v. Burge,* 254 Ill.App.3d 85, 88, 193 Ill.Dec. 310, 626 N.E.2d 343 (1993). "Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing 'a harsher sentence than might have otherwise have been imposed.' " *People v. Phelps,* 211 Ill.2d 1, 11-12, 284 Ill.Dec. 268, 809 N.E.2d 1214 (2004) quoting *People v. Gonzalez,* 151 Ill.2d 79, 83-84, 175 Ill.Dec. 731, 600 N.E.2d 1189 (1992). "Such dual use of a single factor is often referred to as 'a double enhancement.' "*Phelps,* 211 Ill.2d at 12, 284

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

Page 27

Ill.Dec. 268, 809 N.E.2d 1214, quoting *Gonzalez,* 151 Ill.2d at 85, 175 Ill.Dec. 731, 600 N.E.2d 1189.

In support of his claim that the trial court erred in sentencing him, the defendant cited *People v. White,* 114 Ill.2d 61, 101 Ill.Dec. 879, 499 N.E.2d 467 (1986), which the supreme court called a "textbook example of double enhancement." *Phelps,* 211 Ill.2d at 12, 284 Ill.Dec. 268, 809 N.E.2d 1214. The supreme court explained that: "In *White,* this court held that * * * the victim's age cannot form the basis for an extended-term sentence where the defendant is convicted of aggravated battery of a child." *Phelps,* 211 Ill.2d at 12, 284 Ill.Dec. 268, 809 N.E.2d 1214. However, *White* is distinguishable from the case at bar because in the case at bar, age was not used as the basis for an extended-term sentence. The trial court in the case at bar sentenced the defendant within the statutory **468 maximum for the offense. The other two cases cited by defendant ***731 **699 in support of his claim also involved extended-term sentences, and are similarly distinguishable.[FN18]

> FN18. The defendant also cited *People v. Conover,* 84 Ill.2d 400, 50 Ill.Dec. 638, 419 N.E.2d 906 (1981), and *People v. Ferguson,* 132 Ill.2d 86, 138 Ill.Dec. 262, 547 N.E.2d 429 (1989). *Conover* and *Ferguson* involved the question of whether the aggravating factor permitted the sentencing court to impose "an extended-term sentence" (*Ferguson,* 132 Ill.2d at 95, 138 Ill.Dec. 262, 547 N.E.2d 429) or "a more severe penalty" (*Conover,* 84 Ill.2d at 405, 50 Ill.Dec. 638, 419 N.E.2d 906) for the offense than the legislature had authorized for the offense. These cases are distinguishable from the case at bar because the trial court in the case at bar sentenced the defendant within the statutory maximum for the offense.

[36][37] Although it is a "general rule" that an element of the offense should not also be used as a sentencing factor, "this rule should not be applied

rigidly." *Burge,* 254 Ill.App.3d at 88, 193 Ill.Dec. 310, 626 N.E.2d 343. "The rule that a court may not consider a factor inherent in the offense is not meant to be applied rigidly, because sound public policy dictates that a sentence be varied in accordance with the circumstances of the offense." *People v. Cain,* 221 Ill.App.3d 574, 575, 163 Ill.Dec. 923, 582 N.E.2d 189 (1991). Thus, a sentencing court may consider "the degree of harm threatened" in an armed robbery although threatened harm is implicit in the offense (*Burge,* 254 Ill.App.3d at 89, 193 Ill.Dec. 310, 626 N.E.2d 343); and the degree of harm in an aggravated criminal sexual assault, although "serious harm * * * [is] an element implicit in the crime." *People v. Smith,* 215 Ill.App.3d 1029, 1038, 159 Ill.Dec. 517, 576 N.E.2d 186 (1991).

[38] In assessing the degree of harm, a sentencing court may consider, for example, "whether the victim is particularly young" even though the victim's age is an element of the sexual assault count for which defendant was convicted. *People v. Thurmond,* 317 Ill.App.3d 1133, 1144, 251 Ill.Dec. 697, 741 N.E.2d 291 (2000) (emphasis omitted). In *Thurmond,* the sexual assault victim was only 12 years old. *Thurmond,* 317 Ill.App.3d at 1136, 251 Ill.Dec. 697, 741 N.E.2d 291. The appellate court held that "the trial court did not err by recognizing that [the victim] was particularly young at the time of the offense." *Thurmond,* 317 Ill.App.3d at 1144-45, 251 Ill.Dec. 697, 741 N.E.2d 291. The appellate court stated "there is a difference between being under age 18 and being significantly under age 18." *Thurmond,* 317 Ill.App.3d at 1144, 251 Ill.Dec. 697, 741 N.E.2d 291.

Just as a trial court may consider whether a sexual assault victim was particularly young, a trial court may also consider whether a victim was particularly senior. In the case at bar, the trial court did not err when it considered that the victim was 15 years above the age required in the statute. The victim in the case at bar was 75 or 76 years old at the time of the offense; and the age required for aggravated

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

884 N.E.2d 675
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707
**379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707**

sexual assault was only 60, 720 ILCS 5/12-14(a)(5)(West 2000).

[39] Third, the defendant claims that the sentencing court failed to *469 consider mitigating factors, such as defendant's lack of a lengthy criminal record, his associate's degree, his work history and his honorable discharge from the military. Defense counsel stated most of these facts at sentencing; and the trial judge acknowledged that he had "[r]eviewed the background" and that "there are many things that go into sentencing."

"[T]here is no mandatory requirement that the trial judge recite all" the mitigating and aggravating factors "before imposing***732 **700 sentence." *Jackson,* 375 Ill.App.3d at 802, 314 Ill.Dec. 496, 874 N.E.2d 592. "It is presumed that the trial judge considered all of the factors unless the record indicates to the contrary." *Jackson,* 375 Ill.App.3d at 802, 314 Ill.Dec. 496, 874 N.E.2d 592. We can find no evidence of "an abuse of discretion" in the sentencing record. *Jackson,* 375 Ill.App.3d at 800, 314 Ill.Dec. 496, 874 N.E.2d 592.

### Correction of Mittimus

Both the State and the defense agree that the mittimus must be corrected. The "Order of Commitment and Sentence" states that the defendant was "adjudged guilty of the offense(s) enumerated below" and then lists three separate offenses: (1) "AGG. CRIM SEX ASSAULT/FELONY"; (2) "AGG. CRIM SEX ASLT/VICTIM> 60"; and (3) "FORGERY/ISSUE/DELIVER DOCUMENT."

At sentencing, the trial court merged count IX, aggravated criminal sexual assault based on the victim's age, with count VII, aggravated criminal sexual assault predicated on its commission during a residential burglary. However, the jury had acquitted defendant of residential burglary.

[40] The jury found defendant guilty of, and the trial court entered judgment and sentenced defendant on one count of aggravated criminal sexual assault

and on one count of forgery. Accordingly, the order must be corrected to eliminate "AGG CRIM SEX ASSAULT/FELONY." "Pursuant to Supreme Court Rule 615 (134 Ill.2d R. 615), a reviewing court on appeal may correct the mittimus at any time, without remanding the cause to the trial court." *People v. Jones,* 371 Ill.App.3d 303, 310, 308 Ill.Dec. 956, 862 N.E.2d 1159 (2007).

### CONCLUSION

For the foregoing reasons, the defendant's conviction and sentence are affirmed, and the mittimus is corrected.

Affirmed.

CAHILL, P.J., and WOLFSON, J., concur.
Ill.App. 1 Dist.,2007.
People v. Spicer
379 Ill.App.3d 441, 884 N.E.2d 675, 318 Ill.Dec. 707

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.